**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| USA, | ) | |
|      Plaintiff, | ) | |
| | ) | |
|      v. | ) | Case No. 15-cr-00515 |
| | ) | |
| Albert Rossini, et al., | ) | Hon. John Z. Lee |
|      Defendants. | ) | |

**AFFIDAVIT OF MICHAEL CAMPANILE**

I, Michael Campanile, Senior Vice President/Senior Loan Officer of ABC Bank f/k/a Austin Bank of Chicago ("ABC Bank"), am over 18 years of age, I have personal knowledge of the facts set forth in this affidavit, and if called as a witness could competently testify as follows:

1.    I am the Senior Vice President/Senior Loan Officer of ABC Bank.

2.    On August 26, 2015, ABC Bank was served with 3 separate warrants to seize property subject to forfeiture issued in the above-captioned case identifying the following property:

       (a)    Certificate of Deposit No. 16463 issued by Austin Bank of Chicago, Illinois on or about January 16, 2014, in the amount of $250,000.

       (b)    Certificate of Deposit No. 16464 issued by Austin Bank of Chicago, Illinois on or about January 16, 2014, in the amount of $250,000.

       (c)    Certificate of Deposit No. 16513 issued by Austin Bank of Chicago, Illinois on or about March 10, 2014, in the amount of $200,000.

3.    Upon receipt of the above-referenced warrants, ABC Bank froze the CD accounts referenced at paragraph 2(b) and 2(c) above prohibiting any transactions on the accounts pending further order of court.



EXHIBIT
1

4.    In regards to CD No. 16463, a withdrawal occurred on August 18, 2015 in the amount of $249,272.55 bringing the account balance to $0.00 thereby closing the account. (*See* account summary statement attached hereto as <u>Exhibit A</u>.)

5.    In regards to CD No. 16464, the principal balance is $228,668.46 plus accrued interest. (*See* account summary statement attached hereto as <u>Exhibit B</u>.)

6.    In regards to CD No. 16513, the principal balance is $200,000.00 plus accrued interest. (*See* account summary statement attached hereto as <u>Exhibit C</u>.)

7.    On or about May 15, 2014, Babajan Khoshabe and Anthony Khoshabe (Borrowers) executed a promissory note for the benefit of ABC Bank in the amount of $295,000.00. (Attached hereto as <u>Exhibit D</u> is a copy of the Promissory Note dated May 15, 2014 and the renewal Promissory Note dated January 16, 2015; and Change in Terms Agreement dated March 16, 2015.)

8.    Contemporaneous to and in consideration for the disbursement under the May 15, 2014 promissory date, borrowers executed an Assignment of Deposit Account for the benefit of ABC Bank granting ABC Bank a security interest in CD No. 16464 and 16463. (Attached hereto as <u>Exhibit E</u> is a copy of the Assignment of Deposit Account dated May 15, 2014.) (The Promissory Note and Assignment of Deposit Account dated May 15, 2014 shall be collectively referred to as Loan No. 22164.)

9.    Pursuant to the loan documents for Loan No. 22164, it is an event of default for any governmental agency to try to take any of the property in which ABC Bank has a lien. Upon default, the loan documents grant ABC the right to accelerate the indebtedness and to take directly all funds in the account and apply them to the indebtedness. In addition, the loan documents grant ABC Bank the right to recover its attorney fees and expenses incurred in connection with the enforcement of the

agreement. (*See* <u>Exhibits D</u> and <u>E</u>.) There is currently a balance due and owing from borrowers to ABC Bank on Loan No. 22164 in the principal amount of $50,000.00 plus accrued interest. (*See* <u>Exhibit B</u>.)

10.     On or about July 9, 2015, Babajan Khoshabe executed a promissory note for the benefit of ABC Bank in the amount of $40,000.00. (Attached hereto as <u>Exhibit F</u> is a copy of the Promissory Note dated July 9, 2015.)

11.     Contemporaneous to and in consideration for the disbursement under the July 9, 2015 promissory date, borrowers executed an Assignment of Deposit Account for the benefit of ABC Bank granting ABC Bank a security interest in CD No. 16513. (Attached hereto as <u>Exhibit G</u> is a copy of the Assignment of Deposit Account dated July 9, 2015.) (The Promissory Note and Assignment of Deposit Account dated July 9, 2015 shall be collectively referred to as Loan No. 22447.)

12.     Pursuant to the loan documents for Loan No. 22447, it is an event of default for any governmental agency to try to take any of the property in which ABC Bank has a lien. Upon default, the loan documents grant ABC the right to accelerate the indebtedness and to take directly all funds in the account and apply them to the indebtedness. In addition, loan documents grant ABC Bank the right to recover its attorney fees and expenses incurred in connection with the enforcement of the agreement. (*See* <u>Exhibits F</u> and <u>G</u>.) There is currently a balance due and owing from borrowers to ABC Bank on Loan No. 22447 in the principal amount of $40,000.00 plus accrued interest. (*See* <u>Exhibit C</u>.)

13.     At the time of granting Loan No. 22164 and 22447 to the borrowers, ABC Bank was not aware of any conduct by the borrowers which would give rise to forfeiture of the property. Upon

receiving the warrants to seize property subject to forfeiture, ABC Bank immediately froze access to the accounts to prevent the property from being used in continuing activity which would subject the property to forfeiture.

AFFIANT STATES NOTHING MORE.

<u>CERTIFICATION</u>

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

Dated: _10/1/2015_

Michael Campanile
Senior Vice President/Senior Loan Officer
ABC Bank

Print                                                                                      Page 1 of 1

### Certificate 16463 – ANTHONY KHOSHABE

| | Relationship | Date of Birth | Phone Number | Tax Identification |
|---|---|---|---|---|
| ANTHONY KHOSHABE | Owner | *** **, **** | *********** | SSN ***-**-**** |

6349 N KNOX AVE
CHICAGO IL 60646

Additional Relationships
Beneficiary Information Available
Tax Name: ANTHONY KHOSHABE
See Mailing Information

### Summary

| | | | |
|---|---|---|---|
| Memo Balance: | $0.00 | Term: | 12 Months |
| Current Balance: | $0.00 | Maturity Date: | Jan 16, 2016 |
| Interest Balance: | $0.00 | Last Anniversary Jan 16, 2015: | $250,000.00 |
| Current Rate: | 0.0000% | Last Deposit Jan 16, 2014: | $250,000.00 |
| | | Last Withdrawal Aug 18, 2015: | $249,272.55 |
| | | Original Issue Date: | Jan 16, 2014 |

### Interest

| | | | |
|---|---|---|---|
| Current Accrued Interest: | $0.00 | Current Rate: | 0.0000% |
| Date Accrued Through: | Aug 25, 2015 | Deposit Rate Index: | [38] 365-729 DAY JUMBO CD |
| Date Next Interest: | Sep 15, 2015 | Rate Adjuster Option: | Rate Adjuster Is Not Expressed as a Percentage Variance |
| Interest Payment Frequency: | Monthly | Rate Adjuster: | 0.0000% |
| Interest Cycle: | (None) | Compounding Code: | Simple |
| Interest Payment Method: | Check | Reg DD Compound Frequency: | Interest Frequency |
| Days Into This Period: | | Interest Method: | [0] Date of Deposit-365/365 |
| Last Interest Aug 18, 2015: | $16.30 | Interest Reporting Code: | 1099-INT |
| Net Interest Adjustment: | $0.00 | Withholding Code: | No Withholding |
| Interest This Period: | $0.00 | Rate Change Frequency: | At Maturity |
| | | Rate Change Method: | [B] Variable Rate |
| | | Base Rate: | 1.1900% |
| | | Maturity Rate Method: | Current Rate |
| | | Maturity Date: | Jan 16, 2016 |



Print                                                                    Page 1 of 1

## Certificate 16464 - *ANTHONY KHOSHABE*

| | Relationship | Date of Birth | Phone Number | Tax Identification |
|---|---|---|---|---|
| ⊞ ANTHONY KHOSHABE | ⚘ Owner | *** **, **** | ********** | SSN ***-**-**** |

6349 N KNOX AVE
CHICAGO IL 60646

Additional Relationships
Beneficiary Information Available
Tax Name: ANTHONY KHOSHABE
See Mailing Information

**EXHIBIT**
**B**
tabbies

### Summary

| | | | |
|---|---|---|---|
| Memo Balance: | $178,668.46 | Term: | 12 Months |
| Current Balance: | $228,668.46 | Maturity Date: | Jan 16, 2016 |
| Interest Balance: | $74.55 | Last Anniversary Jan 16, 2015: | $250,000.00 |
| **Redemption Amount:** | **$228,062.72** | Last Deposit Jan 16, 2014: | $250,000.00 |
| Forfeiture: | $680.29 | Last Withdrawal Aug 18, 2015: | $21,269.47 |
| Current Rate: | 1.1900% | Original Issue Date: | Jan 16, 2014 |

### Memo Balances

| | |
|---|---|
| Current Balance: | $228,668.46 |
| Less Holds: | ($50,000.00) |
| Memo Ledger Balance: | **$178,668.46** |

### Holds

| Amount | Reason | | Expiration Date |
|---|---|---|---|
| ⊞ $50,000.00 | NOTE 22164 | | Dec 31, 2049 |

### Interest

| | | | |
|---|---|---|---|
| Current Accrued Interest: | $74.55 | Current Rate: | 1.1900% |
| Date Accrued Through: | Aug 25, 2015 | Current Effective Rate: | 1.1900% |
| Date Next Interest: | Sep 15, 2015 | Deposit Rate Index: | [38] 365-729 DAY JUMBO CD |
| Interest Payment Frequency: | Monthly | Rate Adjuster Option: | Rate Adjuster Is Not Expressed as a Percentage Variance |
| Interest Cycle: | (None) | Rate Adjuster: | 0.0000% |
| Interest Payment Method: | Check | Compounding Code: | Simple |
| Days Into This Period: | 10 | Reg DD Compound Frequency: | Interest Frequency |
| Previous Accrued Interest: | $67.10 | Interest Method: | [0] Date of Deposit-365/365 |
| Last Interest Aug 15, 2015: | $252.67 | Interest Reporting Code: | 1099-INT |
| Balance Last Interest: | $250,000.00 | Withholding Code: | No Withholding |
| Net Interest Adjustment: | ($1.39) | Rate Change Frequency: | At Maturity |
| Interest This Period: | $232.50 | Rate Change Method: | [B] Variable Rate |
| Total Days This Period: | 31 | Base Rate: | 1.1900% |
| | | Maturity Rate Method: | Current Rate |
| | | Maturity Date: | Jan 16, 2016 |
| | | **Interest Cycle Rates** | |
| | | Aug 16, 2015 | 1.1900% |

Print

Page 1 of 1

### Certificate 16513 - BABAJAN KHOSHABE

| | Relationship | Date of Birth | Phone Number | Tax Identification |
|---|---|---|---|---|
| ⊕ BABAJAN KHOSHABE | Owner/Signer | *** **, **** | ********** | SSN ***-**-**** |
| ⊕ ANTHONY KHOSHABE | Owner/Signer | *** **, **** | ********** | SSN ***-**-**** |

6349 N KNOX AVE
CHICAGO IL 60646

Additional Relationships
Tax Name: BABAJAN KHOSHABE
See Mailing Information



EXHIBIT
C

### Summary

| | | | |
|---|---|---|---|
| Memo Balance: | $160,000.00 | Term: | 12 Months |
| Current Balance: | $200,000.00 | Maturity Date: | Mar 10, 2016 |
| Interest Balance: | $104.33 | Last Anniversary Mar 10, 2015: | $200,000.00 |
| Redemption Amount: | **$199,600.13** | Last Deposit Mar 10, 2014: | $200,000.00 |
| Forfeiture: | $504.20 | Last Withdrawal Aug 09, 2015: | $202.14 |
| Current Rate: | 1.1900% | Original Issue Date: | Mar 10, 2014 |

### Memo Balances

| | |
|---|---|
| Current Balance: | $200,000.00 |
| Less Holds: | ($40,000.00) |
| Memo Ledger Balance: | $160,000.00 |

### Holds

| | Amount | Reason | Expiration Date |
|---|---|---|---|
| ⊕ | $40,000.00 | LOAN HOLD Note #22447 per Hilda B | Nov 22, 2033 |

### Interest

| | | | |
|---|---|---|---|
| Current Accrued Interest: | $104.33 | Current Rate: | 1.1900% |
| Date Accrued Through: | Aug 25, 2015 | Current Effective Rate: | 1.1900% |
| Date Next Interest: | Sep 09, 2015 | Deposit Rate Index: | [38] 365-729 DAY JUMBO CD |
| Interest Payment Frequency: | Monthly | Rate Adjuster Option: | Rate Adjuster Is Not Expressed as a Percentage Variance |
| Interest Cycle: | (None) | Rate Adjuster: | 0.0000% |
| Interest Payment Method: | Check | Compounding Code: | Simple |
| Days Into This Period: | 16 | Reg DD Compound Frequency: | Interest Frequency |
| Previous Accrued Interest: | $97.81 | Interest Method: | [0] Date of Deposit-365/365 |
| Last Interest Aug 09, 2015: | $202.14 | Interest Reporting Code: | 1099-INT |
| Balance Last Interest: | $200,000.00 | Withholding Code: | No Withholding |
| Net Interest Adjustment: | $0.00 | Rate Change Frequency: | At Maturity |
| Interest This Period: | $202.14 | Rate Change Method: | [B] Variable Rate |
| Total Days This Period: | 31 | Base Rate: | 1.1900% |
| | | Maturity Rate Method: | Current Rate |
| | | Maturity Date: | Mar 10, 2016 |
| | | **Interest Cycle Rates** | |
| | | Aug 10, 2015 | 1.1900% |

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $295,000.00 | 05-15-2014 | 01-16-2015 | 22164 | $ $ | 125554 | 006 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Babajan Khoshabe
Anthony Khoshabe
6349 N Knox Ave
Chicago, IL 60646

**Lender:** ABC Bank
Lake Street Branch
5645 W. Lake Street
Chicago, IL 60644

**EXHIBIT**
D

**Principal Amount: $295,000.00**     **Interest Rate: 2.190%**     **Date of Note: May 15, 2014**

**PROMISE TO PAY.** I ("Borrower") jointly and severally promise to pay to ABC Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Ninety-five Thousand & 00/100 Dollars ($295,000.00), together with interest on the unpaid principal balance from May 15, 2014, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 2.190%, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** I will pay this loan in one principal payment of $295,000.00 plus interest on January 16, 2015. This payment due on January 16, 2015, will be for all principal and all accrued interest not yet paid. In addition, I will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning June 15, 2014, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year (366 during leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT.** I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Note, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: ABC Bank, 5645 West Lake Street Chicago, IL 60644.

**LATE CHARGE.** If a payment is 10 days or more late, I will be charged **5.000% of the regularly scheduled payment or $5.00, whichever is greater.**

**INTEREST AFTER DEFAULT.** Upon maturity, whether scheduled or accelerated by Lender because of my default, the interest rate on this Note shall be increased by 5.000 percentage points. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** I will be in default under this Note if any of the following happen:

**Payment Default.** I fail to make any payment when due under this Note.

**Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Note or in any agreement related to this Note, or in any other agreement or loan I have with Lender.

**False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts, including deposit accounts, with Lender. However, if I dispute in good faith whether the claim on which the taking of the property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Note or any of the related documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Collateral Damage or Loss.** Any collateral securing this Note is lost, stolen, substantially damaged or destroyed and the loss, theft, substantial damage or destruction is not covered by insurance.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if I have not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if I, after Lender sends written notice to me demanding cure of such default: (1) cure the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably possible.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then I will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if I do not pay. I will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of

# PROMISSORY NOTE
## (Continued)

the State of Illinois without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Illinois.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** I acknowledge this Note is secured by an Assignment of Deposit Account dated May 15, 2014 to Lender on Certificate of Deposit Nos. 16463 and 16464. All terms and conditions of which are hereby incorporated and made a part of this Promissory Note.

**CROSS DEFAULT.** Borrower will be in default upon the occurrence or existence of any default in the payment or performance of this indebtedness or any other obligation or indebtedness now or hereafter incurred by borrower or guarantor.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon me, and upon my heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. I and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

PRIOR TO SIGNING THIS NOTE, I, AND EACH OF US, READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. I, AND EACH OF US, AGREE TO THE TERMS OF THE NOTE.

I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

x _Babajan Khoshabe_
Babajan Khoshabe

x _Anthony Khoshabe_
Anthony Khoshabe

# PROMISSORY NOTE

| Principal $295,000.00 | Loan Date 01-16-2015 | Maturity 01-16-2016 | Loan No 22164 | Call / Coll * 9 | Account 125554 | Officer 006 | Initials |
|---|---|---|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  Babajan Khoshabe
Anthony Khoshabe
6349 N Knox Ave
Chicago, IL  60646

**Lender:**  ABC Bank
Lake Street Branch
5645 W. Lake Street
Chicago, IL  60644

---

**Principal Amount: $295,000.00**             **Interest Rate: 1.200%**                **Date of Note: January 16, 2015**

**PROMISE TO PAY.** I ("Borrower") jointly and severally promise to pay to ABC Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Ninety-five Thousand & 00/100 Dollars ($295,000.00), together with interest on the unpaid principal balance from January 16, 2015, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 1.200%, until paid in full.  The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** I will pay this loan in one principal payment of $295,000.00 plus interest on January 16, 2016.  This payment due on January 16, 2016, will be for all principal and all accrued interest not yet paid.  In addition, I will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning February 16, 2015, with all subsequent interest payments to be due on the same day of each month after that.  Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges.  I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year (366 during leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.  All interest payable under this Note is computed using this method.

**PREPAYMENT.** I may pay without penalty all or a portion of the amount owed earlier than it is due.  Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule.  Rather, early payments will reduce the principal balance due.  I agree not to send Lender payments marked "paid in full", "without recourse", or similar language.  If I send such a payment, Lender may accept it without losing any of Lender's rights under this Note, and I will remain obligated to pay any further amount owed to Lender.  All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: ABC Bank, 5645 West Lake Street Chicago, IL  60644.

**LATE CHARGE.** If a payment is 10 days or more late, I will be charged 5.000% of the regularly scheduled payment or $5.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon maturity, whether scheduled or accelerated by Lender because of my default, the interest rate on this Note shall be increased by 5.000 percentage points.  However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** I will be in default under this Note if any of the following happen:

**Payment Default.** I fail to make any payment when due under this Note.

**Break Other Promises.** I break any promise to Lender or fail to perform promptly at the time and strictly in the manner provided in this Note or in any agreement related to this Note, or in any other agreement or loan I have with Lender.

**False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the property or any other of my property in which Lender has a lien.  This includes taking of, garnishing of or levying on my accounts, including deposit accounts, with Lender.  However, if I dispute in good faith whether the claim on which the taking of the property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Note or any of the related documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Collateral Damage or Loss.** Any collateral securing this Note is lost, stolen, substantially damaged or destroyed and the loss, theft, substantial damage or destruction is not covered by insurance.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if I have not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if I, after Lender sends written notice to me demanding cure of such default:  (1)  cure the default within fifteen (15) days; or  (2)  if the cure requires more than fifteen (15) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then I will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if I do not pay.  I will pay Lender that amount.  This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals.  If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of

# PROMISSORY NOTE
## (Continued)

Loan No: 22164

Page 2

the State of Illinois without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Illinois.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** I acknowledge this Note is secured by an Assignment of Deposit Account dated May 15, 2014 to Lender on Certificate of Deposit Nos. 16463 and 16464. All terms and conditions of which are hereby incorporated and made a part of this Promissory Note.

**CROSS DEFAULT.** Borrower will be in default upon the occurrence or existence of any default in the payment or performance of this indebtedness or any other obligation or indebtedness now or hereafter incurred by borrower or guarantor.

**PRIOR NOTE.** Renewal of Promissory Note dated May 15, 2014 in the amount of $295,000.00.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon me, and upon my heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. I and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

PRIOR TO SIGNING THIS NOTE, I, AND EACH OF US, READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. I, AND EACH OF US, AGREE TO THE TERMS OF THE NOTE.

I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

x _____
Babajan Khoshabe

x _____
Anthony Khoshabe

# CHANGE IN TERMS AGREEMENT

| Principal $295,000.00 | Loan Date 03-16-2015 | Maturity 01-16-2016 | Loan No 22164 | Call / Coll $ $ | Account 125554 | Officer 006 | Initials |
|---|---|---|---|---|---|---|---|

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:**  Babajan Khoshabe
Anthony Khoshabe
6349 N Knox Ave
Chicago, IL  60646

**Lender:**  ABC Bank
Lake Street Branch
5645 W. Lake Street
Chicago, IL  60644

---

**Principal Amount:  $295,000.00**       **Interest Rate:  2.190%**       **Date of Agreement:  March 16, 2015**

**DESCRIPTION OF EXISTING INDEBTEDNESS.**  Renewal of Promissory Note dated May 15, 2014 in the amount of $295,000.00; Change in Terms of Promissory Note dated January 16, 2015 in the amount of $295,000.00.

**DESCRIPTION OF COLLATERAL.**  an Assignment of Deposit Account dated May 15, 2014 to Lender on Certificate of Deposit Nos. 16463 and 16464. .

**DESCRIPTION OF CHANGE IN TERMS.**  Effective the date of this Agreement, i) the interest rate is being increased from 1.20% to 2.19% starting with the April 16, 2015 payment. All other terms and conditions of the original Note and collateral document remain unchanged, except as expressly modified herein, and shall continue in full force and effect.

**PROMISE TO PAY.**  I ("Borrower") jointly and severally promise to pay to ABC Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Ninety-five Thousand & 00/100 Dollars ($295,000.00), together with interest on the unpaid principal balance from March 16, 2015, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 2.190%, until paid in full.  The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.**  I will pay this loan in one principal payment of $295,000.00 plus interest on January 16, 2016.  This payment due on January 16, 2016, will be for all principal and all accrued interest not yet paid.  In addition, I will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning April 16, 2015, with all subsequent interest payments to be due on the same day of each month after that.  Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges.  I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.**  Interest on this loan is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year (366 during leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.  All interest payable under this loan is computed using this method.

**PREPAYMENT.**  I may pay without penalty all or a portion of the amount owed earlier than it is due.  Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule.  Rather, early payments will reduce the principal balance due.  I agree not to send Lender payments marked "paid in full", "without recourse", or similar language.  If I send such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and I will remain obligated to pay any further amount owed to Lender.  All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: ABC Bank, 5645 West Lake Street Chicago, IL  60644.

**LATE CHARGE.**  If a payment is 10 days or more late, I will be charged 5.000% of the regularly scheduled payment or $5.00, whichever is greater.

**INTEREST AFTER DEFAULT.**  Upon maturity, whether scheduled or accelerated by Lender because of my default, the interest rate on this loan shall be increased by 5.000 percentage points.  However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.**  I will be in default under this Agreement if any of the following happen:

**Payment Default.**  I fail to make any payment when due under the Indebtedness.

**Break Other Promises.**  I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Agreement or in any agreement related to this Agreement.

**False Statements.**  Any representation or statement made or furnished to Lender by me or on my behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.**  Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.**  Any creditor or governmental agency tries to take any of the Property or any other of my property in which Lender has a lien.  This includes taking of, garnishing of or levying on my accounts, including deposit accounts, with Lender.  However, if I dispute in good faith whether the claim on which the taking of the Property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.**  This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Property Damage or Loss.**  The Property is lost, stolen, substantially damaged, sold, or borrowed against.

**Events Affecting Guarantor.**  Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

**Insecurity.**  Lender in good faith believes itself insecure.

**Cure Provisions.**  If any default, other than a default in payment, is curable and if I have not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if I, after Lender sends written notice to me demanding cure of such default:  (1)  cure the default within fifteen (15) days; or  (2)  if the cure requires more than fifteen (15) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

# CHANGE IN TERMS AGREEMENT
## (Continued)

Loan No: 22164                                                                                  Page 2

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then I will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if I do not pay. I will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Illinois without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Illinois.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** I acknowledge this Agreement is secured by the following collateral described in the security instrument listed herein: certificates of deposit described in an Assignment of Deposit Account dated March 16, 2015.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of my interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than me, Lender, without notice to me, may deal with my successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing me from the obligations of this Agreement or liability under the Indebtedness.

**MISCELLANEOUS PROVISIONS.** If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. I and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

PRIOR TO SIGNING THIS AGREEMENT, I, AND EACH OF US, READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. I, AND EACH OF US, AGREE TO THE TERMS OF THE AGREEMENT.

BORROWER:


x _Babajan Khoshabe_____                      x _Anthony Khoshabe_____
   Babajan Khoshabe                                            Anthony Khoshabe

LENDER:


ABC BANK


x _____
   Authorized Signer

# ASSIGNMENT OF DEPOSIT ACCOUNT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $295,000.00 | 05-15-2014 | 01-16-2015 | 22164 | $ $ | 125554 | 006 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Babajan Khoshabe
Anthony Khoshabe
6349 N Knox Ave
Chicago, IL 60646

**Grantor:** Anthony Khoshabe
6349 N Knox Ave
Chicago, IL 60646

**Lender:** ABC Bank
Lake Street Branch
5645 W. Lake Street
Chicago, IL 60644

EXHIBIT
tabbies
E

THIS ASSIGNMENT OF DEPOSIT ACCOUNT dated May 15, 2014, is made and executed among Anthony Khoshabe ("Grantor"); Babajan Khoshabe and Anthony Khoshabe ("Borrower"); and ABC Bank ("Lender").

**ASSIGNMENT.** For valuable consideration, Grantor assigns and grants to Lender a security interest in the Collateral, including without limitation the deposit accounts described below, to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" means the following described deposit accounts ("Account"):

**CD Account Number 16464 with Lender with an approximate balance of $250,000.00**

**CD Account Number 16463 with Lender with an approximate balance of $250,000.00**

together with (A) all interest, whether now accrued or hereafter accruing; (B) all additional deposits hereafter made to the Account; (C) any and all proceeds from the Account; and (D) all renewals, replacements and substitutions for any of the foregoing.

In addition, the word "Collateral" includes all of Grantor's property (however owned if owned by more than one person or entity), in Lender's possession (or in the possession of a third party subject to Lender's control), whether existing now or later and whether tangible or intangible in character, including without limitation each and all of the following:

**(A) All property to which Lender acquires title or documents of title.**

**(B) All property assigned to Lender.**

**(C) All promissory notes, bills of exchange, stock certificates, bonds, savings passbooks, time certificates of deposit, insurance policies, and all other instruments and evidences of an obligation.**

**(D) All records relating to any of the property described in this Collateral section, whether in the form of writing, microfilm, microfiche, or electronic media.**

**BORROWER'S WAIVERS AND RESPONSIBILITIES.** Except as otherwise required under this Agreement or by applicable law, (A) Borrower agrees that Lender need not tell Borrower about any action or inaction Lender takes in connection with this Agreement; (B) Borrower assumes the responsibility for being and keeping informed about the Collateral; and (C) Borrower waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the Collateral or any delay by Lender in realizing upon the Collateral; and Borrower agrees to remain liable under the Note no matter what action Lender takes or fails to take under this Agreement.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (A) this Agreement is executed at Borrower's request and not at the request of Lender; (B) Grantor has the full right, power and authority to enter into this Agreement and to pledge the Collateral to Lender; (C) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (D) Lender has made no representation to Grantor about Borrower or Borrower's creditworthiness.

**GRANTOR'S WAIVERS.** Grantor waives all requirements of presentment, protest, demand, and notice of dishonor or non-payment to Grantor, to Borrower, or to any other party to the Indebtedness or the Property. Lender may do any of the following with respect to the Indebtedness or any other obligation of any Borrower, without first obtaining Grantor's written consent: (A) grant any extension of time for any payment, (B) grant any renewal, (C) permit any modification of payment terms or other terms, or (D) exchange or release any Property or other security. No such act or failure to act shall affect Lender's rights against Grantor or the Property.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**GRANTOR'S REPRESENTATIONS AND PROMISES WITH RESPECT TO THE COLLATERAL.** Grantor represents and promises to Lender that:

**Ownership.** Grantor is the lawful owner of the Collateral free and clear of all loans, liens, encumbrances, and claims except as disclosed to and accepted by Lender in writing.

**Right to Grant Security Interest.** Grantor has the full right, power, and authority to enter into this Agreement and to assign the Collateral to Lender.

**No Prior Assignment.** Grantor has not previously granted a security interest in the Collateral to any other creditor.

**No Further Transfer.** Grantor will not sell, assign, encumber, or otherwise dispose of any of Grantor's rights in the Collateral except as provided in this Agreement.

**No Defaults.** There are no defaults relating to the Collateral, and there are no offsets or counterclaims to the same. Grantor will strictly and promptly do everything required of Grantor under the terms, conditions, promises, and agreements contained in or relating to the Collateral.

**Proceeds.** Any and all replacement or renewal certificates, instruments, or other benefits or proceeds related to the Collateral that are received by Grantor shall be held by Grantor in trust for Lender and immediately shall be delivered by Grantor to Lender to be held as part of the Collateral.

## ASSIGNMENT OF DEPOSIT ACCOUNT
## (Continued)

Loan No: 22164                                                            Page 2

**Validity; Binding Effect.** This Agreement is binding upon Grantor and Grantor's successors and assigns and is legally enforceable in accordance with its terms.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. Grantor will promptly notify Lender of any change to Grantor's name or the name of any individual Grantor, any individual who is a partner for a Grantor, and any individual who is a trustee or settlor or trustor for a Grantor under this Agreement. Grantor will also promptly notify Lender of any change to the name that appears on the most recently issued, unexpired driver's license or state-issued identification card, any expiration of the most recently issued driver's license or state-issued identification card for Grantor or any individual for whom Grantor is required to provide notice regarding name changes.

**LENDER'S RIGHTS AND OBLIGATIONS WITH RESPECT TO THE COLLATERAL.** While this Agreement is in effect, Lender may retain the rights to possession of the Collateral, together with any and all evidence of the Collateral, such as certificates or passbooks. This Agreement will remain in effect until (a) there no longer is any Indebtedness owing to Lender; (b) all other obligations secured by this Agreement have been fulfilled; and (c) Grantor, in writing, has requested from Lender a release of this Agreement.

**LENDER'S EXPENDITURES.** If Grantor fails (A) to keep the Collateral free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Collateral, or (C) to make repairs to the Collateral then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Collateral, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**LIMITATIONS ON OBLIGATIONS OF LENDER.** Lender shall use ordinary reasonable care in the physical preservation and custody of any certificate or passbook for the Collateral but shall have no other obligation to protect the Collateral or its value. In particular, but without limitation, Lender shall have no responsibility (A) for the collection or protection of any income on the Collateral; (B) for the preservation of rights against issuers of the Collateral or against third persons; (C) for ascertaining any maturities, conversions, exchanges, offers, tenders, or similar matters relating to the Collateral; nor (D) for informing the Grantor about any of the above, whether or not Lender has or is deemed to have knowledge of such matters.

**REINSTATEMENT OF SECURITY INTEREST.** If payment is made by Borrower, whether voluntarily or otherwise, or by guarantor or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment (A) to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, (B) by reason of any judgment, decree or order of any court or administrative body having jurisdiction over Lender or any of Lender's property, or (C) by reason of any settlement or compromise of any claim made by Lender with any claimant (including without limitation Borrower), the Indebtedness shall be considered unpaid for the purpose of enforcement of this Agreement and this Agreement shall continue to be effective or shall be reinstated, as the case may be, notwithstanding any cancellation of this Agreement or of any note or other instrument or agreement evidencing the Indebtedness and the Collateral will continue to secure the amount repaid or recovered to the same extent as if that amount never had been originally received by Lender, and Grantor shall be bound by any judgment, decree, order, settlement or compromise relating to the Indebtedness or to this Agreement.

**DEFAULT.** Grantor will be in default under this Agreement if any of the following happen:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Break Other Promises.** Borrower or Grantor breaks any promise made to Lender or fails to perform promptly at the time and strictly in the manner provided in this Agreement or in any agreement related to this Agreement.

**False Statements.** Any representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** Grantor dies, becomes insolvent, or files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt.

**Taking of the Collateral.** Any creditor or governmental agency tries to take any of the Collateral or any other of Borrower's or Grantor's collateral in which Lender has a lien. This includes taking of, garnishing of or levying on Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, if Borrower or Grantor disputes in good faith whether the claim on which the taking of the Collateral is based is valid or reasonable, and if Borrower or Grantor gives Lender written notice of the claim and furnishes Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment is curable and if Grantor has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default, or at any time thereafter, Lender may exercise any one or more of the following rights and remedies, in addition to any rights or remedies that may be available at law, in equity, or otherwise:

**Accelerate Indebtedness.** Lender may declare all Indebtedness of Borrower to Lender immediately due and payable, without

## ASSIGNMENT OF DEPOSIT ACCOUNT
### (Continued)

kind to Borrower or Grantor.

**Application of Account Proceeds.** Lender may take directly all funds in the Account and apply them to the Indebtedness. If the Account is subject to an early withdrawal penalty, that penalty shall be deducted from the Account before its application to the Indebtedness, whether the Account is with Lender or some other institution. Any excess funds remaining after application of the Account proceeds to the Indebtedness will be paid to Borrower or Grantor as the interests of Borrower or Grantor may appear. Borrower agrees, to the extent permitted by law, to pay any deficiency after application of the proceeds of the Account to the Indebtedness. Lender also shall have all the rights of a secured party under the Illinois Uniform Commercial Code, even if the Account is not otherwise subject to such Code concerning security interests, and the parties to this Agreement agree that the provisions of the Code giving rights to a secured party shall nonetheless be a part of this Agreement.

**Transfer Title.** Lender may effect transfer of title upon sale of all or part of the Collateral. For this purpose, Grantor irrevocably appoints Lender as Grantor's attorney-in-fact to execute endorsements, assignments and instruments in the name of Grantor and each of them (if more than one) as shall be necessary or reasonable.

**Other Rights and Remedies.** Lender shall have and may exercise any or all of the rights and remedies of a secured creditor under the provisions of the Illinois Uniform Commercial Code, at law, in equity, or otherwise.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Grantor's obligations under this Agreement, after Grantor's failure to do so, that decision by Lender will not affect Lender's right to declare Grantor in default and to exercise Lender's remedies.

**Cumulative Remedies.** All of Lender's rights and remedies, whether evidenced by this Agreement or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and to exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** What is written in this Agreement and in the Related Documents is Grantor's entire agreement with Lender concerning the matters covered by this Agreement. To be effective, any change or amendment to this Agreement must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs, in addition to all other sums provided by law. This Agreement also secures all of these amounts.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law. This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Illinois without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Illinois.**

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Agreement shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Borrower and Grantor signing below is responsible for all obligations in this Agreement.

**No Waiver by Lender.** Grantor understands Lender will not give up any of Lender's rights under this Agreement unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Grantor will not have to comply with the other provisions of this Agreement. Grantor also understands that if Lender does consent to a request, that does not mean that Grantor will not have to get Lender's consent again if the situation happens again. Grantor further understands that just because Lender consents to one or more of Grantor's requests, that does not mean Lender will be required to consent to any of Grantor's future requests. Grantor waives presentment, demand for payment, protest, and notice of dishonor.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any person may change his or her address for notices under this Agreement by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors. It will be Grantor's responsibility to tell the others of the notice from Lender.

**Power of Attorney.** Grantor hereby appoints Lender as its true and lawful attorney-in-fact, irrevocably, with full power of substitution to do the following: (1) to demand, collect, receive, receipt for, sue and recover all sums of money or other property which may now or hereafter become due, owing or payable from the Collateral; (2) to execute, sign and endorse any and all claims, instruments, receipts, checks, drafts or warrants issued in payment for the Collateral; (3) to settle or compromise any and all claims arising under the Collateral, and in the place and stead of Grantor, to execute and deliver its release and settlement for the claim; and (4) to file any claim or claims or to take any action or institute or take part in any proceedings, either in its own name or in the name of Grantor, or otherwise, which in the discretion of Lender may seem to be necessary or advisable. This power is given as security for the Indebtedness, and the authority hereby conferred is and shall be irrevocable and shall remain in full force and effect until renounced by Lender.

**Severability.** If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes

## ASSIGNMENT OF DEPOSIT ACCOUNT
### (Continued)

person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Promises.** All promises, agreements, and statements Grantor has made in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature and shall remain in full force and effect until such time as Borrower's Indebtedness is paid in full.

**Time Is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following words shall have the following meanings when used in this Agreement:

**Account.** The word "Account" means the deposit accounts described in the "Collateral Description" section.

**Agreement.** The word "Agreement" means this Assignment of Deposit Account, as this Assignment of Deposit Account may be amended or modified from time to time, together with all exhibits and schedules attached to this Assignment of Deposit Account from time to time.

**Borrower.** The word "Borrower" means Babajan Khoshabe and Anthony Khoshabe and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means Anthony Khoshabe.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means ABC Bank, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Note.

**Note.** The word "Note" means the note or credit agreement dated May 15, 2014, in the principal amount of $295,000.00 from Babajan Khoshabe and Anthony Khoshabe to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

BORROWER AND GRANTOR HAVE READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS ASSIGNMENT OF DEPOSIT ACCOUNT AND AGREE TO ITS TERMS. THIS AGREEMENT IS DATED MAY 15, 2014.

GRANTOR:

X _____
Anthony Khoshabe

BORROWER:

X _____                    X _____
Babajan Khoshabe                                      Anthony Khoshabe

LASER PRO Lending, Ver. 13.3.0.024 Copr. Harland Financial Solutions, Inc. 1997, 2014. All Rights Reserved. - IL C:\WIN\LP\CFI\LPL\E3G.FC TR-1973 PR-7

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $40,000.00 | 07-09-2015 | 03-10-2016 | 22447 | $ | 125554 | 006 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** Babajan Khoshabe
6349 N Knox Ave
Chicago, IL 60646

**Lender:** ABC Bank
Lake Street Branch
5645 W. Lake Street
Chicago, IL 60644

**EXHIBIT F**

---

**Principal Amount: $40,000.00**        **Interest Rate: 2.190%**        **Date of Note: July 9, 2015**

**PROMISE TO PAY.** I ("Borrower") promise to pay to ABC Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of Forty Thousand & 00/100 Dollars ($40,000.00), together with interest on the unpaid principal balance from July 9, 2015, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 2.190%, until paid in full. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.

**PAYMENT.** I will pay this loan in one principal payment of $40,000.00 plus interest on March 10, 2016. This payment due on March 10, 2016, will be for all principal and all accrued interest not yet paid. In addition, I will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning August 10, 2015, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year (366 during leap years), multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT.** I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due. I agree not to send Lender payments marked "paid in full", "without recourse", or similar language. If I send such a payment, Lender may accept it without losing any of Lender's rights under this Note, and I will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: ABC Bank, 5645 West Lake Street Chicago, IL 60644.

**LATE CHARGE.** If a payment is 10 days or more late, I will be charged 5.000% of the regularly scheduled payment or $5.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon maturity, whether scheduled or accelerated by Lender because of my default, the interest rate on this Note shall be increased by 5.000 percentage points. However, in no event will the interest rate exceed the maximum interest rate limitations under applicable law.

**DEFAULT.** I will be in default under this Note if any of the following happen:

**Payment Default.** I fail to make any payment when due under this Note.

**Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Note or in any agreement related to this Note, or in any other agreement or loan I have with Lender.

**False Statements.** Any representation or statement made or furnished to Lender by me or on my behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished.

**Death or Insolvency.** Any Borrower dies or becomes insolvent; a receiver is appointed for any part of my property; I make an assignment for the benefit of creditors; or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the property or any other of my property in which Lender has a lien. This includes taking of, garnishing of or levying on my accounts, including deposit accounts, with Lender. However, if I dispute in good faith whether the claim on which the taking of the property is based is valid or reasonable, and if I give Lender written notice of the claim and furnish Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Defective Collateralization.** This Note or any of the related documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Collateral Damage or Loss.** Any collateral securing this Note is lost, stolen, substantially damaged or destroyed and the loss, theft, substantial damage or destruction is not covered by insurance.

**Insufficient Account Balance.** Failure to satisfy Lender's requirement set forth in the Insufficient Account Balance section of the Assignment of Deposit Account.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if I have not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if I, after Lender sends written notice to me demanding cure of such default: (1) cure the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then I will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if I do not pay. I will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and

**PROMISSORY NOTE**

**(Continued)**

appeals. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW. This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Illinois without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Illinois.**

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the indebtedness against any and all such accounts.

**COLLATERAL.** I acknowledge this Note is secured by an Assignment of Deposit Account dated July 9, 2015 to Lender on Certificate of Deposit No. 16513. All terms and conditions of which are hereby incorporated and made a part of this Promissory Note.

**CROSS DEFAULT.** Borrower will be in default upon the occurrence or existence of any default in the payment or performance of this indebtedness or any other obligation or indebtedness now or hereafter incurred by borrower or guarantor.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon me, and upon my heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. I and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

**PRIOR TO SIGNING THIS NOTE, I READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. I AGREE TO THE TERMS OF THE NOTE.**

**I ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.**

**BORROWER:**

X _____
 Babajan Khoshabe

# ASSIGNMENT OF DEPOSIT ACCOUNT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|---------|-------------|---------|---------|----------|
| $40,000.00 | 07-09-2015 | 03-10-2016 | 22447 | $ | 125554 | 006 | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Grantor:** Babajan Khoshabe
6349 N Knox Ave
Chicago, IL 60646

**Lender:** ABC Bank
Lake Street Branch
5645 W. Lake Street
Chicago, IL 60644

**EXHIBIT**

G

THIS ASSIGNMENT OF DEPOSIT ACCOUNT dated July 9, 2015, is made and executed between Babajan Khoshabe ("Grantor") and ABC Bank ("Lender").

**ASSIGNMENT.** For valuable consideration, Grantor assigns and grants to Lender a security interest in the Collateral, including without limitation the deposit account(s) and/or certificated deposit account(s) described below, to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" means the following described deposit account(s) and/or certificated deposit account(s) ("Account"):

CD Account Number 16513 with Lender with an approximate balance of $200,000.00

together with (A) all interest, whether now accrued or hereafter accruing; (B) all additional deposits hereafter made to the Account; (C) any and all proceeds from the Account; and (D) all renewals, replacements and substitutions for any of the foregoing.

In addition, the word "Collateral" includes all of Grantor's property (however owned if owned by more than one person or entity), in Lender's possession (or in the possession of a third party subject to Lender's control), whether existing now or later and whether tangible or intangible in character, including without limitation each and all of the following:

(A) All property to which Lender acquires title or documents of title.

(B) All property assigned to Lender.

(C) All promissory notes, bills of exchange, stock certificates, bonds, savings passbooks, time certificates of deposit, insurance policies, and all other instruments and evidences of an obligation.

(D) All records relating to any of the property described in this Collateral section, whether in the form of writing, microfilm, microfiche, or electronic media.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**GRANTOR'S REPRESENTATIONS AND PROMISES WITH RESPECT TO THE COLLATERAL.** Grantor represents and promises to Lender that:

**Ownership.** Grantor is the lawful owner of the Collateral free and clear of all loans, liens, encumbrances, and claims except as disclosed to and accepted by Lender in writing.

**Right to Grant Security Interest.** Grantor has the full right, power, and authority to enter into this Agreement and to assign the Collateral to Lender.

**No Prior Assignment.** Grantor has not previously granted a security interest in the Collateral to any other creditor.

**No Further Transfer.** Grantor will not sell, assign, encumber, or otherwise dispose of any of Grantor's rights in the Collateral except as provided in this Agreement.

**No Defaults.** There are no defaults relating to the Collateral, and there are no offsets or counterclaims to the same. Grantor will strictly and promptly do everything required of Grantor under the terms, conditions, promises, and agreements contained in or relating to the Collateral.

**Proceeds.** Any and all replacement or renewal certificates, instruments, or other benefits or proceeds related to the Collateral that are received by Grantor shall be held by Grantor in trust for Lender and immediately shall be delivered by Grantor to Lender to be held as part of the Collateral.

**Validity; Binding Effect.** This Agreement is binding upon Grantor and Grantor's successors and assigns and is legally enforceable in accordance with its terms.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. Grantor will promptly notify Lender of any change to Grantor's name or the name of any individual Grantor, any individual who is a partner for a Grantor, and any individual who is a trustee or settlor or trustor for a Grantor under this Agreement. Grantor will also promptly notify Lender of any change to the name that appears on the most recently issued, unexpired driver's license or state-issued identification card, any expiration of the most recently issued driver's license or state-issued identification card for Grantor or any individual for whom Grantor is required to provide notice regarding name changes.

**LENDER'S RIGHTS AND OBLIGATIONS WITH RESPECT TO THE COLLATERAL.** While this Agreement is in effect, Lender may retain the rights to possession of the Collateral, together with any and all evidence of the Collateral, such as certificates or passbooks. This Agreement will remain in effect until (a) there no longer is any Indebtedness owing to Lender; (b) all other obligations secured by this Agreement have been fulfilled; and (c) Grantor, in writing, has requested from Lender a release of this Agreement.

**LENDER'S EXPENDITURES.** If Grantor fails (A) to keep the Collateral free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Collateral, or (C) to make repairs to the Collateral then Lender may do so. If any action or

## ASSIGNMENT OF DEPOSIT ACCOUNT

**Loan No: 22447**                **(Continued)**                **Page 2**

proceeding is commenced that would materially affect Lender's interests in the Collateral, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**LIMITATIONS ON OBLIGATIONS OF LENDER.** Lender shall use ordinary reasonable care in the physical preservation and custody of any certificate or passbook for the Collateral but shall have no other obligation to protect the Collateral or its value. In particular, but without limitation, Lender shall have no responsibility (A) for the collection or protection of any income on the Collateral; (B) for the preservation of rights against issuers of the Collateral or against third persons; (C) for ascertaining any maturities, conversions, exchanges, offers, tenders, or similar matters relating to the Collateral; nor (D) for informing the Grantor about any of the above, whether or not Lender has or is deemed to have knowledge of such matters.

**REINSTATEMENT OF SECURITY INTEREST.** If payment is made by Grantor, whether voluntarily or otherwise, or by guarantor or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment (A) to Grantor's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, (B) by reason of any judgment, decree or order of any court or administrative body having jurisdiction over Lender or any of Lender's property, or (C) by reason of any settlement or compromise of any claim made by Lender with any claimant (including without limitation Grantor), the Indebtedness shall be considered unpaid for the purpose of enforcement of this Agreement and this Agreement shall continue to be effective or shall be reinstated, as the case may be, notwithstanding any cancellation of this Agreement or of any note or other instrument or agreement evidencing the Indebtedness and the Collateral will continue to secure the amount repaid or recovered to the same extent as if that amount never had been originally received by Lender, and Grantor shall be bound by any judgment, decree, order, settlement or compromise relating to the Indebtedness or to this Agreement.

**DEFAULT.** Grantor will be in default under this Agreement if any of the following happen:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Break Other Promises.** Grantor breaks any promise made to Lender or fails to perform promptly at the time and strictly in the manner provided in this Agreement or in any agreement related to this Agreement.

**False Statements.** Any representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** Grantor dies, becomes insolvent, or files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt.

**Taking of the Collateral.** Any creditor or governmental agency tries to take any of the Collateral or any other of Grantor's collateral in which Lender has a lien. This includes taking of, garnishing of or levying on Grantor's accounts, including deposit accounts, with Lender. However, if Grantor disputes in good faith whether the claim on which the taking of the Collateral is based is valid or reasonable, and if Grantor gives Lender written notice of the claim and furnishes Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or guarantor, endorser, surety, or accommodation party dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Insecurity.** Lender in good faith believes itself insecure.

**Cure Provisions.** If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Grantor deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default, or at any time thereafter, Lender may exercise any one or more of the following rights and remedies, in addition to any rights or remedies that may be available at law, in equity, or otherwise:

**Accelerate Indebtedness.** Lender may declare all Indebtedness of Grantor to Lender immediately due and payable, without notice of any kind to Grantor.

**Application of Account Proceeds.** Lender may take directly all funds in the Account and apply them to the Indebtedness. If the Account is subject to an early withdrawal penalty, that penalty shall be deducted from the Account before its application to the Indebtedness, whether the Account is with Lender or some other institution. Any excess funds remaining after application of the Account proceeds to the Indebtedness will be paid to Grantor as the interests of Grantor may appear. Grantor agrees, to the extent permitted by law, to pay any deficiency after application of the proceeds of the Account to the Indebtedness. Lender also shall have all the rights of a secured party under the Illinois Uniform Commercial Code, even if the Account is not otherwise subject to such Code concerning security interests, and the parties to this Agreement agree that the provisions of the Code giving rights to a secured party shall nonetheless be a part of this Agreement.

**Transfer Title.** Lender may effect transfer of title upon sale of all or part of the Collateral. For this purpose, Grantor irrevocably appoints Lender as Grantor's attorney-in-fact to execute endorsements, assignments and instruments in the name of Grantor and each of them (if more than one) as shall be necessary or reasonable.

**Other Rights and Remedies.** Lender shall have and may exercise any or all of the rights and remedies of a secured creditor under the provisions of the Illinois Uniform Commercial Code, at law, in equity, or otherwise.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Grantor's obligations under this Agreement, after Grantor's failure to do so, that decision by Lender will not affect Lender's right to declare

## ASSIGNMENT OF DEPOSIT ACCOUNT
(Continued)

Page 3

---

Grantor in default and to exercise Lender's remedies.

**Cumulative Remedies.** All of Lender's rights and remedies, whether evidenced by this Agreement or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and to exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** What is written in this Agreement and in the Related Documents is Grantor's entire agreement with Lender concerning the matters covered by this Agreement. To be effective, any change or amendment to this Agreement must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement or to collect the Indebtedness, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs, in addition to all other sums provided by law. This Agreement also secures all of these amounts.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law. This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Illinois without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Illinois.**

**No Waiver by Lender.** Grantor understands Lender will not give up any of Lender's rights under this Agreement unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Grantor will not have to comply with the other provisions of this Agreement. Grantor also understands that if Lender does consent to a request, that does not mean that Grantor will not have to get Lender's consent again if the situation happens again. Grantor further understands that just because Lender consents to one or more of Grantor's requests, that does not mean Lender will be required to consent to any of Grantor's future requests. Grantor waives presentment, demand for payment, protest, and notice of dishonor.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any person may change his or her address for notices under this Agreement by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors. It will be Grantor's responsibility to tell the others of the notice from Lender.

**Power of Attorney.** Grantor hereby appoints Lender as its true and lawful attorney-in-fact, irrevocably, with full power of substitution to do the following: (1) to demand, collect, receive, receipt for, sue and recover all sums of money or other property which may now or hereafter become due, owing or payable from the Collateral; (2) to execute, sign and endorse any and all claims, instruments, receipts, checks, drafts or warrants issued in payment for the Collateral; (3) to settle or compromise any and all claims arising under the Collateral, and in the place and stead of Grantor, to execute and deliver its release and settlement for the claim; and (4) to file any claim or claims or to take any action or institute or take part in any proceedings, either in its own name or in the name of Grantor, or otherwise, which in the discretion of Lender may seem to be necessary or advisable. This power is given as security for the Indebtedness, and the authority hereby conferred is and shall be irrevocable and shall remain in full force and effect until renounced by Lender.

**Severability.** If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Promises.** All promises, agreements, and statements Grantor has made in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature and shall remain in full force and effect until such time as Grantor's Indebtedness is paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**DEFINITIONS.** The following words shall have the following meanings when used in this Agreement:

**Account.** The word "Account" means the deposit account(s) and/or certificated deposit account(s) described in the "Collateral Description" section.

**Agreement.** The word "Agreement" means this Assignment of Deposit Account, as this Assignment of Deposit Account may be amended or modified from time to time, together with all exhibits and schedules attached to this Assignment of Deposit Account from time to time.

**Borrower.** The word "Borrower" means Babajan Khoshabe and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means Babajan Khoshabe.

## ASSIGNMENT OF DEPOSIT ACCOUNT
(Continued)

Loan No: 22447                                                           Page 4

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means ABC Bank, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Note.

**Note.** The word "Note" means the note or credit agreement dated July 9, 2015, in the principal amount of $40,000.00 from Babajan Khoshabe to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS ASSIGNMENT OF DEPOSIT ACCOUNT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED JULY 9, 2015.

GRANTOR:

X_____
Babajan Khoshabe