1    **TRANSCRIBED FROM DIGITAL RECORDING**

2                  IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
3                         EASTERN DIVISION

4    UNITED STATES OF AMERICA,          ) Docket No. 15 CR 515
                                        )
5           Government,                 )
                                        ) Chicago, Illinois
6                vs.                    ) August 25, 2015
                                        ) 3:20 o'clock p.m.
7    ALBERT ROSSINI (1), BABAJAN        )
     KHOSHABE (2), ANTHONY KHOSHABE (3),)
8    THOMAS W. MURPHY (4),              )
                                        )
9           Defendants.                 )

10              TRANSCRIPT OF PROCEEDINGS - Hearing
             BEFORE MAGISTRATE JUDGE MARY M. ROWLAND
11

     APPEARANCES:
12   For the Government:       UNITED STATES ATTORNEY'S OFFICE
                               BY:  MR. WILLIAM P. NOVAK
13                             219 South Dearborn Street
                               Suite 500
14                             Chicago, Illinois  60604

15   For A. Rossini and
        B. Khoshabe:          SEIDEN NETZKY LAW GROUP LLC
16                             BY:  MR. GLENN SEIDEN
                                    MS. BROOKE L. LEWIS
17                             115 South LaSalle Street
                               Suite 2600
18                             Chicago, Illinois  60603

19

20

21                  Laura LaCien, CSR, RMR, CRR
                       Official Court Reporter
22              219 South Dearborn Street, Suite 1902
                      Chicago, Illinois  60604
23                         (312) 408-5032

24       **PLEASE NOTIFY OF CORRECT SPEAKER IDENTIFICATION**
     NOTE:   FAILURE TO STAND NEAR THE MICROPHONE MAKES PORTIONS
25   UNINTELLIGIBLE AND INAUDIBLE.

```
 1    APPEARANCES:   (Cont'd)
 2

 3    For A. Khoshabe:          KEVIN P. BOLGER & ASSOCIATES
                                BY:  MR. KEVIN P. BOLGER
 4                              20 North Waker Drive
                                Suite 3710
 5                              Chicago, Illinois  60606

 6
      For T. Murphy:            LAW OFFICES OF LAWRENCE WOLF LEVIN
 7                              BY:  MR. LAWRENCE W. LEVIN
                                     MS. MICHELLE M. TRUESDALE
 8                                   MS. ANA L. VAZQUEZ
                                214 West Ohio Street
 9                              5th Floor
                                Chicago, Illinois  60610
10

11    Also Present:            U.S. PRETRIAL SERVICES
                                BY:  MS. TIFFANY MINARIK
12                              219 South Dearborn Street
                                Suite 15100
13                              Chicago, Illinois 60604

14

15

16

17

18

19

20

21

22

23

24

25
```

1    (The following digitally recorded proceedings were had in

2   open court:)

3         COURTROOM DEPUTY:  15 CR 515-1, United States of

4   America versus Albert Rossini.

5         MR. SEIDEN:  Rossini.

6         COURTROOM DEPUTY:  Rossini.  15 CR 515-2, United

7   States of America versus Babajan Khoshabe.

8         MR. SEIDEN:  Khoshabe.

9         COURTROOM DEPUTY:  15 CR 515-3, United States of

10  America versus Anthony Khoshabe.

11        MR. BOLGER:  Khoshabe.

12        COURTROOM DEPUTY:  And 15 CR 515-4, United States of

13  America versus Thomas W. Murphy for arraignment.

14        UNIDENTIFIED MALE SPEAKER:  Defendant is present.

15        MR. SEIDEN:  Good afternoon, your Honor.

16        THE COURT:  Good afternoon.

17        MR. SEIDEN:  Glenn Seiden and Brooke Lewis,

18  L-e-w-i-s, for Messrs. Rossini and Babajan Khoshabe.

19        THE COURT:  Okay.

20        MR. BOLGER:  Good afternoon, your Honor.  For the

21  record, Kevin Bolger, B-o-l-g-e-r, on behalf of Anthony

22  Khoshabe.  I'm going to ask the Court to my -- to file my

23  appearance.  I'll have it done electronically.

24        THE COURT:  That's fine.

25        MS. TRUESDALE:  Good afternoon, Judge.  Michelle

1  Truesdale, T-r-u-e-s-d-a-l-e, and Lawrence Wolf Levin and Ana

2  Vazquez on behalf of Mr. Tom Murphy and we'd ask leave to

3  file our appearance.  We'll supplement that with a written

4  appearance.

5          THE COURT:  Great.

6          UNIDENTIFIED MALE SPEAKER:  Thank you.

7          THE COURT:  And where are the defendants?

8          MR. NOVAK:  They're coming in right now, your Honor.

9  William Novak --

10          THE COURT:  Come on in.

11          MR. NOVAK:  -- on behalf of the United States.

12          UNIDENTIFIED MALE SPEAKER:  May I have permission to

13  move the chairs (unintelligible)?

14          THE COURT:  Yes.  You're the most important people

15  here so come on in.

16          Okay.  So we are here today on an arraignment; is

17  that right?

18          UNIDENTIFIED MALE SPEAKER:  Yes, your Honor.

19          THE COURT:  Okay.  The case has been indicted.  Can

20  I ask -- and I'll try to do this in an orderly fashion.  Can

21  I ask counsel for Mr. Rossini, has Mr. Rossini received a

22  copy of the indictment?

23          MR. SEIDEN:  Your Honor, I have received a copy of

24  indictment.  I visited with Mr. Rossini; we have.  So we

25  acknowledge receipt.  We waive the formal reading thereof.

1   We'll enter a plea of not guilty to that indictment.

2           THE COURT:  Okay.  Mr. Rossini --

3           DEFENDANT ROSSINI:  Yes, your Honor?

4           THE COURT:  Okay.  Mr. Rossini, your lawyer

5   indicates that you had a chance to talk to him about the

6   indictment, you're going to waive a formal reading of it, and

7   you're going to enter a plea of not guilty to all counts.  Is

8   that acceptable?

9           DEFENDANT ROSSINI:  That is correct, your Honor.

10          THE COURT:  Okay.  Very good.  Mr. Khoshabe, a

11  Babajan Khoshabe.

12          DEFENDANT B. KHOSHABE:  Good afternoon, your Honor.

13          THE COURT:  Good afternoon.  You're represented by

14  the same counsel?

15          MR. SEIDEN:  We are -- your Honor, he is now but we

16  have already anticipate a possible issue -- we've already

17  talked to Mr. Ackerman about continuing but we'll handle

18  today.

19          THE COURT:  Okay.  So for purposes of today, you're

20  going to be represented by the same counsel who represents

21  Mr. Rossini?

22          MR. SEIDEN:  Yes.

23          THE COURT:  I don't anticipate any problems with

24  that for purposes of today.

25          MR. SEIDEN:  Your Honor, we acknowledge receipt of

1    the indictment on that one as well.  We're going to waive the

2    formal reading thereto and enter a plea of not guilty if the

3    Court will allow.

4            THE COURT:  So, Mr. Khoshabe, you have a right to

5    have this entire indictment read out loud into the record.  I

6    understand that you're going to waive that right to have it

7    read out loud and your lawyer indicates that you're going to

8    enter a plea of not guilty to all the counts?

9            MR. SEIDEN:  That's correct.

10           DEFENDANT B. KHOSHABE:  What's that?

11           MR. SEIDEN:  I'm sorry, Judge.

12           We're not going to read the indictment today.

13           DEFENDANT B. KHOSHABE:  Okay.

14           MR. SEIDEN:  Okay.  We're going to enter a plea of

15   not guilty to the indictment, to the charge.

16           DEFENDANT B. KHOSHABE:  Okay.

17           MR. SEIDEN:  Okay.

18           THE COURT:  Are you comfortable with that, Mr.

19   Khoshabe?

20           DEFENDANT B. KHOSHABE:  (Unintelligible).

21           THE COURT:  Okay.  Mr. Anthony Khoshabe.

22           DEFENDANT A. KHOSHABE:  Yes, your Honor.

23           THE COURT:  Okay.  I understand you've received a

24   copy of the indictment?

25           MR. BOLGER:  Yes, Judge.  We've received a copy of

1  the indictment.  We're waiving formal reading thereof and

2  we're entering a plea of not guilty to this indictment.  I've

3  had an opportunity to discuss some of the circumstances under

4  this indictment with him.

5          THE COURT:  Okay.  So, Mr. Anthony Khoshabe, as with

6  the others, your lawyer tells me that you received a copy of

7  the indictment, you're going to waive a formal reading of it,

8  and you're entering a plea of not guilty at this point to all

9  charges?

10          DEFENDANT A. KHOSHABE:  Yes.  That's correct.

11          THE COURT:  All right.  Very good.  And, Mr. Murphy.

12  Do I have a Mr. Murphy?

13          UNIDENTIFIED FEMALE SPEAKER:  Judge, on behalf of

14  Mr. Murphy, we acknowledge receipt of the copy of the

15  indictment, we will waive formal reading and enter a plea of

16  not guilty.

17          THE COURT:  Okay.  So, Mr. Murphy, you too have

18  received the copy of the indictment, you're going to waive

19  formal reading of it and enter a plea of not guilty to all

20  counts?

21          DEFENDANT MURPHY:  Yes, your Honor.

22          THE COURT:  Thank you, Mr. Murphy.  Okay.

23          I guess I should ask you to state the formal

24  charges --

25          MR. NOVAK:  Yes, your Honor.

1        THE COURT:  -- and the maximum possible penalty.

2        MR. NOVAK:  Yes, your Honor.  The defendants are

3   charged with multiple counts of wire fraud and mail fraud.

4   Mr. Rossini and Mr. Murphy are each charged with 11 counts of

5   wire fraud and three counts of mail fraud.  Mr. Babajan

6   Khoshabe is charged with eight counts of wire fraud, three

7   counts of mail fraud.  Mr. Anthony Khoshabe is charged with

8   five counts of wire fraud and three counts of mail fraud.

9   For each of these charges, the maximum penalty is 20 years

10  imprisonment, $250,000 fine, and three years of supervised

11  release along with special assessments of $100.  There's also

12  forfeitures as you know in the complaint that's detailed.  As

13  to the -- well, I'll get to that next.

14       THE COURT:  Okay.  So, Mr. Rossini, did you hear

15  what the government had to say about the nature of the

16  charges and the possible maximum penalty?

17       DEFENDANT A. ROSSINI:  Yes, your Honor.

18       THE COURT:  Okay.  And do you understand the nature

19  of the charges and the maximum penalty?

20       DEFENDANT A. ROSSINI:  Yes, your Honor.

21       THE COURT:  Okay.  And, Mr. Babajan Khoshabe, did

22  you --

23       DEFENDANT B. KHOSHABE:  Yes, your Honor.

24       THE COURT:  Do you understand the nature of the

25  charges?

1           DEFENDANT B. KHOSHABE:  No.  I don't.

2           THE COURT:  Okay.

3           DEFENDANT B. KHOSHABE:  I do not, your Honor.

4           THE COURT:  Okay.  Would you like to take another

5 stab at that?

6           MR. NOVAK:  Sure, your Honor.  Mr. Khoshabe is

7 charged with eight counts of wire fraud and three counts of

8 mail fraud for engaging in a multi-year real estate fraud

9 investment scheme that -- basically by using the United

10 States mails and e-mails, wires I believe are the executions

11 charged along with his co-defendants defrauding investors and

12 victim investors of approximately $2.9 million in a

13 Ponzi-type scheme.

14           THE COURT:  Okay.  So, Mr. Khoshabe, I don't want

15 you to talk about the offense in court, okay, but I want you

16 to understand what you're charged with so I'm going to try

17 again.

18           The government is charging you essentially with

19 getting people to invest in property and then not having the

20 property really to sell them.  I don't know if that's true or

21 not true and I don't want you to comment on that in open

22 court.  You talk to your lawyer only about that, okay.  When

23 he says he's charging you with counts of wire fraud and mail

24 fraud, that's just a fancy way for the government to say that

25 it's alleged that you used the phone or you used a fax

1   machine or you used -- and you used the U.S. Mail in order to

2   engage in that conduct.  So wire fraud is nothing more than

3   using some kind of electronic phone or e-mail or something to

4   do a transaction.  Okay.  It doesn't mean you did it.  That

5   just means that that's what the charge is.

6         So all I want to know for purposes of today is do

7   you have an understanding of the nature of the charges?

8         DEFENDANT B. KHOSHABE:  Yes, your Honor.  Thank

9   you.

10         THE COURT:  Thank you.  Okay.  And you heard him say

11   what the possible maximum penalties are and do you understand

12   the maximum penalties?

13         DEFENDANT B. KHOSHABE:  I heard.

14         THE COURT:  You do -- you feel comfortable with

15   that.  You heard the charges?  I mean, the maximums.  Okay.

16   Thank you, Mr. Khoshabe.

17         Anthony Khoshabe, did you hear what --

18         DEFENDANT A. KHOSHABE:  I did.

19         THE COURT:  -- the nature of the charges are and do

20   you feel you understand them?

21         DEFENDANT A. KHOSHABE:  I do understand.  Thank you.

22         THE COURT:  Okay.  And you understand the nature of

23   the possible penalty?

24         DEFENDANT A. KHOSHABE:  Yes, I do.

25         THE COURT:  Okay.  And, Mr. Murphy, same question.

1    Do you understand the nature of the charges?

2              DEFENDANT MURPHY:  Yes, your Honor.

3              THE COURT:  Okay.  And the nature of the possible

4    penalties?

5              DEFENDANT MURPHY:  Yes, your Honor.

6              THE COURT:  Okay.  Very good.

7              All right.  A couple of rights that I should have

8    done at the beginning.  Everybody has a right to a defense

9    attorney at every stage of a criminal case.  If at any time

10   you are unable to afford counsel, one will be appointed to

11   represent you.  Right now, everybody has private counsel.  If

12   a judge decides that you can intelligently and voluntarily

13   elect to do so, you are allowed to represent yourself in a

14   federal criminal case.  Okay.  We're not there yet; but if it

15   comes up later, we'll cross that bridge.

16             Does everybody understand their rights in terms of

17   counsel?

18             THE DEFENDANT:  Yes.

19             THE DEFENDANT:  Yes.

20             THE DEFENDANT:  Yes, your Honor.

21             THE DEFENDANT:  Yes.

22             THE COURT:  Okay.  I hear a "yes" from all four.

23             You are not obligated to talk to law enforcement.

24   If any of you have spoken to law enforcement, you need not

25   say more.  If you decide to talk to law enforcement in the

1  future, you're free to do so.  You are also free to have a

2  lawyer and you're also free to stop answering their questions

3  at any time.  The most important thing about deciding whether

4  to talk to law enforcement is that anything you tell them can

5  be used in the case, okay.  I'd like to hear from each

6  defendant.

7          Mr. Rossini, do you understand your rights about

8  talking to law enforcement?

9          DEFENDANT A. ROSSINI:  Yes, your Honor.

10         THE COURT:  Mr. Khoshabe?

11         UNIDENTIFIED MALE SPEAKER:  Excuse me.  He's having

12 a little problem.

13         THE COURT:  I'm sorry.  Mr. Babajan Khoshabe, do you

14 understand your rights about talking to law enforcement?

15         DEFENDANT B. KHOSHABE:  Yes, your Honor.

16         THE COURT:  Mr. Anthony Khoshabe?

17         DEFENDANT A. KHOSHABE:  Yes, Judge.

18         THE COURT:  And Mr. Murphy?

19         DEFENDANT MURPHY:  Yes, your Honor.

20         THE COURT:  Okay.  What's the government's position

21 on release?

22         MR. NOVAK:  Well, your Honor, the government

23 requests a detention hearing for each defendant based on risk

24 of harm to the community and -- a danger to the community as

25 far as financial risks and risk of flight.

1          THE COURT:  Where is Pretrial?

2          MS. MINARIK:  Tiffany Minarik on behalf of Pretrial

3    Services.  We had an opportunity to interview all of the

4    defendants above -- or all of the defendants here but we do

5    not have a report yet.  We still need to provide

6    verifications and run a criminal history so we need

7    additional time to provide the Court with a recommendation of

8    release or detention.

9          THE COURT:  What kind of time?

10         MS. MINARIK:  I would suggest Friday would be a good

11   date.

12         THE COURT:  Okay.  Has counsel talked about this

13   with the government?

14         UNIDENTIFIED MALE SPEAKER:  I have not.  The only

15   conversation I had was with counsel this morning.  He said

16   he's asking -- seeking detention notwithstanding that we have

17   a case very similar to this that's been pending for a year in

18   state court.  As a matter of fact, it's identical to this in

19   state court.  The three of us do, actually.

20         THE COURT:  Is the state court case criminal or

21   civil?

22         UNIDENTIFIED MALE SPEAKER:  Criminal.

23         UNIDENTIFIED FEMALE SPEAKER:  Criminal.

24         UNIDENTIFIED MALE SPEAKER:  They're virtually

25   identical.  We've been demanding trial and we got to the

1    point where they elected on a different case to avoid trying

2    this one.  The case is almost three years old.

3            THE COURT:  So he's got -- there are -- all four of

4    these gentlemen are out on civil bond?

5            UNIDENTIFIED MALE SPEAKER:  Just three.

6            UNIDENTIFIED MALE SPEAKER:  No.

7            MR. NOVAK:  Your Honor, only --

8            THE COURT:  Okay.  Are these -- are three of these

9    gentlemen out on a state court bond?

10           MR. NOVAK:  They are on a state court bond --

11           UNIDENTIFIED FEMALE SPEAKER:  Yes.

12           UNIDENTIFIED MALE SPEAKER:  Yes.

13           MR. NOVAK:  -- for this.  Also, Mr. Rossini has --

14   and Mr. Babajan Khoshabe have prior federal fraud convictions

15   for other fraud schemes.  Your Honor, given that this

16   happened -- while this conduct occurred during the pendency

17   of this case, this conduct occurred -- and I understand the

18   Court's reticence given the age of some of these

19   defendants -- but often as the Court knows one of the

20   arguments at sentencing will be that people will age out of

21   recidivism here.  This -- these are cases where Mr. Rossini,

22   Mr. Babajan Khoshabe each have their convictions sometime in

23   2010.

24           THE COURT:  Well, I'm not at a recidivism finding.

25           MR. NOVAK:  I understand that but --

1        THE COURT:  I'm just at a are they going to come to

2   court to answer these charges, so.

3        MR. NOVAK:  And I think that, your Honor, given here

4   that there's a risk of flight here, given the amount of money

5   that is here, only about half of the money has been traced so

6   far that's alleged in the indictment, a lot of cash here, a

7   lot of cash that's not out there, there's means to flee and

8   that we need a detention hearing, we need to hear from

9   Pretrial if there's any -- if there's anything that they can

10  put up secured, that it's clean that possibly would --

11       THE COURT:  How did they get picked up?

12       MR. SEIDEN:  Mr. Babajan and Mr. Rossini got picked

13  up at 6:00 o'clock this morning.  Now the interesting part

14  with regard to that, this identical case has been pending for

15  three years and, if you don't mind, for Mr. Murphy as well.

16  Same issues, same money, same people, same case; and it's

17  been pending for three years in state court.

18       UNIDENTIFIED FEMALE SPEAKER:  (Unintelligible).

19       MR. SEIDEN:  This is -- and we have, we have turned

20  over tens of thousands of pages voluntarily without being

21  asked to the state and to the federal government with regard

22  to this very case.  Actually, my conversations with

23  Mr. Hogstrom, the U.S. Attorney on this, was if this does

24  come to fruition, give me a call and we will be here and then

25  we had that agreement.

1          Unfortunately, Mr. Hogstrom is off -- out of the

2    office now for an extended period of time starting today

3    which I found to be very curious.

4          UNIDENTIFIED MALE SPEAKER:  Your Honor --

5          MR. SEIDEN:  I'm sorry to be a little animated,

6    Judge, but my experience in this building for 41 years belies

7    the -- what's -- the treatment that we're receiving on this

8    case.

9          UNIDENTIFIED FEMALE SPEAKER:  Judge, Mr. Murphy has

10   been out on a $150,000 D bond where he posted 15,000 in cash

11   with the state case that has been pending.  He has not fled.

12   He's not had the means or the motivation or ability to flee.

13   He has been to court each and every occasion, he has roots in

14   the community, and we think that would be an appropriate bond

15   (unintelligible).

16         MR. SEIDEN:  And Mr. Rossini, $300,000 bond and he's

17   been demanding trial.

18         THE COURT:  Has he posted ten percent?

19         MR. SEIDEN:  Yes.  He did.

20         MR. NOVAK:  Your Honor, he posted ten percent of the

21   proceeds from the fraud scheme.

22         MR. SEIDEN:  Right.  Well, there was no request --

23         THE COURT:  I -- I understand, I understand there's

24   arguments to be made but I'm reluctant to hold them until

25   Friday at the MCC for what I think are obvious reasons so --

1              UNIDENTIFIED MALE SPEAKER:  May I be heard?

2              THE COURT:  Yes.

3              UNIDENTIFIED MALE SPEAKER:  I'm in a different

4    situation.  About two weeks ago, I -- my client was advised

5    there was a possible conflict.  He had received a subpoena

6    for documents on the grand jury investigation.

7              THE COURT:  For the state case?

8              UNIDENTIFIED MALE SPEAKER:  For this case, this

9    case.  I called Mr. Hogstrom and told him that I would like

10   about ten days to review, see what's going on, get up to date

11   on this and that I would call him.  Now I called him on

12   Thursday and left a voicemail for him telling him that I'd be

13   available, I wouldn't be available until Tuesday but I'd like

14   to talk to him, find out what documents he needs and whether

15   he'd want my client to come in for a possible proffer.

16             I received a call this morning probably about 9:00

17   o'clock telling me that my client had been indicted and

18   Mr. Hogstrom had advised Mr. Novak that he was going to

19   self-surrender and this is the first that I heard about it at

20   9:00 o'clock this morning.  Anthony is 27 years old?

21             UNIDENTIFIED MALE SPEAKER:  32.

22             UNIDENTIFIED MALE SPEAKER:  32.  And he's recently

23   married and he has --

24             THE COURT:  Did he self-surrender?

25             MR. NOVAK:  He did self-surrender.

1      UNIDENTIFIED MALE SPEAKER:  We just walked in today,

2  Judge.  We were down there waiting on 13 to surrender on this

3  matter and I think it's rather harsh that a young man of no

4  background, no involvement --

5      THE COURT:  You want to detain somebody for three

6  days who self-surrendered?

7      MR. NOVAK:  Your Honor, again this is not to be --

8  we called him this morning and said to show up.  I can

9  appreciate that he did this now but this is -- given the

10  gravity of the crime here, given the exposure, given the

11  evidence against each of these defendants, the government

12  believes it's appropriate to determine if there's anything

13  that can be appropriately put forth to secure their bonds.

14  There's unsecured bonds here nevertheless.

15      THE COURT:  I'm not going to have unsecured bonds.

16      MR. NOVAK:  And, your Honor, to be perfectly frank,

17  for secured bonds, most of the money that they used -- most

18  of the properties, I don't think they could post clean

19  properties.  I don't think that those exist in this case from

20  what I know, so.  And again, as far as --

21      THE COURT:  Well, we have all sorts of options.  We

22  have all sorts of options but we're not ready for that either

23  because Pretrial Service hasn't done their thing.  When can

24  Gilbert see them?

25      COURTROOM DEPUTY:  (Unintelligible).

```
 1            THE COURT:  Well, what about Thursday?
 2            COURTROOM DEPUTY:  (Unintelligible).
 3            THE COURT:  Okay.  All right.
 4            COURTROOM DEPUTY:  (Unintelligible).
 5            THE COURT:  Okay.  Here's what I'm going to do.
 6   I'm -- are you entitled to a three-day on this?
 7            UNIDENTIFIED MALE SPEAKER:  Yes.  I believe so.
 8            UNIDENTIFIED MALE SPEAKER:  I believe.
 9            UNIDENTIFIED FEMALE SPEAKER:  Judge, I'd like to
10   also let the Court know as far as Mr. Murphy is concerned, he
11   does have medical issues.  He has not been able to take any
12   of the medications when they picked him up early, early this
13   morning and he has medications that he takes every day.
14            UNIDENTIFIED MALE SPEAKER:  Mr. Rossini is on a
15   pacemaker, Judge, and also has (unintelligible).
16            THE DEFENDANT:  Me too.
17            UNIDENTIFIED MALE SPEAKER:  Oh.  You, too?
18            THE DEFENDANT:  I got everything, your Honor.  I got
19   arthritis, I got blood pressure, I got glaucoma.  I got
20   everything.
21            MR. NOVAK:  I think I am allowed the three days,
22   your Honor.
23            THE COURT:  There's no presumption.
24            MR. NOVAK:  Well, the -- but even without a
25   presumption, it says that the hearing -- the government can
```

1    have -- may not exceed three days if we believe that there is

2    a serious risk of personal flee or attempt to obstruct

3    justice, threaten, injure, intimidate potential witness or

4    juror.

5              UNIDENTIFIED MALE SPEAKER:  But that's not the case

6    here, Judge.

7              THE COURT:  Well, there's no -- there's no

8    indication of that.

9              MR. NOVAK:  But still -- Fine.  But still there's

10   safety and risk of flight --

11             THE COURT:  You're worried about flight.  Here's --

12   here's what I would be comfortable doing which you're going

13   to disagree with.  I would be -- we have to have a detention

14   hearing, okay.  I would like to set the detention hearing --

15   I'm substituting today so lucky -- my lucky day.  I would

16   like to set the detention hearing for Thursday at noon or

17   1:00, or whenever --

18             MR. SEIDEN:  Which would be fine.  Mr. Ackerman

19   indicated that would be a great time for him as well.

20             THE COURT:  And who is he coming in on?

21             MR. SEIDEN:  He'll be coming in probably for Mr.

22   Babajan Khoshabe.

23             THE COURT:  Fine.  So we'll get him in and -- but I

24   would not be inclined to detain them at the MCC between now

25   and then.  I just -- I'm not -- I got a 32 year old who

1  turned himself in today and I got three other guys who have

2  been answering to a state court proceeding on -- I know it's

3  ten percent cash bond.  We don't believe in that in federal

4  court.  We don't do it that way.  I'm not sure I even like

5  that system but they've been going to court and your concern

6  is risk of flight.

7          UNIDENTIFIED MALE SPEAKER:  Well, Judge --

8          THE COURT:  Do you want me to tell them they can't

9  go on the computer for the next -- until Thursday, they can't

10  engage in any business transactions between now and Thursday?

11  I'm happy to tell them that.

12          MR. NOVAK:  No, your Honor.  The government believes

13  detention is appropriate here, that it's -- that this is a

14  thing where the state case is what the case is.  I myself

15  came on this case ten days ago so there's a point where --

16          THE COURT:  You're catching up.

17          MR. NOVAK:  -- I'm catching up with everything here.

18  But from my understanding of it is that this is --

19  everybody -- every one of these defendants is facing at least

20  100 months in the guidelines.  This is a very different ball

21  game than state court.  This is -- these are incredibly

22  serious charges.  These are millions of dollars at stake.

23  There's still -- we believe still victims out there of this

24  scheme and that these -- these -- that the -- the stakes have

25  risen for them and as such there's a way to flee.

1          And also, to be able to say they can post secured

2     property, whatever, they're going to come in in two or three

3     days and I believe anything that they offer to post I will

4     not be able to -- we will not be able to say it's clean

5     money, clean money, clean property, anything that is not

6     touched by the fraud.

7          UNIDENTIFIED MALE SPEAKER:  And on behalf of

8     Anthony, I told counsel that we have a third party that's not

9     involved in this but that would be willing to post either

10    real property or funds that are traceable.

11         THE COURT:  So they may not be able to post property

12    that satisfies the Court and then the Court may say they got

13    to be detained.  What I'm not comfortable with is detaining

14    them between now and then based on what I know about the case

15    so just because it's 4:00 o'clock and they got picked up at,

16    you know, 9:00 o'clock this morning --

17         UNIDENTIFIED MALE SPEAKER:  6:00.

18         THE COURT:  -- and Pretrial Services hasn't had a

19    chance to do a preliminary --

20         MS. MINARIK:  Your Honor, we did have an opportunity

21    to interview them this afternoon in lock-up after they were

22    processed so we just have some preliminary information.  We

23    just have what the defendants have told us.

24         THE COURT:  No.  I know.

25         UNIDENTIFIED MALE SPEAKER:  And Anthony was just

1    interviewed in the jury box.

2         THE COURT:  No.  I'm not blaming anybody.  I'm

3    just --

4         MS. MINARIK:  So we can --

5         UNIDENTIFIED MALE SPEAKER:  There's nothing they

6    could find.

7         MS. MINARIK:  We can definitely fashion some

8    conditions of release but we're just going to need an

9    opportunity to further investigate.

10         THE COURT:  I'm not saying that the ultimate

11    decision won't be detention.  Do you understand?  Does

12    everybody understand that?

13         UNIDENTIFIED MALE SPEAKER:  Sure.

14         THE COURT:  The game has changed.  When the feds

15    indict you, it's a different ball game.  Your lawyers can

16    tell you that -- it's not state court -- so I don't know what

17    that means, okay.

18         You have a case pending in state court and now the

19    feds have issued an indictment so your life has changed for

20    the worse.  So whether the state court case will be

21    dismissed, I mean, I don't know what that -- I don't know

22    what will happen.  It is significant to me even under a state

23    court indictment and you have been reporting to court as

24    required, that means something to me for a year and a half

25    you've been doing that or two years or three years.

1          I hear your frustration with me.  I don't see the

2   basis for deposing -- for detaining as you pointed out older

3   defendants for two days while we get this together

4   particularly if in the end we're going to release them.  If

5   they're detained in the end, they're detained.  So when you

6   come back to court on Thursday, bring your toothbrushes

7   because it might be that the only way to satisfy the Federal

8   Bail Reform Act is to detain you.  I don't know what the

9   result of that will be.  It depends on what Pretrial Service

10  recommends and it depends on the -- you know, what the

11  government argues and what your lawyers can come up with.

12          But while we're doing that process, it is the norm

13  that you would be detained during that process.  I am going

14  outside the norm to find that you will be on release while we

15  wait for the Pretrial Service report.

16          MR. NOVAK:  If I may, your Honor, just --

17          THE COURT:  Please.

18          MR. NOVAK:  Again, while they did show up for this

19  state court case -- again, they were conducting the same

20  conduct, they were engaging in this same conduct while in the

21  state court case.  So it's not exactly to say they showed up,

22  this is a completely -- this is a DUI, they showed up for

23  this, they showed up for this.  They continued to engage in

24  this fraudulent conduct while out so --

25          UNIDENTIFIED MALE SPEAKER:  That is just not true.

1          THE COURT:  Okay.  Well, that's an allegation.  The

2    government is free is make that allegation.  I mean, I can't

3    determine the veracity of that.  They're obviously going to

4    take issue with that but that's part of the indictment.

5          MR. NOVAK:  That is part of the indictment.  It's

6    listed in the --

7          THE COURT:  It up went past the date of the criminal

8    case -- of the state case.

9          MR. NOVAK:  It went up until --

10          THE COURT:  I mean, I have the indictment here.

11          MR. NOVAK:  Let me find it here.  It went up from

12    2011 into the present that these men, all of them --

13          UNIDENTIFIED FEMALE SPEAKER:  It's not the

14    present.

15          MR. NOVAK:  Okay.  Well, that is again -- you know,

16    that's what's indicted.  That's what the grand jury indicted

17    them for indicting -- for defrauding almost $3 million out of

18    victims, victims who -- some of them who are in this

19    courtroom today to see this, your Honor, that these people,

20    they indicted them, they -- a lot of this was this cash, a

21    lot of this is untraceable.  We were only able to trace, like

22    I said, about half of it.  That's my understanding at least.

23    I understand there's more people.  There's more victims out

24    there.

25          So to say that they were able to show up, for them

1  to say we were indicted, we're up on bond, we've done the

2  bond.  Again, part of the bond that Mr. Rossini was paid was

3  paid out of proceeds of the fraudulent conduct in this case.

4  So but for the fraud, he wouldn't be out on bond.  He'd still

5  be in on his $300,000 bond.  But to be able to say that they

6  have done this rings a little hollow because all that means

7  is they'll get out as they did -- as they did in that case,

8  they got out.  They've been showing up to court while

9  defrauding people at the same time.

10       THE COURT:  Well, that depends on if Judge

11  Gilbert -- what kind of conditions Judge Gilbert puts on

12  their release from here which might have very strict

13  conditions in terms of financial transactions that they're

14  allowed to engage in and, you know, Pretrial Service

15  supervision in terms of their banking and, you know, also to

16  creative ideas that Pretrial Service might offer and he may

17  agree with you that detention is the only -- is the only

18  option for preserving the safety of the community.  He may

19  agree with that.  Do you want me to make that decision today?

20       MR. NOVAK:  I want the -- Judge, all I want is the

21  hearing and for them to be detained pending the hearing as,

22  as you said, is the norm for these cases, for cases in this

23  building.  That's what the government is asking for, nothing

24  outside of than in here.

25       UNIDENTIFIED MALE SPEAKER:  And again, Judge, my

1  client Anthony is not part of the other.  He walked in here

2  today on his own volition with about six hours' notice.

3          UNIDENTIFIED MALE SPEAKER:  Well, Judge, if I may to

4  add one other thing -- and I'm sure the government is well

5  aware of it -- Tom Murphy had been put on bond by Judge

6  Clayton Crane and issued by Judge Neera Walsh.  He had been

7  given leave to leave the jurisdiction of Cook County on six

8  or seven, I believe, differing occasions.  Orders have been

9  entered on each and every occasion.  When he had been given

10 leave, he has come back.  He has roots in the community.  He

11 has serious medical problems.  He's not a flight risk.  He's

12 got family here.  He's got roots here.

13         And with reference to the suggested money that was

14 posted, it's not money that was used as the government

15 suggested from any of these alleged allegations.  It was many

16 a family member who has nothing to do whether it's just in

17 the indictment or currently before the bond so using perhaps

18 a bad phrase it's clean money which hasn't tainted any of the

19 suggested actions here.

20         UNIDENTIFIED MALE SPEAKER:  Mr. Rossini too has

21 traveled at least as many times on -- with order of the court

22 allowing him to travel.  He's appeared each and every time.

23 Has -- also has medical conditions, also has ties in the

24 community.  And I've been involved in that case for three

25 years unlike ten days.

1    MR. NOVAK:  Your Honor, these medical conditions,
2  these ties to the community did not prevent them from
3  committing the instant crime.  So to say -- to lean on that
4  as well rings a bit hollow.
5    UNIDENTIFIED MALE SPEAKER:  But counsel said it's
6  the same case but he says it --
7    MR. NOVAK:  You said it's the same case.
8    UNIDENTIFIED MALE SPEAKER:  You said it's the same
9  series of facts.
10    MR. NOVAK:  You said it's the same case.  I did
11  not.
12    UNIDENTIFIED MALE SPEAKER:  Those facts have been
13  established already --
14    MR. NOVAK:  You did not.
15    UNIDENTIFIED MALE SPEAKER:  -- with regard --
16    MR. NOVAK:  I did not say that.
17    UNIDENTIFIED MALE SPEAKER:  -- with regard to the
18  allegations --
19    MR. NOVAK:  I did not say that.
20    UNIDENTIFIED MALE SPEAKER:  -- to the dates that
21  those occurred long before we're here today.
22    THE COURT:  No.  Well, his point is the alleged
23  scheme -- the scheme alleged in this case is longer.
24    MR. NOVAK:  Longer, your Honor, until present, until
25  now.

1     THE COURT:  It post-dates whatever happened in the
2 state court.
3     Well, that's my feeling about it.  I do feel like I
4 need to look at the Bail Reform Act because I want to make
5 sure I have the authority to do what I say I'm going to do.
6 Do you have a copy of it right there?
7     UNIDENTIFIED MALE SPEAKER:  (Unintelligible).
8     THE COURT:  Because, you know, the government has
9 this right to a three days but -- do you know the answer to
10 this?
11     MS. MINARIK:  Your Honor, I do believe the
12 government has the right to a three-day if they believe that
13 there's a risk of danger to the community or flight.
14     THE COURT:  But doesn't it have to be in a
15 rebuttable presumption case?
16     MS. MINARIK:  Excuse me.  I didn't hear you.
17     THE COURT:  Doesn't it have to be in a presumption
18 case?
19     MS. MINARIK:  I don't believe so.
20     UNIDENTIFIED MALE SPEAKER:  I thought it was
21 presumption with the narcotics cases.  It's like in a
22 danger --
23     UNIDENTIFIED MALE SPEAKER:  Stated in (f)(2).
24 341 -- 3142(f)(2).
25     UNIDENTIFIED MALE SPEAKER:  (f)(2).

1         THE COURT:  Well, it says it should be held

2    immediately upon first appearance or if the government seeks

3    a continuance.  During the continuance, such person shall be

4    detained but it says in a case that involves a serious risk

5    that the person will flee and that's where you and I are

6    differing.  That's where we're differing.

7         MR. NOVAK:  I understand, your Honor, but I don't

8    think --

9         THE COURT:  You're saying there's a serious risk

10    that they will flee.

11         MR. NOVAK:  Yes; and that's when the government --

12    the government in general doesn't move unless we believe this

13    is serious risk that people will flee.

14         THE COURT:  Yeah.

15         MR. NOVAK:  And in this case, again, there's at

16    least 3 million -- $2.9 million in fraud, fraudulent proceeds

17    here.  About -- my understanding is about half of it was

18    traced and it's alleged as forfeiture in the indictment which

19    leaves about half in cash somewhere.

20         A lot of the transactions, as I understand it,

21    between these -- between the defendants were cash

22    transactions untraceable.

23         THE COURT:  Going back how far?

24         MR. NOVAK:  Going back to the beginning, going back

25    to 2011 when this scheme started and that is at least -- that

```
 1   is on the low end.
 2            THE COURT:  And what you've traced, that's part of a
 3   forfeiture count --
 4            MR. NOVAK:  It is part of the forfeiture count.
 5            THE COURT:  -- is that blocked or frozen?
 6            MR. NOVAK:  So there is the -- we are putting
 7   lease -- there are three -- let me see how many properties we
 8   have here.  We have one, two, three -- I think it's three or
 9   four properties listed in the indictment.  That would be Page
10   21, starting at sub 6 --
11            THE COURT:  Yep.
12            MR. NOVAK:  -- sub 7, and sub 8.  Then there are
13   three certificates of deposit listed.
14            THE COURT:  Yep.
15            MR. NOVAK:  And for some reason, I guess, it went
16   out of order so it's sub 1, sub 4, sub 5.
17            THE COURT:  Yeah.
18            MR. NOVAK:  And those I was going to -- that the
19   other thing I was going to ask for today was based on the
20   indictment was for seizure warrants, to freeze those assets
21   essentially pending forfeiture in this matter.
22            THE COURT:  Yeah.  I'll grant those.
23            MR. NOVAK:  And that is -- so I have those.  I can
24   tender them now or I can tender them after.
25            THE COURT:  Whatever.
```

 1          MR. NOVAK:   But it's for the three certificates of

 2    deposit so CD 16463 --

 3          THE COURT:   Yep.

 4          MR. NOVAK:   -- 464 and 513, we would ask based on

 5    the indictment for a warrant to seize those funds pending

 6    forfeiture.  And that's about $700,000 in deposits that have

 7    been traced -- certificates of deposit that have been

 8    directly traced to the fraud proceeds.

 9          My understanding is that the -- you know, I don't

10    know off the top of my head the value of these other

11    properties but I understand it makes up the balance.  It's

12    about $700,000.

13          THE COURT:   Okay.  I'm going to issue those

14    warrants.  You get me the paperwork.  I am going to order

15    that the detention hearing will take place Thursday at 1:00

16    o'clock.  It will take place in this courtroom.  Defendants

17    are ordered to be here.  I'm not going to detain you between

18    now and then.  I am going to order that no financial

19    transactions over $100 take place between now and then out of

20    any of your bank accounts.

21          UNIDENTIFIED MALE SPEAKER:   Excuse me one second.

22       (Unintelligible.)

23          UNIDENTIFIED MALE SPEAKER:   Thank you, Judge.  I

24    don't want to make -- I don't want to have anybody miss

25    that.

1       THE COURT:  And if you don't come here on Thursday

2  or you engage in any kind of financial transactions between

3  now and then, either me if I continue covering this case for

4  Judge Gilbert which he's really going to owe me or if I -- or

5  if he is sitting here, I mean, you're going to spend your

6  time at the MCC.  That's all -- that's all there is to

7  that.

8       I hear the government's arguments.  You may be right

9  that I'm -- that I'm over my authority and you may appeal me.

10  I do think I have the right to decide whether there's a

11  serious risk that such person will flee and I'm not -- I'm

12  finding that I don't believe there's a serious risk given

13  they're reporting for the state court case.

14       I hear that you believe that they continue to engage

15  in criminal conduct.  If they did, that is a good basis to

16  argue that they should be detained.  So if they did do that,

17  that's a good argument to make on Thursday afternoon but I'm

18  not persuaded that that is a basis to say that they must be

19  detained between now and the detention hearing when we can

20  all get a more full look at who these gentlemen are and

21  whether they should be detained.

22       You may well be detained on Thursday.  I've got -- I

23  don't know the answer to that yet.  Okay.  We got some -- we

24  got a report to prepare and some things to learn about you

25  between now and then.  Over the defendant's objection, that's

1    my ruling.  Come to this courtroom.

2              UNIDENTIFIED FEMALE SPEAKER:  Over the government's

3    objection?

4              THE COURT:  Yes.

5              UNIDENTIFIED MALE SPEAKER:  Over the government's

6    objection?

7              UNIDENTIFIED MALE SPEAKER:  You got to watch us,

8    your Honor.

9              THE COURT:  I'm sorry.  I don't know what I said but

10   over the government's objection.  Thank you, counsel, for

11   this and I'll see you at -- or someone will see you at 1:00

12   o'clock on Thursday.

13             MR. NOVAK:  Are you going to set discovery and

14   motion schedules, Judge, for arraignment?

15             THE COURT:  Oh, yes.  I guess I should.

16             MR. NOVAK:  So before you set the schedules,

17   discovery in this case is voluminous.  There's thousands of

18   documents.

19             THE COURT:  So here's Judge Lee's schedule.  Why

20   don't I lay it on you and then you can file whatever you want

21   in front of him saying we've worked this out and this would

22   be a more sane way to do it.  Would you like to do it that

23   way or not?

24             UNIDENTIFIED MALE SPEAKER:  I just would ask for

25   four weeks.  I know it's normally two.  Four weeks we'd be --

```
 1              THE COURT:  That's fine.
 2              UNIDENTIFIED MALE SPEAKER:  -- able to turn stuff
 3    over.  I think we can --
 4              UNIDENTIFIED MALE SPEAKER:  There's no objection.
 5              UNIDENTIFIED MALE SPEAKER:  I can get discovery done
 6    in the four weeks.
 7              THE COURT:  Okay.  Can you do that?
 8              UNIDENTIFIED FEMALE SPEAKER:  I think that's
 9    (unintelligible).
10              THE COURT:  So give them four weeks to do discovery
11    and then seven days thereafter.
12              UNIDENTIFIED MALE SPEAKER:  We have already turned
13    over, as I said, tens of thousands of documents voluntarily
14    to the government.  I don't think we have anything much else
15    to give them.
16              THE COURT:  Well, our dates are concerned about the
17    government's obligations.
18              UNIDENTIFIED MALE SPEAKER:  Judge, at this point
19    Anthony has no objection to the exclusion of time.
20              THE COURT:  Right.  Does any defendant -- can each
21    defendant tell me whether they have any objection to the
22    exclusion of time?
23              UNIDENTIFIED FEMALE SPEAKER:  No objection on behalf
24    of Mr. Murphy.  Thank you.
25              MR. SEIDEN:  No objection on behalf of Mr. Khoshabe
```

1  and Mr. Rossini.

2          MR. NOVAK:  And we need to unseal the indictment.

3          THE COURT:  Okay.  The motion to unseal the

4  indictment is granted.

5          MR. NOVAK:  Your Honor, are you going to -- so

6  they're out -- are they going to be out pending a signature

7  bond then for now because they would need some sort of bond

8  as well, right, for conditions of release and the other

9  conditions being don't commit another crime, don't take

10 narcotic drugs, those other standard conditions as well for

11 now pending Tuesday -- and again on my end, I think they

12 should be detained and these were all conditions they ignored

13 in their state case.

14         THE COURT:  Right.

15         MR. NOVAK:  But if that's -- if that's the standard

16 conditions, I think those should be applied here up until

17 Thursday.

18         THE COURT:  Do we have those available?

19         COURTROOM DEPUTY:  The bond?  I think that's in

20 here.

21         THE COURT:  Yeah.  Okay.  Let's give counsel their

22 dates and then --

23         COURTROOM DEPUTY:  Okay.

24         THE COURT:  -- you guys can sit down and check off

25 those things and --

```
 1            UNIDENTIFIED MALE SPEAKER:  Thank you very much,
 2   your Honor.
 3            THE COURT:  -- I'll do the other things.
 4            COURTROOM DEPUTY:  Okay.
 5            THE COURT:  Hold on a minute.  Hold on a minute.
 6   I'm giving you dates.
 7            COURTROOM DEPUTY:  The dates for Judge Lee.  Rule
 8   16.1 conference by September 1st.
 9            UNIDENTIFIED MALE SPEAKER:  That's four weeks?
10            COURTROOM DEPUTY:  September 22nd.  I'm sorry.
11   September 22nd.  Pretrial motions, September 29th.
12   Responses, October 6th.  And a status hearing before Judge
13   Lee Tuesday, October 13th, at 9:30 a.m.
14            THE COURT:  Okay.  So I'm going to exclude time from
15   today's date through October 13th.  I would ask you, if you
16   don't mind, to work with counsel to do up the basic pretrial
17   release conditions which will be in effect between today and
18   Thursday.  Okay.
19            UNIDENTIFIED MALE SPEAKER:  Very well.
20            THE COURT:  They're very obvious in terms of not
21   violating any law, signing an OR bond, $10,000 OR bond.
22            UNIDENTIFIED MALE SPEAKER:  Don't leave the Northern
23   District.
24            THE COURT:  Don't leave the Northern District of
25   Illinois, report back to court on Thursday at 1:00 o'clock,
```

```
 1   okay, so I have a lot of other things going on here.  If you
 2   could sit back -- if you could sit and do that and then I'll
 3   go through the conditions with them.
 4            UNIDENTIFIED FEMALE SPEAKER:  Thank you, Judge.
 5       (WHEREUPON the Court turned her attention to other
 6   matters on her call, after which the following digital
 7   proceedings were had in open court at 4:24 p.m.:)
 8            UNIDENTIFIED FEMALE SPEAKER:  We're not in a
 9   position to waive Mr. Murphy's appearance for what --
10            THE COURT:  Wait a minute.  Who took them?
11            UNIDENTIFIED MALE SPEAKER:  Not me.
12            UNIDENTIFIED FEMALE SPEAKER:  The Marshals.
13            UNIDENTIFIED FEMALE SPEAKER:  I didn't.
14            THE COURT:  Oh, they're being processed?
15            MR. NOVAK:  I don't know.  This is the first I'm
16   hearing of this.
17            THE COURT:  Well, we got to have them.  I mean, we
18   can't have a -- I can't tell them what the conditions of
19   their release are if they're not here, so.
20            MR. NOVAK:  Right.  I mean, your Honor, just --
21   well, so it's not a surprise to the court, in filling these
22   out --
23            THE COURT:  Yep.
24            MR. NOVAK:  -- I realized one of the conditions that
25   the Court could impose is either home incarceration or home
```

1    detention which I think is appropriate here given that we are

2    moving for a full detention at the MCC and every -- every

3    defense attorney and every defendant has cited their myriad

4    medical history and all these other problems that they have

5    that this may ensure at least until Thursday that we have --

6    that we ensure their appearance here to come into court.

7            THE COURT:  Can Pretrial make that happen?

8            MS. MINARIK:  Your Honor, we could impose location

9    monitoring but our office would not believe that that's a

10   necessary condition as a temporary bond.  However, should the

11   Court impose this, yes, we can certainly --

12           THE COURT:  How would that happen physically?  You

13   would go out there tomorrow?

14           MS. MINARIK:  They would -- if they have family

15   here, we can send some of the equipment home with family.  We

16   can place the transmitters on the defendant's ankle and we

17   would -- it would be complicated but I'm certain it can get

18   done within 24 hours.

19           THE COURT:  Okay.  So they might be up and running

20   by Wednesday tomorrow?

21           MS. MINARIK:  Yeah.  Absolutely.

22           THE COURT:  Okay.

23           UNIDENTIFIED FEMALE SPEAKER:  Judge, may I address

24   the Court?

25           THE COURT:  Is there anybody of these four gentlemen

1    who is working?

2              UNIDENTIFIED MALE SPEAKER:  Yes.

3              UNIDENTIFIED FEMALE SPEAKER:  Mr. Murphy is.

4              UNIDENTIFIED MALE SPEAKER:  They all work.

5         MR. NOVAK:  They're all working in this fraudulent

6    scheme, Judge, so.

7              UNIDENTIFIED MALE SPEAKER:  Well, Judge --

8              THE COURT:  Okay.

9              UNIDENTIFIED MALE SPEAKER:  Objection.  Move to

10   strike that, Judge.

11             THE COURT:  Okay, okay.  Everybody relax.

12             UNIDENTIFIED FEMALE SPEAKER:  Mr. Murphy is an

13   attorney, Judge.  He is still licensed --

14             MR. NOVAK:  Disbarred attorney, Judge.

15             UNIDENTIFIED MALE SPEAKER:  (Unintelligible).

16             THE COURT:  Yeah.  I don't -- I think I've read

17   about that, yeah.  So I'm -- I got to tell you, I think I'm

18   out on a limb here in terms of whether I'm allowed to do this

19   so I am inclined to grant this request and have them on

20   electronic monitoring for 24 hours.  They can come in.  They

21   got a clean bill of health on Thursday.  They can get

22   themselves bond.  They can get themselves off electronic

23   monitoring.  They need release to work.  I mean, they can

24   work that out with Pretrial.  That's going to be -- really by

25   the time they get on this electronic monitoring, it's going

1  to be Wednesday at 10:00 a.m. and then it's going to be time

2  to come to court on Thursday so I don't know how much really

3  finagling we need to do in terms of working.  They're

4  probably going to have to take tomorrow off work is what I'm

5  saying.  Okay.

6          UNIDENTIFIED MALE SPEAKER:  May I address you --

7          THE COURT:  Okay.

8          UNIDENTIFIED MALE SPEAKER:  -- Judge, just briefly?

9          THE COURT:  Yes.

10         UNIDENTIFIED MALE SPEAKER:  I don't mean to

11  interrupt the Court.

12         THE COURT:  Yes.

13         UNIDENTIFIED MALE SPEAKER:  Judge, subject to

14  objection for the government, the electronic monitoring means

15  that they have to have certain phones in certain locations,

16  green boxes out.  It has --

17         THE COURT:  We do cell phones now.  We're very

18  modern.

19         UNIDENTIFIED FEMALE SPEAKER:  Judge, this is

20  something that the government could have requested when we

21  were all before the Court and we had the clients here and

22  they didn't ask for it.  There's been no circumstances that

23  have changed since your prior ruling on this matter regarding

24  keeping them out until -- on the signature bonds until

25  Thursday's detention hearing.

1          THE COURT:  Yeah.

2          UNIDENTIFIED FEMALE SPEAKER:  I still do not --
3     Mr. Murphy, and I don't know if I speak for any of the other
4     attorneys, but they're still not a flight risk and nothing
5     has changed and it was just in the government's preparation
6     of these documents that they realized, oh, maybe I should
7     have asked but --

8          MR. NOVAK:  Ten minutes ago.

9          THE COURT:  Yeah.

10          MR. NOVAK:  Ten minutes ago, your Honor, I was
11     asking for full detention --

12          THE COURT:  Right.

13          MR. NOVAK:  -- which we had gone over it around and
14     around on, so.

15          THE COURT:  Right, right.

16          MR. NOVAK:  These are the same arguments that I can
17     make on Thursday; that they could make on Thursday.

18          THE COURT:  I'm not seeing the burden of putting
19     them on home monitoring and I'm -- I do -- I want to say this
20     and I'll say it for the record and if people appeal me, they
21     appeal me, I think I'm out on a limb in terms of my power.  I
22     think that the government has a strong argument that they
23     have a right to three days to prepare for this hearing.  And
24     I think what the statute might say is that if they say we
25     want three days, I have to give it to them and the person has

1  to be locked up so I think I'm going overboard to say these

2  men can go home tonight.  I think the easier thing for me to

3  do is say the statute says I got to lock them up.  I'm making

4  that decision.

5          UNIDENTIFIED MALE SPEAKER:  Fine.  If that's the

6  Court's decision, we'll acquiesce to (unintelligible).

7          THE COURT:  So they're now coming to me and saying,

8  you know, we disagree with your decision, he'll send whatever

9  e-mail he sends around his office about it, he's now coming

10 to me and saying how about as a compromise or in addition to

11 sending them home, I have them on electronic monitoring so I

12 have this added sense of security.

13         MR. NOVAK:  Right.

14         THE COURT:  It's a burden on Pretrial Services which

15 I don't like to do, Pretrial Services doesn't think it's

16 required and they may come up with a report that says this is

17 not required in the long-term.  If this case is going to go

18 on for two years, we don't think they need two years of

19 electronic monitoring; that's fine.  But I think for this

20 three days that I'm a bit out on a limb in terms of my

21 authority it makes sense to me that I know that they're

22 coming back here on Thursday morning or Thursday afternoon

23 for their hearing so that's what's changed.

24         MR. NOVAK:  And maybe the better thing to do, too,

25 is to do this on Fridays.  I know Pretrial that may help, if

1    they're going to be out, essentially changing the date.  I

2    don't -- I mean, I don't want to change everything up but --

3          THE COURT:  Well, that's up to you all.  I don't

4    care.

5          UNIDENTIFIED MALE SPEAKER:  I don't have a Friday

6    and Mr. Ackerman doesn't have Friday.

7          UNIDENTIFIED FEMALE SPEAKER:  Judge, I prefer to

8    keep the date that has already been set.

9          THE COURT:  Thursday is fine.

10         MS. MINARIK:  Your Honor, after speaking with my

11   colleague, I think logistically, if the Court would agree, we

12   would request that the defendants appear tomorrow morning in

13   our office to be placed on location monitoring.  So as part

14   of the conditions of release, we would ask that they report

15   to our office at 9:00 a.m.

16         We would then be able to successfully get them

17   monitored and set up for location monitoring.  I don't know

18   how the logistics are going to work this evening given that

19   we might not be able to have an officer go to each and

20   everyone's home.

21         THE COURT:  Yeah.

22         MS. MINARIK:  If the defendants fail to appear at

23   the time and there's no contact from the defendant meaning

24   I'm stuck in traffic or whatnot, we would advise the Court

25   immediately and ask that a warrant be issued.

1    UNIDENTIFIED MALE SPEAKER:  In the building?

2    MS. MINARIK:  Yes.  9:00 o'clock, 15th floor.

3    UNIDENTIFIED MALE SPEAKER:  That's 15th, right?

4    MS. MINARIK:  Yeah.

5    UNIDENTIFIED MALE SPEAKER:  I got to ask, otherwise

6  I'd be at 55 East Monroe.

7    MS. MINARIK:  No.

8    UNIDENTIFIED FEMALE SPEAKER:  Judge, are we getting

9  the defendants back in here?

10    THE COURT:  Well, I have to go --

11    UNIDENTIFIED FEMALE SPEAKER:  I think we have to.

12    THE COURT:  I have to go over the conditions.  I

13  don't understand where they are.

14    UNIDENTIFIED FEMALE SPEAKER:  So before I take a

15  position on that, I do need to obviously speak with my

16  client.

17    THE COURT:  Can we --

18    UNIDENTIFIED MALE SPEAKER:  The agent tells me

19  they're bringing them down.

20    THE COURT:  Can we get lock-up on the phone, yeah,

21  and say where are the people?

22    COURTROOM DEPUTY:  (Unintelligible).

23    UNIDENTIFIED FEMALE SPEAKER:  We've just been

24  informed they're bringing them back.

25    UNIDENTIFIED FEMALE SPEAKER:  Oh.

```
 1              THE COURT:  Oh.
 2              UNIDENTIFIED MALE SPEAKER:  They're on the way.
 3              THE COURT:  So can I have the conditions?
 4              UNIDENTIFIED MALE SPEAKER:  Yes.
 5              THE COURT:  Or they need to sign the conditions, I
 6  guess.
 7              UNIDENTIFIED MALE SPEAKER:  They still -- they need
 8  to sign them too.
 9              THE COURT:  And are they signing a bond?
10              UNIDENTIFIED MALE SPEAKER:  Yes.  I guess they would
11  sign a signature bond.  I don't have that.  I don't have
12  the --
13              THE COURT:  So what's the amount of that going to be
14  because I have that here.  I can write this.
15              UNIDENTIFIED MALE SPEAKER:  I think he said $10,000
16  was sufficient.
17              THE COURT:  Okay.  Brenda, these go to counsel for
18  the -- Okay.  So that's what we'll do, do it at 9:00 a.m.
19              UNIDENTIFIED MALE SPEAKER:  Thank you, Judge.
20              THE COURT:  We can go off the record.
21          (WHEREUPON a discussion was held off the record after
22  which the following digital proceedings were had in open
23  court at 4:41 p.m.:)
24              COURTROOM DEPUTY:  Recalling 15 CR 515.
25              MR. NOVAK:  William Novak for the government.
```

1          MS. TRUESDALE:  Michelle Truesdale, Lawrence Wolf

2    Levin and Ana Vazquez on behalf of Thomas Murphy who is

3    present.

4          MR. SEIDEN:  Glenn Seiden for Albert Rossini along

5    with Brooke Lewis, L-e-w-i-s, for Babajan Khoshabe.

6          MR. BOLGER:  And just Kevin Bolger on behalf

7    of Anthony Khoshabe.

8          THE COURT:  Okay.  So I have release orders from an

9    Anthony Khoshabe and a Thomas Murphy and I need two other

10   release orders.  Okay.

11         So to the defendants in the room, you are being

12   released until Thursday at 1:00 o'clock.  You are to be back

13   in this courtroom for a detention hearing.  Tomorrow at 9:00

14   o'clock, you have to report to this building to Pretrial

15   Services which is on the 15th Floor.  And for the 28 hours

16   between tomorrow at 9:00 o'clock and the detention hearing,

17   you're going to be placed on electronic monitoring.

18         I'm going to go through the conditions of bond.

19   They're identical for everybody except for one condition so

20   I'm going to ask that all of you let me know as I go that you

21   understand the conditions.  If anybody doesn't understand a

22   condition, let me know.  Now is the time.  I don't want you

23   to violate a condition accidentally so now is the time to ask

24   questions.

25         UNIDENTIFIED FEMALE SPEAKER:  Your Honor, I do have

1  one thing for Mr. Babajan Khoshabe.  His passport is

2  currently in a safety deposit box.  The bank doesn't open

3  until 10:00 so he won't be able to bring it to Pretrial

4  tomorrow morning at 9:00.

5          THE COURT:  We'll figure that out.

6          MS. MINARIK:  Your Honor, maybe we could have a

7  family member retrieve the passport or we can see if an

8  officer (unintelligible/background noise) to retrieve the

9  passport.

10          THE DEFENDANT:  No, nobody.

11          UNIDENTIFIED FEMALE SPEAKER:  Nobody else

12  (unintelligible).

13          MS. MINARIK:  Or we can make him come in at noon if

14  that's --

15          THE COURT:  There you go.  You'll turn it in by

16  noon, how about that?  Okay.

17          First of all, everybody has signed the $10,000 bond.

18  It's unsecured.  Everybody understands that that gives the

19  government the authority were you to fail to appear to turn

20  this piece of paper into a judgment so they could actually

21  collect $10,000 from you for failing to appear.

22          Does every defendant understand the import of

23  signing a $10,000 unsecured bond?

24          THE DEFENDANT:  Yes, your Honor.

25          THE DEFENDANT:  Yes.

1        THE COURT:  Everybody, okay.  And I want to say

2    right now that any of these conditions are subject to change

3    when you come in for your detention hearing.  Okay.

4        More importantly, some obvious conditions:  You are

5    not permitted to violate any federal, state or local law.

6    You're required to participate in the collection of a DNA

7    sample if that's required by law.  You have to tell Pretrial

8    Services if you change your place -- the place where you live

9    or your telephone number and you have to come to court as

10   required.  Your next court appearance is Thursday at 1:00

11   o'clock in this courtroom.

12       You have to report to Pretrial Services as directed

13   9:00 o'clock tomorrow morning.  You're going to surrender any

14   passports to Pretrial Services.  Everybody is going to be

15   able to do that at 9:00 o'clock except for Mr. Khoshabe who

16   is going to do that tomorrow by noon.

17       UNIDENTIFIED MALE SPEAKER:  And Mr. Rossini, I

18   believe, has posted his passport with the state.  It was a

19   condition of his bond there.  We were going to double check

20   that because that was about two years ago, Judge.  I want to

21   make sure that's the case.

22       THE COURT:  So Mr. Rossini will verify that his

23   passport resides with some authority with the state.

24       Everybody's travel -- and this is only until

25   Thursday at noon, remember, to Thursday at 1:00.  Everybody's

1    travel is restricted to the Northern District of Illinois.

2    You are to avoid contact.  No contact with anybody who is a

3    victim or witness in the prosecution of this case, okay.  I

4    understand there were some alleged victims here today.

5    You're not to talk to them, see them, e-mail them, Skype with

6    them, anything.  Are they to avoid contact with each other,

7    co-defendants?

8           MR. NOVAK:  Your Honor, I don't know if that's a

9    standard condition in these cases.  If it is, it is.  I mean,

10   as you know, all these were over the government's objection.

11   I think they should be detained, so.

12          UNIDENTIFIED FEMALE SPEAKER:  Your Honor, one of

13   them is a father and son.

14          THE COURT:  I'm not going to make that a condition

15   for the next 24 hours.  Okay.

16          You are not to possess a firearm, destructive device

17   or other weapon.  You are not to unlawfully possess any

18   narcotic drugs or controlled substances.  Obviously, you're

19   permitted to take medicine prescribed by a doctor.  You are

20   to submit to location monitoring beginning tomorrow at 9:00

21   o'clock and comply with all the requirements of that program.

22   Pretrial Services will explain that to you.

23          You have to report to Pretrial Services all contact

24   with law enforcement personnel including traffic stops or any

25   kind of questioning and you are not to engage in any

1    financial transactions over $100.

2            The biggest thing that can happen to you if you

3    violate any of these conditions in the next 37 hours is you

4    will be detained when you come back in here on Thursday

5    afternoon -- that may happen to you anyway -- but these are

6    the conditions that I'm setting for you to be released

7    between now and your detention hearing.

8            Has everybody here been processed by the Marshal

9    Service?  Is that what happened?

10           MR. BOLGER:  Anthony has not, Judge.  I would

11   suggest maybe he gets that done tomorrow when he comes in.

12           THE COURT:  So how -- why did he go to the Marshals?

13   Who is here from the Marshals?

14           UNIDENTIFIED MALE SPEAKER:  Judge, he should go up

15   there right now.

16           MR. BOLGER:  Well, are they open?

17           UNIDENTIFIED MALE SPEAKER:  Yes.

18           MR. BOLGER:  Good.  We'll do that, Judge.

19           THE COURT:  Are you sure?

20           UNIDENTIFIED MALE SPEAKER:  Yes, Judge.

21           THE COURT:  Okay.  All right.

22           UNIDENTIFIED FEMALE SPEAKER:  Judge, may I address

23   the Court as to one of the conditions of Mr. Murphy's bond?

24           THE COURT:  Okay.  Hold on one second.  Anthony, I

25   understand, you have another condition which is --

1    UNIDENTIFIED MALE SPEAKER:  Substance abuse testing.

2    THE COURT:  Yeah.  So Pretrial Service is going to

3    run a drug test on you.  And if they find it necessary, they

4    then might recommend some kind of substance abuse therapy.

5    Do you understand?

6    UNIDENTIFIED MALE SPEAKER:  Yes.

7    THE COURT:  Okay.  Again, this is only until

8    Thursday so we're going to have to reevaluate all of that on

9    Thursday.  Okay.

10    So I'm going to say that I have signed the documents

11    as to Anthony and I would release him at this point because

12    he has not been processed so he should go upstairs now

13    because the Marshals --

14    MR. BOLGER:  With your permission, Judge, I'll take

15    him up there.

16    THE COURT:  -- will be not happy with us if we are

17    holding them up, okay, and I will see you on Thursday.

18    MR. BOLGER:  Judge, I didn't want to bite the

19    bullet; but just in case they say they don't have time, can

20    he come tomorrow and do it?

21    THE COURT:  If they don't have time to do it, then

22    you have to do it tomorrow.

23    MR. BOLGER:  All right.  Thank you.  I thought they

24    (unintelligible).

25    THE COURT:  That's up to them.  Has everybody else

1    been processed?

2            UNIDENTIFIED MALE SPEAKER:  I think so.

3            UNIDENTIFIED FEMALE SPEAKER:  Yes.  Mr. Murphy

4    has.

5            MR. NOVAK:  They've all been processed; everybody

6    has.

7            UNIDENTIFIED MALE SPEAKER:  Everyone has -- else has

8    been, I believe, Judge, because they've been here since 8:00

9    in the morning, 8:30, so.

10            THE COURT:  So just Anthony was -- got here later?

11            UNIDENTIFIED MALE SPEAKER:  Yes.  He could go up the

12    elevator to 24 (unintelligible).

13            THE COURT:  All right.

14            MR. NOVAK:  And, your Honor, just -- just to make a

15    record on the warrants, the forfeiture warrants, warrant 464

16    and 513 saying under seal, that's a mistake.  I've struck

17    them and initialed it as we discussed.

18            THE COURT:  Okay.  And I've signed those warrants.

19            MR. NOVAK:  Yes.

20            THE COURT:  Okay.  Now Mr. Murphy?

21            UNIDENTIFIED FEMALE SPEAKER:  Yes, Judge.  May the

22    condition of the $100 transactions be excluded as to

23    prescription medications?  I've been informed that one of the

24    diabetes medications for my client will cost $120 if he

25    doesn't pick that up this weekend.

```
 1              THE COURT:  So he may pick up medication on evening
 2    of eight -- what is it, the 25th, costing up to $150, okay.
 3              Anything else?  Okay.  And I'm saying ordered
 4    released after processing but I guess if they've been
 5    processed, we're --
 6              UNIDENTIFIED MALE SPEAKER:  That will be good.
 7              THE COURT:  Okay.
 8              UNIDENTIFIED MALE SPEAKER:  Judge, they still have
 9    to go upstairs, we run a couple checks and then we'll release
10    them so we'll still come upstairs.
11              THE COURT:  Are you with the Marshals?
12              UNIDENTIFIED MALE SPEAKER:  I am, Judge.
13              THE COURT:  Okay.  I need somebody --
14              UNIDENTIFIED MALE SPEAKER:  (Unintelligible) FBI
15    agent.
16              THE COURT:  Okay.  I think that I checked that box
17    everywhere that they should be released pending that but you
18    know that.  Okay.  All right.
19              Gentlemen, women -- nice to see some women up here
20    arguing -- thanks.  Government, your objection is noted.  See
21    you all on Thursday.  Don't be late.
22              UNIDENTIFIED FEMALE SPEAKER:  Thank you, Judge.
23              UNIDENTIFIED FEMALE SPEAKER:  Thank you, Judge.
24              UNIDENTIFIED MALE SPEAKER:  Thank you.
25              UNIDENTIFIED MALE SPEAKER:  Judge, thank you for
```

1  taking the time this afternoon.

2        (Which concluded the proceedings in the above-entitled

3  matter.)

4                    C E R T I F I C A T E

5           I hereby certify that the foregoing is a

6  transcription of proceedings transcribed from digital

7  proceedings held before the Honorable Mary M. Rowland on

8  August 25, 2015.

9

10  */s/Laura LaCien*

11  _____                December 2, 2015
    Laura LaCien                                       Date
12  Official Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25