1

```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                     EASTERN DIVISION

 3   UNITED STATES OF AMERICA,        )
                                      )
 4              Plaintiff,            )
                                      )
 5         v.                         )  No. 15 CR 00515
                                      )
 6   ALBERT ROSSINI,                  )  Chicago, Illinois
                                      )  December 16, 2015
 7              Defendant.            )  10:41 a.m.

 8                  TRANSCRIPT OF PROCEEDINGS
          BEFORE THE HONORABLE JEFFREY T. GILBERT
 9
     APPEARANCES:
10   For the Plaintiff:        HON. ZACHARY T. FARDON
                               United States Attorney
11                             BY:  MR. ERIK A. HOGSTROM
                                    MR. WILLIAM P. NOVAK
12                             Assistant United States Attorneys
                               219 South Dearborn Street, Suite 500
13                             Chicago, Illinois 60604
                               (312) 353-5300
14
     For the Defendant:        SEIDEN NETZKY LAW GROUP, LLC
15                             BY:  MR. GLENN SEIDEN
                               333 South Wabash Avenue, Suite 2700
16                             Chicago, Illinois 60604
                               (312) 236-3060
17                             gseiden@snlgllc.com
                               SEIDEN LAW GROUP
18                             BY:  MS. BROOKE L. LEWIS
                               115 South LaSalle Street
19                             Suite 2600
                               Chicago, Illinois 60603
20                             (312) 236-3060
                               blewis@snlgllc.com
21
     ALSO PRESENT:             MR. JUSTIN L. WIERSEMA,
22                             United States Pretrial Services

23   Court Reporter:           Judith A. Walsh, CSR, RDR, CRR
                               Official Court Reporter
24                             219 South Dearborn Street, Room 1944
                               Chicago, Illinois 60604
25                             (312) 702-8865
                               judith_walsh@ilnd.uscourts.gov
```

1   (Proceedings heard in open court:)

2           THE CLERK:  15 --

3           THE COURT:  Good morning, everybody.

4           THE CLERK:  15 CR 515-1, United States of America

5   versus Albert Rossini for motion hearing.

6           MR. SEIDEN:  Good morning, your Honor.  Basil Seiden,

7   S-e-i-d-e-n, with Brooke Lewis, L-e-w-i-s.

8           THE COURT:  Good morning.

9           MR. SEIDEN:  Mr. Rossini, who is here.

10          You have a new look, Judge.

11          THE COURT:  I do.  I got rid of the beard.  Thanks

12  for noticing.  You did better than my wife.

13          MR. SEIDEN:  I hope not.

14          THE COURT:  Anyway, good morning to you.  Good

15  morning, Mr. Rossini and Ms. Lewis.

16          MR. HOGSTROM:  And Eric Hogstrom and Bill Novak for

17  the United States.

18          MR. NOVAK:  Good morning, your Honor.

19          THE PROBATION OFFICER:  Good morning, your Honor.

20  Justin Wiersema for Pretrial Services.

21          THE COURT:  All right.  Good morning to all of you.

22  Okay.  I have spent a lot of time looking at the papers that

23  have been submitted on the government's motion to revoke

24  Mr. Rossini's bond and the responses thereto and the

25  voluminous exhibits that were filed by everybody on that.

1   Let me -- let me tell you what I'm going to do, and
2   then I'll tell you why I'm going to do it and explain it on
3   the record here so that if anybody has any questions, I can
4   answer them, and if anybody disagrees, then there's a record
5   of what I've done here.  Okay.
6   I'm going to deny the motion to revoke bond, and I'm
7   going to explain to you why.  I find that the government did
8   not meet its burden of proof on the motion to revoke, but I
9   must say that a lot of the failures that I see are technical
10  and a little bit -- you know, they fell short but not
11  tremendously.  But this is a criminal case, and burdens of
12  proof are meaningful.
13  And so when I -- what I needed to determine was
14  whether there was probable cause to believe that a crime was
15  committed by Mr. Rossini while he was on bond or whether there
16  was clear and convincing evidence, which is more than just a
17  preponderance, that Mr. Rossini violated the conditions of his
18  release after they were imposed, and I'm finding the
19  government did not meet that burden.
20  However, the government has convinced me with the
21  material that has been submitted, and I think even some of the
22  arguments that you made, Mr. Rossini, in your briefs have
23  convinced me that the original conditions of release that the
24  government had requested I impose or some variation of those
25  that I thought were not reasonable at that time or were too

1    onerous at that time because they would be, in a sense, I use

2    the term, putting you out of business or something like that,

3    I'm revisiting that decision sui sponte on my own based upon

4    the materials that I've had.  And I am going to modify the

5    conditions of your release, and I'm going to explain all this.

6    All right.

7          The applicable statute here is 18 USC 3148 which the

8    government has cited.  And as I said -- and you know, I don't

9    know.  I mean, I'm going to speak for a while.  I don't know

10   if you guys want to sit down.  If you want to stand, that's

11   fine.

12         MR. SEIDEN:  I would like to sit down if that's okay.

13         THE COURT:  Yes.  You guys can sit down.  You can sit

14   down too, Mr. Rossini.  You should be able to see me.  Yes.

15   Everybody can sit around this first table, too, given the

16   wonderful way that the GSA designed this courtroom.

17         I'm told, incidentally, as an aside that the GSA

18   designed and built this courtroom without asking for any

19   judicial input.  No judge had any input into how this

20   courtroom was designed which is why the tables look the way

21   they look.

22         Anyway, the statute provides -- and I alluded to it.

23   Okay.  If I find that there's probable cause to believe,

24   Mr. Rossini, that you committed a federal, state, or local

25   crime while you were on bond, and that's by a preponderance of

1  the evidence, or there's clear and convincing evidence that

2  you violated any other condition of release and, and this is

3  important, and I also find that under the factors in the Bail

4  Reform Act, the weight of the evidence, the nature and

5  circumstances of the crime, your history, danger to community,

6  that there are no conditions that I can impose that would

7  ensure the safety of the community or mitigate any risk of

8  flight, then I would take you into custody, okay, revoke your

9  bond and take you into custody.

10        The government has alleged two things:  That you

11  committed crimes while you were on bond and that you violated

12  the conditions of release.  And as I said, I'm going to -- I

13  find that the government has not met its burden on either of

14  those prongs so, therefore, there's no presumption of

15  detention in this case based on that, and so that's why I'm

16  going to deny the government's motion.  I find they haven't

17  met their burden of proof on that.

18        With respect to crimes while on bond, the lion's

19  share of what the allegedly criminal conduct is occurred

20  before you were even put on bond.  It occurred, if you want to

21  go way back to the transaction with BB a long time ago, but

22  also as relevant here, most of what occurred, occurred before

23  you were placed on bond on August 26th, 2015.

24        The government alleges that there was criminal

25  conduct, that you engaged in criminal conduct in two respects

1    after you were placed on bond:  One, you endorsed a $15,000

2    check payable to Devon Street -- is it Devon Street

3    Investments, I think?  I have it.

4            MR. HOGSTROM:  I think it's Devon Street Properties.

5            THE COURT:  Devon Street Properties, whatever, a

6    Devon Street entity which is an entity that Mr. Rossini owns

7    or controls, as I understand it.  So he endorsed that check so

8    it could be cashed by CW on August 26th, 2015 and that -- and,

9    two, that you made representations to an individual called MW

10   in September and October of 2015 after you were put on bond

11   that were recorded about the prior history of the mortgage

12   note that MW bought and the government alleges was previously

13   sold to BB.

14           In terms of the endorsement of the check, the

15   government, the reason the government says this is a crime is

16   because it technically completes the criminal act, right?

17           Government?

18           MR. HOGSTROM:  It is -- it is a step in the criminal

19   act, yes.

20           THE COURT:  Okay.  It's a step in furtherance of what

21   you would contend is a fraudulent transaction that violates

22   state and federal law, right?

23           MR. HOGSTROM:  Correct.

24           THE COURT:  Okay.  And that's true if the sale of the

25   note to MW was a crime.  All right.  Determining whether

1   probable cause for this supposed crime exists depends to some

2   extent upon the interpretation of the guarantee agreement and

3   the series of transactions between you and BB because what you

4   argue is, if I own the note, I can sell it and that, in turn,

5   depends upon whether it was previously sold to BB or not and

6   whether all the rescission and the transfer transactions ended

7   up giving you the ability to control and sell this note.

8           And the government would say, even so, you sold it

9   before -- you had sold it, you began selling it or you

10  accepted your first payment on this in July of 2015 before you

11  had filed this rescission and cancellation agreement which was

12  not filed until August 5th, so you really technically didn't

13  own the note there.

14          I've read the guarantee agreement, a very funky

15  document, in my view, as a legal matter.  I'm not 100 percent

16  sure what it says.  I'm not even 50 percent sure what it says.

17  I'm not sure the government's characterization of the

18  transaction that is memorialized in that document is accurate

19  as a sale or not.  I'm not sure what it is.

20          The government -- the government claims that it

21  transferred to BB the right to get rents.  It didn't.  It said

22  the equivalent of rents, and that's in your brief, and I don't

23  know what that means.  When does title pass under that

24  document?  I don't know.  It gives you the right to determine,

25  it seems to me, when closing should happen.  And I'm not sure

1    whether closing happened or not.

2            And it also gives you, your guarantee is in the event

3    of one or more of the properties as enclosed, it seems to be

4    at your discretion to return the funds within five days after

5    Mr. Rossini has determined that no closing will occur pursuant

6    to the assignment.  As I said, this is a funky document.

7            So I'm not -- did you own the note when you offered

8    it to MW?  Does it matter that MW was offered the note in July

9    before you were placed on bond and that you accepted the final

10   payment for the note in August but you accepted the first

11   payment in July?

12           I don't know.  Okay.  But in terms of a probable

13   cause determination which would then be a threshold

14   determination of taking you into custody, I think this should

15   not -- that determination shouldn't rely on technicalities.

16   All right.

17           Also, the representation that you made to MW after he

18   paid you the $25,000, and these were reported in September and

19   October of 2015.  The government points me to those recorded

20   statements about, essentially about the providence of --

21   provenance of the note that you say BB was going to buy it but

22   didn't.

23           Those occurred after the sale was completed even

24   according to the government.  You accepted $25,000, the final

25   $15,000 payment in August of 2015.  These statements occurred

1  in September and October.  Okay.  I mean, just on a common law

2  fraud theory, and the government hasn't told me yet, you know,

3  how the criminal aspect of this works, those are

4  representations made after that sale.

5         Are they lulling representations?  Are those

6  criminally fraudulent under the law after you've accepted the

7  money?  What did -- did MW rely on those representations made

8  in September and October when he wrote you checks in July and

9  August?  Probably not.

10         So again, this is technical stuff and, you know, I do

11  not find that the government has convinced me with what they

12  have given me that there's probable cause to believe this MW

13  transaction, even though part of it occurs with $15,000

14  endorsed check after you're put on bond that there's probable

15  cause to believe that's a felony either under a state statute

16  or the federal statutes that they cite.  Is it close?  Maybe,

17  but they haven't given me enough to tip me on that.  Okay.

18  The -- and that really is, essentially is the criminal conduct

19  that they're alleging as to you.

20         The violation of the conditions of release, they're

21  alleging that your endorsement of the check that MW gave you

22  for $15,000 on August 26th violated the limit on financial

23  transactions in place at that time that Judge Rowland had

24  imposed when you first appeared before her but that condition

25  was later removed.

1    They also allege that your offering of properties to

2    MW and JK and maybe RA after you were on bond violated the

3    condition imposed on September 29th about soliciting investors

4    or investments.  Okay.  As a threshold matter, I'm not going

5    to consider at all the JK and RA allegations.  Those were

6    glancingly mentioned in the government's opening brief or

7    opening motion at Paragraph 29 of that motion right before it

8    was done.  And then in the reply, the government fleshed out

9    all that conduct, included investigators's reports and so

10   forth.

11   The law is clear in the Seventh Circuit and in our

12   district courts that that kind of sandbagging -- and I'm

13   saying "sandbagging."  I don't want to make this as

14   pejorative.  That kind of an argument that is undeveloped in

15   an opening motion and then developed in a reply after the

16   defendant has had a chance to respond to that, of course,

17   don't have to consider that.  They can, but they don't have

18   to.  And the case cites on that are United States versus

19   Beavers, 756 F.3d 1044, Seventh Circuit 2014, and a recent

20   decision by Judge St. Eve, U.S. versus Sands, 2014 Westlaw

21   2766779 at Page 2 decided in June of 2014.

22   Even if I would consider that evidence with respect

23   to JK and RA, it wouldn't change my ruling today because to

24   me, the bottom line is it's not clear to me or at least clear

25   and convincing to me that the offering of properties in the

1    way you are alleged to have done to MW by saying, these

2    properties are available, violates the condition that I

3    imposed on September 29th which was pretty specific about

4    directly or indirectly soliciting money from individual

5    investors, nonprofit investors, family trusts, or closely-held

6    corporations with less than five shareholders.  And they don't

7    fit within the existing properties there either.

8            Now, it would have fit within the conditions the

9    government proposed, but I didn't impose those.  And the

10   government argues, well, it obviously fits within this

11   condition because you were going to get money from this.  But

12   again, I don't know what the nature of that transaction was,

13   and I don't know what money you were going to get, and I don't

14   know if it was going to be a commission or not, and I don't

15   know if this conduct squarely fits within that, and I don't --

16   again, I don't think this is -- this should be a guesswork

17   kind of thing.

18           If the government has the burden of clear and

19   convincing evidence, they have to hit that target.  And I

20   think in this respect, they fall short with respect to that

21   condition.

22           The endorsement of the check, technically a violation

23   of the $100 limit on financial transactions except you come

24   back and you argue, well, this is a business transaction.

25   It's not a personal transaction.  I endorsed a check in the

1  name of Devon Street Realty or whatever the entity was and not

2  individually, and the terms of release don't specify one way

3  or the other.  Okay.

4          Again, you know, is that a technicality or not?  All

5  right.  Is that clear and convincing evidence that you

6  violated the term, or would I be overstepping my bounds to say

7  that there was clear and convincing evidence that you violated

8  that condition even though you did in your capacity as a

9  corporate officer or as an agent for the corporation and not

10 personally.  And your lawyers make clear in their response

11 that you held the money before you spent it on groceries or

12 anything else because you felt the condition was yours, okay,

13 and not a corporate condition.  Is that just a foot fault or

14 what is it?  I don't know.  But again, I would argue or land

15 on the side of saying that doesn't prevent me with clear and

16 convincing evidence that you violated that condition.

17         So no probable cause to believe that you committed a

18 felony during this time, no clear and convincing evidence of a

19 violation of the conditions of release, no presumption of

20 detention unless I can find conditions of release, the

21 government's motion to revoke is denied.

22         That -- to my way of thinking, that doesn't end

23 matters, though, okay, because reviewing all the evidence in

24 front of me, it is now much more clear to me that you conduct

25 business in a pretty unorthodox, sharp, and very potentially

1    misleading way, that it's legal.  It's just on the side of

2    legality.  You have a long criminal record including

3    convictions of fraudulent conduct of the type that is alleged

4    here.  I referenced it before, but I'll reference it again.

5          Given the allegations in the indictment, should you

6    be allowed to continue to conduct business as usual while

7    you're on bond, or does it present an unreasonably serious

8    risk of harm to innocent people?  By your own admission, you

9    took money from BB and as of today, she doesn't have the

10   mortgage note that she bought at least for the 211 Kilbourn

11   property.  I know there's information that she paid -- or she

12   was paid $79,000, but I think the allegations of the

13   government unrebutted are that she paid $140,000.

14        So and then that note is sold to MW after a series of

15   filings that, if legal, and I know you're relying on advice of

16   counsel on these things, if they're legal with respect to the

17   rescission and the provenance of that note, they are, in my

18   view, arguably on the line.

19        The representation to MW that BB was going to buy the

20   note but didn't made on the tape on September 29th, I've

21   already addressed whether I thought that was a criminal act

22   because it occurred after he bought the note, but it's at best

23   misleading about the provenance of the note that MW purchased.

24        Right now, again at the very least, MW owns a note

25   that BB also very well may be able to claim she owns.  Maybe

1    she wins that argument.  Maybe she doesn't win that argument.

2    But at best, MW faces a possible lawsuit or a legal fight that

3    he didn't know was in the offing when he bought the note from

4    you, and this is -- this is not contradicted by your filings

5    here.

6         You cashed a $15,000 check when you were barred from

7    engaging in financial transactions of over $100.  I understand

8    hiding behind the corporate shield here.  I've credited that

9    on whether or not there's clear and convincing evidence of a

10   violation of the terms of the release, but there's no argument

11   here that you didn't get any financial benefit of that check

12   personally.  The government argues you did.  My best bet is

13   that if you own Devon Street Realty or Investments that acting

14   through a corporate entity doesn't necessarily mean you're not

15   benefiting personally.

16        And if it didn't violate the letter of the conditions

17   of release, it violated the spirit of the conditions of

18   release.  And I understand why you did it.  You wanted to get

19   that money in the bank.  But Judge Rowland had ordered that no

20   transactions over $100, that I removed that transaction, first

21   I went to 500 and then I removed it completely, but the time

22   you engaged in that conduct, it was against the spirit of the

23   order, I would say.

24        You took the initial payment from MW for the Kilbourn

25   property in July of 2015, I think it's July 24th, 2015, if my

1    memory serves me, when you technically did not own the
2    property even under your theory because you didn't sign --
3    your signature on the rescission and cancellation document was
4    not done until July 30th and it wasn't signed -- it wasn't
5    filed until August 5th.  So arguably again, the government
6    argues at the time you sold that property or began the process
7    of selling it, you didn't own it.
8           And again, I've referenced the guarantee agreement
9    and what exactly was sold or wasn't but at best, that
10   guaranteed agreement documents something that is extremely, in
11   my mind, unclear based on what I have in front of me.  And
12   that may be something that's at issue on the merits of your
13   case, and I'm not expressing any view on the merits of your
14   case.  I'm just expressing what I have in the four corners in
15   front of me.
16          And finally, the transaction involving the Cambridge
17   acquisition of the hospital in New Jersey that was presented
18   to me in our prior hearing and the related financing of that
19   which is kind of unorthodox, I'm not sure of the legality of
20   that.  To me, it appears to have a tax component, and I can't
21   begin to analyze that.  I don't know what representations were
22   made, when, to whom, by whom.  And I know your counsel
23   referenced in their response that the government has at least
24   complicated that transaction at this point.  So I'm not sure
25   where that's going.

1          I did review some of the other material that the

2  government gave me.  I did not read the entire transcript of

3  Judge Shadur.  I didn't read the entire presentence

4  investigation.  In fact, I didn't read much of it at all.  I

5  focused on what the government said there, but it's just

6  consistent with what I noted when you first appeared before me

7  for a bond hearing which is that you have a significant

8  criminal history involving fraud and misrepresentation, some

9  convictions and so, you know, that's the background I have

10  here.

11          So all of this indicates to me that the conditions I

12  have imposed to date are not sufficient to indicate -- to

13  mitigate the financial danger to the community that your

14  release on bond presents.  I did some research to make sure

15  that financial danger to the community is actually covered by

16  the 3142 factors, and it is.  Okay.  The weight of authority

17  is that it is.

18          There's a seminal opinion issued in the Southern

19  District of New York in United States versus Madoff which is

20  586 F. Supp.2d 240 at 252 to '54, and it summarizes the cases

21  and talks about financial danger to the community as included

22  within danger to the community within a valid format.

23          And having looked at all this material, I think that

24  I am inclined -- and this is what I'm inclined to do, and I'll

25  listen to your counsel on this and the government on this.  On

1    September 25th, 2015, the government proposed conditions

2    because I asked both sides to propose some conditions of

3    release.  And those conditions are in ECF No. 71, ECF No. 71

4    and a document entitled, "Government's proposed additional

5    conditions of release."

6           Based on everything I've seen here in presiding over

7    the case, I think, I now think that those conditions are

8    appropriate.  There were three conditions:  That you not act

9    in a fiduciary capacity in any financial transactions; that

10   you not engage directly or indirectly in the sale or resale of

11   mortgage notes or any other mortgage-related instruments; and

12   that you not engage directly or indirectly in the sale or

13   resale of real estate.

14          And I said at the time, I believe, that, you know, I

15   thought that these were overbroad.  I no longer think that

16   they're overbroad based upon your conduct while you've been on

17   bond and knowing a little bit more of conduct prior to the

18   time you went on bond which is perfectly appropriate to be

19   considered under 3142(g) in terms of the history and

20   characteristics of the person here.

21          I think that those conditions should make very

22   clear -- and this is where I'd like you to take notes here

23   because I'm going to ask the government to prepare an amended

24   conditions of release, give it to the defense counsel, and

25   then submit it to me with any agreements here but because of

1    what I've seen here, I think it has to be clear that these

2    conditions apply to you individually or as an agent for

3    another, corporately or otherwise, because you do business

4    through corporations or entities that you either own or

5    control, and I don't want there to be any ambiguity in the

6    future.

7          Two, the conditions that were imposed on September 29

8    by me, the first condition -- well, it says you shall not act

9    in a fiduciary capacity in any financial transactions, so

10   that's already there, but it will be in the amended ones, too.

11         It says you shall not directly or indirectly solicit

12   money.  And then I nailed this down to individual investors,

13   nonprofit investors, family trusts, closely-held corporations

14   with less than five shareholders, and some judicial

15   engineering that I want it to be -- you know, I want it to be,

16   based on what I knew then, I think it should be a flat, and

17   what I would impose is a flat, not directly or indirectly

18   solicit money from investors either individually or as agent

19   for another.

20         And I don't think I need to have the last condition

21   which is court approval for existing investments that have to

22   be changed or anything because I'm precluding you from

23   soliciting or engaging in any of these transactions.

24         Obviously, if there are transactions that are in --

25   that something needs to be done about, your lawyers can file a

1   motion.  I will tell you, the -- I am going to remove the

2   conditions I imposed on November 13th about submitting to the

3   Court transactions because it's apparent to me from looking at

4   how you do business and the Cambridge transaction is a case in

5   point, I have no idea how to approve these transactions

6   really.

7        I don't know how I will ever have enough information

8   on a complex financing transaction to know the tax aspects of

9   it, what representations were made, you know.  And I'm not

10  going to create -- I'm not going to call every participant in

11  some financial transaction into court on a daily or weekly

12  basis to examine them about what they know or don't know.  I'm

13  going to remove the condition that was proposed on the 13th.

14  That was a condition, by the way, that was only imposed, and

15  that's Docket No. 89, that was only imposed pending my ruling

16  on this motion.  And I'm ruling on the motion, so it

17  evaporates anyway.

18       So you know, I understand there could be

19  circumstances in which you or your lawyers come and say, you

20  know, there's this -- there's something that I need to do or

21  there's a time limit on this that I need to do on existing

22  things and you want some guidance on it.  I'll do my best, but

23  I'm not going to require here court approval of anything

24  because I think by these conditions, I'm simply saying that if

25  you're going to support yourself while you're out on bond,

1   you're going to have to do it in a way other than what you've

2   been doing.

3           And that's not uncommon in these circumstances.

4   People, for example, who are indicted for dealing drugs,

5   nobody allows them to continue dealing drugs while they're on

6   bond.  They might have to get a job.  They might have to get a

7   job at Burger King.  They might have to get a job someplace

8   else.

9           Even in your situation here, had I found, frankly,

10  that you had violated the conditions of the release, you

11  probably would get another chance, okay, notwithstanding the

12  government because if somebody drops dirty, for example, and,

13  you know, they're addicted to drugs, they normally do get

14  another chance.  So before you take somebody -- before I

15  deprive somebody of their freedom, I've got to be darn sure

16  that there's no other way to mitigate risks.

17          And I think that there are -- the final condition

18  that I would impose, and I said this orally and your lawyers

19  have said you do this, but I will require, and this is common

20  in these kinds of cases, too, require disclosure of the -- of

21  your -- the charges being made against you to any employer or

22  with anybody with whom you enter into a financial or a

23  business transaction individually or as agent.  And I

24  mentioned that before but it wasn't encompassed in my order

25  entered on November 13th, but I did talk about that from the

1    bench.

2             So as I learn more information, I do not think -- I

3    am not comfortable with business as usual while you're on

4    bond.  I am comfortable that the kinds of conditions that I

5    have described do mitigate the risk that I see of financial

6    danger to the community, and you're on other conditions with

7    respect to the flight and so forth.

8             So my -- I will give you the floor, Mr. Seiden, but I

9    am proposing to modify the conditions in this way.  And if you

10   don't want to speak to it right now because you didn't know

11   that this was coming, I'm happy to continue the hearing.  I do

12   want the government -- and I'll hear from the government, too,

13   I suppose; I mean, not on the motion to revoke because I think

14   you've said everything you can say on that and I've ruled on

15   that, but with respect to the conditions, but I want to get a

16   document that they drafted, defendant looks at, and that I

17   review and then sign.

18            MR. SEIDEN:  Respectfully, your Honor, I'm going to

19   be uncharacteristically quiet.  The Cambridge transaction

20   which you brought up as not going forward as constituted, it

21   may go forward.  Now, if it goes forward, it will go without

22   him.  There will be some offload of information from now until

23   the time that he's able to offload any information with regard

24   to anything that he is aware of to third parties, but I take

25   it from your documentation or the order that you're going to

1    enter, that will not be permitted to third parties.

2         Anything else I have, we will submit to you when we

3    receive the government's indication.  I would like to footnote

4    a different comment, if I might.

5         THE COURT:  Okay.

6         MR. SEIDEN:  The agents in this matter have been

7    consistently going to third parties and specifically Mr. Evans

8    have been telling people that Mr. Rossini is a bad man and he

9    shouldn't do business with them.

10        THE COURT:  Mr. -- who is this?

11        MR. SEIDEN:  Rossini.

12        THE COURT:  Who is Mr. Evans?

13        MR. SEIDEN:  Kyle Evans is the case agent in this

14   matter.  I have notified the government of that at one time,

15   and they refused -- I'm sorry, they respectfully refused to

16   accept that information.  I will be supplying affidavits to

17   both the government and to this court, and I may consider

18   taking further action against Mr. Evans on a different basis.

19        The FBI is required to investigate crimes, not to

20   create them, not to create the party -- in the minds or say

21   bad things in the minds of third parties with regard to their

22   ability or their advisability of doing business with

23   defendants.  And I am off-put significantly by that kind of

24   conduct.

25        I'm spreading this of record.  Tactically, it's

1   probably a bad idea because I have other plans, but I need to

2   be forthright and let the Court know. We're very upset with

3   what's been going on in this matter with regard to

4   Mr. Rossini. He has not been convicted of anything yet except

5   if you want to read the reply brief of the government.

6         And for the agents to walk into places and people he

7   does business with and say he's a bad man and you should not

8   do business with him is -- I'll reserve my adjectives. It's

9   not proper, Judge. We publicly demand that it cease.

10        Other than that, we'll reserve the rest of our

11   comments until the time that we receive any documentation.

12   Thank you very much, your Honor.

13        THE COURT: Does the government have any comments?

14        MR. HOGSTROM: Judge, just a few comments. First,

15   the first thing I wanted to just go back to, and this isn't at

16   all to reargue anything on the bond motion but --

17        THE COURT: Well, if I got something wrong --

18        MR. HOGSTROM: No, no.

19        THE COURT: -- factually, I'd like to know.

20        MR. HOGSTROM: It's not that. I just wanted to

21   address what you said about -- and I know you took back the

22   use of the term "sandbagging."

23        THE COURT: Yes.

24        MR. HOGSTROM: I want to just clarify that the way

25   that that -- the reason that that happened the way it did is

1   we filed our original motion, we put details in it, but our

2   intent was to provide notice, and then we assumed we were

3   going to be having an in-court oral hearing about it and

4   instead, that went the way of having a briefing schedule where

5   our brief was already in place.

6          So it wasn't our intent to sort of just, you know,

7   put a little information in there and then come back when they

8   didn't have an opportunity to respond.

9          THE COURT:  Okay.  I appreciate that.

10         MR. HOGSTROM:  So I just want to clarify that.

11         THE COURT:  Okay.  So you thought you were going to

12  come in and argue it and when you came in, you'd provide the

13  information.

14         MR. HOGSTROM:  Correct.

15         THE COURT:  Because I checked the exhibits that you

16  filed.  You actually had that information --

17         MR. HOGSTROM:  Correct.

18         THE COURT:  -- in at the time.

19         MR. HOGSTROM:  And at the time, we actually didn't

20  have those -- the documents we attached as exhibits, the 302

21  reports hadn't yet been prepared, so we didn't have them in

22  our hands at the time we filed the motion.

23         THE COURT:  Okay.

24         MR. HOGSTROM:  And then one, just with respect to the

25  last thing that Mr. Seiden stated, he has raised this with me

1   before every time.  I've asked the agents, is that what you're

2   doing.  They said no.  I've asked Mr. Seiden both orally and

3   in e-mail for names of the people that supposedly are having

4   this contact with the agents, and I haven't received them.

5          If he's going to take further action on it, then I

6   guess we'll find out, but I would also say that it's our

7   position that if agents believe there's ongoing criminal

8   conduct, they have every right to investigate it and if

9   that -- incidental to that is that the individuals that

10  they're interviewing become concerned about why the FBI is

11  interviewing them, that's just the way it has to be.

12         THE COURT:  I will say two things about that.  One, I

13  don't have enough information to weigh in one way or another

14  on that.  I appreciate what Mr. Seiden has said and I

15  understand the -- how this could tremendously -- "frustrate"

16  is too tame a word.  I can understand he's frustrated, but I

17  don't know the details either.

18         And also as the magistrate judge in this case who is

19  charged right now with, I think, detention issues and things

20  related to that, the motion probably gets made, if it is a

21  motion at all, before the district judge, who I don't even

22  know who the district judge is -- Judge Lee, and then if he

23  wanted me to address it, he would refer it, but because I'm of

24  limited jurisdiction on this things, I can put my arms around

25  the things that I've been referred, listen to the other things

1  and then if they're referred to me, take further action as

2  necessary.

3          So I hear you, and I would encourage you to provide

4  the information to the government in whatever form, whether

5  it's a motion or whatever to see whether or not you can have

6  an effect on what's going on, what you allege is going on.

7          MR. HOGSTROM:  And then I just want to make sure I

8  understand what the proposed conditions are and then ask a

9  question about --

10          THE COURT:  Okay.

11          MR. HOGSTROM:  -- potential, what to me may be a

12  potential hole.

13          THE COURT:  Okay.

14          MR. HOGSTROM:  So the first was that he not act in a

15  fiduciary capacity --

16          THE COURT:  Right.  And to be clear, that's already

17  in --

18          MR. HOGSTROM:  Right.

19          THE COURT:  I'm sorry, Judy, for interrupting him.

20          But that's already in the order of September 29th,

21  but what I want is something that's called modified or amended

22  conditions of release that amend my initial release order and

23  my amended release order repeating everything in one place so

24  that it's not in a minute order here or a minute order there

25  and so that it's very, very clear.  Go ahead.

```
 1            MR. HOGSTROM:  Okay.  And then the second was that he

 2   not engage in the sale or resale of mortgage notes.  The

 3   third, same, that he not engage in the sale or resale of real

 4   estate.  And then both of those or all of those conditions,

 5   applied to all those conditions is the qualification that that

 6   not be -- that it is neither in an individual capacity or as

 7   an agent or as a representative of a corporate entity.

 8            THE COURT:  Yes.  I think "agency" is sufficient.

 9   I'm reading from what you gave me, Docket Entry 71.

10            MR. HOGSTROM:  Okay.

11            THE COURT:  So it's those conditions with the

12   additional clarification.  You know, it could say, "Rossini

13   shall not engage directly or indirectly either in an

14   individual capacity or as agent for another" --

15            MR. HOGSTROM:  Okay.

16            THE COURT:  -- "in the sale or resale."  And the same

17   thing with No. 2.

18            MR. HOGSTROM:  And then --

19            THE COURT:  And I guess I would say that in No. 1,

20   too, with respect to fiduciary capacity because it is possible

21   for a corporation to act in a fiduciary capacity, and I want

22   it to be clear that I'm talking about Mr. Rossini in his own

23   capacity and in any corporate capacity in which he would act.

24            MR. HOGSTROM:  And then there was also, I think after

25   that you referenced not soliciting money from investors so
```

```
 1    that would be, I guess, a fourth condition.

 2              THE COURT:  Uh-huh.

 3              MR. HOGSTROM:  And then --

 4              THE COURT:  And then the fifth would be disclosure of

 5    the indictment to any employer or anyone with whom he enters

 6    into a financial or business transaction individually or as

 7    agent for another.  And then the order also should provide

 8    that conditions imposed in the order of November 13th in

 9    Paragraph 4 of the statement are lifted --

10              MR. HOGSTROM:  Right.

11              THE COURT:  -- because the Court has ruled on the

12    government's motion to revoke bond.

13              MR. HOGSTROM:  And so follow-up questions I have are,

14    he's required to disclose the charges pending against him.

15    Does that include he's also being required to disclose his

16    conviction history?

17              THE COURT:  No.  I think it's pretty common -- I

18    mean, I'm not aware of requirements that somebody disclose

19    their entire criminal record.  What I've seen as most common

20    is the indictment.

21              MR. HOGSTROM:  Second question, you -- your statement

22    was that you're not comfortable with him doing business as

23    usual or the way he's been doing business, is not the way that

24    he can continue to earn a living.  So because we had this

25    proposal about this loan brokerage, is that included?  Is he
```

1   still allowed to broker loans?

2          For example, as proposed in the Cambridge transaction

3   which at least in its current form apparently is not going to

4   go forward, but the defendant does have a history of working

5   as a loan broker and, in fact, has been found to have

6   committed fraud in that context before.  So we would -- if

7   that is not already contemplated in the conditions, we would

8   request that he also not be permitted to broker loans.

9          THE COURT:  I mean, my -- so my intent was to

10  cover -- I frankly thought that that was covered in a lot of

11  what we were talking about here in the conditions that were

12  suggested back in September of 2015.  I don't know -- I don't

13  know what it means in the vernacular to broker loans.  What

14  does that mean?

15         MR. HOGSTROM:  I don't either.  I know that we -- I

16  know that Mr. Rossini has found -- is very creative in finding

17  ways to put himself in the middle of a transaction, usually a

18  real estate transaction, where he's going to make money.  And

19  sometimes he is -- acknowledges himself as being a principal

20  and sometimes he says, I'm not really a principal, I'm a

21  broker.

22         In the context of the Cambridge transaction, his

23  filing indicated that he was a broker.  Upon further digging,

24  it looked to us, although it's dead now so it doesn't matter,

25  but it looked to us like he was actually had a little more

1     involvement with the lender side of the transaction.

2          So I guess I don't know how to phrase the

3     restriction, but I think the same concept should apply, that

4     the defendant, given his history, should not be allowed to

5     engage in, perhaps it's part of the real estate transaction

6     and condition, but not be allowed to engage in receiving money

7     as part of the sale or resale of real estate or mortgage notes

8     or the arrangement of home loans or mortgages --

9          THE COURT:  You know, let me stop you --

10         MR. HOGSTROM:  -- or other securities.

11         THE COURT:  -- there because we shouldn't try to

12    draft conditions here on the fly like this.  It may be that

13    Mr. Seiden, after talking with Mr. Rossini, would propose to

14    you some language or talk about what he would like his client

15    to be able to continue to do.  I'm going to be the ultimate

16    judge as to whether or not that kind of activity raises the

17    same kinds of risk that I've seen in the context of the record

18    before me now.

19         You know, globally, my thinking, Mr. Seiden, was and

20    is that -- that Mr. Rossini's participation in this -- the

21    aspect of the industry involving sale and resale of mortgage

22    notes, mortgage-related instruments, real estate either owned

23    by himself or for another is something that I think while on

24    bond presents some risks that I think need to be mitigated.

25    You know, part -- I do not want -- I'm not saying Mr. Rossini

1   can't earn a living by either working for someone else or

2   doing something completely different.  I'm not going to

3   suggest what those kinds of things are, but there's a world

4   out there other than this.  I understand that this is the

5   world that he knows and that he is in.

6           So I mean, you know, you're going to have to get me

7   these conditions quickly but right now, like tomorrow, I mean,

8   I'm modifying these conditions now orally, and if there's any

9   question about stepping on one side or the other, you know --

10          MR. SEIDEN:  I'll make it right now, Judge.  He does

11  talk to some of these people on other bases, some of which are

12  people who still owe him money, some that are supporting him

13  for fees and for living, but those are not transactions.

14          THE COURT:  Yes.  And there's nothing to prevent him

15  from talking to somebody who is lending him money or someone

16  with whom he has a relationship with.  I'm not saying that.  I

17  just --

18          MR. SEIDEN:  That doesn't stop the agents from

19  calling these people and saying these kind of things.  By the

20  way, I've left their names out with Mr. Hogstrom because

21  they're not interested in having second and third visits.  We

22  have not been happy -- listen, I represented some

23  incredibly -- well, I thought they were nice people but in the

24  '80s, the government had a different opinion, and the agents

25  still conducted themselves appropriately.

1    I'm not interested in having second and third visits

2  to people who are just doing honest business and don't need to

3  hear from them again, so I haven't named them, but I will be

4  doing that.

5         THE COURT:  You know, do what you need to do.

6         MR. SEIDEN:  I will.

7         THE COURT:  And nothing I've said -- when you say

8  nice people, nothing -- I mean, I want Mr. Rossini, you to

9  know, there's nothing that I've said here that I make any

10  determination as to whether you're a nice guy or not.

11         MR. SEIDEN:  He is.

12         THE COURT:  You may be a very nice guy.  You probably

13  are a real nice guy because you interact with a tremendous

14  amount of people.

15         MR. SEIDEN:  He has circulated a letter to everybody

16  he's done business with since I think our last appearance in

17  court but even though that he is currently under indictment.

18  People still call him to do work.

19         THE COURT:  That's fine.  I just think people should

20  have notice of that.

21         In terms of what Mr. Hogstrom was talking about, I

22  mean, you know, my -- I don't want to do this on the fly

23  either, but soliciting People A who are going to be putting

24  money into Investment B to be guaranteed by Financial

25  Institution C where Mr. Rossini is in the middle of all of

1    that to me is covered in some way by what I just put here.

2    All right. And my intention is until it's fine tuned, that

3    would be covered. All right.

4         I feel like the risk that Mr. Rossini presents right

5    now and his -- you know, Mr. Rossini, unfortunately, you're

6    under indictment. That means the Court can determine what

7    condition, what you can do while you are free or put you in

8    jail so you don't do anything.

9         I'm still of the opinion that it is not necessary to

10   put you into custody to prevent you from doing things that

11   represent, I believe, a danger to the community. Rather, I

12   believe I can impose these kinds of conditions which if you

13   follow them would mitigate that danger.

14        If you don't follow them and the government comes

15   back again and you know obviously more than you even knew

16   before that you were being watched, that's another question.

17   All right. I mean, there's -- the chances are not infinite.

18        So with respect to this issue that Mr. Hogstrom is

19   raising, I think I'd like him to put something in writing,

20   send it to you, and you react to it.

21        MR. SEIDEN: We will.

22        THE COURT: Again, to the extent that Mr. --

23   hypothetically, Mr. Rossini were to get a job for a wholesaler

24   of office products or office equipment or, you know, in sales

25   or some other capacity, I'm not addressing any of that. I

1   understand that he's got to live and he's got to work.  I'm

2   just addressing things that are in this sphere.

3         So if you want to -- rather than drafting something

4   on the fly, if you want to present something, talk a little

5   about it and give me something that says this is -- you know,

6   this is what we've proposed and this is what they propose or

7   something like that, I'm happy with that, too.

8         I do want to modify these because I want to eliminate

9   any -- I don't want to be going back to the spirit.  Okay.  I

10   want to be going to the letter, and I want it to be very clear

11   to Mr. Rossini what he can and cannot do so that there's no

12   misunderstanding because I think he's entitled to that.  The

13   Court is entitled to that.  And all sides are entitled to

14   that.  That's where I am on this.

15         Go ahead, Mr. Hogstrom.

16         MR. HOGSTROM:  One additional question and then

17   another proposal.  Currently, he is -- you had imposed home

18   detention conditions that he has been abiding by.  What -- I

19   don't think we've addressed those yet, so I wanted to make

20   sure I understand.

21         THE COURT:  I wasn't intending on altering them.

22         MR. HOGSTROM:  Okay.

23         THE COURT:  If there's a motion forthcoming, I'll

24   deal with them but I don't -- you know, to me those complement

25   what we're doing here.  I don't -- I didn't see a need to

1   change them.  I do speak to Mr. Wiersema.  Mr. Wiersema tells

2   me that Mr. Rossini has been abiding by the conditions of his

3   detention.

4           Is that still true, Mr. Wiersema?

5           THE PROBATION OFFICER:  Yes, Judge, still true.

6           THE COURT:  Did you move?

7           THE DEFENDANT:  Not yet, Judge.

8           MR. HOGSTROM:  And then I wanted to raise one other

9   issue which I think in light of the number of different ways

10  in which we have had -- either there has been a finding of or

11  we have had reports of individuals interacting with

12  Mr. Rossini and giving him money and then feeling they were

13  cheated in some way, we would propose some sort of, you know,

14  at least relatively high dollar limit but some sort of figure

15  for which if Mr. Rossini is anticipating receiving an amount

16  in excess of that figure, he has to provide notice to either

17  the Court or the government.

18          And I'm not saying approval.  I completely understand

19  what your Honor is saying, being in the business of digging

20  into these transactions, but I think if, for example, as was

21  proposed before if going forward, Mr. Rossini intends to

22  engage in a transaction whereby he's going to receive

23  $250,000, for example, we'd like to have notice of that and

24  notice of who it is that's involved in the transaction so that

25  we can make sure that it's on the up-and-up.  Given his

1    history, I don't think that's unreasonable.

2         I would say -- I don't know what the dollar limit is

3    for that but something along the lines of $50,000.

4         MR. SEIDEN:  Do you really want me to be heard on

5    this, Judge?

6         THE COURT:  Sure, to make a record.

7         MR. SEIDEN:  Of course they want to do that.  They

8    already know my fee is going to be hundreds of thousands of

9    dollars, and if they can do something to submarine payment of

10   fees so that Mr. Rossini ends up with a public defender,

11   they're going to do it.  They've been working overtime on it

12   now.  Ask Mr. Evans back there.  He's already talked to

13   lawyers who told him they don't want to talk to him again and

14   he shows up at their office again.

15        I mean, this has just become bizarre.  If Mr. Rossini

16   pays any of his bills in money orders or cash, the requisite

17   8300s are filed or certified or, I guess, cashier's checks or

18   cash equivalents, but the government has no business

19   interfering with his ability to receive money and to pay for

20   his living and his attorneys.

21        MR. HOGSTROM:  Judge, we're not proposing that we

22   interfere with it --

23        MR. SEIDEN:  That's as nice as I can say it.

24        MR. HOGSTROM:  -- we're proposing that the Court

25   impose a condition of providing notice.  I'm a little

1   astonished by what Mr. Seiden just suggested.  I don't have --

2   this doesn't have anything to do with his counsel.

3        MR. SEIDEN:  Sure, it does.

4        MR. HOGSTROM:  I don't think we care.  We just want

5   to know if he is -- given the number of times that somebody,

6   he has taken large amounts of money from somebody and then

7   said later, well, there's a really good explanation for it and

8   then not paid them back, I think it is completely appropriate

9   for him to provide notice to -- so that what's the down side?

10       THE COURT:  Oh, a huge down side.  Look, I'll cut

11  through this.  Number one, they're very concerned about this

12  because they gave you notice of one transaction and it died,

13  and he was going to realize a substantial amount of money,

14  hundreds and hundreds of thousand of dollars, some of which he

15  was going to use to pay his attorneys.

16       So I can understand completely the gun shyness or the

17  trepidation with which a defendant would approach that kind of

18  a condition.

19       To me, I feel that cabining the kinds of transactions

20  in which he can participate, there's a basis for that on the

21  record.  I don't get to the basis of some other kind of

22  transaction that could be conjured.  For example, your -- I

23  don't know what other talents Mr. Rossini has, but under this

24  formula that you're asking about, which I am not agreeing to,

25  if somebody in the textile business decides that Mr. Rossini's

1    talents in the textile business or in -- with respect to real

2    estate would be helpful to that person in the textile business

3    and they're willing to hire him as an independent contractor

4    for a lump sum of $250,000, it's an employee.

5         He'd have to tell you, I've got a job for $250,000

6    and they're going to make a payment to me.  And I don't think

7    that's right.  I mean, I really don't.  I don't -- I can

8    understand why you would want it, but I'm not sure -- I do not

9    feel right now that that kind of tag is necessary in addition

10   to the types of transactions that I'm trying to put a circle

11   around.

12        MR. HOGSTROM:  Judge, I think the concern I have is

13   that we only know what we know, and most of it is by

14   happenstance.  And how are we to know if he's actually abiding

15   by your Honor's conditions?

16        I mean, our position all along has been that there is

17   no way to ensure that he's going to abide by the conditions

18   and, in our view, he has -- in our view, he's flaunted the

19   conditions that have been imposed on him.  And I understand

20   you're saying there's some technicality, some of the arguments

21   there are technical.  But you even have said now that if you

22   think he's not abiding by the spirit of many of those.

23        So going forward, especially given that he has three

24   prior convictions and he has -- there's been a judicial

25   finding in the past that he has committed further fraud while

1    on bond, how are we to know that he's abiding by your Honor's

2    conditions unless he is required to provide notice of what it

3    is that he's doing.

4           THE COURT:  I get that, and that's the case in any --

5    that's no different in any criminal case where somebody is on

6    conditions.  I mean, ideally there would be a condition where

7    the government could just, in addition to all the above, tell

8    us what you're doing every day, who you're meeting with, why

9    you're doing it, what kind of dollars you're putting in your

10    pocket.  And I'm not there yet.

11           If you want to -- if the order, in the order that

12    you're proposing and going to propose, if you want to put

13    something like this in it when you've had time to draft it and

14    give it to Mr. Seiden, I'm sure he will object to it, but if

15    you want to submit that in the proposed order to me, I'll look

16    at it.

17           But I -- what I'm trying to do is identify the kinds

18    of risks that I think the record supports here, the types of

19    transactions of which those risks are more apparent and

20    because I'd have to think about the overarching -- given

21    Mr. Rossini's past record, a requirement that, in essence, he

22    tell you anything he's doing so that you can make sure that

23    it's not illegal, and I'm not sure that's where I'm willing to

24    go.

25           I mean, if I -- if we got to that point, maybe the

1    response to that is custody.  I mean --

2              MR. HOGSTROM:  I understand.

3              THE COURT:  But I'm not there yet.

4              MR. HOGSTROM:  I understand.  I think that's all I

5    have.

6              THE COURT:  Okay.  So let's -- you know, I used to,

7    the old school here was, and you guys are probably -- I mean,

8    old school was any detention hearing, the government

9    submitted, and maybe still with some judges you do submit

10   proposed orders or is everybody using the form that Judge

11   Finnegan and I developed, the detention order form?  Are most

12   people using it?

13             We used to ask you guys to give us an order, and then

14   it used to take forever long and we used to forget what was

15   discussed on the record.  I'd like this to be pretty quick

16   that you can get them something and you get me something.  I

17   want -- I'm imposing these conditions now so that there's no

18   doubt about this, and they will be fine-tuned in the written

19   order, but I'd like to do it -- you know, today is Wednesday.

20   Within a couple of days, I'd like to get the draft, look at

21   it, and then be able to enter it.

22             MR. HOGSTROM:  Yes.  Judge, I think we would just ask

23   for -- I think we can do that.  I think we would ask for a

24   short amount of time to -- we're going to have to go consult

25   with our powers that be about whether we're going to appeal

1    the Court's ruling.  And so if we were going to do that, it

2    probably wouldn't make sense to submit the proposed conditions

3    and -- or maybe it would.  I guess it depends on --

4              THE COURT:  Yes.  I mean, if you're going to appeal,

5    I still want to enter these conditions --

6              MR. HOGSTROM:  Okay.

7              THE COURT:  -- because I want it to be really clear.

8    And if you're going to appeal, you're going to appeal both the

9    denial of the motion to revoke and potentially, you know, that

10   these conditions aren't strong enough --

11             MR. HOGSTROM:  Okay.

12             THE COURT:  -- which is fine.

13             But I want -- I want -- you know what, I'll be really

14   clear.  I'd like you to submit to me no later than Friday.

15   You've got to get it to Mr. Seiden quickly either today or

16   tomorrow your proposal.  I'd like you to submit it no --

17             MR. SEIDEN:  I have one difficulty.  We are moving on

18   Friday.  We're closing up on Thursday.  Judge, I will attempt

19   to get this done.  I will bring my tablet, and we will attempt

20   to get this done.  I hear you clearly.

21             THE COURT:  Okay.

22             MR. SEIDEN:  If there is a problem, we'll contact the

23   government and this court.

24             MS. LEWIS:  If everything goes as planned, we should

25   have our system back up and running on Friday, and we should

1    be able to take care of it but just to inform the Court that

2    we do have a minor issue of moving our offices from one

3    building to another, so everything has to get shut down before

4    it gets put back together again.

5           THE COURT:  But for the fact that I have a -- I'm

6    slammed wall to wall between now and Friday, I'm tempted to

7    just draft these myself.

8           MR. SEIDEN:  Judge, we'll figure out a way.  We'll

9    get it done.

10          THE COURT:  All right.  I would -- again, up to

11   you -- well, not up to you.  I would like you to submit to me

12   an order regardless of what your determination is on

13   appealing.

14          MR. HOGSTROM:  Okay.

15          MR. NOVAK:  And just to be clear, do you want to also

16   incorporate the original conditions of release, like don't get

17   a passport, don't --

18          THE COURT:  No, I would -- what I would envision this

19   saying is --

20          MR. NOVAK:  Just the conditions you just set forth.

21          THE COURT:  These are going to amend whatever --

22   there is an amended -- there's something on the docket that

23   says amended conditions of release.  I saw it in your exhibit

24   binder and that -- and I'm not --

25          MR. NOVAK:  You want to refer to that.

```
1              THE COURT:  Yes.

2              MR. NOVAK:  Okay.

3              THE COURT:  And I'm only -- I'm only intending to add

4   these additional conditions, not home detention, not -- these

5   would supplement --

6              MR. NOVAK:  Okay.

7              THE COURT:  -- everything in the checkbox.

8              MR. NOVAK:  Okay.

9              THE COURT:  And I'm really referring to the one where

10  I took off the financial condition, I think, and I don't know

11  what docket number it is.

12             MR. NOVAK:  We can find it.

13             THE CLERK:  It might be 42.

14             THE COURT:  42, Brenda is saying.

15             MS. LEWIS:  Are you referring to Docket 79, your

16  Honor, or the ones before that?

17             THE COURT:  Before.  So there's something called

18  amended conditions.  It was Docket 42 from August 27th.  And

19  then I think my intention is to incorporate in this everything

20  that happened afterwards.  There was the September 29th order.

21  There was the November 13th.

22             You made proposals on September 25th.  That order

23  entered on August 27th took off the financial condition, I

24  believe but, for example, it says you can attend Cook County

25  hearings for pending cases.  All of that stays.  This is just
```

1  the financial conditions, if you will.

2  　　　　MR. HOGSTROM:  Okay.

3  　　　　MS. LEWIS:  Thank you, your Honor.

4  　　　　THE COURT:  So again, I would like your proposed

5  order by the end of the week so that I can enter it the first

6  of next week or have a hearing quickly to get that done.  I

7  don't think that should prejudice you in any way in appealing

8  this if that's what you want to do, and it might be helpful

9  just to see what the amended order looks like so you have

10  everything in one place.

11  　　　　MR. HOGSTROM:  Understand.

12  　　　　MR. SEIDEN:  Very well.

13  　　　　THE COURT:  Okay.

14  　　　　MR. SEIDEN:  Thank you very much, your Honor.

15  　　　　THE COURT:  If I don't see you before the Christmas

16  holidays, everybody have a good Christmas holidays.

17  　　　　MS. LEWIS:  Likewise, your Honor.

18  　　　　THE COURT:  New Year's or whatever.

19  　　(Proceedings adjourned at 11:48 a.m.)

20

21

22

23

24

25

```
 1                    C E R T I F I C A T E

 2         I, Judith A. Walsh, do hereby certify that the

 3   foregoing is a complete, true, and accurate transcript of the

 4   proceedings had in the above-entitled case before the

 5   Honorable JEFFREY T. GILBERT, one of the judges of said Court,

 6   at Chicago, Illinois, on December 16, 2015.

 7

 8   /s/ Judith A. Walsh, CSR, RDR, CRR        December 27, 2015

 9   Official Court Reporter

10   United States District Court

11   Northern District of Illinois

12   Eastern Division

13

14

15

16

17

18

19

20

21

22

23

24

25
```