UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| | ) | 15 cr 515-1 |
| v. | ) ) | |
| ALBERT ROSSINI et al. | ) ) | Judge John Z. Lee
Magistrate Judge Jeffrey T. Gilbert |
| Defendants. | ) ) | |

**ROSSINI'S REPLY AS TO MOTION TO WITHDRAW
AND REQUEST FOR CJA APPOINTMENT**

NOW COMES Defendant, ALBERT ROSSINI ("Mr. Rossini"), by and through his attorneys, SEIDEN NETZKY LAW GROUP, LLC, and replies in support of his Motion to Withdraw and subsequent oral request for appointment under the Criminal Justice Act, and in opposition to the Government's Response Brief detailing alleged conflict of interest, stating as follows:

**Introduction**

1.  Despite the Government's attempts to shade facts to suit their purposes, there is no conflict of interest in Mr. Rossini's continued representation by Seiden Netzky Law Group, LLC. There are three separate entities with similar names and entirely different ownership which the Government continually conflate with each other in its brief. While Mr. Netzky briefly contemplated and negotiated potential terms for a loan involving Mr. Rossini, no such deal ever took place. Any involvement of properties subject to the instant case only took place in the potential and as a means to paying KK her investment monies back when she no longer wanted the properties.

2. Due to his inability while on bond for this case to work in real estate in any substantive manner, Mr. Rossini no longer has the ability to pay his attorneys, Seiden Netzky Law Group, LLC.

3. Given that there is no conflict of interest, given that counsel is familiar with the transactions, discovery, and history of the case, including similar charges brought against Mr. Rossini and subsequently dismissed in the state case regarding like allegations, and given that Mr. Rossini no longer has the ability to pay counsel, it is in the interest of justice and efficiency of Court resources for this Court to appoint Seiden Netzky Law Group, LLC, including Glenn Seiden, Theodore Netzky, Brooke L. Lewis, and Joshua Redman, as counsel under the Criminal Justice Act.

### Procedural Background

4. On August 20, 2015, an Indictment was filed in this cause wherein Rossini was charged with eleven counts of wire fraud under 18 USC §1343 and three counts of mail fraud under 18 USC §1341.

5. Rossini was released on an Appearance Bond subject to Home Detention monitored by Pretrial Services on August 24, 2015. Mr. Rossini has numerous conditions of release restricting his ability to solicit investment money and generally perform work in the real estate industry, where he previously earned his income. As a result, Mr. Rossini has lost the ability to pay counsel for his defense in this case. (Mr. Rossini's In Forma Pauperis Application and Financial Affidavit, Form CJA 23 Financial Affidavit, and three related documents are attached hereto as **Exhibit A**.)

**Rockford Commercial, Ltd., Rockford Commercial Mortgage Company, Ltd., and Rockford CM II, LLC are separate entities with separate and distinct ownership.**

6.      Mr. Murphy set up an entity named Rockford Commercial, Ltd. on or about March 21, 2013.  Mr. Rossini had and has no interest in Rockford Commercial, Ltd.  Neither Mr. Seiden nor Mr. Netzky had or has an interest in Rockford Commercial, Ltd.

7.      Mr. Rossini set up Rockford Commercial Mortgage Company, Ltd., a separate entity, for the purpose of real estate investment on or about May 17, 2013. Mr. Murphy had and has no interest in Rockford Commercial Mortgage Company, Ltd. Neither Mr. Seiden nor Mr. Netzky had or has an interest in Rockford Commercial Mortgage Company, Ltd.

8.      On or about November 5, 2013, Theodore Netzky set up a different entity, Rockford CM II, LLC.  Rockford CM II, LLC is an entity owned by three trusts for the benefit of the Seiden family, the Netzky family, and Mr. Rossini's family.  Mr. Murphy does and did not have any interest in Rockford CM II, LLC.  Rockford CM II, LLC has never completed a deal or conducted any transactions.

**The sixteen Riverdale townhomes were in severe disrepair
and could not be transferred to KK until code violations were repaired.**

9.      In approximately May or June, 2013, Mr. Rossini was presented with an opportunity to purchase a package of sixteen Riverdale townhomes from Seller LC.  The initial purchase contract was between LC and Devon Street Realty, Ltd., or assigns, Mr. Rossini's company.

10.     LC informed Mr. Rossini that as he had to make an extended trip to Israel, and due to the complications of international travel and communication, LC quitclaimed the properties to Rockford Commercial Mortgage Company, Ltd. before receiving payment, so long

3

as Mr. Rossini would take responsibility for the upkeep of the properties and payment. Mr. Rossini began work on the properties almost immediately.

11.     Shortly thereafter, Mr. Rossini received investment capital from KK of $225,000 to purchase the properties, pay the overdue real estate taxes, and make building and fire code repairs. Mr. Rossini made a payment of approximately $129,000 to fulfill his promised obligations to LC.

12.     Mr. Rossini then discovered that the Village of Riverdale would not allow further transfer of the properties from Rockford Commercial Mortgage Company, Ltd. to KK until the townhomes were in full compliance with building code. This would entail several hundred thousand dollars in addition to KK's investment.

13.     On August 20, 2013, Mr. Rossini sent KK copies of the deeds to transfer the sixteen Riverdale properties from Rockford Commercial Mortgage Company, Ltd. to KK's family trust, but Riverdale would not allow those deeds to be recorded without repairing the building code violations. (Email attached hereto as **Exhibit B**)

14.     Thereafter, KK demanded a return of her investment money in the sixteen Riverdale townhomes as well as other investments unrelated to the current motion rather than the potential completion of the transfer once building code violations were repaired. As a result, Mr. Rossini began to look for refinancing deals and other ways for him to get or borrow funds to repay KK's investment.

**The twenty Section 8 apartment buildings and
the Barnett Capital loan that never finalized or funded.**

15.     In approximately May or June, 2013, entirely separate from the KK/Riverdale investment, Mr. Rossini was presented with a potential investment opportunity in twenty, mostly section 8 rented, relatively newly built, small apartment buildings on the west and south side.

4

The buildings were in foreclosure. Harris Bank controlled the properties through its takeover of the failed Rockford, Illinois Bank, Amcore. The anticipated price for the portfolio totaled approximately $2,000,000. Mr. Rossini sought Mr. Netzky's help in finding a source from which to borrow funds to purchase the portfolio, using both the portfolio's properties and some of Mr. Rossini's own properties as collateral. Mr. Netzky introduced Mr. Rossini to Barnett Capital.

16. Over the course of the next few months, Mr. Rossini and Mr. Netzky attempted to negotiate a loan with Barnett Capital whereby Barnett Capital would loan $3,000,000, of which $2,000,000 would be used to purchase the Harris/Amcore portfolio. Originally, Mr. Netzky was going to be a co-borrower, but not a guarantor, as collateral in lieu of fees for part services.

17. As the months progressed, and KK demanded a return of her investment rather than a completion of the renovation on the Riverdale townhomes, Mr. Rossini wanted to use the line of credit in part to repay KK's investment monies, and to pay for the remainder of the renovations on the Riverdale properties.

18. In order to attempt to facilitate the loan, there were negotiations regarding whether Mr. Netzky would be a guarantor rather than just a borrower, and multiple variations of the properties that would be put up as collateral for the loan. As KK no longer wanted the Riverdale townhomes and renovations still needed to be completed in order to sell to another investor, those properties were at some points included in the potential list of collateral properties for Barnett Capital. Mr. Rossini planned to then use that money to repay KK's initial investment.

19. None of the proceeds from the proposed Barnett Capital financing were to be used for any past transactions except to pay KK her investment monies back and make the necessary

improvements to the Riverdale townhomes to make them acceptable collateral for Barnett Capital. As the deal did not close, no such transactions took place.

20. Also in order to facilitate the completion of the loan with Barnett Capital, Mr. Netzky started the new corporation Rockford CM II, LLC. Mr. Rossini and Mr. Netzky agreed to a transfer of ownership in Rockford Commercial Mortgage Company, Ltd. to Rockford CM II, LLC so that Rockford CM II, LLC could borrow the money to repay KK. That potential transfer of ownership was only to be effective if and when the Barnett Capital deal closed. As the deal did not close, no transfer of ownership took place.

21. Mr. Rossini paid Barnett Capital $10,000 in advance for its attorney's fees and drafting of the loan documents. Though Mr. Netzky and Mr. Rossini requested clarification on some of those documents, Barnett Capital cut off contact, did not return the advance loan fee of $10,000, and ceased answering phone calls or returning emails.

## **CW has and had no direct knowledge or involvement in the above deals or proposed deals, and is mistaken regarding the relevant facts.**

22. The Government further attaches a partial transcript of a conversation between CW and a Government cooperating individual, MW in which CW indicates that she believes that Mr. Netzky invested funds with Mr. Rossini to purchase the Riverdale townhomes and that rental income was being generated to pay CW's fees. However, she was either mistaken or confused, as Mr. Netzky never invested money or had any interest in the Riverdale townhomes, and Mr. Netzky never informed her of the same. CW previously worked for Mr. Netzky, and came to him looking for a job. Mr. Netzky recommended her to Mr. Rossini, who was looking for some help in the office. CW asked how Mr. Rossini would be able to pay her, and Mr. Netzky informed her that there was a potential investment opportunity and potential deal with Barnett Capital, and if that deal went through, there would be cash flow.

6

23. Mr. Netzky was neither involved in the recorded conversation nor did he direct or control CW in what to say to MW. The Government's only indication that Mr. Netzky was ever involved in the ownership of the Riverdale townhomes is a recorded conversation of an individual with no involvement or first-hand knowledge of the proposed deal or situation.

### Seiden Netzky Law Group LLC does not have and never had any interest in the lis pendens filings.

24. At the time that Mr. Rossini filed his bankruptcy, he believed that he had assigned an interest in his lis pendens filings in the notes and property he ostensibly purchased through Mr. Murphy for the purpose of securing legal fees. That tender was rejected by Seiden Netzky Law Group, LLC and was therefore not done. Seiden Netzky Law Group LLC does not have and never had any interest in the lis pendens filings.

### CONCLUSION

25. There is no conflict of interest between Seiden Netzky Law Group, LLC and Mr. Rossini for his representation in the instant case. Mr. Rossini ran into unexpected issues with the transfer of the Riverdale townhomes to KK as significant repairs needed to be made before transfer could be effectuated. Meanwhile, in a separate potential deal, Mr. Netzky was attempting to help Mr. Rossini get financing for the purchase of separate properties on the west and south side. As KK went through the process of deciding she didn't want the townhomes, and wanted her money returned to her, the potential for using the Riverdale townhomes as collateral on the Barnett Capital loan was discussed. The Barnett Capital loan terms were never finalized and the deal did not go forward.

26. Continuity of counsel will enable this case to move forward in a timely manner. There is a voluminous quantity of discovery that current counsel has already begun to sift through. Further, despite the Government's arguments, the state case which was recently

dismissed as against Mr. Rossini, while having different complaining witnesses, is substantially the same in that co-defendant Mr. Murphy took money from real estate investors and failed to acquire or provide deeds for those properties while taking the money for his own personal use.

WHEREFORE, Defendant, ALBERT ROSSINI, respectfully requests that this Court issue an order denying the Government's request for Seiden Netzky Law Group, LLC to be conflicted out of the case, and ordering that Seiden Netzky Law Group, LLC be appointed as counsel for Mr. Rossini under the Criminal Justice Act, and for any and such additional relief as this Court deems fair and just.

Dated: May 5, 2016                                     Respectfully submitted,

                                                          /s/ Glenn Seiden
                                                          Glenn Seiden 2543761
                                                          Brooke L. Lewis #6245195
                                                          SEIDEN NETZKY LAW GROUP, LLC
                                                          Attorneys for Albert Rossini
                                                          333 South Wabash Ave, Suite 2700
                                                          Chicago, IL  60604
                                                          312.236.3060

*Certificate of Service*

I, Brooke L. Lewis, an attorney, do hereby certify under penalties of law that in accordance with Fed.R.Civ.P.5 and the General Order on Electronic Case Filing (ECF), I caused the above document to be served upon the all the named attorneys of record by CM/ECF filing methods on this the May 5, 2016.

                                                          /s/ Brooke L. Lewis
                                                          Brooke L. Lewis