# Government Exhibit B

# Fwd: Term Sheet

**From:**     Bert Rossini <bertrossini4@gmail.com>
**To:**       Thomas Murphy <tmurphy@bnf-law.com>
**Subject:** Fwd: Term Sheet
**Sent:**     Sun, 9 Jun 2013 09:31:38 -0500

---------- Forwarded message ----------
From: Leslie           <        @barnettcapital.com>
Date: Thu, Jun 6, 2013 at 4:12 PM
Subject: Term Sheet
To: "TeddyN1313@aol.com" <TeddyN1313@aol.com>,
"bertrossini4@gmail.com" <bertrossini4@gmail.com>
Cc: Daniel          <         @barnettcapital.com>


Good afternoon gentlemen,

Attached, please find the term sheet for the LOC loan.

Review it and if you find it acceptable, please sign and send back by
the date listed in the closing paragraph.


Thank you,

Leslie


--

Leslie

Administrative Assistant

Distressed Debt Solutions

Barnett Capital Ltd.


[-- Mime Part, Type: application/pdf; name="LOC term sheet.pdf", Disp: attachment;
filename="LOC term sheet.pdf", Size: 106KB --]

**MIME-Version:** 1.0
**Received:**      by 10.182.7.40 with HTTP; Sun, 9 Jun 2013 07:31:38 -0700 (PDT)
**In-Reply-To:**  <64F6AD0C03D9C24EA3D7A7BB1BF6852AA3D2C3EB30@EXVMBX018-
1.exch018.msoutlookonline.net>

    Goverment Exhibit B 7/20/2015
001



Daniel
Director
Distressed Debt Solutions
Real Estate Finance

cell phone:
office phone:
n@barnettcapital.com

June 6, 2013

**VIA EMAIL**

Ted Netzky
Bert Rossini
3924 W. Devon Street
Lincolnwood, IL 60712

Re:     Term Sheet for Line-Of-Credit Loan to Theodore Netzky and Albert Rossini (the "**Borrowers**").

This letter proposal (this "**Term Sheet**") sets forth the terms upon which BCL-Capital Funding LLC (the "**Lender**") would extend a line of credit revolving loan (the "**Loan**") to the parties identified below as "**Borrower**". This Term Sheet is non-binding and is subject to the completion of Lender's Due Diligence (as defined below) and to the negotiation and execution of a binding Loan and Security Agreement (the "**Loan Agreement**") and associated documentation (the "**Loan Documents**") between the parties drafted in accordance with the terms of this Term Sheet.

LOAN AMOUNT:              Up to $3,000,000 on a revolving lend-and-reborrow note basis at an advanced rate of 30% of the asset purchase price.

BORROWERS:                 Theodore Netzky and Albert Rossini shall be the administrative borrower. Additionally, the affiliated entities to be formed which own the following properties shall be borrowers under the Loan Agreement.

Furthermore, in the event Projects (as defined below) are to be financed by the Loan and are owned by affiliated entities to be formed, such entities shall be joined to the Loan as Borrowers using a form joinder to be attached to the Loan Documents.

GUARANTORS:                Devon Street Properties, LLC ("**Guarantor**") shall execute a personal guaranty to support the Loan in favor of Lender and shall submit financial statements to Lender in connection with such guaranty.  Such guaranty shall be further supported by:
1.  Lender shall file a lien against the personal residence of each Guarantor and, if necessary to support the credit or based on joint ownership of assets, their respective spouse; and
2.  Lender shall have a collateral assignment of Guarantors' membership interests in each of the Borrowers.

ADDITIONAL COLLATERAL:     As additional collateral for the Loan, Borrower shall pledge the following properties owned by Devon Street Properties:
1. 4037 West Adams Street
2. 4045 West Wilcox
3. 5410 West Fulton
4. 2054 West James
5. 8435 South Burley
6. 4129 West Adams
7. 4129 West Adams
8. 4126 West Adams
9. 4321 South Marshfield
10. 2703-2705 West Lawrence
11. 13 Forest Lane in Barrington
12. 7401 North Imlay- SFR

SECURITY:     Lender shall have a first priority lien against all projects of any Borrower (whether now existing or to be formed) to be financed with proceeds of the Loan ("**Projects**"), and shall file a first mortgage upon all such Projects at the closing of Borrower's purchase of such Projects. Such mortgage shall contain a "confession of judgment" clause and other such language as required to ensure Lender's ability to quickly execute on its security interest in the event of a default.

SUBMISSION OF PROJECTS AND DRAWS; MAXIMUM ADVANCE AMOUNT:     Borrower shall submit Projects and supporting documentation, including purchase contracts and Project budgets ("**Budgets**"), to Lender for Lender's approval. Upon Lender's approval of each Project, Lender shall advance from the Loan for the purchase of the approved Project.

Subsequent to the purchase of a Project, Borrower may submit draws for additional advances from the Loan for work completed on each Project, in accordance with the Budget, such work to be verified by Lender's representative.

PROOF OF FUNDS     Lender shall provide Borrower with a letter on Lender's letterhead setting forth the fact that Borrower has a $3,000,000 line Loan (or such amount to which the Loan may be increased) with Lender subject to the actual available balance at the time the letter is produced, and providing Lender's contact information, for use by the Borrower in submission of contracts to purchase Projects.

TERM:     The period commencing on the date of the Loan Agreement and expiring on the date which is three (3) years after the last day of the month during which the Loan Agreement is executed (the "**Term**").

UNUSED LINE FEE:     Borrower understands that its use of the Loan is a material inducement for Lender to make the Loan and consequently shall pay quarterly to Lender an unused line fee in the amount of the interest which would have been payable in such quarter had at least 35% of the Loan been utilized by Borrower, _less_ the amount of interest actually paid by borrower in such quarter. Notwithstanding the foregoing, for the first three months of the Term, Borrower shall not be required to pay an unused line fee at the end

2

|  | of such 3 month period, and shall instead pay only on the actual outstanding principal balance. |
|---|---|
| INTEREST RATE: | Borrower shall pay interest to Lender on the outstanding principal balance of the Loan on the first day of each calendar month during the Term in an amount equal to 30% per annum, based on actual days outstanding over a 360 day year. |
| NO LOAN FEE; LENDER'S UP-FRONT COSTS: | The Loan Origination Fee is zero.  However, Borrower shall be required to cover lender's reasonable out-of-pocket expenses expended in connection with the documentation of the Loan (including reasonable fees of counsel). As an advance against such expenses, Borrower shall submit a check for $10,000 together with its signed counterpart to this Term Sheet. |

If the foregoing general terms are acceptable to you, please execute and return the attached signed copy of this letter to me via email by close of business on June 11, 2013 so I can instruct my attorneys to begin preparation of binding Loan Documents.

Very truly yours,

_David S._

_____

Daniel

**ACCEPTED:**

_____

Signature

_____

Signature

Date: _____

3



# MULTI-BOARD RESIDENTIAL REAL ESTATE CONTRACT 5.0



1 **1. THE PARTIES:** Buyer and Seller are hereinafter referred to as the "Parties".

2 Buyer(s) (Please Print) **Devon Street Realty,LTD. or assigns**

3 Seller(s) (Please Print) **L & R C**

4 If Dual Agency applies, complete Optional Paragraph 41.

5 **2. THE REAL ESTATE:** Real Estate shall be defined as the Property, all improvements, the fixtures and
6 Personal Property included therein. Seller agrees to convey to Buyer or to Buyer's designated grantee, the
7 Real Estate with the approximate lot size or acreage of **Per survey** _____ commonly known as:

8 **16 Town homes per attache list marked A,     Riverdale          IL.**
9 Address                                                    City                                      State                    Zip

10 **cook**
11 County                                          Unit # (if applicable)                    Permanent Index Number(s) of Real Estate

12 If Condo/Coop/Townhome Parking is Included: # of space(s) ~~X~~ ; identified as Space # **XXXXXXXXXX** ;
13 (check type) ~~deeded space~~ ~~limited common element~~ ~~assigned space.~~

14 **3. FIXTURES AND PERSONAL PROPERTY:** ~~All of the fixtures and included Personal Property are owned by~~
15 ~~Seller and to Seller's knowledge are in operating condition on the Date of Acceptance, unless otherwise~~
16 ~~stated herein. Seller agrees to transfer to Buyer all fixtures, all heating, electrical, plumbing and well systems~~
17 ~~together with the following items of Personal Property by Bill of Sale at Closing:~~
18 *[Check or enumerate applicable items]*

19 ~~Refrigerator~~          ~~Central Air Conditioning~~     __ Central Humidifier          __ Light Fixtures, as they exist
20 ~~Oven/ Range/ Stove~~   __ Window Air Conditioners       __ Water Softener (owned)         __ Built-in or Attached Shelving
21 __ Microwave             ~~Ceiling Fan(s)~~               __ Sump Pumps                     __ All Window Treatments & Hardware
22 __ Dishwasher            __ Intercom System               __ Electronic or Media Air Filter __ Existing Storms & Screens
23 __ Garbage Disposal      __ TV Antenna System             __ Central Vac & Equipment        __ Fireplace Screens/ Doors/ Grates
24 __ Trash Compactor       __ Satellite Dish                __ Security Systems (owned)       __ Fireplace Gas Logs
25 __ Washer                __ Outdoor Shed                   __ Garage Door Openers           __ Invisible Fence System, Collars & Box
26 __ Dryer                 __ Planted Vegetation            with all Transmitters            __ Smoke Detectors
27 ~~Attached Gas Grill~~   ~~Outdoor Play sets~~            __ All Tacked Down Carpeting      __ Carbon Monoxide Detectors

28 Other items included: **As Is Where Is.**
29 Items NOT included: **XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX**
30 ~~Seller warrants to Buyer that all fixtures, systems and Personal Property included in this Contract shall be in~~
31 ~~operating condition at Possession, except:~~ **XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX**
32 ~~A system or item shall be deemed to be in operating condition if it performs the function for which it is~~
33 ~~intended, regardless of age, and does not constitute a threat to health or safety.~~
34 ~~Home Warranty~~ ~~shall~~ ~~shall not be included at a Premium not to exceed $~~ **XXXXXXXXXXXXX**

35 **4. PURCHASE PRICE:** Purchase Price of $ *152,000* _____ shall be paid as follows: Initial earnest money
36 of $ **1,000** _____ by ~~check,~~ ~~cash~~ OR __ note due on **Investor's acceptance** , 20 ___ to be increased
37 to a total of $ *152,000* by **Closing** _____ , 20 ___. The earnest money shall be held by the
38 *[check one]* Seller's Broker __ Buyer's Broker as "Escrowee", in trust for the mutual benefit of the Parties.
39 The balance of the Purchase Price, as adjusted by prorations, shall be paid at Closing by wire transfer of

Buyer Initial ____        Buyer Initial _____        Seller Initial ____        Seller Initial ____
Address **16 Town homes per attache list marked A,     Riverdale          IL.**        v5.0e

1

Goverment Exhibit B - 005

40  funds, or by certified, cashier's, mortgage lender's or title company's check (provided that the title company's
41  check is guaranteed by a licensed title insurance company).

42  **5. CLOSING:** Closing or escrow payout shall be on <u>7 days after acceptance</u>, 20____ or at such time as mutually
43  agreed by the Parties in writing. Closing shall take place at the escrow office of the title company (or its
44  issuing agent) that will issue the Owner's Policy of Title Insurance, situated nearest the Real Estate or as shall
45  be agreed mutually by the Parties.

46  **6. POSSESSION:** Unless otherwise provided in Paragraph 39, Seller shall deliver possession to Buyer at the
47  time of Closing. Possession shall be deemed to have been delivered when Seller has vacated the Real Estate
48  and delivered keys to the Real Estate to Buyer or to the office of the Seller's Broker.

49  **7. STATUTORY DISCLOSURES:** If applicable, prior to signing this Contract, Buyer *[check one]* ❑ has ❑ has
50  not received a completed Illinois Residential Real Property Disclosure Report; *[check one]* ❑ has ❑ has not
51  received the EPA Pamphlet, "Protect Your Family From Lead in Your Home"; *[check one]* ❑ has ❑ has not
52  received a Lead-Based Paint Disclosure; *[check one]* ❑ has ❑ has not received the IEMA Pamphlet "Radon
53  Testing Guidelines for Real Estate Transactions"; *[check one]* ❑ has ❑ has not received the Disclosure of
54  Information on Radon Hazards.

55  **8. PRORATIONS:** Proratable items shall include, without limitation, rents and deposits (if any) from tenants;
56  Special Service Area or Special Assessment Area tax for the year of Closing only; utilities, water and sewer;
57  and Homeowner or Condominium Association fees (and Master / Umbrella Association fees, if applicable).
58  Accumulated reserves of a Homeowner / Condominium Association(s) are not a proratable item. Seller
59  represents that as of the Date of Acceptance Homeowner / Condominium Association(s) fees are $ <u>xxxxxxxxx</u>
60  per <u>XXXXX</u> (and, if applicable, Master / Umbrella Association fees are $ <u>XXXXXXXX</u> per xxxxxx ). Seller agrees
61  to pay prior to or at Closing any special assessments (by any association or governmental entity) confirmed
62  prior to the Date of Acceptance. Installments due after the year of Closing for a Special Assessment Area or
63  Special Service Area shall not be a proratable item and shall be payable by Buyer. The general Real Estate
64  taxes shall be prorated as of the date of Closing based on **105** % of the most recent ascertainable full year
65  tax bill. All prorations shall be final as of Closing, except as provided in Paragraph 20. If the amount of the
66  most recent ascertainable full year tax bill reflects a homeowner, senior citizen or other exemption, a senior
67  freeze or senior deferral, then Seller has submitted or will submit in a timely manner all necessary
68  documentation to the appropriate governmental entity, before or after Closing, to preserve said exemption(s).

69  **9. ATTORNEY REVIEW:** TO BE PAID 50% - 50% BY BUYER & SELLERS  LC  RC  Within five (5) Business Days after the Date of Acceptance, the attorneys for the
70  respective Parties, by Notice, may:
71  (a) Approve this Contract; or
72  (b) Disapprove this Contract, which disapproval shall not be based solely upon the Purchase Price; or
73  (c) Propose modifications except for the Purchase Price. If within ten (10) Business Days after the Date of
74      Acceptance written agreement is not reached by the Parties with respect to resolution of the proposed
75      modifications, then either Party may terminate this Contract by serving Notice, whereupon this Contract
76      shall be null and void; or
77  (d) Propose suggested changes to this Contract. If such suggestions are not agreed upon, neither Party may
78      declare this Contract null and void and this Contract shall remain in full force and effect.
79  Unless otherwise specified, all Notices shall be deemed made pursuant to Paragraph 9(c). If Notice is not
80  served within the time specified herein, the provisions of this paragraph shall be deemed waived by the
81  Parties and this Contract shall remain in full force and effect.

| *Buyer Initial* RC | *Buyer Initial* | *Seller Initial* LC | *Seller Initial* RC |
|---|---|---|---|

*Address* **16 Town homes per attache list marked A,   Riverdale**          **IL.**   v5.0e

Goverment Exhibit B - 006

82  **10. PROFESSIONAL INSPECTIONS AND INSPECTION NOTICES:** Buyer may conduct at Buyer's expense
83  (unless otherwise provided by governmental regulations) a home, radon, environmental, lead-based paint
84  and/or lead-based paint hazards (unless separately waived), and or wood destroying insect infestation
85  inspection of the Real Estate by one or more licensed or certified inspection service(s).
86  (a) Buyer agrees that minor repairs and routine maintenance items of the Real Estate do not constitute
87  defects and are not a part of this contingency. **The fact that a functioning major component may be at**
88  **the end of its useful life shall not render such component defective for purposes of this paragraph.**
89  Buyer shall indemnify Seller and hold Seller harmless from and against any loss or damage caused by the
90  acts or negligence of Buyer or any person performing any inspection. The home inspection shall cover
91  only the major components of the Real Estate, including but not limited to central heating system(s),
92  central cooling system(s), plumbing and well system, electrical system, roof, walls, windows, ceilings,
93  floors, appliances and foundation. A major component shall be deemed to be in operating condition if it
94  performs the function for which it is intended, regardless of age, and does not constitute a threat to health
95  or safety. If radon mitigation is performed, Seller shall pay for any retest.
96  (b) Buyer shall serve Notice upon Seller or Seller's attorney of any defects disclosed by any inspection for
97  which Buyer requests resolution by Seller, together with a copy of the pertinent pages of the inspection
98  reports within five (5) Business Days (ten (10) calendar days for a lead-based paint and/or lead-based
99  paint hazard inspection) after the Date of Acceptance. If within ten (10) Business Days after the Date of
100 Acceptance written agreement is not reached by the Parties with respect to resolution of all inspection
101 issues, then either Party may terminate this Contract by serving Notice to the other Party, whereupon this
102 Contract shall be null and void.
103 (c) Notwithstanding anything to the contrary set forth above in this paragraph, in the event the inspection
104 reveals that the condition of the Real Estate is unacceptable to Buyer and Buyer serves Notice to Seller
105 within five (5) Business Days after the Date of Acceptance, this Contract shall be null and void.
106 (d) Failure of Buyer to conduct said inspection(s) and notify Seller within the time specified operates as a
107 waiver of Buyer's right to terminate this Contract under this Paragraph 10 and this Contract shall remain
108 in full force and effect.

109 **11. MORTGAGE CONTINGENCY:** This Contract is contingent upon Buyer obtaining a firm written mortgage
110 commitment (except for matters of title and survey or matters totally within Buyer's control) on or before
111 **CASH OFFER** , 20____ for a *[check one]* ☐ fixed ☐ adjustable; *[check one]* ☐ conventional ☐ FHA/VA
112 (if FHA/VA is chosen, complete Paragraph 35) ☐ other **XXXXXXXXXXXXXXX** loan of **XXXX**% of Purchase
113 Price, plus private mortgage insurance (PMI), if required. The interest rate (initial rate, if applicable) shall not
114 exceed **XXXX**% per annum, amortized over not less than **XXXX** years. Buyer shall pay loan origination fee
115 and/or discount points not to exceed **XXXX**% of the loan amount. Buyer shall pay the cost of application,
116 usual and customary processing fees and closing costs charged by lender. (Complete Paragraph 33 if closing
117 cost credits apply.) Buyer shall make written loan application within five (5) Business Days after the Date of
118 Acceptance. **Failure to do so shall constitute an act of Default under this Contract. If Buyer, having applied**
119 **for the loan specified above, is unable to obtain such loan commitment and serves Notice to Seller within**
120 **the time specified, this Contract shall be null and void. If Notice of inability to obtain such loan**
121 **commitment is not served within the time specified, Buyer shall be deemed to have waived this**
122 **contingency and this Contract shall remain in full force and effect. Unless otherwise provided in**
123 **Paragraph 31, this Contract shall not be contingent upon the sale and/or closing of Buyer's existing real**
124 **estate.** Buyer shall be deemed to have satisfied the financing conditions of this paragraph if Buyer obtains a
125 loan commitment in accordance with the terms of this paragraph even though the loan is conditioned on the
126 sale and/or closing of Buyer's existing real estate. If Seller at Seller's option and expense, within thirty (30)
127 days after Buyer's Notice, procures for Buyer such commitment or notifies Buyer that Seller will accept a

| Buyer Initial BR | Buyer Initial _____ | Seller Initial L.C | Seller Initial RC | |
|---|---|---|---|---|
| Address **16 Town homes per attache list marked A,   Riverdale** | | | **IL.** | v5.0e |

3

128 purchase money mortgage upon the same terms, this Contract shall remain in full force and effect. In such
129 event, Seller shall notify Buyer within five (5) Business Days after Buyer's Notice of Seller's election to
130 provide or obtain such financing, and Buyer shall furnish to Seller or lender all requested information and
131 shall sign all papers necessary to obtain the mortgage commitment and to close the loan.

**12. HOMEOWNER INSURANCE:** This Contract is contingent upon Buyer obtaining evidence of insurability for
133 an Insurance Service Organization HO-3 or equivalent policy at standard premium rates within ten (10)
134 Business Days after the Date of Acceptance. **If Buyer is unable to obtain evidence of insurability and serves**
135 **Notice with proof of same to Seller within the time specified, this Contract shall be null and void. If**
136 **Notice is not served within the time specified, Buyer shall be deemed to have waived this contingency**
137 **and this Contract shall remain in full force and effect.**

**13. FLOOD INSURANCE:** Unless previously disclosed in the Illinois Residential Real Property Disclosure
139 Report, Buyer shall have the option to declare this Contract null and void if the Real Estate is located in a
140 special flood hazard area which requires Buyer to carry flood insurance. **If Notice of the option to declare**
141 **this Contract null and void is not given to Seller within ten (10) Business Days after the Date of**
142 **Acceptance or by the Mortgage Contingency deadline date described in Paragraph 11 (whichever is later),**
143 **Buyer shall be deemed to have waived such option and this Contract shall remain in full force and effect.**
144 Nothing herein shall be deemed to affect any rights afforded by the Residential Real Property Disclosure Act.

**14. CONDOMINIUM/COMMON INTEREST ASSOCIATIONS:** (If applicable) The Parties agree that the terms
146 contained in this paragraph, which may be contrary to other terms of this Contract, shall supersede any
147 conflicting terms.

148 (a) Title when conveyed shall be good and merchantable, subject to terms, provisions, covenants and
149 conditions of the Declaration of Condominium Covenants, Conditions and Restrictions and all
150 amendments; public and utility easements including any easements established by or implied from the
151 Declaration of Condominium/Covenants, Conditions and Restrictions or amendments thereto; party wall
152 rights and agreements; limitations and conditions imposed by the Condominium Property Act;
153 installments due after the date of Closing of general assessments established pursuant to the Declaration
154 of Condominium/Covenants, Conditions and Restrictions.

155 (b) Seller shall be responsible for payment of all regular assessments due and levied prior to Closing and for
156 all special assessments confirmed prior to the Date of Acceptance.

157 (c) Buyer has, within five (5) Business Days from the Date of Acceptance, the right to demand from Seller
158 items as stipulated by the Illinois Condominium Property Act, if applicable, and Seller shall diligently
159 apply for same. This Contract is subject to the condition that Seller be able to procure and provide to
160 Buyer, a release or waiver of any option of first refusal or other pre-emptive rights of purchase created by
161 the Declaration of Condominium/Covenants, Conditions and Restrictions within the time established by
162 the Declaration of Condominium/Covenants, Conditions and Restrictions. In the event the
163 Condominium Association requires the personal appearance of Buyer and/or additional documentation,
164 Buyer agrees to comply with same.

165 (d) In the event the documents and information provided by Seller to Buyer disclose that the existing
166 improvements are in violation of existing rules, regulations or other restrictions or that the terms and
167 conditions contained within the documents would unreasonably restrict Buyer's use of the premises or
168 would result in financial obligations unacceptable to Buyer in connection with owning the Real Estate,
169 then Buyer may declare this Contract null and void by giving Seller Notice within five (5) Business Days
170 after the receipt of the documents and information required by Paragraph 14(c), listing those deficiencies
171 which are unacceptable to Buyer. If Notice is not served within the time specified, Buyer shall be deemed
172 to have waived this contingency, and this Contract shall remain in full force and effect.

| Buyer Initial | Buyer Initial | Seller Initial CC | Seller Initial RC |

*Address* **16 Town homes per attache list marked A,   Riverdale**          IL.     v5.0e

4

173 (e) Seller shall not be obligated to provide a condominium survey.
174 (f) Seller shall provide a certificate of insurance showing Buyer and Buyer's mortgagee, if any, as an insured.

175 **15. THE DEED:** Seller shall convey or cause to be conveyed to Buyer or Buyer's designated grantee good and
176 merchantable title to the Real Estate by recordable general Warranty Deed, with release of homestead rights,
177 (or the appropriate deed if title is in trust or in an estate), and with real estate transfer stamps to be paid by
178 Seller (unless otherwise designated by local ordinance). Title when conveyed will be good and merchantable,
179 subject only to: general real estate taxes not due and payable at the time of Closing; covenants, conditions
180 and restrictions of record; and building lines and easements, if any, provided they do not interfere with the
181 current use and enjoyment of the Real Estate.

182 **16. TITLE:** At Seller's expense, Seller will deliver or cause to be delivered to Buyer or Buyer's attorney within
183 customary time limitations and sufficiently in advance of Closing, as evidence of title in Seller or Grantor, a
184 title commitment for an ALTA title insurance policy in the amount of the Purchase Price with extended
185 coverage by a title company licensed to operate in the State of Illinois, issued on or subsequent to the Date of
186 Acceptance, subject only to items listed in Paragraph 15. The requirement to provide extended coverage shall
187 not apply if the Real Estate is vacant land. The commitment for title insurance furnished by Seller will be
188 conclusive evidence of good and merchantable title as therein shown, subject only to the exceptions therein
189 stated. If the title commitment discloses any unpermitted exceptions or if the Plat of Survey shows any
190 encroachments or other survey matters that are not acceptable to Buyer, then Seller shall have said
191 exceptions, survey matters or encroachments removed, or have the title insurer commit to either insure
192 against loss or damage that may result from such exceptions or survey matters or insure against any court-
193 ordered removal of the encroachments. If Seller fails to have such exceptions waived or insured over prior to
194 Closing, Buyer may elect to take the title as it then is with the right to deduct from the Purchase Price prior
195 encumbrances of a definite or ascertainable amount. Seller shall furnish Buyer at Closing an Affidavit of Title
196 covering the date of Closing, and shall sign any other customary forms required for issuance of an ALTA
197 Insurance Policy.

198 **17. PLAT OF SURVEY:** Not less than one (1) Business Day prior to Closing, except where the Real Estate is a
199 condominium (see Paragraph 14) Seller shall, at Seller's expense, furnish to Buyer or Buyer's attorney a Plat
200 of Survey that conforms to the current Minimum Standards of Practice for boundary surveys, is dated not
201 more than six (6) months prior to the date of Closing, and is prepared by a professional land surveyor
202 licensed to practice land surveying under the laws of the State of Illinois. The Plat of Survey shall show
203 visible evidence of improvements, rights of way, easements, use and measurements of all parcel lines. The
204 land surveyor shall set monuments or witness corners at all accessible corners of the land. All such corners
205 shall also be visibly staked or flagged. The Plat of Survey shall include the following statement placed near
206 the professional land surveyor seal and signature: "This professional service conforms to the current Illinois
207 Minimum Standards for a boundary survey." A Mortgage Inspection, as defined, is not a boundary survey
208 and is not acceptable.

209 **18. ESCROW CLOSING:** At the election of either Party, not less than five (5) Business Days prior to Closing,
210 this sale shall be closed through an escrow with the lending institution or the title company in accordance
211 with the provisions of the usual form of Deed and Money Escrow Agreement, as agreed upon between the
212 Parties, with provisions inserted in the Escrow Agreement as may be required to conform with this Contract.
213 The cost of the escrow shall be paid by the Party requesting the escrow. If this transaction is a cash purchase
214 (no mortgage is secured by Buyer), the Parties shall share the title company escrow closing fee equally.

215 **19. DAMAGE TO REAL ESTATE OR CONDEMNATION PRIOR TO CLOSING:** If prior to delivery of the deed the
216 Real Estate shall be destroyed or materially damaged by fire or other casualty, or the Real Estate is taken by

Buyer Initial _BP_     Buyer Initial _____     Seller Initial _CC_     Seller Initial _RC_
Address **16 Town homes per attache list marked A,**     **Riverdale**     **IL.**   v5.0e

5

217 condemnation, then Buyer shall have the option of either terminating this Contract (and receiving a refund of
218 earnest money) or accepting the Real Estate as damaged or destroyed, together with the proceeds of the
219 condemnation award or any insurance payable as a result of the destruction or damage, which gross
220 proceeds Seller agrees to assign to Buyer and deliver to Buyer at Closing. Seller shall not be obligated to
221 repair or replace damaged Improvements. The provisions of the Uniform Vendor and Purchaser Risk Act of
222 the State of Illinois shall be applicable to this Contract, except as modified by this paragraph.

223 **20. REAL ESTATE TAX ESCROW:** In the event the Real Estate is improved, but has not been previously taxed
224 for the entire year as currently improved, the sum of three percent (3%) of the Purchase Price shall be
225 deposited in escrow with the title company with the cost of the escrow to be divided equally by Buyer and
226 Seller and paid at Closing. When the exact amount of the taxes to be prorated under this Contract can be
227 ascertained, the taxes shall be prorated by Seller's attorney at the request of either Party and Seller's share of
228 such tax liability after proration shall be paid to Buyer from the escrow funds and the balance, if any, shall be
229 paid to Seller. If Seller's obligation after such proration exceeds the amount of the escrow funds, Seller agrees
230 to pay such excess promptly upon demand.

231 **21. SELLER REPRESENTATIONS:** Seller represents that with respect to the Real Estate Seller has no
232 knowledge of nor has Seller received written notice from any governmental body regarding:
233 (a) zoning, building, fire or health code violations that have not been corrected;
234 (b) any pending rezoning;
235 (c) boundary line disputes;
236 (d) any pending condemnation or Eminent Domain proceeding;
237 (e) easements or claims of easements not shown on the public records;
238 (f) any hazardous waste on the Real Estate;
239 (g) any improvements to the Real Estate for which the required permits were not obtained;
240 (h) any improvements to the Real Estate which are not included in full in the determination of the most
241 recent tax assessment; or
242 (i) any improvements to the Real Estate which are eligible for the home improvement tax exemption.

243 Seller further represents that:
244 1. There [check one] ☐ is ☒ is not a pending or unconfirmed special assessment affecting the Real Estate by
245 any association or governmental entity payable by Buyer after date of Closing.
246 2. The Real Estate [check one] ☐ is ☒ is not located within a Special Assessment Area or Special Service
247 Area, payments for which will not be the obligation of Seller after the year in which the Closing occurs.
248 If any of the representations contained herein regarding a Special Assessment Area or Special Service
249 Area are unacceptable to Buyer, Buyer shall have the option to declare this Contract null and void. If
250 Notice of the option to declare this Contract null and void is not given to Seller within ten (10) Business
251 Days after the Date of Acceptance or by the Mortgage Contingency deadline date described in Paragraph
252 11 (whichever is later), Buyer shall be deemed to have waived such option and this Contract shall remain
253 in full force and effect. Seller's representations contained in this paragraph shall survive the Closing.

254 **22. CONDITION OF REAL ESTATE AND INSPECTION:** Seller agrees to leave the Real Estate in broom clean
255 condition. All refuse and personal property that is not to be conveyed to Buyer shall be removed from the
256 Real Estate at Seller's expense prior to delivery of Possession. Buyer shall have the right to inspect the Real
257 Estate, fixtures and included Personal Property prior to Possession to verify that the Real Estate,
258 improvements and included Personal Property are in substantially the same condition as of the Date of
259 Acceptance, normal wear and tear excepted.

| Buyer Initial ___ | Buyer Initial ___ | Seller Initial _L.C_ | Seller Initial _RC_ |
|---|---|---|---|
| Address **16 Town homes per attache list marked A,   Riverdale** | | | **IL.**   v5.0 |

6

260 **23. MUNICIPAL ORDINANCE, TRANSFER TAX, AND GOVERNMENTAL COMPLIANCE:**
261 (a) Parties are cautioned that the Real Estate may be situated in a municipality that has adopted a pre-closing
262 inspection requirement, municipal Transfer Tax or other similar ordinances. Transfer taxes required by
263 municipal ordinance shall be paid by the party designated in such ordinance.
264 (b) Parties agree to comply with the reporting requirements of the applicable sections of the Internal
265 Revenue Code and the Real Estate Settlement Procedures Act of 1974, as amended.

266 **24. BUSINESS DAYS/HOURS:** Business Days are defined as Monday through Friday, excluding Federal
267 holidays. Business Hours are defined as 8:00 A.M. to 6:00 P.M. Chicago time.

268 **25. FACSIMILE OR DIGITAL SIGNATURES:** Facsimile or digital signatures shall be sufficient for purposes of
269 executing, negotiating, and finalizing this Contract.

270 **26. DIRECTION TO ESCROWEE:** In every instance where this Contract shall be deemed null and void or if this
271 Contract may be terminated by either Party, the following shall be deemed incorporated: "and earnest money
272 refunded to Buyer upon written direction of the Parties to Escrowee or upon entry of an order by a court of
273 competent jurisdiction". There shall be no disbursement of earnest money unless Escrowee has been
274 provided written direction from Seller and Buyer. Absent a direction relative to the disbursement of earnest
275 money within a reasonable period of time, Escrowee may deposit funds with the Clerk of the Circuit Court
276 by the filing of an action in the nature of Interpleader. Escrowee shall be reimbursed from the earnest money
277 for all costs, including reasonable attorney fees, related to the filing of the Interpleader action. Seller and
278 Buyer shall indemnify and hold Escrowee harmless from any and all conflicting claims and demands arising
279 under this paragraph.

280 **27. NOTICE:** Except as provided in Paragraph 31(C)(2) regarding the manner of service for "kick-out"
281 Notices, all Notices shall be in writing and shall be served by one Party or attorney to the other Party or
282 attorney. Notice to any one of a multiple person Party shall be sufficient Notice to all. Notice shall be given in
283 the following manner:
284 (a) By personal delivery; or
285 (b) By mailing to the addresses recited herein by regular mail and by certified mail, return receipt requested.
286     Except as otherwise provided herein, Notice served by certified mail shall be effective on the date of
287     mailing; or
288 (c) By facsimile transmission. Notice shall be effective as of date and time of the transmission, provided that
289     the Notice transmitted shall be sent on Business Days during Business Hours. In the event Notice is
290     transmitted during non-business hours, the effective date and time of Notice is the first hour of the next
291     Business Day after transmission; or
292 (d) By e-mail transmission if an e-mail address has been furnished by the recipient Party or the recipient
293     Party's attorney to the sending Party or is shown on this Contract. Notice shall be effective as of date and
294     time of e-mail transmission, provided that, in the event e-mail Notice is transmitted during non-business
295     hours, the effective date and time of Notice is the first hour of the next Business Day after transmission.
296     An attorney or Party may opt out of future e-mail Notice by any form of Notice provided by this
297     Contract; or
298 (e) By commercial overnight delivery (e.g., FedEx). Such Notice shall be effective on the next Business Day
299     following deposit with the overnight delivery company.

300 **28. PERFORMANCE:** Time is of the essence of this Contract. In any action with respect to this Contract, the
301 Parties are free to pursue any legal remedies at law or in equity and the prevailing Party in litigation shall be
302 entitled to collect reasonable attorney fees and costs from the non-Prevailing Party as ordered by a court of
303 competent jurisdiction.

| Buyer Initial | Buyer Initial | Seller Initial | Seller Initial |
|---|---|---|---|
|  |  | CC | RC |

Address **16 Town homes per attache list marked A,   Riverdale**     IL.   v5.0

7

304 **29. CHOICE OF LAW/GOOD FAITH:** All terms and provisions of this Contract including but not limited to the
305 Attorney Review and Professional Inspection Paragraphs shall be governed by the laws of the State of Illinois
306 and are subject to the covenant of good faith and fair dealing implied in all Illinois contracts.

307 **30. OTHER PROVISIONS:** This Contract is also subject to those OPTIONAL PROVISIONS initialed by the
308 Parties and the following attachments, if any: **Seller is selling and buyer is buying all 16**
309 **Properties listed in attachment marked A**

310 <center>**OPTIONAL PROVISIONS (Applicable ONLY if initialed by all Parties)**</center>

311 ____ ____ ____ ____ **31. SALE OF BUYER'S REAL ESTATE:**
312 [Initials]

313 **(A) REPRESENTATIONS ABOUT BUYER'S REAL ESTATE:** Buyer represents to Seller as follows:
314   (1) Buyer owns real estate commonly known as (address):
315      XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX .
316   (2) Buyer [check one] ❑ has ❑ has not entered into a contract to sell said real estate.
317      If Buyer has entered into a contract to sell said real estate, that contract:
318      (a) [check one] ❑ is ❑ is not subject to a mortgage contingency.
319      (b) [check one] ❑ is ❑ is not subject to a real estate sale contingency.
320      (c) [check one] ❑ is ❑ is not subject to a real estate closing contingency.
321   (3) Buyer [check one] ❑ has ❑ has not listed said real estate for sale with a licensed real estate broker and
322      in a local multiple listing service.
323   (4) If Buyer's real estate is not listed for sale with a licensed real estate broker and in a local multiple
324      listing service, Buyer [check one]
325      (a) ❑ Shall list said real estate for sale with a licensed real estate broker who will place it in a local
326         multiple listing service within five (5) Business Days after the Date of Acceptance.
327         [For information only] Broker: XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
328         Broker's Address: XXXXXXXXXXXXXXXXXXXXXXXXXXXXXX         Phone: _____
329      (b) ❑ Does not intend to list said real estate for sale.
330 **(B) CONTINGENCIES BASED UPON SALE AND/OR CLOSE OF BUYER'S REAL ESTATE:**
331   (1) This Contract is contingent upon Buyer having entered into a contract for the sale of Buyer's real
332      estate that is in full force and effect as of XXXXXXXXXXXX, 20____. Such contract should provide
333      for a closing date not later than the Closing Date set forth in this Contract. If Notice is served on or
334      before the date set forth in this subparagraph that Buyer has not procured a contract for the sale of
335      Buyer's real estate, this Contract shall be null and void. If Notice that Buyer has not procured a
336      contract for the sale of Buyer's real estate is not served on or before the close of business on the
337      date set forth in this subparagraph, Buyer shall be deemed to have waived all contingencies
338      contained in this Paragraph 31, and this Contract shall remain in full force and effect. (If this
339      paragraph is used, then the following paragraph **must** be completed.)
340   (2) In the event Buyer has entered into a contract for the sale of Buyer's real estate as set forth in
341      Paragraph 31(B)(1) and that contract is in full force and effect, or has entered into a contract for the
342      sale of Buyer's real estate prior to the execution of this Contract, this Contract is contingent upon
343      Buyer closing the sale of Buyer's real estate on or before XXXXXXXXXXXX, 20____. If Notice that
344      Buyer has not closed the sale of Buyer's real estate is served before the close of business on the
345      next Business Day after the date set forth in the preceding sentence, this Contract shall be null and
346      void. If Notice is not served as described in the preceding sentence, Buyer shall be deemed to have
347      waived all contingencies contained in this Paragraph 31, and this Contract shall remain in full
348      force and effect.

| Buyer Initial | Buyer Initial | Seller Initial | Seller Initial |
|---|---|---|---|
| | | C. C. | D. C. |

Address **16 Town homes per attache list marked A,    Riverdale**                    IL.    v.5.0

<center>8</center>

349 (3) If the contract for the sale of Buyer's real estate is terminated for any reason after the date set forth in
350 Paragraph 31(B)(1) (or after the date of this Contract if no date is set forth in Paragraph 31(B)(1)),
351 Buyer shall, within three (3) Business Days of such termination, notify Seller of said termination.
352 Unless Buyer, as part of said Notice, waives all contingencies in Paragraph 31 and complies with
353 Paragraph 31(D), this Contract shall be null and void as of the date of Notice. If Notice as required
354 by this subparagraph is not served within the time specified, Buyer shall be in default under the
355 terms of this Contract.
356 **(C) SELLER'S RIGHT TO CONTINUE TO OFFER REAL ESTATE FOR SALE**: During the time of this contingency,
357 Seller has the right to continue to show the Real Estate and offer it for sale subject to the following:
358 (1) If Seller accepts another bona fide offer to purchase the Real Estate while the contingencies expressed
359 in Paragraph 31(B) are in effect, Seller shall notify Buyer in writing of same. Buyer shall then have
360 XXXXXXXXXX hours after Seller gives such Notice to waive the contingencies set forth in Paragraph
361 31(B), subject to Paragraph 31(D).
362 (2) Seller's Notice to Buyer (commonly referred to as a 'kick-out' Notice) shall be in writing and shall be
363 served on Buyer, not Buyer's attorney or Buyer's real estate agent. Courtesy copies of such "kick-out"
364 Notice should be sent to Buyer's attorney and Buyer's real estate agent, if known. Failure to provide
365 such courtesy copies shall not render Notice invalid. Notice to any one of a multiple-person Buyer
366 shall be sufficient Notice to all Buyers. Notice for the purpose of this subparagraph only shall be
367 served upon Buyer in the following manner:
368 (a) By personal delivery effective at the time and date of personal delivery; or
369 (b) By mailing to the addresses recited herein for Buyer by regular mail and by certified mail. Notice
370 shall be effective at 10:00 A.M. on the morning of the second day following deposit of Notice in
371 the U.S. Mail; or
372 (c) By commercial overnight delivery (e.g., FedEx). Notice shall be effective upon delivery or at 4:00
373 P.M. Chicago time on the next delivery day following deposit with the overnight delivery
374 company, whichever first occurs.
375 (3) If Buyer complies with the provisions of Paragraph 31(D) then this Contract shall remain in full force
376 and effect.
377 (4) If the contingencies set forth in Paragraph 31(B) are NOT waived in writing within said time period
378 by Buyer, this Contract shall be null and void.
379 (5) Except as provided in Paragraph 31(C)(2) above, all Notices shall be made in the manner provided by
380 Paragraph 27 of this Contract.
381 (6) Buyer waives any ethical objection to the delivery of Notice under this paragraph by Seller's attorney
382 or representative.
383 **(D) WAIVER OF PARAGRAPH 31 CONTINGENCIES**: Buyer shall be deemed to have waived the contingencies in
384 Paragraph 31(B) when Buyer has delivered written waiver and deposited with the Escrowee additional
385 earnest money in the amount of $ XXXXXXXXXXXXXXX in the form of a cashier's or certified check within the
386 time specified. If Buyer fails to deposit the additional earnest money within the time specified, the waiver
387 shall be deemed ineffective and this Contract shall be null and void.
388 **(E) BUYER COOPERATION REQUIRED**: Buyer authorizes Seller or Seller's agent to verify representations
389 contained in Paragraph 31 at any time, and Buyer agrees to cooperate in providing relevant information.
390 _____ _____ **32. CANCELLATION OF PRIOR REAL ESTATE CONTRACT**: In the event either Party has
391 entered into a prior real estate contract, this Contract shall be subject to written cancellation of the prior
392 contract on or before XXXXXXXXXXXXX, 20___. In the event the prior contract is not cancelled within the
393 time specified, this Contract shall be null and void. Seller's notice to the purchaser under the prior

Buyer Initial ___  Buyer Initial ___  Seller Initial _LC_  Seller Initial _RC_
Address **16 Town homes per attache list marked A,  Riverdale**  IL.  v5.0

9

394 contract should not be served until after Attorney Review and Professional Inspections provisions of this
395 Contract have expired, been satisfied or waived.

396 ____ ____ ____ ____ **33. CREDIT AT CLOSING:** Provided Buyer's lender permits such credit to show on the
397 HUD-1 Settlement Statement, and if not, such lesser amount as the lender permits, Seller agrees to credit to
398 Buyer at Closing $ XXXXXXXXXXXXXX to be applied to prepaid expenses, closing costs or both.

399 ____ ____ ____ ____ **34. INTEREST BEARING ACCOUNT:** Earnest money (with a completed W-9 and other
400 required forms), shall be held in a federally insured interest bearing account at a financial institution
401 designated by Escrowee. All interest earned on the earnest money shall accrue to the benefit of and be paid to
402 Buyer. Buyer shall be responsible for any administrative fee (not to exceed $100) charged for setting up the
403 **account.** In anticipation of Closing, the Parties direct Escrowee to close the account no sooner than ten (10)
404 Business Days prior to the anticipated Closing date.

405 ____ ____ ____ ____ **35. VA OR FHA FINANCING:** If Buyer is seeking VA or FHA financing, this provision shall
406 be applicable: **Required FHA or VA amendments and disclosures shall be attached to this Contract.** If VA,
407 the Funding Fee, or if FHA, the Mortgage Insurance Premium (MIP) shall be paid by Buyer and *[check one]*
408 ☐ shall ☐ shall not be added to the mortgage loan amount.

409 ____ ____ ____ ____ **36. INTERIM FINANCING:** This Contract is contingent upon Buyer obtaining a written
410 commitment for interim financing on or before XXXXXXXXXXXXX, 20____ in the amount of $ XXXXXXXXXXX.
411 **If Buyer is unable to secure the interim financing commitment and gives Notice to Seller within the time
412 specified, this Contract shall be null and void. If Notice is not served within the time specified, this
413 provision shall be deemed waived by the Parties and this Contract shall remain in full force and effect.**

414 ____ ____ ____ ____ **37. WELL AND/OR SEPTIC/SANITARY INSPECTIONS:** Seller shall obtain at Seller's
415 expense a well water test stating that the well delivers not less than five (5) gallons of water per minute and
416 including a bacteria and nitrate test (and lead test for FHA loans) and/or a septic report from the applicable
417 County Health Department, a Licensed Environmental Health Practitioner, or a licensed well and septic
418 inspector, each dated not more than ninety (90) days prior to Closing, stating that the well and water supply
419 and the private sanitary system are in proper operating condition with no defects noted. Seller shall remedy
420 any defect or deficiency disclosed by said report(s) prior to Closing, provided that if the cost of remedying a
421 defect or deficiency and the cost of landscaping together exceed $3,000.00, and if the Parties cannot reach
422 agreement regarding payment of such additional cost, this Contract may be terminated by either Party.
423 Additional testing recommended by the report shall be obtained at Seller's expense. If the report
424 recommends additional testing after Closing, the Parties shall have the option of establishing an escrow with
425 a mutual cost allocation for necessary repairs or replacements, or either Party may terminate this Contract
426 prior to Closing. Seller shall deliver a copy of such evaluation(s) to Buyer not less than one (1) Business Day
427 prior to Closing.

428 ____ ____ ____ ____ **38. WOOD DESTROYING INFESTATION:** Notwithstanding the provisions of Paragraph 10,
429 within ten (10) Business Days after the Date of Acceptance, Seller at Seller's expense shall deliver to Buyer a
430 written report, dated not more than six (6) months prior to the date of Closing, by a licensed inspector
431 certified by the appropriate state regulatory authority in the subcategory of termites, stating that there is no
432 visible evidence of active infestation by termites or other wood destroying insects. Unless otherwise agreed
433 between the Parties, if the report discloses evidence of active infestation or structural damage, Buyer has the
434 option within five (5) Business Days of receipt of the report to proceed with the purchase or declare this
435 Contract null and void.

| Buyer Initial _GW_ | Buyer Initial _____ | Seller Initial _LC_ | Seller Initial _RC_ |
|---|---|---|---|
| Address **16 Town homes per attache list marked A,** Riverdale | | IL. | v5.0 |

10

Goverment Exhibit B - 014

436 ___ ___ ___ **39. POST CLOSING POSSESSION:** Possession shall be delivered no later than 11:59 P.M.
437 on the date that is XXXXXX days after the date of Closing ("the Possession Date"). Seller shall be responsible
438 for all utilities, contents and liability insurance, and home maintenance expenses until delivery of possession.
439 Seller shall deposit in escrow at Closing with XXXXXXXXXXX _____, [check one] ❑ one percent (1%) of the
440 Purchase Price ❑ the sum of $ XXXXXXXXXX _____ to be paid by Escrowee as follows:
441 (a) The sum of $ XXXXXXXXXX _____ per day for use and occupancy from and including the day after
442 Closing to and including the day of delivery of Possession, if on or before the Possession Date;
443 (b) The amount per day equal to three (3) times the daily amount set forth herein shall be paid for each day
444 after the Possession Date specified in this paragraph that Seller remains in possession of the Real Estate;
445 and
446 (c) The balance, if any, to Seller after delivery of Possession and provided that the terms of Paragraph 22
447 have been satisfied. Seller's liability under this paragraph shall not be limited to the amount of the
448 possession escrow deposit referred to above. Nothing herein shall be deemed to create a
449 ~~landlord/Tenant relationship between the Parties.~~

*BR   LC   RC*

450 ___ ___ ___ **40. "AS IS" CONDITION:** This Contract is for the sale and purchase of the Real Estate in its
451 "As Is" condition as of the Date of Offer. Buyer acknowledges that no representations, warranties or
452 guarantees with respect to the condition of the Real Estate have been made by Seller or Seller's Designated
453 Agent other than those known defects, if any, disclosed by Seller. ~~Buyer may conduct an inspection at~~
454 ~~Buyer's expense. In that event, Seller shall make the Real Estate available to Buyer's inspector at reasonable~~
455 ~~times. Buyer shall indemnify Seller and hold Seller harmless from and against any loss or damage caused by~~
456 ~~the acts or negligence of Buyer or any person performing any inspection. In the event the inspection reveals~~
457 ~~that the condition of the Real Estate is unacceptable to Buyer and Buyer so notifies Seller within five (5)~~
458 ~~Business Days after the Date of Acceptance, this Contract shall be null and void. Failure of Buyer to notify~~
459 ~~Seller or to conduct said inspection operates as a waiver of Buyer's right to terminate this Contract under~~
460 ~~this paragraph and this Contract shall remain in full force and effect.~~ Buyer acknowledges that the
461 provisions of Paragraph 10 and the warranty provisions of Paragraph 5 do not apply to this Contract.

462 ___ ___ ___ **41. CONFIRMATION OF DUAL AGENCY:** The Parties confirm that they have previously
463 consented to XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
464 (Licensee) acting as a Dual Agent in providing brokerage services on their behalf and specifically consent to
465 Licensee acting as a Dual Agent with regard to the transaction referred to in this Contract.

466 ___ ___ ___ **42. SPECIFIED PARTY APPROVAL:** This Contract is contingent upon the approval of the
467 Real Estate by XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
468 Buyer's Specified Party, within five (5) Business Days after the Date of Acceptance. In the event Buyer's
469 Specified Party does not approve of the Real Estate and Notice is given to Seller within the time specified,
470 this Contract shall be null and void. If Notice is not served within the time specified, this provision shall be
471 ~~deemed waived by the Parties and this Contract shall remain in full force and effect.~~

*BR   LC   RC*

472 ___ ___ ___ **43. MISCELLANEOUS PROVISIONS:** Buyer's and Seller's obligations are contingent upon
473 the Parties entering into a separate written agreement consistent with the terms and conditions set forth
474 herein, and with such additional terms as either Party may deem necessary, providing for one or more of the
475 following: *(check applicable boxes)*
476 ❑ Articles of Agreement for Deed or          ❑ Assumption of Seller's Mortgage          ❑ Commercial / Investment
477   Purchase Money Mortgage                     ❑ Cooperative Apartment                   ❑ New Construction
478 ❑ Short Sale                                  ❑ Tax-Deferred Exchange                   ❑ Vacant Land

*BR* ❑✓ OWNER TRANSFER DEED OUTSIDE OF TITLE COMPANY.

| Buyer Initial *BR* | Buyer Initial _____ | Seller Initial *LC* | Seller Initial *RC* |
|---|---|---|---|
| Address **16 Town homes per attache list marked A,    Riverdale** | | **IL.** | v5.0 |

Goverment Exhibit B - 015

479 **THIS DOCUMENT WILL BECOME A LEGALLY BINDING CONTRACT WHEN SIGNED BY ALL PARTIES AND**
480 **DELIVERED TO THE PARTIES OR THEIR AGENTS.**

481 The Parties represent that the text of this form has not been altered and is identical to the official Multi-Board
482 Residential Real Estate Contract 5.0.

483 **6-4-2013**          *June-11-13*
484 Date of Offer        DATE OF ACCEPTANCE

485 *Bill Rossini*
486 Buyer Signature       Seller Signature

487 _____
488 Buyer Signature       Seller Signature

489 **Devon Street Realty,LTD. or assigns**    **L & R   C**
490 Print Buyer(s) Name(s) *[Required]*    Print Seller(s) Name(s) *[Required]*

491 **3924 W. Devon Ave.**
492 Address       Address

493 **Lincolnwood**     **IL.**     **60712**
494 City    State    Zip      City    State    Zip

495 **847-471-2250**
496 Phone      E-mail      Phone      E-mail

497            *FOR INFORMATION ONLY*
498
499 Buyer's Broker    MLS #      Seller's Broker    MLS #

500
501 Buyer's Designated Agent    MLS #      Seller's Designated Agent    MLS #

502
503 Phone      Fax      Phone      Fax

504
505 E-mail      E-mail

506 *Anthony K*
507 Buyer's Attorney    E-mail      Seller's Attorney    E-mail

508
509 Phone      Fax      Phone      Fax

510 **Cash Offer**
511 Mortgage Company    Phone      Homeowner's Condo Association (if any)    Phone

512 **XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX**
513 Loan Officer    Phone / Fax      Management Co.   Other Contact    Phone

514 ©2009, Illinois Real Estate Lawyers Association. All rights reserved. Unauthorized duplication or alteration of this form or
515 any portion thereof is prohibited. Official form available at www.irela.org (web site of Illinois Real Estate Lawyers
516 Association).

       Approved by the following organizations as of July 20, 2009
517 Illinois Real Estate Lawyers Association · DuPage County Bar Association · Will County Bar Association
518 Northwest Suburban Bar Association · Chicago Association of REALTORS®
519 Mainstreet Organization of REALTORS® · Aurora-Tri County Association of REALTORS® · West Towns Board of REALTORS®
520 REALTOR® Association of Northwest Chicagoland · REALTOR® Association of the Fox Valley
521 Oak Park Area Association of REALTORS® · McHenry Association of REALTORS® · Three Rivers Association of
522 REALTORS® North Shore–Barrington Association of REALTORS®

523 | Seller Rejection: This offer was presented to Seller on _____, 20___ at ___:___ AM/PM
524 | and rejected on _____, 20___ at ___:___ AM/PM _____ (Seller initials).

Buyer Initial *BR*    Buyer Initial _____ Seller Initial *L.C.*    Seller Initial *RC*
Address **16 Town homes per attache list marked A,   Riverdale**      **IL.**   v5.0

K‗       and K
ATTORNEYS AT LAW

162 N. FRANKLIN STREET, SUITE 201
CHICAGO, ILLINOIS 60606
Electronic Mail :          @sbcglobal.net

July 1, 2013

TO: Tenant

FROM: L    and R   Co   b/ A      Real Estate, Inc.

RE: Future Rent Payments

Dear Tenant:

Herewith be notified that as of the First of July, 2013, the property where you live has been sold.
The new owner is :

ROCKFORD COMMERCIAL MORTGAGE COMPANY, LTD.

3924 W. Devon Street
Lincolnwood, Illinois  60016
Phone Number: 847-471-2250

Please feel free to contact Rockford Commercial with any questions at the number noted above.
Please send all future rent payments to Rockford Commercial at the above address.

Very Truly,

L    C                                    R(    +C

Cc: Rockford Commercial Mortgage Company, Ltd.

**WARRANTY DEED**
**Statutory (ILLINOIS)**
**(INDIVIDUAL TO CORPORATION)**

THE GRANTOR, L     C(       ,
Marrried to R   l C(      l,
for the consideration of
**TEN AND 00/100   DOLLARS**
**($10.00)** and other good and
valuable consideration in
hand paid and pursuant to
authority given by the
Board of Directors of said
Corporation, CONVEY(S) and
WARRANT(S) to, ROCKFORD
COMMERCIAL MORTGAGE COMPANY
LTD., of 3924 W. Devon,
Lincolnwood, ILL. 60016 ,

(NAME AND ADDRESS OF GRANTEE)

the following described Real Estate situated in the County of   Cook   in the
State of Illinois, to wit:

LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A"

Hereby releasing and waiving all rights under and by virtue of the Homestead
Exemption Laws of the State of Illinois.

Permanent Real Estate Index Number(s) 25-33-328-049-0000
Address(es) of Real Estate: 13631 S. Wallace Street, Riverdale, IL 60827

L   C(

R   C(

State of Illinois, County of Cook, ss.

I, the undersigned, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that L    C        and R    C       , personally known to me to be the same person(s) whose name(s) is/are subscribed to the foregoing instrument, appeared before me this day in person, and he/she/they signed and delivered the said instrument, as his/her/their free and voluntary act, and for the uses and purposes therein set forth.

Given under my hand and official seal, this ____ day of June , 2013

Commission expires ____ 9/25, 2016

"OFFICIAL SEAL"
CARMEN CRESPO
NOTARY PUBLIC STATE OF ILLINOIS
MY COMMISSION EXPIRES 9/25/2016

This instrument was prepared by A    M. K            , St.
201, Chicago, IL 60606                              (NAME    AND
ADDRESS)

MAIL RECORDED DEED AND SUBSEQUENT TAX BILLS TO:

_____                    _____

_____                    _____

**From:**  K   Kl   ]   @aol.com]
**Sent:**  Monday, December 02, 2013 11:14 AM
**To:**  P:   C. V:
**Subject:**  Fwd: eFax message from "unknown" - 2 page(s), Caller-ID: UNAVAILABLE
**Attachments:**  FAX_20130813_1376421745_5.pdf; ATT00001.htm

Interesting email I found looking for sure info.

Sent from my iPhone

Begin forwarded message:

> **From:** Bert Rossini <bertrossini4@gmail.com>
> **Date:** August 13. 2013 at 2:10:10 PM PDT
> **To:** K   K   <]   @aol.com>
> **Subject: Fwd: eFax message from "unknown" - 2 page(s), Caller-ID: UNAVAILABLE**
>
> K   ,
> Two of the checks from the Bankruptcy Court was a double endorsement of the Rockford Bank and us and Bank America held it for 14 days.  Since I wrote you one check for the entire amount, I did not have enough available funds to clear the check when it came back through Bank of America.  Had I known I would have held off on writing the check.  I just realized this when I returned from Minneapolis.  I have deposited the $30,000 in money orders to your account to cover the returned payment.  I hope it has not caused you an inconvenience.  We receive another of these double endorsements on August 20 for the month of August from the Bankruptcy Court and starting September the mortgage checks will come directly to us rather than through the Court.  I have waited to send you a package with documents from Rockford and Riverdale until you return home since I did not know if you would have someone to receive the package and did not want originals to be lost and therefore will send them at the end of this week.
>
> Riverdale is ours and awaiting Village inspection and then will be able to send titles at the end of this week.  Money will be received from Section 8 by the end of this month for July and August.  Starting September, we will  receive the rents directly into your account.
>
> Additionally, we will finally get the deed on 3650 W Polk at the end of August together with all monies held by the Receiver over the past year.
> Still waiting to hear about the buyer on 2323 W Haddon.
>
> As to Long Grove, Ms K(   s attorney wanted until August 20 to break escrow and go hard on the $101,000 so I gave them the date.  Good news is that they have 7 days thereafter to close.  Regardless, the money has to go hard on August 20 for them to continue with us.  It looks like she has plenty of Vietnamese money behind her and will be able to close regardless of the mortgage contingency.
>
> Have a safe trip home and I will speak to you on Thursday.
>
> Bert

Goverment Exhibit B  030

**Novak, William (USAILN)**

| | |
|---|---|
| **From:** | Jeri                      @lplegal.com> |
| **Sent:** | Tuesday, August 20, 2013 10:24 AM |
| **To:** | d                @barnettcapital.com; Leslie |
| **Cc:** | Steven        t; Elan              @barnettcapital.com> |
| | (          @barnettcapital.com) |
| **Subject:** | Netzky/Rossini Searches [IWOV-Active.FID930239] |
| **Attachments:** | Search Results 8_19_2013.PDF |

Daniel/Leslie,

I will be sending you 2 e-mails.  This one is containing the search's on Netzky and Rossini individually and Devon Street Properties, Inc.

Devon Street Properties, Inc. is clean.

Theodore Netzky – he has 6 UCC statements filed against him personally.  They are all from 2008 or 2009.  Regarding the secured parties – there are 2 LLC's and 3 individuals. Netzky has pledged membership interests in various entities.

Albert Rossini – he has 1 federal tax lien, 4 state tax liens, 1 judgment filed with the Cook County recorder.  He also has 2 pending suits and 2 judgments filed in Cook County.  The Federal Tax lien was recorded 7/26/13 in the amount of $240,375.46. This goes back as far as 1998.  State tax liens in the amounts of $2,672.77 (2003); $14,404.10 (1998); $4,842.79 (1995); and $3,746.16 (1995).  The 1 judgment was issued in favor of the City of Chicago in the amount of $1,075.00.

The 2 pending suits in Cook County were both filed in  4/2013 - #1 it is against Comprehensive Properties, Hoya Properties LLC, Madison Mercantile Corp and Albert Rossini in the amount of $50,001.00 the complaint is attached  but the allegation is that the defendants "engaged in an on-going scheme to steal hundreds of thousands of dollars" from the plaintiff. You will need to read the complaint to follow what transpired with the execution of a settlement agreement and Rossini and entities did not follow through on the that agreement.  The last court date was August 9, 2013

#2 – filed 7/12/2013 against Albert Rossini & Meir          in the amount of $50,000.00 the verified complaint is attached. The plaintiff filed 2 counts, Breach of Contract and Issuance of Bad checks. The last court date was August 1, 2013.

The 2 judgments: the first was filed in 2010 in the amount of $149,010.00 against Rossini and Comprehensive Properties. The second was filed in 12/2003 against Central Capital PA, IL State Treasurer and Albert Rossini in the amount of $2,264.00.

Please review all of this and if you have any questions Steve will be happy to discuss them with you.

Thanks much,

**Jeri**
LEVENFELD PEARLSTEIN, LLC
400 Skokie Blvd. Suite 700
Northbrook, Illinois 60062


www.lplegal.com



Goverment Exhibit B - 021

# Riverdale

**From:**    Bert Rossini <bertrossini4@gmail.com>
**To:**      K:      Kł    <        i@aol.com>
**Subject:** Riverdale
**Sent:**    Fri, 23 Aug 2013 14:02:04 -0500

```
Dear K

Just passed inspection on the 16.  Next in the process is for me to
meet with the Fire Chief and Building Dept Chief on Monday and they
will give me the stamp on each deed to the Trust and I will have it
recorded at Chicago Title same day.

I will send you a copy of the various cashier's checks on the new
purchases when I get to the office on Saturday.  It is a great deal.

If you are available for a telephone call tomorrow let me know what
time is good.  Also, i am coming to SF for the Labor Day weekend.

Bert
```

**MIME-Version:** 1.0
**Received:**     by 10.182.122.39 with HTTP; Fri, 23 Aug 2013 12:02:04 -0700 (PDT)
**Delivered-To:** bertrossini4@gmail.com
**Message-ID:**   <CAJTnC_PiDKVosdcmXttCiCBJaVPqxB763+7Y-
                  3__Hekv4HL_cw@mail.gmail.com>
**Content-Type:** text/plain; charset=ISO-8859-1

Goverment Exhibit B - 022

**WARRANTY DEED**
**Statutory (ILLINOIS)**
**(INDIVIDUAL TO CORPORATION)**

THE GRANTOR, L████ C█████
Married to R████ C█████
for the consideration of
**TEN AND 00/100     DOLLARS**
($10.00) and other good and
valuable consideration in
hand paid and pursuant to
authority given by the
Board of Directors of said
Corporation, CONVEY(S) and
WARRANT(S) to, ROCKFORD
COMMERCIAL MORTGAGE COMPANY
LTD., of 3924 W. Devon,
Lincolnwood, ILL. 60016 ,



Doc#: 1325256054 Fee: $44.00
RHSP Fee:$9.00 RPRF Fee: $1.00
Affidavit Fee: $2.00
Karen A. Yarbrough
Cook County Recorder of Deeds
Date: 09/09/2013 01:21 PM Pg: 1 of 4

(NAME AND ADDRESS OF GRANTEE)

the following described Real Estate situated in the County of __Cook__ in the
State of Illinois, to wit:

LEGAL DESCRIPTION ATTACHED HERETO AS EXHIBIT "A"

Hereby releasing and waiving all rights under and by virtue of the Homestead
Exemption Laws of the State of Illinois.

Permanent Real Estate Index Number(s) 25-33-328-049-0000
Address(es) of Real Estate: 13631 S. Wallace Street, Riverdale, IL 60827



LIC █████

RUTH ████

```
VILLAGE OF
RIVERDALE

3454

REAL ESTATE
TRANSFER STAMP
```

State of Illinois, County of Cook, ss.

    I, the undersigned, a Notary Public in and for said County, in the State aforesaid, DO HEREBY CERTIFY that L███ C████ and R███ C█████, personally known to me to be the same person(s) whose name(s) is/are subscribed to the foregoing instrument, appeared before me this day in person, and he/she/they signed and delivered the said instrument, as his/her/their free and voluntary act, and for the uses and purposes therein set forth.

Given under my hand and official seal, this ____ day of June, 2013

Commission expires ____9/25, 2016____

"OFFICIAL SEAL"
CARMEN CRESPO
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 9/25/2016

This instrument was prepared by A███ M. K███████ ████████ St. 201, Chicago, IL 60606        (NAME AND ADDRESS)

MAIL RECORDED DEED AND SUBSEQUENT TAX BILLS TO:

_____

_____

_____

_____

## STATEMENT BY GRANTOR AND GRANTEE

The grantor or his agent affirms that, to the best of his knowledge, the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire title to real estate under the laws of the State of Illinois.

Dated _____ 9-2-13 _____          Signature: _____
                                                    Grantor or Agent

Subscribed and sworn to before me
by the said _____ 9-2-13 AGENT _____
dated _____ 9-2-13 _____ .

Notary Public _____

> OFFICIAL SEAL
> MARIANNE KLYTTA
> NOTARY PUBLIC - STATE OF ILLINOIS
> MY COMMISSION EXPIRES:07/03/17

The grantee or his agent affirms and verifies that the name of the grantee shown on the deed or assignment of beneficial interest in a land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire title to real estate under the laws of the State of Illinois.

Dated _____ 9-2-13 _____          Signature: _____
                                                    Grantee or Agent

Subscribed and sworn to before me
by the said _____ Agent _____
dated _____ 9-2-13 _____ .

Notary Public _____

> OFFICIAL SEAL
> MARIANNE KLYTTA
> NOTARY PUBLIC - STATE OF ILLINOIS
> MY COMMISSION EXPIRES:07/03/17

Note:   Any person who knowingly submits a false statement concerning the identity of a grantee shall be guilty of a Class C misdemeanor for the first offense and of a Class A misdemeanor for subsequent offenses.

(Attach to deed or Facsimile ABI to be recorded in Cook County, Illinois, if exempt under the provisions of Section 4 of the Illinois Real Estate Transfer Tax Act).

**NOTE:   LAND TRUSTEE IS NEITHER "GRANTEE OR AGENT" OF AN ASSIGNMENT OF BENEFICIAL INTEREST.**

REV: 1-96

## LEGAL DESCRIPTION

The North 25 feet of the South 60 feet of Lot 7 in Block 2 in Pacesetter Gardens, Harry
M. Quinn Memorial Subdivision, being a Subdivision of part of the Southwest ¼ of the
Southwest ¼ of Fractional Section 33, Township 37 North, Range 14, East of the Third
Principal Meridian lying South of Indian Boundary Line in Cook County, Illinois.





Mail to:

Send Subsequent Tax Bills To:

Skokie IL 60076            Skokie IL 60076

Goverment Exhibit B - 026

Memo to Daniel

From: Ted Netzky

Response to your searches

**Theodore Netzky**

1. Secured Party: Aspen Mat LLC. (first 2 UCC's)  I hypothecated my investment in one of Aspen's partnerships to secure a loan for another investment. The value of the hypothecated interest is zero and the property securing the loan is worth the debt. Since there is no value to the security, I will ask the secured party to remove the fillings.
2. Secured parties: La Salle Bank National Association, SMS Financial XXVI, LLC, SMS Financial LA, LLC, and 2 continuations (next 5) are for a debt that was sold to SMS, the debt was settled with a pay plan, that is current and will be retired within the next year.
3. Secured Party: Jacob            (next 2) I hypothecated 2 CVS stores to Jacob who had loaned me $500,000. I subsequently sold him the property and these UCC's should be removed. I will request that           's attorney's,                 remove them immediately.
4. Secured Party: Steven           . I secured a personal loan with a pledge of my interest in a LLC.
5. Secured Party: Stuart      : I secured a personal loan with a pledge of my interests in 3 LLC's.

**Albert Rossini**

1. Federal Tax Liens: $240,375. We are dealing with the IRS on settling the debt. $27,166 may not be payable because of the state of limitations. The settled amount will be paid either in cash or on a payment schedule. The 2 amounts still due the State of Illinois, $4,842 and $3,746, will be paid immediately.
2. The amount of $1,075 payable to the City of Chicago will be paid in the next few days. The property was sold to a Craig            Right after the closing, and before the title was transferred, there was a fine, which was the liability of the new buyer, who has agreed to pay it.
3. The original Nina        case was settled with a settlement agreement within which Rossini, as one of the defendants agreed to pay $170,000, which he did. The other defendant, who took the Plaintiff's money, and is probably insolvent, defaulted on the settlement. Mr. Rossini is supposed to be released from the current suit.
4. Mr. Rossini acknowledges that he owes Doris        $9,000.
5. The lawsuit with Teresa          has been settled and Mr. Rossini is paying $4,000 a month. He still has 7 or 8 payments left.
6. Mr. Rossini acknowledges he owes the                Animal Hospital $2,264.

If Barnett so desires, you can hold back whatever funds that you think are needed to pay Mr. Rossini's outstanding obligations. Seiden Law Group, P.C. will try and settle all of the above and will continue to advise you of the results of their endeavors.

Goverment Exhibit B - 028

**Novak, William (USAILN)**

| | |
|---|---|
| **From:** | Steven          @lplegal.com> |
| **Sent:** | Friday, November 01, 2013 1:09 PM |
| **To:** | Daniel      (      @barnettcapital.com) |
| **Cc:** | William S. |
| **Subject:** | Barnett-Netzky/Rossini [IWOV-Active.FID930239] |

Daniel,

Netzky called me and I went through the various properties with him re ownership, mortgages and liens.  Netzky said that he thought all the C     properties had been purchased already, but would check.

In a simple summary, Netzky said he was going to seek to have all the properties titled in a new entity that would be owned by a Family Trust and not Rossini.  In this way, all of the issues re Rossini would not potentially cause a problem re the real estate.

Netzky asked for copies of the real estate searches and summary LP prepared that we previously sent to you.  Are you OK with LP sending those things to Netzky?

With respect to Netzky getting the real estate clean up, is that sufficient for Barnett to do the deal or will you look to have everything re Rossini cleaned up also?  Netzky would like to know as this may affect how he proceeds.

Please let me know re the above.

Many thanks.

Steve

**Steven**
LEVENFELD PEARLSTEIN, LLC
400 Skokie Blvd. Suite 700
Northbrook, Illinois 60062

www.lplegal.com



Please feel free to contact my assistant, Jeri               .

----------------------------

🌲 Levenfeld Pearlstein is committed to our environment. Please join us and consider not printing this e-mail unless necessary.
In conformity with U.S. Treasury Department Circular 230, tax advice contained in this communication and any attachments is not intended to be used, and cannot be used, for the purpose of avoiding penalties that may be imposed under the Internal Revenue Code, nor may any such tax advice be used to promote, market or recommend to any person any transaction or matter that is the subject of this communication and any attachments. The intended recipients of this communication and any attachments are not subject to any limitation on the disclosure of the tax treatment or tax structure of any transaction or matter that is the subject of this communication and any attachments.

Goverment Exhibit B - 029

**Novak, William (USAILN)**

---

| | |
|---|---|
| **From:** | Steven                @lplegal.com> |
| **Sent:** | Tuesday, November 05, 2013 10:07 AM |
| **To:** | Daniel                     @barnettcapital.com) |
| **Cc:** | William S. |
| **Subject:** | FW: Burt's Property [IWOV-Active.FID930239] |

Daniel,
Once I get whatever he sends I look at it and contact you to discuss.
Steve

**Steven**
LEVENFELD PEARLSTEIN, LLC
400 Skokie Blvd. Suite 700
Northbrook, Illinois 60062

_____
www.lplegal.com



**Unusually Good**™
Please feel free to contact my assistant, Jeri                    .

**From:** Teddyn1313 [mailto:teddyn1313@aol.com]
**Sent:** Tuesday, November 05, 2013 10:00 AM
**To:** Steven
**Cc:**            @barnettcapital.com; bertrossini4@aol.com
**Subject:** Re: Burt's Property [IWOV-Active.FID930239]

Steve, we are putting mostly different properties into the collateral pool. I am having everything put into one new LLC, to which I will be the only Manager. I will also supply the titles to all the properties which will be brought down to this entity, which will be clean and easy to verify. Since Bert will only be a beneficiary to one of the Trusts that will have a ownership interest in the LLC, his past issues will not have any bearing on the collateral. I will be delivering a complete package to you either tomorrow or Thursday. I am sorry for the work we have caused you and hope the clean package will make up for it. Ted Netzky

-----Original Message-----
From: Steven                @lplegal.com>
To: Daniel                @barnettcapital.com>; Teddy <teddyn1313@aol.com>
Sent: Fri, Nov 1, 2013 6:04 pm
Subject: RE: Burt's Property [IWOV-Active.FID930239]

Ted,
Per your request, attached is the information on the real estate in question.
Steve

**Steven**
LEVENFELD PEARLSTEIN, LLC

1

Goverment Exhibit B - 030

400 Skokie Blvd. Suite 700
Northbrook, Illinois 60062

www.lplegal.com



Unusually Good™

Please feel free to contact my assistant, Jeri             at

---

**From:** Daniel                        @barnettcapital.com]
**Sent:** Thursday, October 31, 2013 3:40 PM
**To:** Teddy
**Cc:** Steven
**Subject:** Burt's Property

Ted,

Please call Steve           regarding Burt's properties and the ownership.

**Steven**
LEVENFELD PEARLSTEIN, LLC
400 Skokie Blvd. Suite 700
Northbrook, Illinois 60062

Thanks
--
**Daniel**
Director
Distressed Debt Solutions
Real Estate Finance
Barnett Capital Ltd.

-----------------------------

🌲  Levenfeld Pearlstein is committed to our environment. Please join us and consider not printing this e-mail unless necessary.
In conformity with U.S. Treasury Department Circular 230, tax advice contained in this communication and any attachments is not intended to be used, and cannot be used, for the purpose of avoiding penalties that may be imposed under the Internal Revenue Code, nor may any such tax advice be used to promote, market or recommend to any person any transaction or matter that is the subject of this communication and any attachments. The intended recipients of this communication and any attachments are not subject to any limitation on the disclosure of the tax treatment or tax structure of any transaction or matter that is the subject of this communication and any attachments.

This message (and any associated files) is intended only for the use of the individual or entity to which it is addressed and may contain information that is confidential, subject to copyright or constitutes a trade secret. If you are not the intended

Goverment Exhibit B - 031