UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ALBERT ROSSINI | No. 15 CR 515-1<br><br>Judge John Z. Lee |

**MOTION TO REVOKE BOND**

Now comes the UNITED STATES OF AMERICA, by and through its attorney, JOEL R. LEVIN, and respectfully moves that this Court revoke the release order of defendant Albert Rossini and order him detained pending resolution of this criminal case as a result of multiple violations of his release order, and in support thereof states as follows:

**I. BACKGROUND**

1. On August 20, 2015, the grand jury indicted defendant on 14 counts of mail and wire fraud. Dkt. No. 1. The indictment alleges that defendant and three co-schemers carried out a Ponzi scheme that defrauded investors of at least three million dollars beginning no later than September 2011 and continuing up until the date of the indictment. *Id.* at pp. 2-7. The charged scheme involved defendant obtaining large payments from investors, ostensibly for the purchase of a variety of real estate-related investments that defendant had no actual right to sell or, where he did have such a right, on which he never delivered, and that defendant further made Ponzi-type payments to investors to convince them the scheme was legitimate and to induce

1

further investments. *Id.* The primary vehicle for the fraud involved defendant and his co-schemers selling investors bogus interests in mortgage notes held on distressed rent-generating properties. *See id.* at pp. 3-5. Another component of the scheme involved defendant obtaining money from certain investors on the false pretense that defendant was brokering the sale of properties from a third party to the investor, when in reality defendant simply took the investors' purchase money, purchased the properties himself, and then used the properties as collateral for loans for defendant's benefit. *See id.* at pg. 6.

2. On August 25, 2015, Rossini and his co-defendants were arrested on the indictment and the government moved for Rossini's detention as both a risk of flight and continuing danger to the community pursuant to 18 U.S.C. §3142. Dkt. No. 9. Rossini was released on a $10,000 unsecured bond over the government's objection and his release was subject to a number of conditions. Dkt. No. 10.

3. Between August 27, 2015, and September 29, 2015, during a series of continued detention hearings, the government presented to the Magistrate Judge evidence and arguments for Rossini's detention, including: two prior federal fraud convictions, a prior state fraud conviction, two pending state felony fraud cases, Rossini's use of victim investor money to post bond in one of his state cases, and approximately one million dollars in unaccounted victim money.

4. Ultimately, on September 29, 2015, the Magistrate Judge ruled that the government had shown by clear and convincing evidence Rossini was a financial

danger to the community, but that conditions could be fashioned to mitigate that danger. Among those conditions were the following: (1) not directly or indirectly solicit money from individual investors, nonprofit investors, family trusts, or closely held corporations with less than five shareholders; and (2) seek Court approval before any additional monies were solicited for or invested in properties that Rossini owned or that predated the indictment. Dkt. No. 79.

5. On November 10, 2015, the government filed a motion to revoke defendant's bond because of his continued real estate-related dealings while on bond, including defendant's receipt of investor funds for a mortgage note defendant had already sold to a different investor. Dkt. No. 86. After a series of continued revocation hearings, the Magistrate Judge denied the government's motion to revoke but fashioned additional conditions to attempt to "mitigate the financial danger to the community that (Rossini's) release on bond presents." 12/16/15 transcript, pg. 16. (This transcript is attached as Exhibit 1.) These additional conditions included that the defendant: 1) not act as a fiduciary in financial transactions; 2) not engage directly or indirectly in the sale of mortgage notes or other mortgage related interests; and 3) not engage directly or indirectly in the sale or resale of real estate. Ex. 1, pg. 17. The Magistrate Judge also removed the condition of judicial approval of transactions he imposed on November 13, 2015, (Dkt. No 89) because, with the new conditions, Rossini was "preclude(d) from soliciting or engaging in any of these transactions." Ex. 1, pg. 18. As the Magistrate Judge held, "by these conditions, I am simply saying that

3

if you're going to support yourself while you're out on bond, you're going to have to do it in a way other than what you've been doing." Ex. 1, pp. 19-20.

6.  Beginning in October 2016, Rossini filed several motions to leave the jurisdiction and travel to Los Angeles, California, all of which have been granted by this Court. *See* Dkt. Nos. 187, 186, 198, 200, 212, 218, 220, 237, 245, 247, 250. In his written motions and at various hearings, Rossini informed the Court that the reason for this travel was so he could visit family. *Id.* According to the Pretrial Services Officer, Rossini has made a total of six trips to Los Angeles, California, since October 2016. Also, according to the Pretrial Services Officer, Rossini provided an address in Woodland Hills, California, as the location where he had been staying during each trip.

7.  As the Court is aware, the government has asserted a standing objection to the last several travel requests. Rossini filed his most recent travel motion on May 22, 2017, and the Court held hearings for this motion on May 24, 2017, and May 25, 2017. Dkt. Nos. 247, 249, 250. At the May 25 hearing, defendant informed the court through counsel that the reason for Rossini's most recent trip was:

> to see his cousins, who are moving back to Chicago. He is helping them pack up their house, helping them get their affairs in order before they move back to Chicago. He stays with his family when he goes out there, doesn't pay for a hotel, for any transportation. The family subsidizes him. 5/25/17 Transcript, pg. 2. The transcript is attached as Exhibit 2.

In granting the motion, the Court emphasized that there was no "risk to the public with regard to travel to be with his family, particularly because he is with his

4

family." Ex. 2, pg. 4. The Court also ordered Rossini to provide his travel itinerary to not only Pretrial Services, but also the government. *Id.*

8. As discussed in greater detail in the criminal complaint filed against defendant on July 27, 2017, in Case Number 17 CR 522, the government has learned that over the past at least four months, while on bond in this case, defendant has engaged in an ongoing check kiting scheme involving at least $45,000 in checks.

9. Additionally, the government has learned that the defendant has lied about his stated reasons for his recent travel and misled the Court about who he was staying with during these trips.

10. Finally, the government has also come across evidence that it is still investigating indicating that defendant has continued to engage in prohibited real estate transactions.

## II.  ARGUMENT

*Since Being Placed on Pretrial Release, Defendant Has Committed Several Violations of His Pretrial Release Order*

A.  <u>While On Pretrial Release, Defendant Committed Bank Fraud, As Charged in 17 CR 522</u>

11. First, the government has learned that Rossini violated his release order by check kiting. On July 28, 2017, United States Magistrate Judge Michael T. Mason signed a Criminal Complaint and Arrest Warrant charging defendant with bank fraud, in violation of 18 U.S.C. § 1344, in case number 17 CR 522. On July 29, 2017, the defendant was arrested and detained by Magistrate Judge Mason. As explained

5

more fully in the Criminal Complaint and Affidavit for 17 CR 522, which is attached as Government's Exhibit 3, the facts provide probable cause to believe that Rossini has committed numerous violations of federal and state law, including not only bank fraud (in violation of 18 U.S.C. § 1344) as charged in the Complaint, but also mail fraud (in violation of 18 U.S.C. §1341), fictitious obligations (in violation of 18 U.S.C. § 514(a)(2)), forged securities (in violation of 18 U.S.C. § 513(a)), deceptive practices (in violation of 720 ILCS 5/17-1(B)(1) & (D)(2)), and theft by deception (in violation of 720 ILCS 5/16-1(a)(2)). Having demonstrated probable cause to show that Rossini committed felony violations of law while on release, his release order should be revoked based upon the presumption for detention in these circumstances enumerated in 18 U.S.C. §3148(b).[1]

      B.    <u>While On Pretrial Release, Defendant Has Lied to the Court about his Out-of-State Travel and Violated the Restriction on Real Estate Transactions</u>

12.    In addition to committing the above criminal violations, Rossini's conduct also violated specific conditions of release enumerated in his release orders, including lying to the Court about his recent travel to California and the restriction on real estate transactions.

---

[1] Section 3148(b) ("Sanctions for violation of a release condition") states in relevant part that "[i]f there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community."

*i. The Government Has Learned that the Defendant Has Not Been Staying with Family Members While On His Trips to California and Appears to Have Traveled There for Business Purposes*

13. After the Court granted defendant's most recent travel motion, the government researched the Woodland Hills address provided by defendant. In doing so, the government learned that a large apartment complex was located at that address and requested (and received) from defense counsel the exact apartment where defendant was staying. The government then learned Individual DG resided at that address. Individual DG's ex-husband, Individual HG, had previously been interviewed by investigators in January 2016 and February 2016 as potential investor-victim of defendant's.

14. On June 14, 2017, FBI agents again interviewed Individual HG. During the interview, Individual HG confirmed that Individual DG was his ex-wife, that she currently lived in Los Angeles, and that she had been living there for at least six months. According to Individual HG, defendant and Individual DG are not related. Also, according to Individual HG, Individual DG told him that defendant was in business with Individual MR. Individual HG also provided contact information for Individual DG. As discussed below, the government is also aware of defendant's business relationship with Individual MR, who is a real estate broker. A report of the FBI's interview with Individual HG is attached as Exhibit 4.

15. Later that same day, FBI agents also interviewed Individual DG twice via telephone. During the first interview, Individual DG confirmed that she lived in

7

California at the Woodland Hills address provided by defendant. Individual DG also stated that she was a former employee of defendant's and had worked for him for a few months approximately 2-3 years ago. Individual DG said that defendant had visited her in California twice in the last year – the first visit being approximately one year before the interview and the second interview approximately 6 months before the interview. Individual DG also told the FBI agent that she had not yet seen defendant, but was planning on meeting him for coffee. Individual DG also informed the FBI agent that defendant had never stayed at her apartment during his trips. According to Individual DG, instead defendant told her was staying with relatives during these trips. Individual DG told the FBI agent that defendant told her he was working on a nursing home deal while in California. This initial phone interview was cut short when Individual DG had to attend a meeting.

16. Approximately one hour after the first interview, the FBI agent again contacted Individual DG via phone. During this second interview, Individual DG told the FBI agent that she did not tell the truth about her contact with defendant. Individual DG now told the FBI agent that defendant was, in fact, staying with her at the Erwin Street address, and had done so on the two previous visits she mentioned. Individual DG also told the FBI agent that, each morning, defendant took her car and was gone all day on business. Individual DG further told the FBI agent that she presumed defendant was working on a nursing home deal because he had previously told her that he worked on these kinds of deals in Chicago. Individual DG

also stated that, between the two interviews, she called defendant and instructed him to leave her apartment. At no time during either interview did Individual DG tell the FBI that defendant was helping family members pack and move back to Chicago. Individual DG's interview report is attached as Exhibit 5.

17.     The government notes the following about Individual DG's interviews with the FBI agent: 1) for some reason Individual DG felt the need to lie to the FBI agent about her relationship with defendant; 2) in both conversations Individual DG indicated that defendant was there to conduct business; 3) Individual DG only mentioned defendant's family in the first conversation, which she then retracted; 4) Individual DG said she only saw defendant 3 times in Los Angeles, but according to the Pretrial Services Officer defendant gave Individual DG's Woodland Hills address for all six of his Los Angeles trips.

18.     As the Court is aware, defendant's stated reasons for his trips to California have been to visit family and help them move back to Chicago. It is clear from Individual DG that defendant is not, in fact, doing either of those activities.

ii.     *Rossini's Additional Violations of Release Conditions*

19.     In addition to the above conduct, the government has also uncovered evidence that Rossini continues to directly and indirectly solicit investors for new properties in violation of the Magistrate Judge's September 29, 2015, and January 27, 2016 orders. Dkt. Nos. 79, 119. As the Court is aware, Rossini has not been granted permission to sell any property or engage in any other real transactions since

9

he has been released on bond. While the government's investigation is in a preliminary stage, the findings thus far may warrant revocation of defendant's bond on this basis alone.

20. After speaking with Individual HG and Individual DG as discussed above, the FBI contacted Individual MR. Like Individual HG, Individual MR was previously known to the FBI as a person who worked for Rossini between 2010 through February 2014. On June 20, 2017, an FBI agent interviewed Individual MR via telephone. During this conversation, Individual MR stated that he was involved in a real estate transaction with Rossini. According to Individual MR, the property is located in the 8400 block of Kolmar Avenue in Skokie, Illinois[2], and Rossini obtained this property in a tax sale. According to Individual MR, an accountant named Craig is Rossini's partner in this transaction. The government believes that Craig is Individual CS, Rossini's accountant and an investor/victim in the Ponzi scheme charged in the indictment. Individual MR's interview report is attached as Exhibit 6.

21. According to Individual MR, Rossini solicited Individual MR to list and sell this new property. Rossini also informed Individual MR that this transaction was approved by the Court.

---

[2] This appears to be incorrect – according to the Cook County Recorder of Deeds website and Google Maps, there does not appear to be an 8400 block of Kolmar – the Evanston Golf Club is there instead. Individual MR was not in his office at the time of the interview and agreed to provide the FBI with the exact address at a later date.

10

22. After speaking with Individual MR, the FBI also interviewed Individual CS. Individual CS confirmed that he had recently completed a real estate transaction with Rossini, but he did not have the details of the sale (i.e., the address of the property) as he was out of state on vacation. He agreed to provide the details to the FBI once he returned to his office.

23. On June 29, 2017, the FBI conducted a more thorough interview with Individual CS. During this interview, Individual CS informed investigators that, within the last few years, he invested approximately $63,000 to $65,000 to purchase a mechanic's lien for a property located at 7845 N. Kolmar in Skokie. Individual CS further stated that Rossini arranged for this mechanic's lien to be foreclosed upon, and that Individual CS was the owner of the property. Individual CS explained that Rossini listed 7845 N. Kolmar for sale through Individual MR, and that Rossini had a sales contract for the sale of the property at a price of $505,000. Individual CS's interview report is attached as Exhibit 7.

24. That same day, the FBI also interviewed Individual OK, the owner of the Kolmar property. During the interview, Individual OK informed investigators that he had never heard of Rossini, Individual CS, or Rossini's company – Devon Street Investments. Individual OK also informed investigators that he has not entered into any contracts for the sale of his home, that his mortgage has a zero balance, and that he had negotiated a settlement on the mechanic's lien on his home

11

with the bank, which then released the lien. Individual OK's interview report is attached as Exhibit 8.

### III. CONCLUSION

25. As detailed above, Rossini has violated this Court's release order by committing new felony violations and by violating specific terms of his release order. Because there is probable cause to believe that Rossini has committed numerous felony violations of law while on a release order, a rebuttable presumption arises that no condition or combination of conditions will reasonably assure the safety of the community. 18 U.S.C. §3148(b). Given his lengthy criminal history and prior violations of this Court's release order, Rossini cannot overcome the rebuttable presumption and he should be ordered detained pending resolution of this case.

WHEREFORE, the government respectfully requests that the Court revoke the release order of defendant ALBERT ROSSINI and remand him to the custody of the U.S. Marshals.

    Respectfully submitted,

    JOEL R. LEVIN
    Acting United States Attorney

By: *s/ William Novak*
    WILLIAM NOVAK
    Special Assistant U.S. Attorney
    ERIK HOGSTROM
    Assistant U.S. Attorney
    219 South Dearborn St., Rm. 500
    Chicago, Illinois 60604

Dated: July 28, 2017    (312) 697-4073

## **CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing was served on July 28, 2017, in accordance with Fed.R.Crim.P. 49, Fed.R.Civ.P. 5, L.R. 5.5, and the General Order on Electronic Case Filing ("ECF") pursuant to the district court's system as to ECF filers.

      *s/ William Novak*
      WILLIAM NOVAK
      Special Assistant U.S. Attorney
      ERIK HOGSTROM
      Assistant U.S. Attorney
      219 South Dearborn St., Rm. 500
      Chicago, Illinois 60604
      (312) 697-4073