STATE OF ILLINOIS )
) SS
COUNTY OF COOK )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CRIMINAL DIVISION

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS ) ) ) Plaintiff ) ) -vs- ) ) Albert Rossini ) ) Defendant ) | 12CR-05020(05) 12CR-12822(05) 13CR-17457(02) Judge Alfredo Maldonado |

## COOPERATION AGREEMENT

This Cooperation Agreement (hereinafter "the Agreement) between the Cook County State's Attorney, ANITA ALVAREZ, through her assistant, Thomas Simpson, and Defendant Albert Rossini, and his attorney Glenn Seiden, is made with the appropriate authority pursuant to Illinois Supreme Court Rule 402.

This Agreement is entirely voluntary and represents the entire agreement between the Cook County State's Attorney's Office (hereinafter "the State") and defendant regarding defendant's criminal liability in the above-captioned case.

This Agreement concerns criminal liability only, and nothing herein shall limit or in any way waive or release any administrative or judicial civil claim, demand or cause of action, whatsoever. Moreover, this Agreement is limited to the Cook County State's Attorney's Office and cannot bind any other Federal, State or local prosecuting, administrative or regulatory authorities, except as expressly set forth

in this Agreement.

By this Agreement, ANITA ALVAREZ, Cook County State's Attorney, through her assistant, Thomas Simpson, and Defendant Albert Rossini (hereinafter "defendant"), and his attorney Glenn Seiden, have agreed upon the following:

1. Defendant acknowledges that he has been charged in the indictment 12CR-12822 with five counts of Money Laundering in violation of Chapter 720, Illinois Compiled Statutes, Act 5, Section 29B-1. Defendant acknowledges that the 12CR-12822 is a re-indictment of 12CR-5020, which pleads the same offenses in greater detail. Defendant acknowledges that he has been charged in the indictment 13CR-17457 with two counts of Continuing Financial Crimes Enterprise in violation of Chapter 720 Illinois Compiled Statutes, Act 5, Section 17-10.6(h) (formerly Section16H-50), and two counts of Theft in violation of Chapter 720 Illinois Compiled Statutes, Act 5, Section 16-1(a)(2) and Wire Fraud in violation of Chapter 720 Illinois Compiled Statutes, Act 5, Section 17-24.

2. Regarding the facts of the 12CR-12882 indictment, defendant has personal knowledge related to the above offenses which occurred on or about October 1, 2011 through the January 12, 2012, in the course of receiving United States Currency from Jeff Deer he learned from Jeff Deer that the United States Currency that he took possession of and continued to take possession of was the illegal proceeds from illegal narcotics transactions. Defendant was asked to obtain money orders or other negotiable instruments with the cash proceeds of illegal narcotics transactions to deposit into the accounts of Forshay Land and Title at Deer's request. Deer explained to Rossini that he was going to use a real estate transaction to secure the bond of an inmate Deer told him was named Troy. Albert Rossini was at the time the owner of Comprehensive Properties. Comprehensive Properties never

negotiated a real estate transaction to refinance a property located at 215 W. Ohio, Chicago, IL. Rossini obtained money orders with a portion of the funds given him to by Deer for the purpose of depositing the same into the account of Forshay Land Title. Rossini also gave negotiable instruments to Deer in connection with this request from Jeff Deer to facilitate the real transaction for securing the bond. Rossini never asked Jeff Deer for a fee related to obtaining the money orders with the United States Currency that Jeff Deer gave him. Regarding the facts of the 13CR-17457, defendant has personal knowledge that the offenses arise from real estate transactions regarding a piece of commercial property located at 300 Martingale Road, Schaumburg, IL, involving himself, attorney Thomas Murphy, Benita Jozers and Frank "Bud" Alamprese requiring earnest money deposits given to the attorney for the transaction, Thomas Murphy, who thereafter misdirected the funds thereby denying the owner(s) of the use and benefit of the funds from a real estate transaction.

3. In exchange for the full cooperation (**"cooperation" is defined in paragraph 13 of this Agreement**) of defendant in all matters related to money laundering set forth paragraph 2, the State will dismiss Counts 1, 3,4 and 5 of the 12CR-12822(05) indictment and all counts of the 13CR-17457(02) indictment. The State will also dismiss all counts of the 12CR-5020(05) indictment in favor of the plea regarding the same offenses and underlying facts on the 12CR-12822(05).

4. Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

5. Defendant fully understands the nature and elements of the crimes with which he has been charged.

6. Defendant will enter a voluntary Plea of Guilty, because he is in fact guilty, to Count 2 for

Money Laundering in violation of Chapter 720, Illinois Compiled Statutes, Act 5, Sections 29B-1 Defendant understands that there is a sufficient factual basis to support defendant's plea of guilty and that factual basis is sufficient to establish his guilt beyond a reasonable doubt.

7. Defendant understands that Count 2 offense of Money Laundering in violation of Chapter 720, Illinois Compiled Statutes, Act 5, Sections 29B-1 is Class 1 felony for which the defendant could receive a period of probation not to exceed 4 years, or a sentence of imprisonment of not less than four years and not more than fifteen years, and a fine not to exceed $25,000 for each offense or the amount specified in the offense, whichever is greater as set out in 730 ILCS 5/5-4.5-45 and 50

8. Defendant understands by pleading guilty, he surrenders certain rights, including the following:

    (a) If defendant persisted in a Plea of Not Guilty to the charges against him, he would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by the Judge sitting without a jury. Defendant has the right to a jury trial; however, the defendant may waive his right to a jury trial.

    (b) If the trial were a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either Guilty or Not Guilty. The jury would be instructed that defendant is presumed innocent and that it could not convict him unless, after hearing all the evidence, it was persuaded of

       defendant's guilt beyond a reasonable doubt and that it was to consider each Count of the indictment separately.

(c)   If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence and considering each count separately, whether or not the judge was persuaded of defendant's guilt beyond a reasonable doubt.

(d)   At a trial, whether by a jury or a judge, the State would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.

(e)   At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in her own behalf.

9.   Defendant understands that by Pleading Guilty, he is waiving all the rights set forth in Paragraph 8. Defendant's attorney has explained those rights to him and the consequences of his waiver of those rights. Defendant further understands he is waiving all Appellate issues that might have been available if he had exercised his right to trial and may only appeal the validity of his Plea of Guilty or the reasonableness of his sentence.

10.   At the time of sentencing, the parties agree that the State shall recommend that defendant be sentenced to a term of two year period of Probation monitored by the Cook County Adult Probation Department("CCAPD") in which he must report to CCAPD once a month for a

minimum of the duration of the probation and complete 150 hours of community service.

11. The parties agree that the Court remains free to impose the sentence it deems appropriate.

12. As a condition of the sentence imposed upon the defendant, the defendant agrees to cooperate fully with the Cook County State's Attorney's Office. As used in this Agreement, **"cooperation"** requires the defendant:

   (a) To respond truthfully and completely to any and all questions or inquiries that may be put to the defendant, whether in interviews, before a Grand Jury or at any trial(s) or other proceedings;

   (b) To attend all meetings, Grand Jury sessions, trials and other proceedings at which the defendant's presence is requested by the State or compelled by subpoena or court order;

   (c) To produce voluntarily any and all documents, records, or other tangible evidence relating to the matters about which the State inquires.

   The decision whether and how to use any information and/or cooperation that the defendant provides (if at all) is in the exclusive, reasonable discretion of the Cook County State's Attorney's Office.

13. The defendant must at all times give complete, truthful and accurate information and testimony regarding his personal knowledge of the facts of both indictments 12CR-12822 and 13CR-17457. The defendant must not commit any crimes while cooperating with the State. If the defendant commits any crimes or if any of the defendant's statements or testimony prove to be false, misleading or materially incomplete, or if the defendant otherwise violates this Agreement in any way, the State will no longer be bound by its representations to the defendant concerning the limits of criminal prosecution or sentencing

recommendation, as set forth above. The defendant thereafter shall be subject to prosecution for any state criminal violation of which the State has knowledge, including but not limited to Perjury or Obstruction of Justice. Because the defendant's disclosures, pursuant to this Agreement, constitute a waiver of the defendant's Fifth Amendment privilege against compulsory self-incrimination, any such prosecution may be premised on statements and/or information provided by the defendant.

14. Defendant understands that his compliance with each part of this Cooperation Agreement extends throughout and beyond the period of his sentence and failure to abide by any term of the Agreement is a violation of the Agreement. He further understands that in the event he violates this Agreement, the State, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute the defendant not subject to any of the limits set forth in this Agreement, or to re-sentence the defendant.

15. Defendant understands and agrees that in the event that this Cooperation Agreement is breached by the defendant, and the State elects to void the Agreement and prosecute the defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the defendant in accordance with this paragraph, notwithstanding the expiration of the Statute of Limitations between the signing of this Agreement and commencement of any such prosecution. The defendant agrees to waive any and all defenses based on the Statute of Limitations with respect to any prosecutions that are not time-barred on the date the defendant signs this Agreement.

16. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause the

defendant to Plead Guilty.

17. Defendant understands and agrees that in the event the conviction is vacated, a subsequent prosecution will not be barred by the provisions of Chapter 720, Illinois Compiled Statutes, Act 5, Section 3-4 (effect of Former Prosecution).

18. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement

19. This Agreement is not contingent in any way upon the outcome of any investigation, proceeding or subsequent trial.

20. Pursuant to this agreement, Defendant agrees that the attached factual basis with regard to his participation in a scheme to commit Money Laundering in relation to the posting of bail bond in the amount of $400,000 in the matter People of the State of Illinois vs. Troy Clark in the case 11CR-15700.

302_003-002057

I have read this Agreement and the Factual Basis and carefully reviewed every part of it with my attorney. I understand the Agreement and the Factual Basis and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand the terms of this Agreement and the Factual Basis. No other promises or inducements have been made to me, other than those contained in this Agreement. In addition, no one has threatened or forced me in any way to enter into this Agreement. Finally, I am satisfied with the representation of my attorney in this matter.

_____
Albert Rossini, Defendant

_____
Glenn Seiden, Attorney for Defendant

AGREED THIS DATE: 3/18/16

ANITA ALVAREZ
COOK COUNTY STATE'S ATTORNEY

_____
Thomas Simpson, Assistant State's Attorney

302_003-002058

## FACTUAL BASIS

Albert Rossini agrees that the following factual basis is true an accurate:

1. I, Albert Rossini, was the owner of Comprehensive Properties which was a real estate business located at 3924 W. Devon, Lincolnwood. I was personally acquainted with Jeff Deer, an attorney that had handled some legal matters for me.

2. In the fall of 2011, I (Albert Rossini) had a conversation with Jeff Deer regarding a situation with Forshay Title Company in which Deer explained a building was going to be used as collateral to secure the bond of an individual in custody at the Cook County Department of Corrections. Deer told me that the inmate's name was Troy and friend of one of Deer's clients. Deer explained the property deal would use cash from Troy's drug business. I understood that to mean that Troy is a drug dealer and proceeds of illegal narcotics transactions were going to be used to secure the bond.

3. Comprehensive Properties had no agreement with respect a loan with 215 Ohio LLC or any refinancing the building located 215 W. Ohio, Chicago, IL. Neither Comprehensive Properties nor myself had, at any point, had any discussions regarding a loan to refinance or lend money to 215 Ohio LLC. Any appearance of a proposed loan or refinancing agreement between Comprehensive Properties and 215 Ohio LLC was the creation of Jeff Deer and not by myself or Comprehensive Properties. The funds that I deposited or gave to Jeff Deer to put into the account through money orders or other negotiable instruments were not funds belonging to Comprehensive Properties or the funds of any of the investors of Comprehensive Properties, but instead were the product of the cash Jeff Deer gave me. The purpose of me converting the cash Jeff Deer gave me into money orders or other negotiable instruments to be put into the account of Forshay Land Title was to give the appearance that the funds came from Comprehensive Properties and not anyone else.

4. I obtained the following money orders from Oakton Crawford Currency Exchange with the cash that Jeff Deer gave me payable to Forshay Title: #174857 in the amount of $2,500, #174858 in the amount of $2,500, # 174852 in the amount of $1,000, #174850 in the amount of $2,000, # 174851 in the amount of $2,000, #174881 in the amount of $5,000, and #175812 in the amount of $5,000. I obtained the following money orders from PLS at 7201 N. California Ave., Chicago with the cash that Jeff Deer gave me payable to Forshay Title: #1007358 in the amount of $9,920, # 1007359 in the amount of $4,000, #1007074 in the amount of $10,000, #1007184 in the amount of $10,000, #1007556 in the amount of $10,000, #107554 in the amount of $10,000, #107555 in the amount of $10,000, # 1007428 in the amount of $10,000, #1007357 in the amount of $10,000. I obtained the following money orders from PLS at 7201 N. California Ave., Chicago with the cash that Jeff Deer gave me payable to Comprehensive Properties which I signed over or rechecked to Forshay Title, and I recognize my signature on: #1008791 in the amount of $10,000, #1008873 in the amount of $10,000, # 1008792 in the amount of $10,000, #1008974 in the amount of $10,000. I obtained from Peterson-Cicero Currency Exchange money order #9544 in the amount of $5,000 with the cash that Jeff Deer gave me payable to Forshay Title. I obtained a New City Bank money order #4514 in the amount of $20,000 with the cash that Jeff Deer gave me payable to Forshay Title. The funds that I used to obtained those

money orders stated above were not mine, my family's, Comprehensive Properties, Comprehensive Properties' investors, any other of my entities, or the proceeds of a deal, or investment of Comprehensive Properties. I learned in the Fall of 2011 from Jeff Deer that the United States Currency he tendered and continued to tender me in that time period to obtain money orders were the proceeds of illegal narcotics transactions. All the money order discussed above, I tendered to Jeff Deer, left for Jeff Deer at his law office, or deposited myself knowing that these being used to appear to fund a fictitious real estate transaction. I provided check number #1548 which purports to be a check drawn on a MB Financial Bank account in the name of Comprehensive Properties for an account ending in 1325 in the amount of $302,000 payable to Forshay Title Company and on which I recognize my signature and either tendered to Jeff Deer, left for Jeff Deer at his law office, or deposited myself knowing that either the account did not exist or did not have sufficient funds. I also provided a check date November 11, 2011, that does not have a check number purportedly drawn on account number 32255 on a financial institution with a routing number 71026334 in the amount of $155,000 payable to Forshay Title Company on which I recognize my writing and signature and either tendered to Jeff Deer, left for Jeff Deer at his law office, or deposited myself knowing that either the account did not exist or did not have sufficient funds. I wrote a letter to Jeff Deer that I either gave to Jeff Deer or left from him at his law office accompanying this unnumbered check in which I specifically refer to this check. Exhibit #2 is a photocopy of that letter from which I recognize my handwriting and my signature. Exhibit #2 is a true and accurate copy of that letter. The "Tom" I am referring to in that letter is attorney Thomas Murphy, who was also charged under the 13CR-17457 indictment.

5. I never met or communicated with Tamira Smyth during the time period of late September 2011 to January 11, 2012 or any African American female calling themselves "Candy" or who Jeff Deer referred to as "Candy" in connection with Jeff Deer's bond scheme. Neither Troy Clark nor Tamira Smyth were investors of Comprehensive Properties relating to any project regarding real estate or refinancing during that same time period. The cash Jeff Deer gave me may have come from those individuals but the cash was not the product of any agreement or investment between myself or Comprehensive Properties and Tamira Smyth and/or Troy Clark. I had no contact with attorney Steven Decker during this same time period.

6. After my arrest on January 11, 2011, I gave a written statement to Assistant State's Attorneys and investigators after being interviewed at the DEA Chicago Field Division in Chicago. I gave the written statement freely and voluntarily after I had been fully advised of my constitutional rights. I was not promised anything in exchange for providing that written statement and was not coerced in any way to provide that statement. A copy of that same four page statement is attached to this Cooperation Agreement as Exhibit 1. I recognize Exhibit 1 to be a true and accurate copy of the statement and I recognize my signatures and initials that appear on the statement. I had the opportunity to read the statement and make and changes or corrections to the statement that I wanted. Any changes or corrections to the statement were made with my agreement in my presence and bear my initials. Prior to the written statement, I spoke freely and voluntarily to Assistant State's Attorneys and investigators after my constitutional rights were explained to me and which I waived. I was not promised anything in exchange for speaking with the Assistant State's Attorneys or investigators. At all times while I was in custody I was treated fairly by investigators and Assistant State's Attorneys. The contents of Exhibit 2 are true and

accurate.

7. I communicated with Jeff Deer in person, over the phone and through email during the time period of late September 2011 and January 11, 2012. I used the email address bertrossini4@aol.com and contacted Jeff Deer at email address jwdeer@aol.com. I was the only person to use bertrossini4@aol.com email address during that time period. On October 3, 2011, I sent an email to Jeff Deer on the previously stated email address titled "Update" in which I wrote "Sending you a financing agreement in the next couple of minutes by efax to me and forward to you. So it is signed by me. Any update on your bond people?" The "bond people" I am referring to is from the scheme Jeff Deer approached me about laundering money. I received a replied from him using his email address which stated "waiting on her to comne(sic)" Exhibit #3 is a copy of that message, which I recognize accurately documents that electronic communication through the previously stated emails between myself and Jeff Deer.

AGREED THIS DATE: 3/18/16

Albert Rossini, Defendant

Glenn Sieden, Attorney for Defendant

ANITA ALVAREZ
COOK COUNTY STATE'S ATTORNEY

Thomas Simpson, Assistant State's Attorney