**FILED**

MAR 24 2010

Mar 24 2010

Judge R... ...tleman
U... ...ourt

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | No. 09 CR 236-1 |
| vs. | ) | Judge Robert Gettleman |
| | ) | |
| BABAJAN KHOSHABE | ) | |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant BABAJAN KHOSHABE, and his attorney, STEVEN WEINBERG, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The superseding indictment in this case charges defendant with wire fraud, in violation of Title 18, United States Code, Sections 1343 and 2 (Counts One, Three and Four), and mail fraud, in violation of Title 18, United States Code, Sections 1341 and 2 (Count Two).

3. Defendant has read the charges against him contained in the superseding indictment, and the charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charge to Which Defendant is Pleading Guilty

5.  By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count One of the superseding indictment. Count One charges defendant with devising and participating in a scheme to defraud and to obtain money by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing that scheme, knowingly causing a wire communication in interstate commerce, in violation of Title 18, United States Code, Sections 1343 and 2.

### Factual Basis

6.  Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the superseding indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

Beginning in or about August 2007 and continuing until in or about July 2008, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant knowingly devised and participated in a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

Specifically, defendant Babajan Khoshabe, together with co-defendants Sunil Kaushal and James Kotz, engaged in a scheme to fraudulently obtain mortgage loan proceeds and retain those proceeds through the use of nominee identities, fictitious corporations, and false information in loan and title closing documents, and through the payment of minimal mortgage payments for the purpose of avoiding first-payment defaults on the fraudulently-obtained mortgage loans.

2

Defendant Babajan Khoshabe was the owner of Nationwide Mortgage Company ("Nationwide") and a loan originator licensed by the State of Illinois. Defendant Khoshabe, together with co-defendant Sunil Kaushal, prepared loan applications and supporting documents for the processing of mortgage loans at Nationwide.

From in or about August 2007 through in or about July 2008, defendant Khoshabe, together with co-defendant Kaushal, created false and fictitious documents in order to ensure the approval of a residential mortgage loan for the purchase of 4153 W. 89th Street, Hometown, Illinois ("4153 W. 89th Street"). Defendant knew that the applicant for the mortgage loan, who was an undercover agent ("UC"), was posing as a nominee buyer that intended to leave the country soon after the funding of the loan. Defendant also knew that a confidential informant ("CI"), who was posing as the individual orchestrating the sale of the 4153 W. 89th Street, was selling the property to the UC so that the CI and the UC could keep the proceeds of the mortgage loan, but abandon the property without making the necessary mortgage loan payments. Defendant Khoshabe, together with co-defendant Kaushal, prepared the fraudulent loan application and supporting documents for the mortgage loan application and submitted them to Equity Mortgage Corporation ("Equity Mortgage"), a lending institution that made residential loans to qualified buyers.

Defendant Khoshabe included false information about the nominee buyer's assets in the loan application, knowing that the CI had added the nominee buyer's name to an existing checking account to falsely show that the nominee buyer had sufficient funds on deposit.

3

Defendant Khoshabe included a fraudulent real estate contract in the loan application package in order to provide the appearance that the transaction was an arms-length transaction, knowing that the transaction was being orchestrated by the CI and the UC in order to obtain mortgage loan proceeds and abandon the property. Defendant Khoshabe included false information about the nominee buyer's employment and income in the loan application, knowing that he and co-defendant Kaushal had falsely created the nominee buyer's employment at a fictitious company called "El Gamel Plaster, Drywall and Paint." Finally, defendant Khoshabe included false information about the nominee buyer's residence address, knowing that the nominee buyer did not live at that address.

Prior to the closing on April 3, 2008, defendant Khoshabe, together with co-defendant Kaushal, knowingly caused to be submitted to Equity Mortgage a loan application and supporting documents on behalf of the nominee buyer, knowing that it contained materially false and fraudulent statements and documents, including false information about the nominee buyer's address, employment, income, and assets.

The closing occurred on April 3, 2008 at Alliance Title Corporation in Chicago. The final sale price was $160,000, and the loan amount was $144,000 (90% of the sale price). The loan was funded through Equity Mortgage Corporation. At the closing, defendant Khoshabe, co-defendants Kaushal and Kotz, the UC, the CI, and another undercover law enforcement officer were present. Prior to the closing, the CI paid defendant Khoshabe $8,000 in cash for participating in the scheme.

On or about June 27, 2008, and on or about July 31, 2008, defendant Khoshabe, co-defendant Kaushal, and the CI went to a currency exchange and made payments towards the 4153 W. 89th Street mortgage in order to avoid a first-payment default on the loan.

On or about April 3, 2008, in the Northern District of Illinois, Eastern Division, defendant Khoshabe, for the purpose of executing the above-described scheme to defraud, and attempting to do so, did knowingly cause to be transmitted by means of wire communication in interstate commerce, certain writings, signs, and signals, namely, a funds transfer of approximately $141,654 from Buffalo, New York to Chicago, Illinois, which funds represented the proceeds of a mortgage loan for the purchase of 4153 W. 89th Street.

## Maximum Statutory Penalties

7.  Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

    a.  Count One carries a maximum sentence of 20 years' imprisonment. Count One also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that with respect to Count One, the judge also may impose a term of supervised release of not more than three years.

    b.  Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

c. In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

8. Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

 a. **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2009 Guidelines Manual.

 b. **Offense Level Calculations.**

  i. With respect to Count One of the superseding indictment, the base offense level, pursuant to Guideline §2B1.1(a)(1), is 7.

  ii. Pursuant to Guideline § 2B1.1(b)(1)(A), the actual loss is less than $5,000 and thus there is no increase in the offense level.

        iii.       Pursuant to Guideline § 2B1.1(b)(9)(C), the base offense level is increased by 2 levels because the offense involved sophisticated means including the use of a false identity and the submission of numerous false and fabricated documents and information in support of a fraudulent mortgage loan application to a lending institution. Since the resulting offense level is 9, the base offense level is increased by another 3 levels to bring the base offense level to 12.

        iv.       Pursuant to Guideline § 3B1.3, the base offense level is increased by 2 levels because the defendant abused a position of special skill and public trust in a manner that significantly facilitated the commission of the offense by virtue of using his status as a loan originator licensed by the State of Illinois to prepare a false loan application and supporting documents.

        v.       Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline §3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

        c.       **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the

government, defendant's criminal history points equals zero and defendant's criminal history category is I.

   d. **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 12, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 10 to 16 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

   e. Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature and based on facts known to the parties as of the time of this Plea Agreement. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw her plea on the basis of the Court's rejection of these calculations.

   f. Defendant understands that the Guideline calculations set forth above are non-binding predictions, upon which neither party is entitled to rely, and are not governed by Fed.R.Crim.P. 11(c)(1)(B). Errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court,

setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

10. The parties are free to recommend whatever sentence they deem appropriate.

11. It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

12. The parties further agree, pursuant to Title 18, United States Code, Section 3583(d), that the sentence to be imposed by the Court shall include, as a condition of any term of supervised release imposed in this case, a requirement that defendant repay the United States $11,360 as compensation for government funds that defendant received during the investigation of the case.

13. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

9

14. After sentence has been imposed on Count One of the superseding indictment, the government will move to dismiss the remaining counts in the superseding indictment and the forfeiture allegation as to this defendant only.

### Presentence Investigation Report/Post-Sentence Supervision

15. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing, including the nature and extent of defendant's cooperation.

16. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of his sentence for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

17.   For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

18.   This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 09 CR 236.

19.   This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District

11

of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

20. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

    a. **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

        i. The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

        ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

        iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after

hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the superseding indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

    iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

    v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

    vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

    vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

  b. **Appellate rights.** Defendant further understands he is waiving all

appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the legality of the sentence imposed. Defendant understands that any appeal must be filed within 10 calendar days of the entry of the judgment of conviction.

c. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

## Other Terms

21. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

22. Defendant understands that pursuant to Title 12, United States Code, Section 1829, his conviction in this case will prohibit him from directly or indirectly participating in the affairs of any financial institution insured by the Federal Deposit Insurance Corporation (FDIC) except with the prior written consent of the FDIC and, during the ten years following his conviction, the additional approval of this Court. Defendant further understands that if he violates this prohibition, he may be punished by imprisonment for up to five years and a fine of up to $1,000,000.

## Conclusion

23. Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

24. Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

25. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

15

26. Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 3-24-10

PATRICK J. FITZGERALD
United States Attorney

BABAJAN KHOSHABE
Defendant

SUNIL R. HARJANI
Assistant United States Attorney

STEVEN WEINBERG
Attorney for Defendant

16