UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ALBERT ROSSINI | No. 15 CR 515<br><br>Judge John Z. Lee |

**GOVERNMENT'S RESPONSE TO DEFENDANT ALBERT ROSSINI'S MOTION *IN LIMINE* TO BAR EVIDENCE OF TAX RETURNS**

Now comes the UNITED STATES OF AMERICA, by and through its attorney, JOHN R. LAUSCH, JR., and respectfully responds to defendant Albert Rossini's Motion to Bar Evidence of Tax Returns.

Defendant has moved to bar the government from introducing evidence of his tax returns at trial. Defendant asserts that such evidence is "irrelevant" and "unduly prejudicial" because he "is not charged with any form of tax fraud, failure to pay taxes or any criminal violation of the IRS code." D. Mot. at 1. Defendant's motion should be denied. The evidence the government expects to introduce is directly relevant to an element of the charged crimes and to allegations in the indictment. Additionally, defendant's concealment on his taxes of the vast sums of money he made from an investment program that the government contends was a fraud but that defendant will claim he believed to be legitimate is strong evidence that defendant's claim is false and the government's is correct. In light of this, any modest prejudice to defendant from its admission would not substantially outweigh its probative value.

1

In any event, the tax returns are prior statements under oath that are admissible to impeach defendant should he testify.

## I. RELEVANT BACKGROUND

The government expects the evidence at trial to show that in 2011, 2012, and 2013, defendant Rossini and his co-schemers solicited individuals associated with two Assyrian churches to invest in mortgage notes and related real estate interests through companies Rossini established for this purpose, primarily a company called Devon Street Investments. The evidence will show that more than two dozen individuals, as well as two churches, collectively agreed to "invest" several million dollars in Rossini's supposed investment program. With limited exceptions, the investors never received the real estate interests they had been promised, and their eventual demands to be refunded their investment monies proved futile. The evidence will show that this is because defendants never owned, or even attempted to obtain, the real estate interests they were selling, and simply took most of the investors' funds for their own purposes, while paying the investors token Ponzi payments to convince them of the scheme's legitimacy.

A critical aspect of the scheme was that Rossini and his co-schemers took steps to conceal the fact that they were misappropriating investor funds. Rossini and Babajan Khoshabe instructed the investors to provide their investment funds in the form of cashier's checks made payable to defendant Thomas Murphy, who Rossini had told the investors was acting as the attorney for the investment program.

2

Investors then gave or sent these checks to Rossini, who in turn gave them to Murphy. Upon receiving the checks, Murphy deposited the checks not into an attorney escrow account but instead into a personal checking account. From there, the majority of the funds were almost immediately withdrawn and converted into cashier's checks made payable back to Rossini, Babajan Khoshabe, and Anthony Khoshabe, who then converted those funds to their own personal purposes. Rossini in particular negotiated the cashier's checks made out to him at currency exchanges, typically converting the funds into hard-to-trace forms, such as cash or money orders.

Through this convoluted money flow, between 2011 and 2013, Rossini personally received huge amounts of income from the investors' funds that he either entirely concealed, or about which he made misrepresentations, in his tax filings for that same time period. The income Rossini directly received during these years totaled approximately $3 million. Broken down by year, Rossini received over $600,000 in 2011, nearly $1.9 million in 2012, and nearly $500,000 in 2013.

For the same time period, the picture Rossini presented to the IRS looked quite different. For 2011, Rossini claimed only $84,000 in self-employment income supposedly derived from "Comprehensive Properties," which was a company of Rossini's that had nothing to do with the Devon Street investment program. Rossini declared no income at all from Devon Street and did not file a corporate tax return for Devon Street that year.

3

For 2012, Rossini claimed self-employment income of $305,000, offset by a net loss of -$382,000, which he claimed was from the operation of Comprehensive Properties, resulting in total loss for Rossini of -$76,000. The return made no reference at all to Devon Street Investments. Separately, Rossini filed a corporate tax return for Devon Street Investment, which reported a net loss of -$382,000, comprised of $2.6 million dollars in income, offset by $2.3 million in "interest" payments, as well as several hundred thousand dollars in other expenses, all of which is inconsistent with the financial records the government expects to introduce at trial, as referenced above.

In 2013, which the evidence will show is the year the scheme ultimately unraveled, Rossini appears not to have filed any tax returns, either personally or for any of the entities related to the Devon Street investment program.[1] This is despite the fact that in 2013 Rossini still owned Devon Street Investments and Devon Street Management, and opened Rockford Commercial Mortgage that year to take in over $800,000 in investment funds from Victim KK.

## II. ARGUMENT

Evidence of Rossini's tax filings for the years in which he operated the Devon Street investment program are admissible as direct evidence of the charges in the Indictment, as well as for impeachment purposes in the event Rossini testifies. First,

---

[1] The government obtained this information from the IRS on or about April 20, 2015, and is seeking updated information confirming that Rossini did not belatedly file returns after that date.

4

Rossini's omissions and misrepresentations in his tax records are directly relevant to proving elements of the charged offenses, namely knowledge and intent to defraud. *See United States v. Benalcazar*, 2011 WL 4553027 (N.D. Ill. Sept. 29, 2011) (Kendall, J.) (holding that defendant's "failure to document his income in tax returns during the years that he participated in the scheme is relevant to his desire to conceal any ill-gotten profits as well as his knowledge of the scheme's illegality") (citing *United States v. Briscoe*, 896 F.2d 1476, 1500 (7th Cir. 1990)); *see also United States v. Sullivan*, 2011 WL 4808118, at *11 (N.D. Ill. Oct. 11, 2011) (Manning, J.) ("The Seventh Circuit has held that evidence that a defendant failed to file tax returns is admissible to establish that he lacked a legitimate source of income, or that his reason for not filing is his participation in illegal activities.") (citation omitted); *United States v. Romero-Lopez*, 695 F.3d 17, 24 (1st Cir. 2012) ("[T]he government's reliance on the tax returns was not designed to demonstrate [defendant's] character, but rather to establish an element of the money laundering offense—that the concealed proceeds were derived from illegal activity.").

The Seventh Circuit's decision in *United States v. Ryan*, 213 F.3d 347 (7th Cir. 2000), is on point. There, the defendant had omitted from his tax returns $136,000 in bank fraud proceeds that he made while supposedly acting as legitimate a loan broker. *Id.* at 349. The district court admitted the defendant's tax returns over his objection that they were not relevant and unduly prejudicial. *Id.* The Seventh Circuit affirmed, emphasizing that the evidence tended to prove an element of the charged

5

crime. *Id.* at 350. The court explained that bank fraud (like wire/mail fraud) is a specific intent crime that requires proof of intent to defraud, which "can be proven by circumstantial evidence and by inferences drawn from the scheme itself." *Id.* (quoting *United States v. Moede*, 48 F.3d 238, 241-242 (7th Cir. 1995)). The court held that the defendant's failure to report his ill-gotten gains to the IRS "constituted '[c]ircumstantial evidence of intent to defraud.'" *Id.* at 351. The court separately noted that the tax return evidence "'cast doubt on the credibility of' his defense that he advanced at trial – that he was ignorant of the fraudulent aspects of the transactions." *Id.*[2]

Here, the defendants[3], including Rossini, undertook elaborate measures to conceal the financial reality underlying the Devon Street investment program. This concealment was central to the success of the scheme. Indeed, the Indictment contains the express allegation that "[i]t was further part of the scheme that defendants concealed, misrepresented, and hid and caused to be concealed, misrepresented, and hidden, the existence and purpose of the scheme and the acts

---

[2] Although the *Ryan* court employed the now-defunct "intricately related" doctrine, the court emphasized that it was analyzing the admissibility of the tax return records based on whether they "*tend[ed] to prove any element of[] the charge crime.*" *Ryan*, 213 F.3d at 350 (emphasis original).

[3] The government included all the defendants' tax returns for the relevant years in its preliminary exhibit list. Although Rossini is the only defendant who has moved to exclude these records, the government notes here that the same analysis applies to the other defendants' tax returns, which contain similar omissions and misrepresentations regarding receipt of scheme proceeds.

done in furtherance of the scheme." (Dkt. No. 1, at ¶ 10.) And the government will present evidence at trial that Rossini in fact took a variety of steps to conceal his misappropriation of the investors funds, one of which was failing to disclose their scheme income from governmental authorities. Specifically, Rossini converted his portion of the proceeds into cash or money orders and then concealed this income from the IRS and the U.S. Bankruptcy Court.[4] Thus, Rossini's misrepresentations about, and failures to report, his scheme income in tax filings for 2011, 2012, and 2013 is simply the last logical step in a campaign of concealment, which is directly relevant. *See, e.g.*, *United States v. Skoczen*, 405 F3d 537, 548 (7th Cir. 2005) ("Evidence of … concealment may be admissible to show consciousness of guilt, as well as guilt itself."); *United States v. Webber*, 536 F.3d 584, 598 (7th Cir. 2008) (holding that evidence of concealment efforts was "circumstantial evidence of [defendant's] consciousness of guilt.").

The relevance of the tax return information is heightened by Rossini's likely defense. The government anticipates that at trial Rossini will assert, whether through his own testimony or not, that he believed in good faith that he was operating a legitimate investment program because he was simply marketing real estate

---

[4] On or about June 3, 2014, and again on February 19, 2016, Rossini filed Chapter 7 Bankruptcy Petitions in the U.S. Bankruptcy Court for the Northern District of Illinois. As with Rossini's tax returns, certain statements Rossini made in these sworn documents about his income and related financial matters are inconsistent the financial records the government expects to introduce at trial and for that reason, these Petitions are relevant much the same as the tax returns. Rossini has not moved to exclude evidence of the Bankruptcy Petitions.

7

investment products that Murphy had misled him into believing were real. Under this theory, the government expects Rossini will claim he thought the payments he received were commissions on legitimate investment sales. Rossini's misrepresentations and omissions to the IRS surrounding the Devon Street investment program undermine this theory of defense, in addition to being generally relevant to the Indictment's concealment allegation.

Defendant's undeveloped claim that the tax return evidence should be excluded under Rule 403 as substantially more prejudicial than probative is wrong. As demonstrated above, on one side of the balance, the evidence is highly probative because it is directly relevant to elements of the charged offense, it relates to an express allegation in the Indictment, and it tends to rebut an anticipated defense. On the other side of the balance, the proffered evidence is not of an inflammatory or sensational nature. Although making misrepresentation on, or failing to file, tax returns is a serious offense, it is unlikely to so inflame the jury's passions that it would cause them to decide the case on an improper basis. Indeed, it is difficult to see how the tax return evidence adds any significant prejudice to the evidence the jury will necessarily hear about the scheme – that defendant brazenly stole millions of dollars from more than two dozen individuals, many of whom were vulnerable, as well as from a church and its clergy. In any event, whatever separate prejudice might arise from the tax return evidence can be cured through a limiting instruction. The

8

evidence is simply not substantially more prejudicial than probative. As such, it is not excludable under Rule 403.

Finally, it is worth noting that even if the tax return evidence were inadmissible in the government's case in chief, it would be an entirely appropriate subject matter for cross-examination, should Rossini testify. The tax returns are prior statements, signed by Rossini under penalty of perjury, that directly relate to the subject matter of his testimony. To the extent Rossini testifies to facts that are inconsistent with the representations made on his tax returns, this evidence would be directly impeaching. On the other hand, to the extent Rossini reaffirms the statements in his tax returns, in contradiction with the independent financial evidence that will already have been admitted, this will be probative of his truthfulness. In either event, cross-examination on the tax return evidence is appropriate.

### III.  CONCLUSION

WHEREFORE, the government requests that the Court deny defendant Albert Rossini's motion *in limine* to bar evidence of tax returns.

                Respectfully submitted,

                JOHN R. LAUSCH, JR.
                United States Attorney

By:   *s/ Erik Hogstrom*
       ERIK HOGSTROM
       Assistant U.S. Attorney
       WILLIAM NOVAK
       Special Assistant U.S. Attorney
       219 South Dearborn St., Rm. 500
       Chicago, Illinois 60604
       (312) 353-8709

Dated: April 10, 2018

**CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing was served on April 10, 2018, in accordance with Fed.R.Crim.P. 49, Fed.R.Civ.P. 5, L.R. 5.5, and the General Order on Electronic Case Filing ("ECF") pursuant to the district court's system as to ECF filers.

      By:   *s/ Erik Hogstrom*
             ERIK HOGSTROM
             Assistant U.S. Attorney
             WILLIAM NOVAK
             Special Assistant U.S. Attorney
             219 South Dearborn St., Rm. 500
             Chicago, Illinois 60604
             (312) 697-4073