

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

**FILED**

AUG 23 2018

**THOMAS G. BRUTON**
**CLERK, U.S. DISTRICT COURT**

UNITED STATES OF AMERICA,

        Plaintiff,

    v.               Case No. 15-CR-515-1

ALBERT ROSSINI,       Hon. John Z. Lee

        Defendant.

MOTION TO SUPPLEMENT EXHIBITS

Defendant Albert Rossini, pro se, files these additional documents to supplement his Exhibits.

Exhibit 2(a) Letter from Defendant Rossini to attorney Scott Frankel on August 29, 2017

Exhibit 3(a) Mail receipts from Jerome Combs Detention Center (JCDC). Defendant Rossini's mail to attorneys Adams and Frankel:

    See Exhibits 3 through 16, herein

    Receipts:  February 20, 2018

    Receipt:    March 28, 2018

    Receipt:    April 16, 2018

Exhibit 17(a)  Defendant Rossini notes at trial directing attorneys Adams and Frankel on trial issues

Exhibit 21(a)   Emails between Defendant Rossini and attorney
Joshua Adams


Exhibit 26 is a supplemental Exhibit to Section viii, page 29.
Real Estate Transfer Ordinance of Riverdale


Respectfully submitted,

Albert Rossini, Defendant Pro Se

#08043-424

Metropolitan Correctional Center

71 West Van Buren Street

Chicago, Illinois 60605

EXHIBIT 2 (a)

Letter from Defendant Rossini to attorney
Scott Frankel on August 29, 2017.

August 29, 2017

Dear Scott:

① My files are in a storage locker. There are approximately 20 boxes of files and documents that directly relate to the case(s). Glen Seiden and I turned several condensed boxes to the FBI in Sept 2014. At the top of the files were copies of cashiers' checks and commission payments Babajan, Anthony and I turned over to Murphy to purchase for the three of us the same notes and mortgages we are accused of selling (or not selling) to investors. Naturally, we have copies and Attorney Harvey Waller, Chicago, has been retained by Babajan and me to sue Pedersen a Houpt and Berger Newmark.

② There is no evidence of my intent to flee or my intent to obstruct justice. I did not have a lack of respect for court orders: as to where I stayed and what I did in L.A. Danielle Cabi lied to the FBI agents, probably because she was frightened and did not want our relationship and the intent of it known. I have written to you about this and we have proof about my whereabouts in L.A. Also, I wanted to call in everyday to Justin Weisema with my schedule but he + not I — only wanted me to call in on Mondays. I was not under orders to remain in the apartment or on the building grounds. I was under court order not to conduct any business — and I did not nor is there any proof I did conduct business while in L.A. In fact, the only times I left the Woodland Hills/West Hills, Sherman Oaks, Calabasas

area was to take Danielle to Dr. Abraham Ishaya on Olympic Blvd in LA or to go there alone for her to pick up asthma inhalers, etc.

③ I did not transfer any assets in violation of the orders of Judge Gilbert or Lee — in fact, I did not transfer any assets. I told anyone associated with me that any potential transfers required court order due to my bond conditions before any closing for sales, mortgages, etc. This includes Kolmar's mechanic's lien, Riverdale townhouses and westside properties.

④ As to the "Ponzi scheme," it has been a modus operandi by Murphy. This is my presumption based on my investigation. Murphy would find "flawed partners." One was Harry Sio from Prestige Realty Partners LLC. Another was Ray Noble of M3 and later Metal Networking LLC. These two companies involved the transfer of millions from investors and banks.

⑤ The ARDC matter that resulted in Murphy's disbarment w/ Murphy's use of trust accounts. Murphy had to deplete and juggle because of the large amounts of money he had paid to Ray Noble in the 1990s — about $2 million. Noble stated he had saved Murphy by testifying on his behalf in an early ARDC matter & that Murphy owed him. Then, according to the Feds, Murphy became involved with Tamara Brown about September 2011. Tamara has

FRANKEL
August 29, 2017
P. 3

sent an email to my attorney Richard Kruse concerning
her relationship with Murphy and that he was to
live with her in the home they were buying at 2015 N.
Racine, Chicago, Illinois.

In the ARDC case, Murphy placed the blame on
me; however, after reviewing Murphy's bank statements,
payments, etc., The ARDC found against Murphy.
Murphy had removed the serial client money and
from a record of Murphy's bank accounts paid it to
himself. In fact, Murphy set up several bank accounts
in the name of my companies with only he as the
officer-signator in an effort to hide funds and
their disbursement: comprehensive Properties and also
Madison Mercantile.

⑥ You know about Babajan's cancer and what
we need to do as for as trial dates. He told Brenda
that he is about to undergo several months of treatment
before surgery in late November, 2017. Please check into
this as we need to be on trial at the same time as
Babajan as it will be very beneficial to both of us. His
doctors', according to what he told Brenda, said he would
not be ready for trial until late spring at earliest.

⑦ Murphy via his firm Pedersen & Houpt arranged to
sell notes, mortgages and short sales to Babajan and me
beginning late December 2017. Babajan brought in
many investors from his Assyrian community. Babajan

P. 4.

and I paid the insurance on both the properties we purchased at short sales as well as the properties for the notes and mortgages that we believed we were purchasing. We purchased the insurance from Evergion Insurance, New York, N.Y. We paid premiums of $14,000 per month by early 2012. We believed that we had purchased the notes and mortgages. In April 2013, we filed a complaint for accounting in Circuit Court of Cook County, Chancery Division for an accounting to see what had been done by Murphy. The case lies in limbo. The FBI believes Babajan & I sued in Chancery to "lull" our investors. Richard Kruse is our attorney in that case.

EXHIBIT 3(a)

Mail receipts from Jerome Combs
Detention Center to Defendant Allen Rossini for
payments re mail to attorneys Adams and Frankel.
See Exhibits 3 through 16, herein).
Receipts: February 20, 2018
Receipts: March 28, 2018
Receipts: April 16, 2018

2891014

## 485596 : Rossini, Albert

Loc: JCDC Max D03 Lowe       Kankakee     Acct: Kankakee-34638     2/20/2018 3:36:44 PM

By: CMCCABE From: Cash Drawer #2                   Prior Balance:     $49.08

| | | |
|---|---|---|
| Bill | postage : Requested by inmate/detainee 2 packages | $5.78 CHRG |
| BillPay | PAYMENT FOR TRANS 2891014 | -$5.78 |

Main Balance:     $43.30

Sign: _____

_____

---

## 485596 : Rossini, Albert

2923287

Loc: JCDC Max D03 Lowe       Kankakee     Acct: Kankakee-34638     3/28/2018 11:28:36 AM

By: DHODGIN From: Cash Drawer #2                   Prior Balance:     $80.27

| | | |
|---|---|---|
| Bill | postage : Requested by inmate/detainee | $7.20 CHRG |
| BillPay | PAYMENT FOR TRANS 2923287 | ($7.20) |

Main Balance:     $73.07

Sign: _____

_____

---

## 485596 : Rossini, Albert

2940336

Loc: JCDC Max D03 Lowe       Kankakee     Acct: Kankakee-34638     4/16/2018 11:57:27 AM

By: DHODGIN From: Cash Drawer #2                   Prior Balance:     $150.13

| | | |
|---|---|---|
| Bill | postage : Requested by inmate/detainee | $13.10 CHRG |
| BillPay | PAYMENT FOR TRANS 2940336 | ($13.10) |

Main Balance:     $137.03

Sign: _____

_____

EXHIBIT 17(a)

Defendant Rossini notes at trial directing attorneys Adams and Frankel on trial issues.

Payments to Awigyam Pithyou from May through November 2012

| DATE | AMOUNT |
| --- | --- |
| 5/10/12 | 6,840 |
| 5/10/12 | 3,000 |
| 5/17/12 | 8,500 |
| 5/22/12 | 4,025 |
| 6/10/12 | 8,856 |
| 6/25/12 | 7,650 |
| 6/25/12 | 3,622 |
| 7/17/12 | 5,346 |
| 7/21/12 | 3,570 |
| 8/17/12 | 5,600 |
| 8/22/12 | 8,856 |
| 8/25/12 | 2,050 |
| 8/30/12 | 11,272 |
| 9/19/12 | 8,856 |
| 11/17/12 | 3,510 |
| 11/20-30/12 | 24,782 (various money orders and checks) |

He received additional payments from January - May 2012 from Reliant Management (Anthony Khoshabe)

He received the "equivalent" of the entertainment, the buildings generated

Awuiguam P. Thyou
(2)

P. Thyou was told he should go look at
the building but he could not get in
because,
   1. the owner who was in foreclosure
     still owned the property
   2. Tenants lived in the building
   3. Doubtful the owner & Tenants
     would let him in — but he
   should go look at the building(s).

Babajan did all the talking in
Assyrian; whatever I said, Babajan
translated.

"Pithyou was made aware that his investment was used to post bail for Rossini."

The cashier's check for $20,000 came from Anthony Khoshabe on instructions from Babajan.

The two cashier's checks for $2,500 each totaling $105,000 went to Murphy, not Anthony Babajan or me. Babajan and Anthony had over $350,000 from sales of their property in Berbank, IL.

Not feasible to say their money was used for my bail

Ashoor said he could not invest
because he needed his income to
support his son. He was getting divorced.
Wife was school teacher being fired for
alleged improprieties with students.

Ashoor was paid $10,000 in a check
from Murphy for bringing in investor
Janet Khoshaba.

Awiquam & Tayou.

Price of 9124 Lawler and 9129 Lawler
was quoted by Babajan at $52,500 each
totaling $105,000.

— Babajan told me that Yousif said
Awiquam made his money working
in a Church in California. Babajan
said Awiquam left under suspicious
circumstances and returned to Chicago
to St. Odisho.
(Yousif is Awiquam's brother in law
as well as Babajan's brother in law.
Yousif & wife helped raise Anthony
after his mother's death).

Awiquam wanted his payments by check
or money orders; while others received ACH
payments.

I believe Awiquam Pithyou invested
$435,000 total

Awiquam went alone to look at
some of the buildings. He could have
walked inside if he wanted to do so
although the owner probably would
not have let them.

— Babajan always set a quote the prices to "his peop

He asked what we were paying
and Babajan said it
was not his business to
question how much we
were making. That is
what Babajan once told me.

How could I tell Awrigquam
in what language?
although I sometimes spoke
to Asher

Sandra Prescott:
Forensic accountant FBI

Murphy Chase account
Rockford Commercial
Devon Street Investments
Devon Street Management

Thomas Murphy sole sign of
Rockford & Murphy —

Payments investors          $2,552,371
ALBERT ROSSINI               2,555,590
ANTHONY KhoshABE               970,088
Babajan Khoshabe               298,543
Property acquisition           438,515
Cash Withdrawals               330,511

INVESTOR related $200,782

Other Expenses               334,181
TW. Murphy                 1,905,523

Deposits not attributable
to Investors    1,739,529

Murphy plea = (1)

Page 4: Rossini paid $130,000
Loaned Murphy $10,000 for
a payment to start his settlement.
Murphy may have paid $5000 on his
own.

It is in the records of the Cook
County Criminal Case.

Page 5: Murphy told me that money
not used to purchase properties could
be used by me, BABATAN, ANTHONY
AS we wished based on the Guarantee
Murphy composed.

Page 5 bottom & Page 6 upper; the
management company was formed so
that any properties acquired for ourselves
or investors would be maintained.

4126 W. ADAMS
4520 W. JACKSON
4033-4037 W. ADAMS           211 N. Kilbourne
4045 W. Wilcox               4321 S. Marshfield
5410 W. Fulton               3435 S. Queley

Murphy Plea (2)

Page 6 Last Paragraph
I instructed Murphy how to make out commission checks. The remainder of money from a cashier's check had to be held by Murphy to purchase properties.

Page 7: - non existent properties. This is patently false. The following are properties I purchased on behalf of the group:

3820 W. ADAMS
4129 W. ADAMS } deeded to Craig Shaffer
4139 W. ADAMS

4126 W. ADAMS } deeded to Badalian
4045 W. WILCOX
4033-37 W. ADAMS
5410 W. FULTON
211 N. KILBOURNE — NOTE

4520 W. JACKSON - Deeded To Moghaddasi
3327 W. MONROE - Deeded To Assyrian Church
4321 S. MARSHFIELD
8435 S. Burley

16 Townhomes in RIVERDALE, IL
1 house in Riverdale, IL

Murphy p. ⑨

Never advised Murphy it was a sham lawsuit.

Murphy said his records were completely screwed up and he needed to see my records so that he wouldn't duplicate documents. I thought it strange he didn't have the records. I asked him for copies of his bank account statements. He said his records were in various locations because Murphy's Berger Newmark office was downtown - Loop but their main office was at 753 N Tripp.

He later told Kruse that he should have had a secretary just for this business — or maybe Kruse told him that and he agreed.

I never held earnest money —
Murphy was the holder of
the earnest money from
Talisman —

Cashier's Checks payable to me
were often done so I could cash
them at a currency exchange and
pay employees working on the
Riverdale properties. Also
for supplies i.e. appliances, lumber,
roofing, etc.

MEIR RETSTEIN - Real ESTATE
BROKER who BROUGHT RIVERDALE
PROPERTIES TO ME; I BROUGHT
KATHY KHODi.

ANThony KLYTTA - ATTORNEY handled
Riverdale Closings

Amount given TO Purchase
16 Riverdale PROPERTIES
$129,000.00 SO.

Joe CALATO - ONE OF MY INVESTORS
Murphy stole money from.
someone he should not have -.
guy is from Melrose Park -

(1)

Murphy Examination

Murphy says I approached him about
short sales and purchasing notes —

Late March, early April 2010 with Babyan

In fact, he approached me about
purchasing 3820 W. Adams on
short sale in 12/10 — I closed it
12/31/10

4135 W. MONROE — JAN 2010
4654 W. Adams, — FEB 2011
5131 W. Crystal — MARCH 2011
murphy supplied us with assignments for his client.
My investor wasted the money
to purchase from Murphy's clients,
I66 properties LLC and Stephanie
andre.

In early December 2010, he acted as
attorney in several loans for
Babajan, me and my Babajan's
investors.

1 Murphy's lady friend named Tamera Brown answered interrogatories prepared by Richard Kruse based on the accounting law suit.

She was living during the fall & winter of 2012-2013 in 2015 N Racine a house they were purchasing together. Tamera wrote to Kruse that Murphy said they were going to live there together "but he lied to me."

In the spring of 2014 Murphy was arrested in Boca Raton for beating Tamera.

At bond hearing in U.S. Court, August 28-29, 2015, the U.S. attorneys stated something to the effect that Murphy had deposited about $465,000 with Tamera Brown.

The money slowdown seems to have occurred when Murphy and Tamera took up together.

During the fall of 2012, while Murphy and Tamera were attempting to purchase 2015 N. Racine, two of Murphy's checks to Duveen bounced — for

Babajan would not let me speak to ABE alone.

He did not ask me at all about the notes.

ABE was given a package of properties to buy – or sell to new investors but Babajan's brother Fred wanted the properties.

He became angry with Babajan.

ALBERT KHAMIS -
Mesa Arizona
Convenience Store Business

approached by Abe Yousif -
Said Thomas Murphy was on top of
everything -
Mgt company was Devon Street -

I did not speak to Albert - he was
very ill. Either Abe or Balajan
spoke to him - but maybe it was
Nastors Moshe - his brother in law
who spoke to Mona Khamis.

I started speaking to them once
money started coming sporadically -

X First time I spoke to them was
when his wife called to see the
who was managing the property
on Washtenaw

Adis Alic, one of owners 7941 Karlov, Skokie—. met at my office several times. Also had a property on Christiana loan from Bank of America & they had not made a payment for 7 years but were collecting $300 monthly not paying the bank.— On Christiana property. He and his sister wanted me to either negotiate a modification of the mortgage, short sale or, buy their note.

Peterson/Cicero Currency

A/B CRT
↓
2,021,193
↓
Peterson Cicero

$75,963
Investors

$917,492
↓
Cash
Withdrawal

$1,027,738
Other Expenses

Prescott had no info for
Craig Shaffer.

4037 W. adams
5410 W. Fulton
4045 W. Wilcox

I borrowed money on them
to pay additional funds to
Badalian & purchase property
note for 2200 N. Kedzie
to substitute assets for
him. Murphy handled the
transaction. Badalian received
money in august and Nov.
2012; but Murphy did not
get us the note for 2200 N. Kedzie

15.74

Themes in whatever order
strike + Dismiss

① ignoring list of properties

② Directed Murphy
   law as to why dismissed

③ There was no lulling

④ any contact was with attorney
   Jeff Deer.

Incredible deception through-
out the case
— putting words in peoples mouth
— fabrications
— money had been accounted
   for
— look at timing of accounting
suit, bankruptcies;

Motion + rehearder

① Indented

Detention monitor

→ August 25, 2015

attorney Deer Mouse fire —
molotov cocktail with family
inside November 2015

Family garage porshe undamaged
2 dogs destroyed

Milan — molotov cocktails
Highland Park fire dept determina-

Deer call

Poulos call —

Dismissed Sticky case
advised I would be a witness
— Lawrence Levin conversation
with Seidin oct. 2015

Attny Deer knew Ross witness in h-
case
Der Sticky co-counsel wr la

Poulos said Decr & Sticky speaking to law enforcement - Dec. 2015

Handwriting expert 2012 - Decr file

no turnover of records from AUSA in arson investigation

Glen's discovery motions in May 2016, no turnover

Cook County States attorney meets with Rossini 3/22/18 - in attrny Decr's State criminal file
JD forgery of D's signature
Sticky having knowledge of details to blame D

Decr need for money -

Court's definition of who is a danger to to community

Defense Exhibits 1, 2, 3
3 bankruptcy petitions filed by Murphy.
AUGUST 2013
NOV. 22, 2013 - says not his signature

Says he filed documents by attorney and he
relied on his attorney -
"I wanted it done correctly..."

allowed various lies by Murphy -

Father Ninos said abraham was an
sales executive with Devon street. Then he
gave a summary of the investment: 3333 Ceuteau.

Josh:

1. Cashier Checks and money orders. I, Babajan and Anthony paid to Murphy to purchase notes and mortgages for us. Harvey Waller, attorney, has a copy. hawry@wallerco.com; (312) 606-9100; (312) 919-9100-cell. 30 N. LaSalle, Suite 2040. FBI given these documents in September 2014

2. Copy of insurance policies and payments for insurance on properties we (Babajan & I) believed Murphy had secured for us and our investors. MOUNT VERNON INSURANCE AND SEATtle Specialty Insurance Co (EVERGREEN Insurance agency in NY-broker).

3. Vladimir Moghaddasi and Robert Badalian stated payments ended in June 2012, but in fact they received payments throughout the year.

4. Murphy's fraud with Prestige Realty in 2002-2007; resulted in losses of over $22 million according to his Federal Bankruptcy Rule 2004 hearing.

AIDA ROLDAN
NUBIA RENDAK
Cecily Guidry
DIANE BENJAMIN
Pamela Sailer
DANIELLE GAGI
Nehama Morton
YAEL GAGI
TARA RENDAK
LISA ROSEN
CARMEN CRESPO
PATTI SHAY

MEIR ROTSTEIN
DANIEL RAMIREZ
Neal QURICON I
CASEY CZARNECKI
Babajan Khoshalr
ANTHONY KHOSHABE
MIKAIL ROTSTEIN
BABATAN Khoshabe
BERNARD Ellis
CORTEZ RHODES
RICHARD Espe
STANLEY HAYES
Allan PERES
TAKI SARANTOS
Richard Kruse
Jeffrey Deer
Glen Seiden
TED NETSKY
Brooke Lewis
Anthony Klytta
NICK SARANTOS

LAWYERS

"Carefully, methodically and relentlessly
11 counts wire fraud + 3 counts of
wire fraud.

Knowingly devised a scheme
Intend to defraud
materially false statements

Interstate Wire Communication
Mailed by interstate carrier

Scheme intending to cheat Another

Material if capable of

Did defendant knowingly Act —

The Investment Pitch
access to notes
Pay taking the notes
Rossini / DSI beging foreclosure process
Rental income in the meantime

Variations
"Owned notes"
Sometimes given by others)

Point of guaranty was to make people comfortable...

Badalian invested to pay himself —

(2011)

Dec 2011

| | | |
|---|---|---|
| Khodi | 105,000 | 493,000 |
| AEC | 100,000 | 313,000 |
| Vladi | 108,800 | 180,000 |
| Badalian | 75,000 | 105,000 |
| Pithyou | 105,000 | 75,000 |
| | $493,000 | |

| | | |
|---|---|---|
| Badalian | 75,000 | 4126 W Adams |
| | 75,000 | 4045 W. Wilcox |
| | 75,000 | 4037 W Adams |
| | 75,000 | 5410 W Fulton |
| | 300,000 | — — |
| | 140,000 | 4832 W. Montros |
| | 440,000 | |

| | | |
|---|---|---|
| AEC | 150,000 | 3327 W Monroe |

| | | |
|---|---|---|
| Yousif | 225,000 | |
| Shaher | 435,000 | 3820 W Adams |
| | | 4135 W Monroe |
| | | 4654 W. Adams |
| | | 5019 W Adams |
| | | 5131 W Crystal |

The evidence is only what
was testified to in court,
the exhibits admitted, etc.

SANDI PRESCOTT
Kelly CONNORS
Robert Dadalian
Vladi Moghaddasi
ABE YOUSIF
KaThy Khodi
Albert Khamis
NASTORS MOSHI
NINOr YOUNAN
ASHOOR PiThyOU
AWiQuAM PiThyOu
Thomas Murphy

USED property chart showing
PRICE, Lender, RENTS, how
much owed, PAYMT TO murphy

USED FINANCIAL CHARTS Composed
By Prescott BUT WITHOUT BREAK-
DOWN OF TOTALS.

I.P. ROSSINI $2550,000 BUT NO
BREAKDOWN HOW SPENT.

MURPHY 1900,000 but no breakdown
how Spent -

What was I supposed to do when
they complained about not being paid
and not getting the notes and mort-
gages?

ashoor fith you brought in
Janet Khoshaba who invested
$125,000. ashoor was paid
$10,000 by Murphy.

---

The idea of $49,000 to
the U.S. Marshalls is so
reminiscent of me giving
$98,500 to Cook County in a
money laundering case.
My lawyer: Glen Seiden.

TAXES

Most of the properties were not in my name but in the name of companies 100% owned by me.

The substantiation provided did not reconcile to the return because I recognized all the income no matter from which property even though it may or should have been allocated to the individual companies.

I deducted the interest or equivalent rental payments on my and Devon Street Investments Ltd. subchapter S returns. The Internal Revenue does not recognize this since many of the equivalent rental payments were made by either Devon Street Management Ltd. or Reliant Management.

EXHIBIT 21(a)

Emails between Defendant Rossini and attorney Joshua adams.

TRULINCS 08043424 - ROSSINI, ALBERT - Unit: CCC-H-A

---------------------------------------------------------------------------------------------------

FROM: 08043424
TO: Adams, Josh
SUBJECT: Update
DATE: 05/16/2018 08:33:51 AM

Josh,
Thanks for responding. I am on floor 23 at the MCC. Now that I finally have email access I will start sending you information I believe important. Please send me anything you want me to respond to. Also, send me the witness list so I can send you information concerning each. I have not yet heard when my new court date is in Cook County but I will keep you informed. Thanks,
Bert Rossini

TRULINCS 08043424 - ROSSINI, ALBERT - Unit: CCC-H-A

---------------------------------------------------------------------------------------------------------

FROM: 08043424
TO: Adams, Josh
SUBJECT: Motion to admit
DATE: 05/19/2018 08:05:15 AM

Josh,

Should we not file a motion to admit Murphy's ARDC judgment. I believe I sent you a copy. Also, the government continually presents the phrase that I sold non existent properties as though there were no existing properties that I bought and sold. Should we not file a motion concerning the many properties that I did buy and sold? The properties turned over to investors, etc. Also, as I believe you said Murphy will testify that the Chancery Law Suit was a sham. What about calling my attorney Richard Kruse as a witness. He met with Murphy and Murphy signed an agreed order to turn over documents, accounting, etc. Anthony Khoshabe will be hostile, but should we not show the money he collected for himself after he made the complaint to the SEC? It was probably at least $400,000 from April to December 2012.

Bert Rossini

TRULINCS 08043424 - ROSSINI, ALBERT - Unit: CCC-H-A

---------------------------------------------------------------------------------------------------

FROM: 08043424
TO: Adams, Josh
SUBJECT: Trial
DATE: 06/03/2018 05:57:01 PM

Josh,
I find it appalling that you and Scott have not seen me since Tuesday. I asked for the witness list several weeks ago, nothing.
It is not possible for you to really have prepared for this trial without my consistent input unless, of course, you buy the
government's version. We need to speak with the Judge.
Thank you and good night.
Albert Rossini

TRULINCS 08043424 - ROSSINI, ALBERT - Unit: CCC-H-A

-------------------------------------------------------------------------------------------------

FROM: 08043424
TO: Adams, Josh
SUBJECT: Attorney/Client Privileged Information
DATE: 06/12/2018 09:25:13 AM


Josh:

Yesterday I was upset with Scott Frankel when he said it was the first he heard of the cashier checks to Murphy from me and the Khoshabes for purchase of notes and mortgages. It was obvious he had not read my statements and typed draft motions sent to him by me. That is the biggest reason for my anger.

Now, I want you to call as witnesses for me the forensic accountant Sandi Prescott(?) from the FBI. Either she is incompetent, which I doubt, or lying by omission, or the standard she could not recall, as did Agent Connors.
The FBI forensic accountant studied Murphy's bank accounts as well as mine and the Khoshabes. She had all the cashier checks deposited to Murphy's accounts and therefore she had a copy of the cashier checks from me and the Khoshabes to purchase the same type notes and mortgages that Murphy was supposed to purchase for our investors. It is critical that you bring this out. I don't want to hear Scott's statements about people on my side missing in action. The only people I should be relying on are my lawyers. I feel comfortable knowing you will do this for me.
(Also, Lyle Evans and Jodie Blau - FBI, had copies when Seiden's office gave them to the agents as they came to Seiden's office at 115 S. Lasalle in September 2014)

I want admitted the following:

1. Checks made payable to Murphy by me and the Khoshabes to purchase notes and mortgages for me and the Khoshabes.

2. Seiden also gave Hogstrom a copy of the insurance policies covering approximately 70 properties in which Murphy supposedly purchased notes and mortgages for me, the Khoshabes and our investors. The insurance companies were Mount Vernon Insurance and Seattle Specialty Insurance Company through broker Evergreen Insurance. The Khoshabes and I paid approximately $14,000 per month in insurance premiums at the high amount of the properties.

3. Murphy Rule 2004 Bankruptcy Hearing and deposition before Assistant U.S Attorney Jeffrey Snell for the United States Bankruptcy Trustee. Murphy lied about his social security numbers, income during 2010 through 2013, certain debtors, etc. (I have a copy and will bring to court - sent to you several weeks ago and you used it to impeach Murphy).

4. Murphy 2014 Statement of Financial Affairs submitted in his Chapter 7 Bankruptcy case in which he includes as his first debtor, Devon Street Investments, Ltd. and states that Devon Street had a foreclosure judgment against Murphy. (I have a copy and will bring to court -I also sent to you several weeks ago).

5. United States Trustee attorney AUSA Jeffrey Snell motion to dismiss Murphy's Chapter 7 Bankruptcy Petition for falsehoods and failure to comply with the Rules (I have a copy and will bring to court - I also sent you a copy several weeks ago)

6. My accounting of payments to investors, and I will bring to court tomorrow.

7. Government (forensic accountant) information concerning breakdown of the amounts she said went to Murphy, also fine if she wants to bring a breakdown of money to me and the Khoshabes. Her answer to you about Craig Shaffer's money was too convenient that it was not lumped into the investor payments. She was either incompetent, obfuscating or lying about what composes the final numbers.

8. Copy of Murphy's bounced checks to Devon Street Management and Devon Street Investments in November, December and January 2012 and 2013. Look at the Devon Street Management bank account for November 2012 as I saw it in your binder with the checks recorded and shows they were returned for Insufficient funds. The amounts were $215,000, $390,000 or $359,000 and $31,000. It created an overdraft of at least $169,000 in the Management account which I covered when Murphy said that he was only having trouble with collecting from Lawyers and banks, but the money would come soon.

9. Seek out Murphy's legal background at Johnson Cusack & Bell, Burke Warren McKay and Pedersen & Houpt.

10. Murphy's Ponzi scheme with Prestige Realty Group, he brings up Prestige in the Rule 2004 deposition in bankruptcy court and says he lost $22 million (he never had $22 million of his own money). The banks lost between $22 - $60 million as Murphy was using straw buyers and then paying the mortgage payments from newer mortgages. Important to show his ponzi activities

TRULINCS 08043424 - ROSSINI, ALBERT - Unit: CCC-H-A

-------------------------------------------------------------------------------------------------------

besides the ARDC information.

11. Murphy and Deer accused me of arson on Deer's house but it was really Deer's clients or Russian loan sharks as Deer and Murphy had stolen hundreds of thousands in a client's settlement. It is the subject of a Deer 2015 ARDC complaint. I told Justin Wiersema about this. You or Frankel have had information about this for several months, I think we should explore it.

Look, we need all or most of these in the record, at least for appeal purposes; however, with these admitted into evidence and your sterling closing, I have a chance. Please, I want this included and I want you to call the forensic accountant and Lyle Evans if this is the way to get it done.

Call Harvey Waller on his cell phone (312) 919-9100 or his office phone about his documents. Since he is also a longtime Babajan lawyer, he may be ignoring us. But, he is also my lawyer on the civil matter and I signed a retainer agreement with him.

Sincerely,
Albert Rossini
08043-424

TRULINCS 08043424 - ROSSINI, ALBERT - Unit: CCC-H-A

---------------------------------------------------------------------------------------------------------

FROM: 08043424
TO: Adams, Josh
SUBJECT: Attorney Client Privileged Information
DATE: 06/12/2018 05:25:29 PM

Josh,

The checks reflect payment to Murphy as attorney agent
They have the same type addresses and PINs
The Government can object but that is self serving, the documents speak for themselves
My tax returns for 2011 show gross revenues of about $577,000 - net is different because I paid people.
My tax returns for 2012 show an individual gross revenue in Schedule C of about $856,000 and a Devon Street 1120s of
$2,350,000 based on IRS documentation I sent them. Yes, the government will talk about where the money went but they
cannot dispute that I included the revenue in gross receipts to the IRS.

Josh, I have told you that I believe you have done a good job on cross examining witnesses, but please do not ask me to
comment on whether you should prepare a final statement or be ready to examine defense witnesses. That should not have
been a last day problem for the prepared. You think about what to do and let me know in the morning. I care not about the
schedule. If we are on trial for the next two or three days, that is fine. Think about what to do that serves my interests best.

Okay, Josh, you could be a great lawyer. I hope you will be for me.

Brenda is not to be a witness because she knows almost nothing about 2010-2013. The only thing she could testify to is
Danielle Gabi and L.A. and that is something we need to stay away from .

Have a good night.
Albert Rossini

TRULINCS 08043424 - ROSSINI, ALBERT - Unit: CCC-H-A

------------------------------------------------------------------------------------------------

FROM: Adams, Josh
TO: 08043424
SUBJECT: RE: Update
DATE: 06/16/2018 01:36:09 PM

Hey Bert. yes, I got your email. Im working on getting the DSI bank statements, and yes 8/27 for motion for new trial.

ALBERT ROSSINI on 6/15/2018 12:52:47 PM wrote
Josh,
I hope you received my earlier email seeking bank statements for Devon Street Investments, Ltd. , Devon Street Management
and Devon Street Realty. Please mail copies to me here at the MCC. I need them for my tax audit.

Secondly, please email me the dates that the motion for a new trial needs to be submitted -- I believe I heard August 27, 2018
with the government having either 14 0r 28 days to respond. Just send me an email today letting me know the dates.

Sincerely,
Albert Rossini

EXHIBIT _26_ is a supplemental
exhibit to section viii, page 29.
Real Estate Transfer Ordinance of Riverdale

TRULINCS 08043424 - ROSSINI, ALBERT - Unit: CCC-H-A

--------------------------------------------------------------------------------------------------

FROM: Rossini, Brenda
TO: 08043424
SUBJECT: 1 of several items on Riverdale POS
DATE: 06/10/2018 09:06:04 AM

Real Estate Transfer Ordinances: Riverdale

Address:

157 W. 144th St.
Riverdale, IL 60827-2392

Phone:

708.841..2200

Amount of Tax:

None

Legal Reference:

Where Stamps Can Be Purchased:

Special Requirements:

Final water bill must be paid prior to closing. Failure to comply with this requirement or requesting a special reading will result in an additional $25 service charge. Required transfer stamp will be issued upon satisfaction of Point of Sale requirements.

Exempt Stamp Required?

Yes

Penalties for Non-compliance

Party Liable for Payment:

Effective Date:

12/22/2006

Pre-Transfer Inspection Required?

Yes, $200 fee (see Point of Sale Packet)

TRULINCS 08043424 - ROSSINI, ALBERT - Unit: CCC-H-A

---------------------------------------------------------------------------------------------

FROM: ████████ ████
TO: 08043424
SUBJECT: 2 Riverdale Compliance Ordinance
DATE: 06/10/2018 09:06:04 AM

Chapter 15.54
CERTIFICATE OF COMPLIANCE BEFORE SALE OF BUILDING

Sections:

15.54.010    Certificate of compliance required.

15.54.020    Requirements.

15.54.030    Noncompliance.

15.54.035    Conditional certificate of compliance    Procedures.

15.54.040    Nonliability of village.

15.54.050    Fee.

15.54.060    Forms.

15.54.070    Appeal.

15.54.080    Penalty.

15.54.090    Conflict.

15.54.100    Ground-fault circuit-interrupter protection.
15.54.010 Certificate of compliance required.

Except as otherwise provided in this chapter, whenever there is a proposed change of ownership or possession of any commercial or residential building or part thereof, such change of ownership or possession shall not be made unless a certificate of compliance has been issued by the building department, dated not earlier than one hundred eighty days prior to the change of ownership or possession. The term "residential building" as used in this chapter shall include mobile homes, single-family homes, duplexes, apartments, cooperative apartments and condominiums. The term "commercial building" shall include any other building not defined as a residential building herein. In order not to delay or impede a pending change of ownership or possession, the building department may issue a temporary certificate of compliance if the code violations existing at the time of the change of ownership or possession are not an immediate and imminent threat to the health or safety of the owners, the tenants or the occupants of the property in question. Under such circumstances, the former owner (seller), or his agent, and the new owner (buyer), or his agent, shall be jointly and severally liable and responsible for correcting all code violations existing at the time the change of possession or ownership occurs, said corrections to take place within the time established by the building department. (Ord. 95-47 § 1, 1995; Ord. 90-29 § 1, 1990; Ord. 90-15 § 1, 1990)
15.54.020 Requirements.

A certificate of compliance shall be issued by the building department after an inspection of the premises discloses that the premises are in compliance with the village building code, housing code, plumbing code, electrical code and all other village chapters relating to building construction and maintenance. Compliance with the provisions of said codes and chapters shall be met if the provisions of the respective codes in effect at the time of the inspection are met, or if the provisions of the codes in effect at the time the permit was issued for the particular construction or installation were met. In a situation where there is compliance with the applicable code or chapter in effect at the time a permit was issued but there is noncompliance with the current code or chapter, and the situation presents a hazardous condition endangering health or safety, the building department shall issue a noncompliance notice setting forth the hazardous condition. In addition to all other requirements provided herein, the final water bill must be paid prior to issuance of said certificate of compliance. (Ord. 90-15 § 1, 1990)
15.54.030 Noncompliance.

If an inspection by the building department discloses noncompliance with any of the codes or ordinances referred to herein,

said department shall issue a noncompliance notice setting forth the areas of noncompliance and stating that the premises shall be brought into compliance within forty-five days, or by a date thereafter established by the building department. When a subsequent inspection discloses compliance, a certificate of compliance shall be issued. If there is continual noncompliance after the time limit established, no new occupancies shall be permitted. (Ord. 90-29 § 2, 1990; Ord. 90-15 § 1, 1990) 15.54.035 Conditional certificate of compliance   Procedures.

An owner who has not completed the repairs identified through the inspection may nevertheless transfer ownership of property if:

A. A fee for a conditional certificate of compliance is paid for in the amount of one hundred dollars for one or two units and one hundred dollars plus twenty-five dollars for each additional unit over the first two; and

B. The owner or agent has deposited with the village an amount of money determined by the director of building and zoning and the fire chief to be sufficient to bring the structure into compliance with all village building and zoning ordinances and any applicable housing, fire or property maintenance codes or regulations; and

C. The buyer, conveyee, transferee, assignee or successor in title, ownership or interest (hereinafter "buyer") has entered into an agreement with the village whereby the buyer agrees to bring the structure into compliance within the time period determined by the director of building and zoning to bring the structure into compliance with all applicable code requirements within a period not to exceed one hundred eighty calendar days after the closing of the transaction ("closing"); and

D. If the buyer enters into such agreement, a conditional certificate of compliance will issue in order to allow the closing to be completed. The conditional certificate of compliance shall be issued by the director of building and zoning and shall terminate on the one hundred eighty-first day after closing and no extensions shall be granted. A buyer who elects to accept the premises, subject to the inspection with existing violations, and who agrees, in order to close, to be responsible as provided herein, shall execute a sworn affidavit satisfactory to the director of building and zoning, which will clearly indicate that the buyer is fully aware of the existing violations as well as the possibility of violations that may have existed but were undiscovered due to lack of access and agrees to accept the requirement and obligation to bring the structure into compliance within one hundred eighty days of the closing. The village shall issue a certificate of compliance upon completion of the repairs necessary to bring the dwelling or structure into compliance; and

E. In the event the buyer fails to complete the required repairs, and have the repairs verified on reinspection, the director of building and zoning is hereby authorized to pursue enforcement proceedings through the Riverdale administrative adjudication process, or, at its discretion, through the circuit court of Cook County. The buyer hereby agrees to submit to the jurisdiction and venue of the Riverdale administrative adjudication process and the circuit court of Cook County and to waive service of summons subject only to the notice requirement as required by law in order to enable the village to expeditiously obtain an order of compliance with this section; and

F. If reasonable proof that the repairs have been completed is not received by the building department within the required period for the repairs to be completed, the village may also issue a citation for violation of this chapter and/or the escrow repair agreement, and may also pursue any applicable administrative or judicial remedies to bring the structure and property into compliance with applicable codes and regulations. (Ord. 2008-01 § 1, 2008)
15.54.040 Nonliability of village.

A certificate of compliance indicates that so far as can be reasonably determined by a visual inspection of the premises and a review of village records and chapters, the premises meet the requirements of the codes. Neither the village nor the building department assumes any liability in the inspection or the issuance of a certificate of compliance and by the issuance of a certificate of compliance does not guarantee or warrant the condition of the premises inspected. (Ord. 90-15 § 1, 1990) 15.54.050 Fee.

A. The following fees shall be paid to the village for inspection of the premises required prior to the issuance of a certificate of compliance, which fees shall be paid at the time of applying for such inspection:

One or two units


$200

Each additional unit over two

TRULINCS 08043424 - ROSSINI, ALBERT - Unit: CCC-H-A

--------------------------------------------------------------------------------------------------------

$50

B. However, if it is necessary that an additional inspection be made by the building inspector or his authorized representative, no fee shall be charged for said second inspection; provided further, that any additional inspections beyond two by the building inspector or his authorized representative shall be at a fee of two hundred dollars per inspection.

C. The following fees shall be paid to the village for inspection of the commercial premises required prior to the issuance of a certificate of compliance, which fees shall be paid at the time of applying for such inspection:

Square Feet

Fee Amount

0  2,499

$200

2,500  4,999

$300

5,000  9,999

$400

10,000  14,999

$500

15,000  19,999

$60

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

**FILED**

AUG 23 2018 

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES OF AMERICA,

        Plaintiff,

    v.               Case No. 15-CR-515-1

ALBERT ROSSINI,       Hon. John Z. Lee

        Defendant.

## NOTICE OF FILING

Albert Rossini, Defendant Pro Se, respectfully file this Motion to Supplement Exhibits to Motion For A New Trial.

Respectfully submitted,

Albert Rossini, Defendant Pro Se

## CERTIFICATION

On August 19, 2018, I gave the correction officer at the MCC handling legal mail, this prestamped envelope with this filing, motion to supplement exhibits and exhibits to mail the following:

United States Attorney    Joshua Adams

219 South Dearborn, #500   53 W. Jackson, #1515

Chicago, IL 60604      Chicago, IL 60604

ALBERT ROSSINI, #08043-424
METROPOLITAN CORRECTIONAL CENTER
71 West Van Buren Street
Chicago, Il. 60605






RECEIVED

AUG 23 2018

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Office of the Clerk
United States District Court
U.S. Courthouse
219 South Dearborn Street
Chicago, Illinois 60604

Legal Mail
PRISONER CORRESPONDENCE

08/23/2018-17