# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 15 CR 00515 |
| | ) | |
| ALBERT ROSSINI, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## SUPPLEMENTAL MOTION FOR EVIDENTIARY HEARING IN CONNECTION WITH MOTION FOR NEW TRIAL

Albert Rossini, by and through his attorney Richard Kling, supplements the attached Motion for Evidentiary Hearing in Connection with Motion for New Trial, and exhibits, in support of which he states:

1.    The attached motion was due to be filed April 16, 2019.

2.    Because exhibits were still being secured by undersigned counsel, the motion was not filed by the deadline.

3.    Counsel seeks to supplement the previous Motion to add that since the filing of the original Motion, both trial attorneys admitted to undersigned counsel that they had not contacted any witnesses.

WHEREFORE, undersigned counsel requests that this Court allow this supplement to the original Motion.

Respectfully submitted:


s/Richard S. Kling
Attorney for Defendant

Richard S. Kling
Law Offices at Chicago-Kent College of Law
565 West Adams Street, Suite 600
Chicago, IL 60661-3691
(312) 906-5075


## CERTIFICATE OF SERVICE

The undersigned, Richard S. Kling, an attorney, hereby certifies that in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, L.R. 5.5, and the General Order on Electronic Case Filing (ECF), the following document:


## SUPPLEMENTAL MOTION FOR EVIDENTIARY HEARING IN CONNECTION WITH MOTION FOR NEW TRIAL


was served pursuant to the district court's ECF system as to ECF filings, if any, and was sent by first-class mail/hand delivery on April 18, 2019, to counsel/parties that are non-ECF filers.


By: /s/ *Richard S. Kling*
RICHARD S. KLING
Chicago-Kent College of Law
565 West Adams Street, Suite 600
Chicago, Illinois 60661
(312) 906-5075
rkling@kentlaw.edu

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **15 CR 00515** |
| | ) | |
| **ALBERT ROSSINI,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**MOTION FOR EVIDENTIARY HEARING IN CONNECTION WITH MOTION FOR NEW TRIAL**

Albert Rossini, by and through his attorney Richard S. Kling, moves this court to grant him an evidentiary hearing in connection with his Motion for New Trial Pursuant to Federal Rule of Criminal Procedure 33(a), and *U.S. v. Simpson*, 864 F.3d 830 (7th Cir. 2017) on the grounds that his trial counsel rendered constitutionally ineffective assistance. On the basis of the following facts, Mr. Rossini alleges that he was denied effective assistance of counsel in violation of his Sixth Amendment rights:

1. On August 20, 2015, a grand jury returned an indictment against Mr. Rossini and others, charging violations under 18 U.S.C. §1343 in Counts 1-3, 6, and 8-14, and violations under 18 U.S.C. §1341 in Counts 4, 5, and 7 (docket no. 1);

2. Mr. Rossini contends that neither of his attorneys discussed with him his right to testify at trial, nor did either of his attorneys prepare him to testify. (See Exhibit 1, Rossini Affidavit.)

3. Mr. Rossini contends that had his attorneys prepared him to testify, he would have

testified, and that the only reason he failed to testify was because he was not prepared by his attorneys. (See Exhibit 1, Rossini Affidavit.)

4. Prior to trial, the government moved to revoke Mr. Rossini's bond, and on August 2nd, the Court conducted a bond revocation hearing. Mr. Rossini contends: that his attorneys were not prepared for the bond hearing; that they did not discuss with him nor give him a copy of the revocation motion; that his attorneys only met with him for five minutes before the hearing to review the documents, and were totally unfamiliar with the allegations in the government's motion, or any defense he had regarding the alleged violation of bond; and that had his lawyers been prepared, they could have demonstrated that he was not in violation of his bond conditions. (See Exhibit 4, letter to court.)

5. Mr. Rossini claims that his attorneys were not adequately prepared for trial and that he was only visited four times for about fifteen minutes each while detained in the Kankakee Correctional Center between July 28, 2017, and May 9, 2018. (Exhibit 3, email; Exhibit 5, letter to court.)

6. Mr. Rossini claims that after he was moved from Kankakee to the Metropolitan Correctional Center, he was never visited by his attorneys at the MCC, whom he also alleges visited him only for 15 to 20 minutes in the court holding area on May 29, 2018, after a status hearing.

7. On June 4, 2018, the day his trial began, according to Mr. Rossini, attorney Adams told Mr. Rossini that he intended to call agents Lyle Evans and Jody Blau at trial. In fact, neither agents was called.

8.      On June 4, according to Mr. Rossini, he on the record, complained to the court that his attorneys were not adequately prepared for trial. (Also see Exhibit 4, letter to counsel.)

9.      Mr. Rossini claims that during the trial he "slipped his attorneys notes" requesting that they contact several witnesses in order to, according to Mr. Rossini, clarify and contradict the statements that the witnesses made at trial. (See Exhibit 1, Rossini Affidavit at 1, Exhibit 2, email from Mr. Rossini to Attorney Adams.)

10.     Despite Mr. Rossini's request of his attorneys that they call witnesses to testify at trial, and introduce various documents which Mr. Rossini contends would have explained his behavior as being innocent, the attorneys to the best of his knowledge did not even contact any witnesses, and did not call one witness to testify on his behalf, nor did they seek to introduce any documents in his behalf. (Exhibit 2, email.)

11.     On June 14, 2018 a jury found Mr. Rossini guilty of all Counts of the indictment (Docket Nos. 345 and 346).

12.     On August 7, 2018, Mr. Rossini filed a pro se Motion for New Trial (docket no. 365).

13.     On August 7, 2018, Mr. Rossini filed a pro se Motion to Expand the Motion and Memorandum for New Trial Based on District Rule 7.1 (docket no. 366).

14.     On August 23, 2018, attorneys Joshua Adams and Scott Frankel were granted leave to withdraw as counsel for Mr. Rossini (docket no. 372).

15.     On September 12, 2018, the undersigned attorney was appointed as counsel for

Mr. Rossini under the Criminal Justice Act (Docket Nos. 379 and 386).

16.     On September 19, 2018 Mr. Rossini's pro se motions in docket nos. 365, 366, 373, 375, and 377 were stricken and Mr. Rossini was told that he may refile after consulting with undersigned counsel if he wished.

17.     In the instant Motion for an Evidentiary Hearing in connection with his Motion for New Trial, Mr. Rossini claims that his trial attorneys (Joshua Adams and Scott Frankel) did not investigate his case, nor did they directly (or through an investigator, since none was hired) contact, interview, or subpoena any witnesses despite Mr. Rossini providing his attorneys with a list of witnesses and contacting them on multiple occasions about these potential witnesses. Mr. Rossini says he requested that these and other witnesses (not listed below) be called and that they would have provided in sum and substance the following testimony:

a. Lisa Rosen, worked as a short sale and note purchase negotiator for DSI and introduced Mr. Rossini to many investors and sellers, including but not limited to Walid Aiyesh, commercial Mortgage Corporation, Attorney Carl Pallidinetti, investor Julie Mae Kirkeles, and the properties at 3327 W. Monroe, and 1921 N. Richmond, Chicago Illinois. According to Mr. Rossini, Ms. Rosen worked on many transactions including the purchase of a $3,500,000 commercial mortgage portfolio from North Community Bank, and a 20 building portfolio controlled by Harris Bank of Chicago. According to Mr. Rossini, Ms. Rosen would have testified to the daily workings of DSI, note purchase agreements, and investor visits to Rossini, all of which, according to Mr. Rossini, would have been relevant to the "legitimate" transactions in which he was engaged.

b. Anthony Klytta has represented Mr. Rossini on a number of matters and is familiar

4

with Mr. Rossini's business and could have testified in regard to his knowledge of such. He represented Rossini in a number of property closings and several lawsuits, and represented Mr. Rossini and Rockford Commercial Mortgage Corporation in the purchase of 16 Riverdale Townhomes. He provided representation during attempts to transfer those properties to Mr. Khodi and attended meetings at the Riverdale City Hall and with the Riverdale Building Marshall. During those meetings with the Riverdale Building Marshall, we negotiated the terms of transfer from Lior Coresh to Rockford Commercial Mortgage, and then to the Khodi Family Trust. If called, he could testify to the difficulty in immediately transferring properties in Riverdale without renovations being performed first. Additionally, he investigated files in the Cook County Chancery Clerk's Office on behalf of Mr. Rossini. In particular, he investigated foreclosure files for information regarding properties that DSI, Rossini, and other investors sent money to Murphy for him to purchase. As part of his investigations, he copied each of the foreclosure files for Mr. Rossini. In 2013, I conferred with him as to their status. If called, I can testy to the fact that Mr. Rossini did purchase properties on behalf of investors.

c. Brian Tracey: according to Mr. Rossini, Mr. Tracey was a partner Codilis and Associates, overseeing the bank owned property division. According to Mr. Rossini, Codilis is one of the premier plaintive foreclosure lawyer friends in Chicago. Mr. Rossini alleges that Mr. Tracey and he often spoke about the lis pendens when he, Mr. Rossini, would release liens on certain properties. According to Mr. Rossini, they would discuss Mr. Rossini's reasoning for recording the liens to protect investors and his need to purchase certain properties that Mr. Murphy was supposed to have purchased with investor funds, including 8718 Kimball, 2043 Birchwood, and other properties against which Mr. Rossini had recorded his lis pendens.

d. Denise Azizian: according to Mr. Rossini, was a commercial banker at JP Morgan

5

Chase Bank in Winnetka, and was familiar with the DSI, Devon Street, Management, Devon St. Realty accounts at Chase Bank, and also Mr. Murphy's account at Chase. According to Mr. Rossini, she could have testified to Mr. Murphy bouncing over $550,000 of checks to both DSI and Devon St. Realty in November and December 2012. She could have testified to Mr. Rossini covering the overdrafted accounts with his savings and asked to the Chase investigation. She could also have testified to preparing cashier checks for Mr. Rossini to purchase notes and mortgages for his own accounts from Mr. Murphy.

e. Meir Rotstein: is a real estate broker working in the DSI office responsible for comparative market analysis (CMA) of properties in which investors and he were investing. He was also the real estate broker that introduced Albert Rossini to Liam Ben David and Haim Gabi. He was the real estate broker who introduced Mr. Rossini to Lior Coresh from who Albert purchased the 16 Riverdale townhomes for Rockford Commercial Mortgage Company, Ltd. And Kathy Khodi. He also introduced Mr. Rossini to Verticle Mortgage Funding Corporation from which Mr. Rossini purchased the note and mortgage for 211 N. Kilbourn, Chicago. He would have testified to many of the events that government witnesses described in their testimony as well as to a defense presentation of facts surrounding the purchase and attempted transfer of 16 Riverdale townhome properties to Kathy Khodi, Khodi Family Trust.

f. Barbara Boiko: is an attorney and Fidelity Title Agent and she is familiar with Mr. Rossini's business and can testify in regard to my knowledge of such. She, along with her partner Ronald Osimani and other attorneys in her office, negotiated with bank foreclosure attorneys on behalf of Mr. Rossini. The negotiations were to obtain properties on behalf of Mr. Rossini and investors. To her knowledge, these properties are the same properties that Murphy is supposed to have purchased. Further, she was familiar with the Barney Capital transaction that Mr. Rossini

and Theodore Netzky were attempting to close to reimburse Ms. Khodi and other investors. Along with her partner Ronald Osimani, she negotiated with Ms. Khodi's attorney, Patrick Valentino about this matter. During her representation of Mr. Rossini, she alerted him to the multiple irregularities that were apparent in the Ocwen Loan Servicing Bulk Sale package of properties that Mr. Rossini was purchasing on behalf of himself, Ms. Khodi, and other investors. She informed Mr. Rossini that these irregularities suggested fraud on the part of Ocwen, American Home Mortgage, and/or brokers associates with those companies. If called, she could have testified to her knowledge of such.

g. Ronald Osimani: is an attorney and Fidelity Title Agent who is familiar with Mr. Rossini's business and can testify in regard to his knowledge of such. He, along with his partner Barbara Boiko, and other attorneys in his office, negotiated with bank foreclosure attorneys on behalf of Mr. Rossini. The negotiations were to obtain properties on behalf of Mr. Rossini and investors. To his knowledge, these properties are the same properties that Murphy is supposed to have purchased. If called, he can testify to this activity. Further, he is familiar with the Barney Capital transaction that Mr. Rossini and Theodore Netzky were attempting to close to reimburse Ms. Khodi and other investors. Along with his partner Barbara Boiko, he negotiated with Ms. Khodi's attorney, Patrick Valentino about this matter. If called, he could testify as to such. During their representation of Mr. Rossini, his partner, Barbara Boiko, alerted him to the multiple irregularities that were apparent in the Ocwen Loan Servicing Bulk Sale package of properties that Mr. Rossini was purchasing on behalf of himself, Ms. Khodi, and other investors. Ms. Boiko informed Mr. Rossini that these irregularities suggested fraud on the part of Ocwen, American Home Mortgage, and/or brokers' associates with those companies. If called, he can testify to my knowledge of such.

18. Mr. Rossini also claims that his lawyers were constitutionally deficient because they, despite Mr. Rossini's request, failed to hire a forensic accountant to rebut and explain the Government's theories of how Mr. Rossini allegedly defrauded investors.

19. Mr. Rossini claims that his lawyers failed to attempt to introduce into evidence a number of documents which he asked his attorneys to introduce at trial including, but not limited to:

    (a) Mr. Rossini's Federal Tax audit and return, which Mr. Rossini claims would have shown that he did not profit $2 million from investors, but instead spent a majority of his money on interest payments to investors and business operations, thus showing Mr. Rossini's lack of intent to defraud investors.

    (b) Checks from Murphy to Devon Investments that bounced due to insufficient funds. Mr. Rossini claims that these bounced checks show that Murphy was not sending Mr. Rossini the payments he was supposed to which would explain why Mr. Rossini had to use personal funds to pay investors, further showing Mr. Rossini's lack of intent to defraud investors.

    (c) Devon Street Investments insurance policies with Mount Vernon Insurance Seattle Specialty Insurance. Devon Street Investments contracted to insure approximately 70 properties for which Murphy was supposed to be obtaining notes and mortgages. This is relevant to Mr. Rossini's lack of intent to defraud investors because he was paying insurance premiums for the aforementioned properties.

20. Mr. Rossini claims that when the Government moved to revoke his bond on July

28, 2017, that his attorneys failed to discuss with him the Government's allegation as to why his bond should be revoked and failed to secure documents that which Mr. Rossini claims would have defeated the Government's claim regarding the alleged bond violation. Because of his attorneys' lack of preparation, his bond was revoked and he remained in custody.

21.     Based upon all of the above, Mr. Rossini claims that he had deficient assistance of counsel under the Sixth Amendment to the Constitution and under *Strickland v. Washington*, 466 U.S. 668 (1984) which entitles him to a new trial, or at least an arbitrary hearing to establish the facts alleged.

22.     The two-pronged test for resolving ineffective assistance of counsel claims was established in *Strickland v. Washington*, 466 U.S. 668 (1984). See also U.S. Const., Amend. VI. Under *Strickland*, a defendant must show that: (1) counsel's performance was deficient such that it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defendant such that there is a reasonable probability that, but for counsel's objectively unreasonable performance, the result would have been different. *Id.* at 688-94.

23.     In the case before this Court, Mr. Rossini's Motion for Evidentiary Hearing in Connection with Motion for New Trial asserts that "(1) counsel's performance was deficient such that it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defendant such that there is a reasonable probability that, but for counsel's objectively unreasonable performance, the result would have been different." He contends that had his attorneys investigated his case, and had the witnesses (and others) that he discussed above been called to testify at trial, and had the documents he discussed above had been introduced by his attorneys in trial, the result would have been different, that is he would have

been found not guilty.

24.     "Defense counsel... must 'investigate the various lines of defense available in a given case,'" *U.S. v Simpson*, 864 F.3d 830 (7th 2017), citing *Wiggins v Smith*, 539 U.S. 510, 123 S.Ct 2527, 156 L.Ed 2d 471 (2003). "Failure to conduct any investigation regarding the potentially exculpatory witnesses certainly would constitute deficient performance", *Hall v Washington*, 106 F.3d 742 (7th Cir. 1997). An attorney's performance is deficient when "...a defendant provides the names of...mitigation witnesses" and the attorney does not "...determine for himself whether their testimony would be helpful", *Hall, supra*.

25.     In the case before this Court, in order to be entitled to an evidentiary hearing, Mr. Rossini's Motion for New Trial must establish that a hearing "may have yielded evidence showing that (1) his trial lawyers performance fell below an objective standard of reasonableness; and that (2) there was a reasonable probability that, but for counsel's unprofessional errors, the result of the preceding would have been different." *Simpson*, supra at 834; *Strickland, supra* at 687-688, 694, 104 S.Ct. 2052. The only way this court can determine if either of the *Strickland* prongs exist, that is, deficient performance, and prejudice, is if this court conducts an evidentiary hearing. Also see *Davis v. Lambert*, 388 F.3d 1052 (7th Cir. 2004).

Based upon his allegations of constitutionally ineffective counsel, Mr. Rossini has established a reasonable ineffectiveness claim under *Strickland*, which entitles him to an evidentiary hearing to prove his allegations; *Simpson, supra; Caguana, supra, United States v. Simpson*, 864 F.3d 830 (2017) (courts are to hold an evidentiary hearing when a defendant's allegations in a Rule 33 motion cumulatively constitute a colorable ineffective assistance of counsel claim pursuant to *Strickland*).

Pursuant to Rule 33 of the Federal Rules of Criminal Procedure ("Rule 33"), this court may grant a defendant's motion for a new trial "if the interest of justice so requires." Upon a defendant filing a timely motion for a new trial under Rule 33 claiming that trial counsel provided constitutionally ineffective assistance, a district court *must* order an evidentiary hearing. *United States v. Caguana,* 884 F.3d 681 (2018) (district court held a fully evidentiary hearing upon defendant's motion under Rule 33); *United States v. Miller*, 795 F.3d 625 (2013) (same), *Simpson*, *supra*.

Note: As of the filing of this Motion, counsel is still attempting to locate witnesses to confirm that they were never contacted by the trial attorneys.)

For all the reasons above stated, Albert Rossini moves this honorable Court to grant an evidentiary hearing in connection with his Motion for New Trial.

Respectfully submitted:

s/Richard S. Kling
Attorney for Defendant

Richard S. Kling
Law Offices at Chicago-Kent College of Law
565 West Adams Street, Suite 600
Chicago, IL 60661-3691
(312) 906-5075
rkling@kentlaw.iit.edu

11

## CERTIFICATE OF SERVICE

The undersigned, <u>Richard S. Kling</u>, an attorney, hereby certifies that in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, L.R. 5.5, and the General Order on Electronic Case Filing (ECF), the following document:

## MOTION FOR EVIDENTIARY HEARING IN CONNECTION WITH MOTION FOR NEW TRIAL

was served pursuant to the district court's ECF system as to ECF filings, if any, and was sent by first-class mail/hand delivery on April 17, 2019, to counsel/parties that are non-ECF filers.

By: */s/ Richard S. Kling*
RICHARD S. KLING
Chicago-Kent College of Law
565 West Adams Street, Suite 600
Chicago, Illinois 60661
(312) 906-5075
rkling@kentlaw.edu

12

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

UNITED STATES OF AMERICA,    )
                                  )
       Plaintiff,          )
                                  )
v.                           )     15 CR 00515
                                  )
ALBERT ROSSINI,         )
                                  )
       Defendant.      )
                                  )

## <u>EXHIBITS</u>

1)………………………………….............Rossini Affidavit (10 pp.)

2)……………………………………………Email from Rossini to Attorney Adams (2 pp.)

3)……………………………………………Email from Rossini to Attorney Adams (1 p.)

4)……………………………………………12/26/17 letter to Court (3 pp.)

5)……………………………………………3/31/18 letter to Court (2 pp.)

Exhibit 1

## AFFIDAVIT

I, ALBERT ROSSINI, under penalty of perjury state the following:

Between August 2017 and June 4, 2018, I mailed, emailed or otherwise provided to my attorneys, Joshua Adams and Scott Frankel, the following information and documentation concerning my criminal case Number 15-CR-515-1 in order for them to prepare my defense.

MOTIONS SUBMITTED BY ME TO MY ATTORNEYS:

1. Defendant Albert Rossini's Motion and Memorandum of Law to Dismiss the Indictment for Prosecutorial Misconduct, Memorandum of Law and Supplement in Support;

2. Defendant Albert Rossini's Motion and Memorandum of Law to Strike and Dismiss Government Allegations of Non-Existent Property Sales from the Record as Erroneous and False;

3. Defendant Albert Rossini's Motion for Production by the Government of Brady and Giglio Material;

4. Defendant Albert Rossini's Motion and Memorandum of Law to Reject and Dismiss the Government's Substitution of Deliberate Indifference for Mens Rea;

Memorandums and letters submitted to attorneys Adams and Frankel between August 2017 and June 4, 2018 concerning my criminal cases, bond issues and detention:

1. Explanation of Guaranty Agreements;

A-1

2.   Twenty-six pages of questions and answers concerning case number 15-CR-515-1;

3.   Accounting chart of investor funds and disbursements;

4.   Copies of cashier checks, money orders, commission rebates paid by me and the Khoshabes to Thomas W. Murphy so that he could purchase notes and mortgages for me and the Khoshabes similar to those he was purchasing for our investors;

5.   Copy of insurance policies and premiums payments insuring over 70 properties, most of which were properties underlying the notes and mortgages that Murphy was purchasing for me, the Khoshabes, Devon Street Investments, Ltd. ("DSI") and investors;

6.   Copy of mechanic's lien and my actions involving 7815 Kolmar, Skokie, Illinois;

7.   Explanation of Rossini's court approved trips and proof that he was where court had authorized him to travel;

8.   Rossini's 2010, 2011, and 2012 tax returns with 1040 schedule C gross revenues of $577,967 in 2011, 1040 schedule C gross revenues of $849,528 in 2012 and 1120S gross revenues for DSI of $2,350,099 in 2012;

9.   Letters to Hon. John Z. Lee.


The following are witnesses I asked my attorneys, Joshua Adams and Scott Frankel, to call in my defense:


MEIR ROTSTEIN, a real estate broker working in the DSI office responsible for comparative market analysis (CMA) of

A-2

including Ilias Bolos and could testify as to their frequent
visits to the DSI office.

RICHARD L. KRUSE, ESQ. represented DSI and Rossini in an
accounting lawsuit against Thomas Murphy in Cook County
Circuit Court, Chancery Division. The complaint was filed in
April 2013. Mr. Kruse advised Rossini to place lis pendens on
the properties Murphy was alleged to have purchased on behalf
of DSI and investors, until DSI could ascertain the existence
of the notes and mortgages and whether Murphy had purchased
them on behalf of DSI, its investors or other clients Murphy
was representing. Mr. Kruse attended meetings with several
investors including Ashoor Pithyou, Father Ninos Younan,
Father Awiquam Pithyou, Fereidoon Khoshabe, Babajan Khoshabe,
Craig Shaffer, Robert Badalian, Raymond Babaoghli, Moshi
Moshi, Havanna Moshi, Janet Khoshaba, John Khoshaba, and Ilias
Bolos. Mr. Kruse also represented DSI and Craig Shaffer in a
lawsuit filed in Cook County Circuit Court, Chancery Division
against several of Murphy's short sale broker clients in which
it is believed Murphy double sold properties which DSI and
investors provided funds for closing of the transactions. Mr.
Kruse's testimony would be critical to combat the government's
narrative that the 2013 DSI accounting lawsuit was a sham
meant to lull and stall investors.

CRAIG SHAFFER is a certified public accountant and the DSI
original investor introduced to Rossini by Babajan Khoshabe.
Mr. Shaffer received a deed from DSI for 3820 W. Adams, 4129
W. Adams and 4139 W. Adams but did not receive deeds for 4

A-4

immediate transfer of properties in Riverdale without renovation first being performed on the subject properties. Also, Mr. Klytta investigated on behalf of Rossini, the foreclosure files in the Cook County Chancery Clerk's office that DSI, Rossini and investors had sent money for Murphy to purchase. Mr. Klytta could testify that he copied each of the foreclosure files for Rossini and conferred with him in 2013 as to their status. Mr. Klytta was familiar with Rossini's business and could testify as to the fact that he did purchase properties on behalf of investors.

LIOR CORESH is a real estate investor introduced to Rossini by Meir Rotstein. He sold 16 Riverdale Townhomes that he owned to Rockford Commercial Mortgage. Mr. Coresh could testify as to the difficulty with transferring these specific properties, the regulatory process, and construction needed to be completed.

BARBARA BOIKO and RONALD OSIMANI, attorneys and Fidelity Title Agents. Boiko and Osimani negotiated with Ms. Khodi's attorney, Patrick Valentino, and also was familiar with the Barnett Capital transaction that Rossini and Theodore Netzky were attempting to close so as to reimburse Ms. Khodi and other investors. Assistant attorneys in Ms. Boiko's office negotiated with bank foreclosure attorneys to obtain properties on behalf of Rossini and investors that Murphy was supposed to have purchased. Ms. Boiko and Mr. Osimani could testify to this activity. Ms. Boiko also alerted Rossini that an Ocwen Loan Servicing Bulk Sale package of properties that

A-6

EMILY MANSELL   is a paralegal at Pedersen & Houpt and
Murphy's assistant while he was at that firm.  She worked on
many Rossini transactions and litigation in which Pedersen
represented me or family members.  She was Murphy's paralegal
when he devised and composed the original guaranty agreement.

MATTHEW POLICASTRO was an associate at Berger Newmark &
Fenschel who represented me, DSI and investors in building
code violation cases as co-counsel with Murphy.

TRISHA HENDERSON is a real estate broker representing FREDDIE
MAC in its sale of 8718 Kimball, Skokie, Illinois.  I
negotiated with Ms. Henderson to purchase Kimball on behalf of
Nastors Moshi.  I executed a contract prepared by Ms.
Henderson to purchase the Kimball property.  She was aware of
the lis pendens on 8718 Kimball, the reason for the lien and
my willingness to purchase the property on behalf of Nastors
Moshi.

BRIAN TRACY is a partner at Codilis & Associates overseeing
the bank owned property division.  Codilis is one of the
premier plaintiff foreclosure law firms in Chicago.  They are
officed in Burr Ridge, Illinois.  Mr. Tracy and I often spoke
about the lis pendens, when I would release liens on certain
properties, my reasoning for recording the liens to protect
investors and my need to purchase certain properties that
Murphy was supposed to have purchased with investor funds.
Mr. Tracy was familiar with 8718 Kimball, 2043 Birchwood, and

*A-8*

these witnesses before trial. They did not call or email any of these witnesses during trial even after I gave them the telephone numbers of several witnesses, especially Messrs. Rotstein, Klytta, Kruse and Tracy. Attorneys Adams and Frankel stated they were calling FBI Agents Evans and Blau as defense witnesses but refused to do so after I insisted they call them. I stated to my attorneys that it seems the government is not calling the main investigators in the case but instead using an agent with approximately two months experience in this case, probably due to the fact that she was not present at the July 2015 interview of Anthony Khoshabe and could not be impeached using the suppression of Anthony's interview.

and asked them to call each and summon them as witnesses on by behalf. Mr. Adams and Frankel refused to investigate witnesses on my behalf.


Respectfully submitted under penalty of perjury this _31_ day of July, 2018.

_Albert Rossini_

Albert Rossini

No. 08043-424

Defendant Pro Se

Metropolitan Correctional Center

71 W. Van Street

Chicago, IL 60605


A-10

TRULINCS 08043424 - ROSSINI, ALBERT - Unit: CCC-H-A

---------------------------------------------------------------------------------------------

FROM: 08043424
TO: Adams, Josh
SUBJECT: Attorney/Client Privileged Information
DATE: 06/12/2018 09:25:13 AM

*Exhibit 2*

Josh:
Yesterday I was upset with Scott Frankel when he said it was the first he heard of the cashier checks to Murphy from me and the Khoshabes for purchase of notes and mortgages. It was obvious he had not read my statements and typed draft motions sent to him by me. That is the biggest reason for my anger.

Now, I want you to call as witnesses for me the forensic accountant Sandi Prescott(?) from the FBI. Either she is incompetent, which I doubt, or lying by omission, or the standard she could not recall, as did Agent Connors.
The FBI forensic accountant studied Murphy's bank accounts as well as mine and the Khoshabes. She had all the cashier checks deposited to Murphy's accounts and therefore she had a copy of the cashier checks from me and the Khoshabes to purchase the same type notes and mortgages that Murphy was supposed to purchase for our investors. It is critical that you bring this out. I don't want to hear Scott's statements about people on my side missing in action. The only people I should be relying on are my lawyers. I feel comfortable knowing you will do this for me.
(Also, Lyle Evans and Jodie Blau - FBI, had copies when Seiden's office gave them to the agents as they came to Seiden's office at 115 S. Lasalle in September 2014)

I want admitted the following:

1. Checks made payable to Murphy by me and the Khoshabes to purchase notes and mortgages for me and the Khoshabes.

2. Seiden also gave Hogstrom a copy of the insurance policies covering approximately 70 properties in which Murphy supposedly purchased notes and mortgages for me, the Khoshabes and our investors. The insurance companies were Mount Vernon Insurance and Seattle Specialty Insurance Company through broker Evergreen Insurance. The Khoshabes and I paid approximately $14,000 per month in insurance premiums at the high amount of the properties.

3. Murphy Rule 2004 Bankruptcy Hearing and deposition before Assistant U.S. Attorney Jeffrey Snell for the United States Bankruptcy Trustee. Murphy lied about his social security numbers, income during 2010 through 2013, certain debtors, etc. (I have a copy and will bring to court - sent to you several weeks ago and you used it to impeach Murphy).

4. Murphy 2014 Statement of Financial Affairs submitted in his Chapter 7 Bankruptcy case in which he includes as his first debtor, Devon Street Investments, Ltd. and states that Devon Street had a foreclosure judgment against Murphy. (I have a copy and will bring to court -I also sent to you several weeks ago).

5. United States Trustee attorney AUSA Jeffrey Snell motion to dismiss Murphy's Chapter 7 Bankruptcy Petition for falsehoods and failure to comply with the Rules (I have a copy and will bring to court - I also sent you a copy several weeks ago)

6. My accounting of payments to investors, and I will bring to court tomorrow.

7. Government (forensic accountant) information concerning breakdown of the amounts she said went to Murphy, also fine if she wants to bring a breakdown of money to me and the Khoshabes. Her answer to you about Craig Shaffer's money was too convenient that it was not lumped into the investor payments. She was either incompetent, obfuscating or lying about what composes the final numbers.

8. Copy of Murphy's bounced checks to Devon Street Management and Devon Street Investments in November, December and January 2012 and 2013. Look at the Devon Street Management bank account for November 2012 as I saw it in your binder with the checks recorded and shows they were returned for Insufficient funds. The amounts were $215,000, $390,000 or $359,000 and $31,000. It created an overdraft of at least $169,000 in the Management account which I covered when Murphy said that he was only having trouble with collecting from Lawyers and banks, but the money would come soon.

9. Seek out Murphy's legal background at Johnson Cusack & Bell, Burke Warren McKay and Pedersen & Houpt.

10. Murphy's Ponzi scheme with Prestige Realty Group, he brings up Prestige in the Rule 2004 deposition in bankruptcy court and says he lost $22 million (he never had $22 million of his own money). The banks lost between $22 - $60 million as Murphy was using straw buyers and then paying the mortgage payments from newer mortgages. Important to show his ponzi activities

TRULINCS 08043424 - ROSSINI, ALBERT - Unit: CCC-H-A

--------------------------------------------------------------------------------------------------------------

besides the ARDC information.

11. Murphy and Deer accused me of arson on Deer's house but it was really Deer's clients or Russian loan sharks as Deer and Murphy had stolen hundreds of thousands in a client's settlement. It is the subject of a Deer 2015 ARDC complaint. I told Justin Wiersema about this. You or Frankel have had information about this for several months, I think we should explore it.

Look, we need all or most of these in the record, at least for appeal purposes; however, with these admitted into evidence and your sterling closing, I have a chance. Please, I want this included and I want you to call the forensic accountant and Lyle Evans if this is the way to get it done.

Call Harvey Waller on his cell phone (312) 919-9100 or his office phone about his documents. Since he is also a longtime Babajan lawyer, he may be ignoring us. But, he is also my lawyer on the civil matter and I signed a retainer agreement with him.

Sincerely,
Albert Rossini
08043-424

o refresh your recollection, your letters in general do not upset us. What is worrisome is when you tell us one thing in person and then take a different position in your letters.
Scott and I are dilligently preparing for trial and will be ready on June 4..
Lastly, with respect to your storage locker, there is a move out receipt in the discovery from November 2012. There are no bills for that locker from that date on. If you have a different storage locker please let us know
Thanks have a good night

ALBERT ROSSINI on 5/22/2018 8:09:00 PM wrote                    *Exhibit 3*
Josh,
No need to be testy, just send me by mail or have delivered what you want me to address. The reason I sent you an email was that at Kankakee you asked me to send you emails and I could not because we did not have emails. So, now you tell me not to send you emails and I understand your reasoning, but since I have not spoken to you for almost two weeks I thought this is how you wanted to correspond with trial upcoming.

Let me be more succinct. When you, Scott and I met about a month ago at Kankakee, Scott brought up that my letters upset the two of you. I said that I understood and would stop it. Well, your email yesterday is exactly why I wrote those letters. I get upset when my lawyer is very curt with me when I have not spoken to him for two weeks and we are going to trial in less than two weeks. This is typical of our relationship. So either get in touch with me or better we go see the Judge about our disagreements.
Albert Rossini
-----Adams, Josh on 5/21/2018 4:21 PM wrote:

>

I am not talking about the case on email sent from the jail. It is not protected. thanks.

ALBERT ROSSINI on 5/19/2018 9:20:43 AM wrote
Josh,
Should we not file a motion to admit Murphy's ARDC judgment. I believe I sent you a copy. Also, the government continually presents the phrase that I sold non existent properties as though there were no existing properties that I bought and sold. Should we not file a motion concerning the many properties that I did buy and sold? The properties turned over to investors, etc. Also, as I believe you said Murphy will testify that the Chancery Law Suit was a sham. What about calling my attorney Richard Kruse as a witness. He met with Murphy and Murphy signed an agreed order to turn over documents, accounting, etc. Anthony Khoshabe will be hostile, but should we not show the money he collected for himself after he made the complaint to the SEC? It was probably at least $400,000 from April to December 2012.

Bert Rossini

DECEMBER 26, 2017

Hon. John Z. Lee
United States District Court
Northern District of Illinois
219 South Dearborn Street
Court Room 1225
Chicago, Il. 60604

Exhibit 4

RE: U.S. v. ALBERT ROSSINI
    Cases: 1-15-CR-00515-1, 17-CR-522
    in relation to Joshua Adams

Dear Judge Lee:
    It is with regret that I believe my court appointed attorney, Joshua Adams, is providing me with ineffective or incompetent assistance in my cases. Please terminate his representation and direct the Federal Public Defender to appoint me new counsel prior to my January 4, 2018 status hearings.

    Also, Mr. Adams has informed me that co-counsel Scott Frankel is campaigning for judgeship in Cook County and will not be available for my defense. While I wish Mr. Frankel well, waiting to see the outcome of his campaign and lacking complete representation over the next several months is extremely prejudicial to me.

    Mr. Adams has missed court dates without

Judge Lee
P. 2

informing me he was not attending and presumably not asking Mr. Frankel to appear, thus leaving me without representation. Mr. Adams was totally unprepared at my August 2017 bond revocation hearing. He did not show me the government's motion prior to the hearing and I did not know of the statements concerning Los Angeles trips or properties before court. I heard about this at court! If I had known then I certainly would have asked for a continuance to prepare my proof and adequately answer the allegations. Mr. Adams has not responded to my many letters and answers one of every 20 telephone calls. Our meetings are basically 15 minutes of pleasantries and as my December 8 2017 meeting shows by Monday December 11, 2017 he had forgotten what we agreed.

I could continue for several pages and be more succinct but why bore you. It remains that I believe Mr. Adams representation severely prejudices my cases.

Since my July 28, 2017 detention, it has amazed me the number of defendants who complain about their court appointed attorneys. Unfortunately, these complaints are with merit. The ineptness, incompetence and ineffectiveness of many attorneys representing defendants pleading guilty is outrageous. I am happy to have advised them to request new and hopefully competent counsel in

Judge Lee
P. 3

order to properly plead guilty, or fight their case.

Therefore, I would certainly be remiss if I did not request new counsel. Thank you for your time and attention to this matter.

Respectfully submitted,

Albert Rossini
#485596
Jerome Combs Detention Center
3050 South Justice Way
KanKaKee, IL. 60901
815-802-7202

CC: Joshua Adams
53 West Jackson
Suite 1515
Chicago, IL 60604

United States Attorney
219 S. Dearborn St
Chicago, IL 60604

Scott Frankel
53 West Jackson
Suite 145
Chicago, IL 60604

Federal Defender
219 S. Dearborn St.
Chicago, IL 60604

Officer Justin Wiersema
U.S. Pretrial Services
United States Courts
219 S. Dearborn #1500
Chicago, IL 60604

May 31, 2018

Exhibit 5

Honorable John Z. Lee
United States District Court
219 S. Dearborn Street
Courtroom 1225
Chicago, IL. 60604

RE: United States v. Rossini, 15 CR 515-1

Judge Lee:

The extent of trial preparation with my attorney has been several 15 minute meetings before or after my court appearances and several 15-30 minute meetings in Kankakee. I have sent them approximately 125 typed and handwritten pages of explanation together with several motions to file on my behalf including a motion to dismiss. These describe my business and defenses to the charges.

On Tuesday May 29, 2018 in a 15 minute meeting after court my attorneys still could not identify the proper threads nor did they understand the basic economics or process of buying and selling distressed mortgages, short sales, why people would buy distressed notes and mortgages at a discount, that a residential buyer-borrower actually signed a promissory note when executing

P 2 ROSSINI
MAY 31, 2018

a mortgage, what a lis pendens was once a law suit is filed.

These are some of the many things that they do not understand—at least from their conversations. I realized the seriousness of the information deficit with their disbelief about a mortgagor signing a promissory note concurrent with executing a mortgage, and that the distressed note and mortgage could be purchased by individuals and small companies. Two months ago I sent them the case Cogswell v. Citifinancial Mortgage Company, 624 F. 3d 395 (7th Cir. 2010) to enlighten them about the business. They were unfamiliar with the case on May 29, 2018.

My attorneys are well versed in many aspects and types of criminal law (cases) just not mine. On May 29, 2018, I realized that I had a serious problem with this representation. The court should allow an additional attorney with financial and trading expertise in criminal matters to join my current attorneys. Otherwise I am extremely compromised in my defense.

Respectfully,

Albert Rossini #08043-424
Metropolitan Correctional Center