# EXHIBIT C

### DEVON STREET INVESTMENTS, LTD.
3924 West Devon Street
Lincolnwood, IL 60712

5801 N. Richmond
Chicago, IL 60659

| UNITS | BED/BATH | INCOME |
|---|---|---|
| Unit 1 | 3 bedroom/1 bath | $1,400.00 |
| Unit 2 | 3 bedroom/1 bath | 1,400.00 |
| Unit 3 | 3 bedroom/1 bath | 1,300.00 |
| Unit 4 | 3 bedroom/1 bath | (Vacant) |
| Unit 5 | 2 bedroom/1 bath | 1,050.00 |
| Unit 6 | 2 bedroom/1 bath | 1,000.00 |
| Unit 7 | 2 bedroom/1 bath | (Vacant) |
| Unit 8 | 2 bedroom/1 bath | (Vacant) |

| | |
|---|---|
| Total Actual Rents as of November 11, 2012 | $6,150.00 |
| Total Actual Annual Rents as of November 11, 2012 | $73,800.00 |

ANNUAL EXPENSES:

| | |
|---|---|
| Real Estate Taxes: | $9,714.00 |
| Management Fee: | 7,380.00 |
| Water | 3,500.00 |
| Insurance | 3,600.00 |
| Total Annual Expenses: | $24,194.00 |
| NET INCOME: | $49,606.00 |

**NOTE:** We are purchasing the note and mortgage and therefore unable to enter the property to inspect it prior to getting the title. Therefore, we are uncertain as to the interior condition. The owner owes $658,433.00 and is in foreclosure. It will take approximately 12 to 24 months to get the title; however, you will be paid the actual rentals collected on the property during this period. The income statement above reflects rentals and expenses as of November 11, 2012 and may be higher or lower depending on the occupancy rate during the foreclosure process. In the event the owner is able to redeem the property, he will need to pay the judgment amount of $658,433.00.

Make the cashier's check payable as follows:
Thomas Murphy, Attorney/Agent
PIN: 13013190140000
5801 N. Richmond, Chicago, IL 60659

GOVERNMENT
EXHIBIT

AwPithyou 5

APITHY_001-000041





GOVERNMENT
EXHIBIT

AwPithyou 6

Keep this receipt as a record of your purchase.

FOR YOUR PROTECTION SAVE THIS COPY
**CASHIER'S CHECK**

**Customer Copy**

9194512648

01/17/2012

Illinois

Remitter  AWIQUAM M PITHYOU

$ ********160,000.00 ***

**Pay To The
Order Of**   THOMAS MURPHY, ATTORNEY/AGENT
PIN# 13013190140000

Drawer: **JPMORGAN CHASE BANK, N.A.**
**NON NEGOTIABLE**

**TERMS**
KEEP THIS COPY FOR YOUR RECORD OF THE TRANSACTION.
PLEASE CONTACT CHASE TO REPORT A LOSS OR FOR ANY OTHER INFORMATION ABOUT THIS ITEM.

282111107 NEW 01/08 8810004306

HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK   **CASHIER'S CHECK**   HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK

**CHASE**

9194512648  $\frac{25\text{-}3}{440}$

Date  01/17/2012

Remitter  AWIQUAM M PITHYOU

**Pay:**   ONE HUNDRED SIXTY THOUSAND
DOLLARS AND 00 CENTS

$ ********160,000.00 ***

**Pay To The
Order Of**   THOMAS MURPHY, ATTORNEY/AGENT
PIN# 13013190140000
*5801 N. RICHMOND*
*CHICAGO, IL 60659 NOTE*

Drawer: **JPMORGAN CHASE BANK, N.A.**

*Michael Andrews*

Senior Vice President
JPMorgan Chase Bank, N.A.
Columbus, OH

Security
Feature
Details on
Back

DSI-PIT_001-000069

4126 West Adams
Chicago, Illinois 60624

| Units | Rooms | Bedrooms | Baths | Rent |
|-------|-------|----------|-------|------|
| Unit 1 | 6 | 3 | 2 | 1,250 |
| Unit 2 | 7 | 4 | 1 | 1,350 |
| Garden | 4 | 2 | 1 | 850 |

Total Monthly Rent
3,450
Total Annual Rent
41,400

Real Estate Tax: $2,323.34
Lot Size: 25x100

| Expenses | |
|----------|---|
| Real Estate Taxes | 2,324 |
| Management Fee | 4,140 |
| Water | 1,050 |
| Expenses | 7,514 |
| Net Income | 33,866 |
| Net Rent Multiplier | 2.21 |

GOVERNMENT
EXHIBIT

Badalian 1



**Bank of America**     **Cashier's Check**     No. **431743633**

11-35/1210
NCA

Notice to Purchaser - In the event this check is lost, misplaced or stolen, a sworn statement and 90-day waiting period will be required prior to replacement. This check should be negotiated within 90 days.

Date **MAY 23, 2011**

Banking Center    SUNNYVALE INDUSTRIAL

0000570 00008 0001743633    Remitter (Purchased By) **ROBERT BADALIAN**

$    **\*\*7500.00\*\***

Pay    \*\*SEVEN THOUSAND FIVE HUNDRED DOLLARS AND 00 CENTS\*\*

To The Order Of    \*\*BERT ROSSINI\*\*
\*\*\*\*
4126 W. Adams, Chicago, Il

Authorized Signature

Bank of America, N.A.
San Francisco, CA    VOID AFTER 90 DAYS

⑈431743633⑈ ⑆121000358⑆ 13970⑈85076⑈

■ THE ORIGINAL DOCUMENT HAS REFLECTIVE WATERMARK ON THE BACK    THE ORIGINAL DOCUMENT HAS REFLECTIVE WATERMARK ON THE BACK ■

---

**Bank of America**     **Cashier's Check**     No. **431743632**

11-35/1210
NCA

Notice to Purchaser - In the event this check is lost, misplaced or stolen, a sworn statement and 90-day waiting period will be required prior to replacement. This check should be negotiated within 90 days.

Date **MAY 23, 2011**

4126 W. Adams
Chicago, Il 60624
PIN # 1615 2100340000

Banking Center    SUNNYVALE INDUSTRIAL

0000570 00008 0001743633    Remitter (Purchased By) **ROBERT BADALIAN**

$    **\*\*35000.00\*\***

Pay    \*\*THIRTY FIVE THOUSAND DOLLARS AND 00 CENTS\*\*

To The Order Of    \*\*REPUBLIC TITLE\*\*
\*\*THOMAS MURPHY AGENT\*\*

Authorized Signature

Bank of America, N.A.
San Francisco, CA    VOID AFTER 90 DAYS

⑈431743632⑈ ⑆121000358⑆ 13970⑈85076⑈

■ THE ORIGINAL DOCUMENT HAS REFLECTIVE WATERMARK ON THE BACK    THE ORIGINAL DOCUMENT HAS REFLECTIVE WATERMARK ON THE BACK ■

RBADAL_001-000018

**PREPARED BY:**
Anthony Klytta
162 North Franklin Street
Chicago, IL 60606

**MAIL TAX BILLS TO:**
Robert Badalian
1099 Quail Creek Circle
San Jose, California 95120

**MAIL RECORDED DEED TO:**
Robert Badalian
1099 Quail Creek Circle
San Jose, California 95120

## QUITCLAIM DEED

THE GRANTOR, Devon Street Investments, Ltd., a corporation existing under the laws of the State of Illinois, for and in consideration of Ten Dollars ($10.00) and other good and valuable considerations, in hand paid, GRANTS, CONVEYS AND SELLS to ROBERT BADALIAN AND LORINDA BADALIAN 1997 INTER VIVOS TRUST, 1099 Quail Creek Circle, San Jose, California 95120, all interest in the following described real estate situated in the County of Cook, State of Illinois, to wit:

LOT 38 IN BLOCK 6 IN W.M. DERBY'S SUBDIVISION OF THE NORTHEAST ¼ OF THE NORTHEAST ¼ OF SECTION 15, TOWNSHIP 39 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**PROPERTY ADDRESS:** 4126 West Adams Street, Chicago, IL 60624

GRANTOR for itself and its successors and assigns, hereby covenants and represents that it has not done, or suffered to be done, anything whereby the premises hereby conveyed is, or may be, in any manner encumbered or charged, except for building code violations or real estate taxes.

Dated this 30th day of July, 2013

DEVON STREET INVESTMENTS, LTD.

BY: _____

Albert Rossini, its President

RBADAL_001-000171

STATE OF ILLINOIS )
COUNTY OF COOK )

I, the undersigned, a Notary Public in and for said County, in the State of Illinois do hereby certify that Albert Rossini, personally known to me to be the same person whose name is subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that he signed, sealed and delivered the said instrument, as his free and voluntary act on behalf of Devon Street Investments, Ltd., for the uses and purposes therein set forth.

Given under my hand and notarial seal, this 30th day of July, 2013.

_____
Notary Public

My commission expires: ___9/25/16___

"OFFICIAL SEAL"
CARMEN CRESPO
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 9/25/2016

4126 West Adams
Chicago, IL 60624

## GUARANTY AGREEMENT

The undersigned, Albert Rossini ("Rossini") , hereby acknowledges that he has presented to Robert Badalian ("Badalian") certain parcels of real property for Badalian to purchase.  With respect to each such parcel of real property presented, Rossini acknowledges that he has obtained written assignments of the right to acquire each such parcel from the contract purchaser and, based upon those written assignments, Rossini has asked Badalian to advance funds to be used to purchase the property(ies) pursuant to the assignment(s).  Rossini further acknowledges that Badalian has advanced funds on several properties and has agreed that once a property is closed, the title to that property shall be deeded to Badalian or as Badalian shall direct.

Badalian agrees that Rossini may use the funds advanced as long as Rossini agrees to pay to Badalian the monthly equivalent of the rentals for the property on which funds have been advanced up to and including the month of closing and conveyance to Badalian.

Rossini hereby guarantees to Badalian that in the event that any one or more of the properties for which Badalian has advanced funds are not closed and purchased pursuant to the assignment for that property that Rossini shall be personally responsible to return any and all sums so advanced by Badalian for that particular property and shall return such funds within five (5) days after Rossini has determined that no closing will occur pursuant to the assignment.

Dated: May 26, 2011

_____
Albert Rossini

Acknowledged and accepted this
27 day of May, 2011

_____
Robert Badalian

**GOVERNMENT EXHIBIT**

**Badalian 3**

302_004-001545

| Investor Witness | Property Address | Investment Date | Note Owned by Rossini or DSI Entities at the Time of Investment? | Note Acquired by Rossini or DSI Entities after Investment? | Title Obtained by Rossini or DSI Entities? | Title Transferred to Investor? |
|---|---|---|---|---|---|---|
| **Robert Badalian** | | | | | | |
| | 4126 W. Adams 16-15-210-034-0000 | 5/23/2011 | No | No | Yes, 12/6/2011 | Yes, 7/30/2013 |
| | 5410 W. Fulton 16-09-302-024-0000 | 5/24/2011 | No | No | Yes, 5/15/2012 | No |
| | 4045 W. Wilcox 16-15-211-007-0000 | 6/2/2011 | No | No | Yes, 1/30/2012 (Hoya Properties) | No, transferred to Julie Mae Kirkle on 5/15/2014 |
| | 4333 W. Adams 16-15-212-010-0000 | 6/29/2011 | No | No | No | No |
| | 4118 W. Washington 16-10-420-039-0000 | 8/25/2011 | No | No | No | No |
| | 3822 W. Monroe 16-14-101-020-0000 | 9/7/2011 | No | No | No | No |
| | 4037 W. Adams 16-15-215-010-0000 | 9/21/2011 | No | No | Yes, 6/25/2012 | No |
| | 2442 W. Arthington 16-13-415-055-0000 | 1/23/201 | No | No | No | No |
| | 2444 W. Arthington 16-13-415-056-0000 | 1/23/2012 | No | No | No | No |
| | 2446 W. Arthington 16-13-415-023-0000 | 1/23/2012 | No | No | No | No |
| | 4832 W. Montrose 13-16-229-032-0000 | 2/2/2012 | No | No | No | No |
| **Vladimir Moghadassi** | | | | | | |
| | 4520 W. Jackson 16-15-114-026-0000 | 8/5/2011 | No | No | Yes, 6/21/2012 | Yes, 8/28/2012 |
| | 3610 W. Lexington 16-14-308-036-0000 | 9/22/2011 | No | No | No | No |
| | 5062 W. Congress 16-16-217-001-0000 | 8/8/2011 | No | No | No | No |
| | 7941 Karlov 10-27-206-047-0000 | 12/28/2011 | No | No | No | No |
| | 2129 N. Sheffield 14-32-217-013-0000 | 3/6/2012 | No | No | No | No |
| | 3340 N. Oakley 14-19-317-024-0000 | 7/9/2012 | No | No | No | No |
| (AEC) | 3327 W. Monroe 16-14-206-015-0000 | 10/11/2011 | No | No | Yes, 9/30/2011 | Yes, 10/24/2011 |
| (AEC) | 5725 N. Kimball 13-02-421-010-0000 | 2/16/2012 | No | No | No | No |
| (AEC) | 5536 W. Jackson 16-16-109-028-0000 | 12/13/2011 | No | No | No | No |
| (AEC) | 4009 W. Polk 16-15-414-031-0000 | 12/13/2011 | No | No | No | No |
| **Kathy Khodi** | | | | | | |
| | 3650-52 W. Polk 16-14-312-023-0000 | 12/7/2011 | No | No | No | No |
| | 2323 W. Haddon 17-06-304-015-0000 | 2/24/2012 | No | No | No | No |
| | 1321 N. Maplewood 16-01-219-013-0000 | 2/24/2012 | No | No | No | No |
| **IbrahimYousif** | | | | | | |
| | 7935 N. Karlov 10-27-206-013-0000 | 12/29/2011 | No | No | No | No |
| | 6159 N. Hamilton 14-06-117-009-0000 | 2/26/2012 | No | No | No | No |
| | 8249 Knox 10-22-313-002-0000 | 7/7/2012 | No | No | No | No |
| **Awiquam/ Ashoor Pithyou** | 5801 N. Richmond 13-01-319-014-0000? | 1/17/2012 | No | No | No | No |
| | 9124 Lawler 10-16-403-008-0000 | 12/28/2012 | No | No | No | No |
| | 9129 Lawler 10-16-404-031-0000 | 12/28/2012 | No | No | No | No |
| | 8142 Kilpatrick 10-22-318-024-0000 | 2/6/2012 | No | No | No | No |
| | 4731 N. Monticello 13-14-106-010-0000 | 4/28/2012 | No | No | No | No |
| **Ninos Younan (St. Odisho)** | 3333 W. Berteau 13-14-420-010-0000 | 5/1/2012 | No | No | No | No |
| **Nastors Moshi** | 5421 N. Artesian 13-12-218-008-0000 | 3/19/2012 | No | No | No | No |
| | 6057 N. Sheridan 11-32-200-037-0000 | 3/22/2012 | No | No | No | No |
| | 6443 N. Greenview 11-32-326-007-0000 | 4/10/2012 | No | No | No | No |
| | 5424 N. Paulina 14-07-208-031-0000 | 4/18/2012 | No | No | No | No |
| | 8718 Kimball 10-23-203-032-0000 | 6/15/2012 | No | No | No | No |
| **Albert Khamis** | 6425 N. Washtenaw 10-36-426-010-0000 | 3/7/2012 | No | No | No | No |
| **Janet Koshaba** | 7935 N. Karlov 10-27-206-013-0000 | 6/27/2012 | No | No | No | No |

**GOVERNMENT EXHIBIT**

**Chart 1**

DATE:     June 30, 2013 23:59:26 +00:00

SUBJECT:  **Investor Report**

FROM:     bertrossini4@aol.com

REPLY-TO:  bertrossini4@aol.com

TO (5):    henryhormozian@comcast.net; vladi.m@apple.com; raybabaogh@yahoo.com; susanbabaoghli@yahoo.com; robert_badalian@yahoo.com

ATTACHMENTS (1): 📎 INVESTOR REPORT.docx

---

Date: Sun, 30 Jun 2013 23:59:26 UTC
Subject: Investor Report
From: bertrossini4@aol.com
To: vladi.m@apple.com, henryhormozian@comcast.net, robert_badalian@yahoo.com, raybabaogh@yahoo.com, susanbabaoghli@yahoo.com
Has Attachment: Yes


I sent this to Fred yesterday to send to each investor, however, he reported to me a few minutes ago that his email was hacked and asked me to send this direct.  I will also send applicable reports to other investors.  I will be sending another report on Wednesday detailing results from Monday and Tuesday.


  I sent this to Fred yesterday to send to each investor, however, he reported to me a few minutes ago that his email was hacked
   and asked me to send this direct.  I will also send applicable reports to other investors.  I will be sending another report
   on Wednesday detailing results from Monday and Tuesday.

GOVERNMENT EXHIBIT

Moghaddasi 17

INVESTOR REPORT
June 29, 2013

This week we received financial spread sheets from Tom Murphy.  However, as Rich Kruse has stated to me, we cannot verify these spread sheets without a copy of the paid checks to see if they match up with what he has sent us.  It is one thing to state that someone has been paid certain amounts but another thing to see the proof.  The individual investor knows what he or she has been paid, and the broker knows the same; however, to offer it as proof to someone who does not know that another has been paid that money is wrong until proof of such is made and that can only be completed by reviewing the paid checks.  We have subpoenaed these statements and Tom has stated to Rich that he would provide them prior to or at the July 8 court date.  Rich was to meet with Tom again yesterday afternoon and I will have his update by Monday.   In the meantime, I have below a synopsis of what Tom says he has paid out.

(Several Accounting Forms Sent By Separate Efax)


These are files that we have confirmed with the court, the banks' lawyers, the banks, and on occasion with the property owners.  I have included only those where I have spoken to one of the above and only those properties that pertain to California investors or investors willing to have their investments disclosed.  I am following through with these files and all of the others as Babajan has been going to court three times per week to check on each file.  There will be a further update on July 3, 2013 on these and other files that we reach Monday and Tuesday.

2634 N. Francisco, Chicago, IL   Case dismissed, we have attempted to contact owner to get a copy of the loan modification and or settlement (F. Khoshabe)

5062 W. Congress, Chicago, IL, still in foreclosure.  Owner occupies the ground floor.  Section 8 has canceled rents due to the foreclosure.  Once new leases are required, Section 8 has the option of canceling  payments on properties in foreclosure if one of the units is owner occupied.  (Moghaddasi)

5536 W Jackson, Chicago, IL, still in foreclosure on case management calendar which means it still in mediation.   One unit is owner occupied and we are checking with Section 8 to see if they have canceled payments.  (Assyrian Evangelical Church)

4731 Main Street, Skokie, IL, judgment obtained but not yet to judicial sale, owner occupied and Section 8 has canceled payments on second tenant (B Khoshabe, Rossini, F  Khoshabe)

4946 W. Washington, Chicago, IL  still in foreclosure but owner occupied.  Section 8 has canceled payments due to owner occupied on one unit.  (B Khoshabe, Rossini)

5749 N Spaulding, Chicago, IL, still in foreclosure in mediation, owner occupied on one unit.  Was Washington Mutual loan assigned to Chase from the takeover.    It appears from the foreclosure file that the assignments to Chase have been defective and that  the owner is fighting under those circumstances.  (F. Khoshabe)

8315 Keating, Skokie, IL, the bank is ready to get a judgment and is negotiating with me for the takeover.  Owner occupied,  (Benva)

5018 W. Quincy, Chicago, IL , non owner occupied.  Checking on Section 8 rents.     Still in foreclosure (F B Khoshabe, F Khoshabe, Rossini)

4943 W Lexington, Chicago, IL, notice of judicial sale has been filed but a date not set.  Judgment obtained.  Section 8 has canceled  rents due to owner occupied.

3610 W. Lexington, Chicago, IL  still in foreclosure and owner occupied.  Section 8 has canceled rents due to owner occupied.   (Moghaddasi)

5531 W Jackson, Chicago, IL, in foreclosure, case management which is mediation at this point.  It is owner occupied and Section 8 has canceled rents on remaining tenants.  (Ben eta Badalian)

4009 W. Polk, Chicago, IL, still in foreclosure, dispute on who owns the loan besides our rights on the loan.  This is non owner occupied so I am after Section 8 to try and collect the rents.  (Assyrian Evangelical Church)

3340 N. Oakley, Chicago, IL, still in foreclosure with many liens including mechanic liens filed by the owner, a very difficult lawyer in Chicago.  Another private equity fund also has a lien on the building.  We have our lis pendens filed and am following up on both the foreclosure and trying to negotiate with the owner.  (Moghaddasi)

5511 W. Gladys, Chicago, IL,   order of sale confirmed.  Then the court had to compose an amended order of sale.  There is a deficiency of $318,424 and I am negotiating with the former owner, bank and lawyers.  (F. Khoshabe)

2043 W. Birchwood, Chicago, IL, in foreclosure and owner occupied.  Section 8 has canceled rents.  I am close to being able to take this property over either because we have rights that cannot be circumvented or due to the owner being willing to complete a short sale with me.  (Benva)

3236 W. Polk, Chicago, IL in foreclosure but the case is stalled due to liens by the USA (taxes), State of IL (taxes).  It is owner occupied and Section 8 has canceled rents.  (F. Khoshabe)

1135 N. Damen, Chicago, IL , this is the first property that we have confirmed has been sold out from under us.   (Rossini, B  Khoshabe)

 3837 W Wilcox, Chicago, IL, in foreclosure and owner occupied.  Section 8 has canceled rents.  (B. Khoshabe)

6337 N. Talman, Chicago, IL.  Voluntary dismissal by the bank.  The owner has settled with the bank and I am attempting to find out the details.  (B Khoshabe, Rossini)

3337 N Halsted, Chicago, IL  a judgment has been obtained however the owner has convinced the court to modify the judgment and give him time to work out a settlement, redeem or pay it off.  (Rossini, B Khoshabe)

6554 N. Mozart, Chicago, IL, in foreclosure and owner occupied.  Owner has filed a motion to ask the court for more time to answer the motion for judgment.  (F Khoshabe)

929 W. Lakeside, Chicago, IL; court agreed to dismiss the case in favor of a new filing.  Usually there is just an amended filing rather than a dismissal.  I have several calls into the law firm for the bank, the banker  and I have spoken to the owner who is interested in a settlement. (Babaoghli)

2129 N Sheffield, Chicago, IL , order for judgment and receiver report.   I am negotiating with the owner but have been unable last week to contact the bank rep.  (Moghaddasi)

2742  W Granville, Chicago, IL, foreclosure on going.  The owner has counterclaimed us and the bank, Urban Partnership Bank.  (Rossini, B  Khoshabe)

7941 Karlov, Skokie, Il  in foreclosure with Bank of America's paperwork a real problem.  We are on this deal and I have spoken with the owner who is attempting to get the money to pay off the loan.  It appears that our worst case scenario is the we will recoup the money on this deal.  (Moghaddasi)

2200 N Kedzie, Chicago, IL, dismissal by the bank.  (Rossini, B  Khoshabe)

6159 N Hamilton, Chicago, IL, in foreclosure with an order to appoint a new Receiver.  (B Khohabe, F Khoshabe)

7410 N Winchester, Chicago, IL, in foreclosure, with the USA, State of Illinois and HUD liens on the property besides our lien.  (B Khoshabe, F  Khoshabe)

3512 W. Shakespeare, Chicago, IL, a judgment of foreclosure has been obtained and order of possession however, Cornerstone has gone bankrupt and we are awaiting the results (A Khoshabe)

4832 W Montrose, Chicago, IL, in foreclosure  with a new Receiver being appointed.  I know this Receiver and as soon as they get the keys we can inspect the building and get an updated report. (Rossini, B Khoshabe, Badalian)

211 N Kilbourn, Chicago, IL.  We own the note, assigned to Beneta Badalian.  I am hiring a new lawyer to prosecute the foreclosure case as Tom's firm never followed through. Section 8 has canceled the rents due to owner occupied on one unit of the three units.  (Beneta Badalian)

DATE:        July 27, 2013 23:32:07 +00:00

SUBJECT:  **Properties**

FROM:       bertrossini4@aol.com

REPLY-TO:  bertrossini4@aol.com

TO (2):       fredkhoshabe@sbcglobal.net; vladi.m@apple.com

---

Date: Sat, 27 Jul 2013 23:32:07 UTC
Subject: Properties
From: bertrossini4@aol.com
To: vladi.m@apple.com, fredkhoshabe@sbcglobal.net
Has Attachment: No


Vladi,


This is in response to your email yesterday asking for details on what is happening with your investment(s).


I have a lis pendens on each of the properties we do not have titles or assignments of notes and mortgages.  The owners, banks, and other purchasers of notes and mortgages cannot get clear title to these properties without dealing with us.  That does not mean we will automatically get our money back from these transactions, however, both Rich and I are receiving at least one call per day from owners, lawyer, bankers and receivers asking us why we have a lien on their properties.  Some are indignant, but that is to be expected and used in our negotiations.  Both Rich and I are very happy with the results and expect to be able to obtain some of the notes or titles from this action or at least a portion n of returned investments just because nothing can transpire on these properties until others involved can sue to "quiet title."  Typically, it takes nearly two years to clear title when the lien is spurious.  Our lien has merit whether Tom pursued the purchase of the note(s) or not.  This will take at least two years to get rid of us, therefore, we are pursuing payment to us/our investors as preferable to them fighting us for two to four years.


2129 N. Sheffield, our lien in place and attempting to convince the bank to turn over its rights to us.  I cannot yet report progress at this point, but no one has told us "no."  They are negotiating.   This is a property we have a very good chance to own.


3340 N. Oakley has many liens besides ours.  The note was part of a package through First Chicago Bank and the owner of the property, Charlie Mudd, is a very difficult man (and lawyer).  Another investment company purchased an interest in the notes and mortgages.  They will have difficulty pursuing this note due to the many liens and Mr. Mudd's actions.  We will pursue getting your money returned on this transaction since I do believe it is the best result due to the other buyer and Mr. Mudd.

GOVERNMENT
EXHIBIT

Moghaddasi 18

7941 Karlov. I have spoken to lawyers for the bank. The owner has stalled the foreclosure with mediation but this will not last much longer. The bank now knows it cannot sell the property once it gets the foreclosure consummated without dealing with us. We have spoken about an additional $50,000 to purchase the note but the bank is speaking about an additional $125,000.00. They did not receive any of the money sent to Murphy. If I can get them down to $75,000-$100,000, it would be a good deal. The property is easily worth $350,000 and probably closer to $400,000.

I am still pursuing 5062 Congress and believe we can get the title. We definitely can and will get the title on Lexington

More next week.

Bert

Vladi,

I am still pursuing 5062 Congress and believe we can get the title. We definitely can and will get the title on Lexington

More next week.

Bert

DATE:       August 26, 2013 23:17:18 +00:00

SUBJECT:    **Re: Properties**

FROM:       bertrossini4@aol.com

REPLY-TO:   bertrossini4@aol.com

TO (1):     vladi.m@apple.com

**GOVERNMENT EXHIBIT**

**Moghaddasi 19**

Date: Mon, 26 Aug 2013 23:17:18 UTC
Subject: Re: Properties
From: bertrossini4@aol.com
To: vladi.m@apple.com
Has Attachment: No


Vladi,
I agree with everything you have written except there is better news at the end of the road on the properties.  I did not have any further success last week; however, we will get Karlov and Sheffield.  No negotiations last week but those I have had have been very productive on both of these.  The owner of Karlov is almost ready to pack it in and settle with us for some money for the keys.  The bank will complete a short sale with us for some additional money but not excessive, I think somewhere between $50,000-$75,000 and that is for the deed through a title company.  I will have the brokers do a new comparable market analysis tomorrow but I believe it will come in at a minimum of $350,000 for Karlov.  Prices in Skokie are rising quickly so it will be an easy resale and this will recoup significant money for you. Sheffield however is the prize and I will not let it go and I know from our emails you do not want me to let it go easily. They will have to settle with you/me and it will be costly.  More tomorrow on Oakley.
Bert




-----Original Message-----
From: Vladimir Moghaddasi <vladi.m@apple.com>
To: bertrossini4 <bertrossini4@aol.com>
Sent: Mon, Aug 26, 2013 5:46 pm
Subject: Re: Properties


Thanks, Bert.
I know it's very frustrating for you too, to work on this issue since you trusted Tom. I've been thinking about the negative impact people like Tom are having on honest people like us. Not trusting friends, not trusting the legal and court systems to do justice and defends our rights along with radicalizing people's reactions to crooks like him. As a Christian I can not hate Tom but we need to do anything in our power to do justice here and I appreciate your work on this.
Based on you what said, out of 15 deeds/notes which are in play, I have only one(Lexington) which is kind of guaranteed(its the cheapest one, my luck!). So all other 5 are subject to the mercy of Bank negotiators or mal practice law suit?

Thanks again,
Vladi


On Aug 25, 2013, at 3:39 AM, bertrossini4@aol.com wrote:


Vladi,
Unfortunately, in the last week we have not had any more progress on the below properties.  I believe much of it has to do with the end of the summer hiatus at the courts, vacations, etc.  The attorneys for Karlov and Sheffield were both on vacation this past week.  I am going to have comparable market analysis reports conducted on each of these properties so we have an updated reference point for our negotiations and will send to you on Monday afternoon.
Bert


-----Original Message-----
From: Vladimir Moghaddasi <vladi.m@apple.com>
To: bertrossini4 <bertrossini4@aol.com>
Sent: Fri, Aug 23, 2013 6:41 pm
Subject: Re: Properties


Hi Bert,
I'd appreciate it if you could send me an update.


Thanks
Vladi


On Aug 20, 2013, at 11:19 AM, Vladimir Moghaddasi <vladi.m@apple.com> wrote:


Hi Bert,
Could you please give me an update and any progress on these properties.


Thanks
Vladi


On Jul 27, 2013, at 4:32 PM, bertrossini4@aol.com wrote:

Vladi,

This is in response to your email yesterday asking for details on what is happening with your investment(s).

I have a lis pendens on each of the properties we do not have titles or assignments of notes and mortgages.  The owners, banks, and other purchasers of notes and mortgages cannot get clear title to these properties without dealing with us.  That does not mean we will automatically get our money back from these transactions, however, both Rich and I are receiving at least one call per day from owners, lawyer, bankers and receivers asking us why we have a lien on their properties.  Some are indignant, but that is to be expected and used in our negotiations.  Both Rich and I are very happy with the results and expect to be able to obtain some of the notes or titles from this action or at least a portion n of returned investments just because nothing can transpire on these properties until others involved can sue to "quiet title."  Typically, it takes nearly two years to clear title when the lien is spurious.  Our lien has merit whether Tom pursued the purchase of the note(s) or not.  This will take at least two years to get rid of us, therefore, we are pursuing payment to us/our investors as preferable to them fighting us for two to four years.

2129 N. Sheffield, our lien in place and attempting to convince the bank to turn over its rights to us.  I cannot yet report progress at this point, but no one has told us "no."  They are negotiating.   This is a property we have a very good chance to own.

3340 N. Oakley has many liens besides ours.  The note was part of a package through First Chicago Bank and the owner of the property, Charlie Mudd, is a very difficult man (and lawyer).  Another investment company purchased an interest in the notes and mortgages.  They will have difficulty pursuing this note due to the many liens and Mr. Mudd's actions.  We will pursue getting your money returned on this transaction since I do believe it is the best result due to the other buyer and Mr. Mudd.

7941 Karlov.  I have spoken to lawyers for the bank.  The owner has stalled the foreclosure with mediation but this will not last much longer.  The bank now knows it cannot sell the property once it gets the foreclosure consummated without dealing with us.  We have spoken about an additional $50,000 to purchase the note but the bank is speaking about an additional $125,000.00.  They did not receive any of the money sent to Murphy.  If I can get them down to $75,000-$100,000, it would be a good deal.  The property is easily worth $350,000 and probably closer to $400,000.

I am still pursuing 5062 Congress and believe we can get the title.  We definitely can and will get the title on Lexington

More next week.

Bert



Vladi,

bertrossini4@aol.com
Vladi,

vladi.m@apple.com
bertrossini4@aol.com

vladi.m@apple.com

bertrossini4@aol.com
Vladi,

I am still pursuing 5062 Congress and believe we can get the title.  We definitely can and will get the title on Lexington

More next week.

Bert

DATE: November 22, 2013 02:07:58 +00:00
SUBJECT: **Re: Lexington**
FROM: bertrossini4@aol.com
REPLY-TO: bertrossini4@aol.com
TO (1): vladi.m@apple.com

---

Date: Fri, 22 Nov 2013 02:07:58 UTC
Subject: Re: Lexington
From: bertrossini4@aol.com
To: vladi.m@apple.com
Has Attachment: No


Vladi,
I spoke to Ed George the bank rep today and he said their attorney
should have the zoning and water certificates early next week so that
we can close prior to Thanksgiving.
Also, I have had some discussions with the bank and owner on 7941
Karlov.  Mrs. Adic is willing to turn it over but now I need to get the
okay from the Bank.  However, it is progress.
Bert


-----Original Message-----
From: Vladi Moghaddasi <vladi.m@apple.com>
To: bertrossini4 <bertrossini4@aol.com>
Sent: Thu, Nov 21, 2013 7:49 pm
Subject: Re: Lexington


Hi BertAny update here?Thanks,Vladi> On Nov 18, 2013, at 7:35 AM,
bertrossini4@aol.com wrote:> > Vladi,> The Seller's attorney is
awaiting a water certification and zoning cert from the City of
Chicago,  should not take more than a couple days.> Bert> > >
-----Original Message-----> From: Vladi Moghaddasi <vladi.m@apple.com>>
To: bertrossini4 <bertrossini4@aol.com>> Sent: Sun, Nov 17, 2013 7:11
pm> Subject: Re: Lexington> > I assume this did not happen on
FridayVladi> On Nov 14, 2013, at 9:15 AM, bertrossini4@aol.com wrote:>
 > Vladi,> We are waiting on the Seller Bank's attorneys to provide the
zoning certificate and water certificate needed for the title company
to close.  They may have it by tomorrow, we shall see.  Everything else
is ready.> Bert> > -----Original Message-----> From: Vladimir
Moghaddasi <vladi.m@apple.com>> To: bertrossini4@aol.com Rossini
<bertrossini4@aol.com>> Sent: Wed, Nov 13, 2013 6:21 pm> Subject: Re:

GOVERNMENT EXHIBIT

Moghaddasi 20

Lexington> > > Hi Bert,> Any update> > > Thanks> Vladi> > > > On Nov 12, 2013, at 12:23 PM, bertrossini4@aol.com wrote:> > Tomorrow afternoon.> > Sent from my HTC One™ X, an AT&T 4G LTE smartphone> > ----- Reply message -----> From: "Vladimir Moghaddasi" <vladi.m@apple.com> To: "bertrossini4@aol.com Rossini" <bertrossini4@aol.com>> Subject: Lexington> Date: Tue, Nov 12, 2013 10:15 AM> > Good morning Bert,> Are you closing today or tomorrow.> > Thanks> Vladi> >> On Nov 7, 2013, at 11:05 AM, bertrossini4@aol.com wrote:>> >> Yes, you will receive title free and clear.>> >> Sent from my HTC One™ X, an AT&T 4G LTE smartphone>> >> ----- Reply message ----->> From: "Vladimir Moghaddasi" <vladi.m@apple.com>>> To: "bertrossini4@aol.com Rossini" <bertrossini4@aol.com>>> Subject: Lexington>> Date: Thu, Nov 7, 2013 10:49 AM>> >> Thanks, Bert.>> Does the tax redemption certificate means that the taxes for previous> years are paid and I''ll be only paying moving forward. When I receive the deed, there will be no lean on property. Right?>> >> Yes, Mike has to inspect the property, current tenants if any and> their leases and come up with next steps. I might stop by when that happens.>> >> Thanks again,>> Vladi>> >> On Nov 7, 2013, at 3:58 AM, bertrossini4@aol.com wrote:>> >> > Vladi,>> > I am well.  The bank's attorney on Lexington needed a few more days> to get the zoning certificate and final water bill, plus a tax redemption certificate.  It will close either Tuesday the 12th or Wednesday with immediate turnover to your trust.  As soon as I close, I presume you want me to get the property to Mike and Tom to manage.  Will let you know more over the weekend.>> > Bert>> >>> >>> > -----Original Message----->> > From: Vladimir Moghaddasi <vladi.m@apple.com>>> > To: bertrossini4 <bertrossini4@aol.com>>> > Sent: Tue, Nov 5, 2013 11:00 am>> > Subject: Re: Lexington>> >>> >>> > Hello Bert,>> > Hoep all is well. Did you close on Lexington?>> >>> >>> > Thanks>> > Vladi>> >>> >>> > On Oct 26, 2013, at 8:04 AM, Vladi Moghaddasi <vladi.m@apple.com>> wrote:>> >>> > > Hi Bert>> > Thanks for the work and status update>> > Look forward to receiving the quick deed>> >>> >>> > Thanks,>> >>> > Vladi>> >>> >>> > On Oct 25, 2013, at 8:17 PM, bertrossini4@aol.com wrote:>> >>> >>> > Vadi,>> > I plan on closing Lexington next week and will send you more info> early in the week.>> > Bert>> >>> >>> >>> >>> >>> > > > >>

# Peterson-Cicero Currency Exchange Transactions
## May 24, 2011 – August 31, 2013





```
 1   DATE:        August 8, 2013
 2   TIME:        10:43 AM
 3   ACTIVITY:    Body Recording
 4   DISK:        1D97
 5
 6   SPEAKERS:
 7   EVANS       :  SA LYLE EVANS
 8   PITHYOU     :  ASHOOR PITHYOU
 9   YOUNAN      :  NINOS YOUNAN
10   ROSSINI     :  ALBERT ROSSINI
11   KRUZE       :  RICHARD KRUZE
12   UM          :  UNKNOWN MALE
13
14   (F/L – Indicates foreign language)
15
16                                    *    *    *    *
17
18   SESSION ONE
19   17:48:00/11:04:46
20   YOUNAN:              Okay.
21
22   KRUZE:               So that's, that's the reason for it and the banks.   The banks don't
23                        really care.   The banks really don't care (UI).
24
25   YOUNAN:              Okay.
26
27   KRUZE:               Oh thanks.
28
29   PITHYOU:             So our question was Bert um…have you made contact with the
30                        bank's knowing telling 'em what's going on?
31
32   ROSSINI:             Bunch of 'em.   A bunch of 'em.   What we've done is we filed a
33                        lis pendens.
34
35   YOUNAN:              Um hum, yeah.
36
37   ROSSINI:             Like Rich just talked about.   He started getting calls first because
38                        he is the attorney on it.
```

1

GOVERNMENT
EXHIBIT

Younan Transcript

| 1 | | |
|---|---|---|
| 2 | YOUNAN: | Uh huh. |
| 3 | | |
| 4 | ROSSINI: | So and we talked to several of the bankers.  Uh… |
| 5 | | |
| 6 | | **(STATIC)** |
| 7 | | |
| 8 | ROSSINI: | You know, they don't necessarily have to pay us the money if |
| 9 | | they'll sell it to us at the same price that they've got the contract |
| 10 | | out on. |
| 11 | | |
| 12 | YOUNAN: | Okay, what about like for instance our property. |
| 13 | | |
| 14 | ROSSINI: | Um hum. |
| 15 | | |
| 16 | YOUNAN: | Have you contacted the bank regarding... |
| 17 | | |
| 18 | ROSSINI: | We've contacted 'em uh…they did not want to deal with us at this |
| 19 | | point but they now know that there's a lis pendens. |
| 20 | | |
| 21 | YOUNAN: | You actually spoke to a specific person who is handling this? |
| 22 | | |
| 23 | ROSSINI: | Yeah, yeah, yeah, we did.  I'm not sure who it was.  I've got |
| 24 | | a…I'll send you some information by email. |
| 25 | | |
| 26 | YOUNAN: | I mean can we know like who it is.  I mean would we be able to |
| 27 | | contact them like…? |
| 28 | | |
| 29 | ROSSINI: | You have no standing to contact them. |
| 30 | | |
| 31 | YOUNAN: | Um hum. |
| 32 | | |
| 33 | ROSSINI: | I would think.  What do you think?  I mean it's… |
| 34 | | |
| 35 | YOUNAN: | I mean I would very much like to know who you guys contacted |
| 36 | | just, just so we know. |
| 37 | | |
| 38 | ROSSINI: | Sure. |

| 1 | | 19:18/11:06:57 |
|---|---|---|
| 2 | YOUNAN: | Like there's work…   Like I was talking to um the attorney.   I was |
| 3 | | telling him like um…uh to Richard we, I wanted to know whether |
| 4 | | or not you guys were trying to circumvent… 'cause up until this |
| 5 | | point where, like last time we spoke you mentioned to us that you |
| 6 | | know as far as you guys know if Thomas Murphy is still the one |
| 7 | | collecting the rents. |
| 8 | | |
| 9 | ROSSINI: | Um hum. |
| 10 | | |
| 11 | YOUNAN: | I guess the question is we know you guys are going after Thomas |
| 12 | | Murphy but that may take a while.   Who's collecting the rents |
| 13 | | now?   You know what I mean.   Like are they just being held by |
| 14 | | the banks?   Is the properties that are owned by the banks are they |
| 15 | | just being held by the banks in which case can we circumvent and |
| 16 | | tell them listen we invested in these properties. These rents should |
| 17 | | be coming to the Devon Street Investments, to our investors. |
| 18 | | |
| 19 | ROSSINI: | Yeah, yeah Father that's why we gotta get through this deposition |
| 20 | | because we don't know if the money was invested in the banks. |
| 21 | | Right? |
| 22 | | |
| 23 | KRUZE: | Well I understand now.   I understand where… |
| 24 | | |
| 25 | ROSSINI: | I understand what Father's saying.   Yeah. |
| 26 | | |
| 27 | KRUZE: | The, the problem is we don't know if you have a right to those |
| 28 | | rents.   We don't know… |
| 29 | | |
| 30 | ROSSINI: | Or if we have a right to those rents. |
| 31 | | |
| 32 | KRUZE: | So, we don't know because we don't know what the status of the |
| 33 | | transaction is. |
| 34 | | |
| 35 | YOUNAN: | Um hum. |
| 36 | | |
| 37 | KRUZE: | Once I, once I know...   Assuming he's gonna be here Wednesday |
| 38 | | and tell me what, what I…one of the questions I asked him.   You |

3

```
 1                         know if he's (UI) I didn't complete the transaction, okay.   Well
 2                         then you know that the, the bank is still in title, collecting the rents,
 3                         and you approach the bank whether it's Bert, you or anybody else,
 4                         okay?
 5       20:56/11:08/36
 6       ROSSINI:          See in this case Rich.   Father Ninos has been a banker. And know
 7                         he would know how to deal with these people too.
 8
 9       KRUZE:            Why not.
10
11       ROSSINI:          So it would be helpful to all of us.   You know once we get
12                         through the deposition and…
13
14       UM:              Excuse me (UI) whenever you're ready, okay?
15
16       ROSSINI:          Yeah and we get through the deposition and we say hey here's our
17                         situation.   We know that the bank didn't get any money or
18                         Murphy doesn't…
19
20       KRUZE:            One thing we know for sure.   One thing you know for sure the
21                         piece of property isn't going anywhere because of the lis pendens.
22
23       ROSSINI:          They cannot do anything.
24       11:09:10
25       KRUZE:            Nobody's gonna come around and go to the bank and say listen
26                         we'll buy the piece of property, 'cause of the lien.
27
28       ROSSINI:          Right.   That's why they're calling us.
29
30       KRUZE:            It doesn't affect the bank.   Only the bank could care less.
31
32       YOUNAN:           Um hum.
33
34       KRUZE:            But once I find out what the status of the deal is, whether he did it,
35                         whether he didn't do it, whatever.
36
37                         (STATIC)
38
```

4

```
 1    21:55/11:10:21
 2    ROSSINI:          What, fifteen calls maybe?
 3
 4    KRUZE:            Something like that.
 5
 6    ROSSINI:          Something like that from different—the last call was from
 7                      Kadillas.   The biggest foreclosure law firm in the city.   They
 8                      wanna sell the property at 8718 Kimball on a short sale and of
 9                      course they can't.   They got the contract but they can't sell it.
10
11    KRUZE:            Yeah, it's under contract.
12
13    YOUNAN:           Um hum.
14
15    ROSSINI:          Yeah, they can't sell it they want to close but they can't sell it…
16
17    PITHYOU:          Until they pay you guys off and…
18
19    ROSSINI:          They gotta settle with us one way or the other our, our game plan
20                      is that we get through this deposition hopefully this week if he
21                      does show uh but our game plan will be either pay us the money
22                      that our investor put up or the likelihood is they're not gonna pay
23                      us the money but since nobody else can close this deal and buy it
24                      they would, I believe, be more receptive to selling it to us than
25                      giving us the money because now…if they…in other words they're
26                      willing to sell it for 235, right.
27
28    YOUNAN:           So the bank?
29
30    ROSSINI:          Yeah, let's say the bank is willing to agree to a 235 uh sale price
31                      on a short sale. If it gave us another 110 on top of that now we're
32                      up to 340, 345. That's getting high for the bank but since the
33                      contract they've got will never close at least not for two years or so
34                      that the bank might be more receptive to us buying it at the 235
35                      price that they have right now 'cause we know at that price for that
36                      specific property we can sell it and net easily the 110 to pay our
37                      investor off.
38
```

```
1    23:49/11:12:13
2    YOUNAN:              Okay, what about the money that Thomas Murphy took?   Where
3                         does he fall into all this?
4
5    KRUZE:               Well…
6
7    YOUNAN:              I mean if we're having to rebuy the property and reselling them.
8
9    ROSSINI:             You're not; you're not having to rebuy the property. I am having to
10                        rebuy the property.
11
12   PITHYOU:             Devon Street.
13
14   ROSSINI              Sell it and give you the profit.
15
16   YOUNAN:              Okay but then, you know, and that's what I mean like okay so…for
17                        instance, us.   We invested 300,000 into a property.
18
19   ROSSINI:             Right, right.
20
21   YOUNAN:              Okay, now it's not easy for a church to come up with $300,000.
22
23   ROSSINI:             No kidding.
24
25   YOUNAN:              So we came up with $300,000 and we gave you guys for this
26                        property.   You said you spoke to the bank um…what did they tell
27                        you?
28
29   ROSSINI:             At this point they're not willing to do anything.
30
31   YOUNAN:              Well you, you told them that we gave $300,000 for this property or
32                        are they just not willing, like I don't understand what their
33                        response was to you.   Like just (UI)…
34
35   ROSSINI:             I told, yeah of course, exactly.   That's - They're not…there's
36                        gonna be a lot of these people Father that are gonna say so what?
37                        We didn't get any money from your people.   Go after the guy who
38                        gave. Who you gave the money to.
```

6

```
 1   24:48/11:13:13
 2   YOUNAN:              So they told you that he hadn't contacted them?
 3
 4   ROSSINI:             In that…in your case.
 5
 6   YOUNAN:              In our case.
 7
 8   ROSSINI:             No, no…they said that we're not interested in talking to you.
 9                        We'll have…
10
11                       (STATIC)
12
13   KRUZE:               …file a malpractice case against him…
14
15   PITHYOU:             Oh yeah.
16
17   ROSSINI:             You know what I mean?   It's all a function of what price we're
18                        having to pay…
19
20   KRUZE:               I don't know what the amount of that is yet.   That's what I'm
21                        doing.
22
23   YOUNAN:              Okay.
24
25   KRUZE:               So but yes there is, there is a remedy beyond.
26
27   YOUNAN:              See I mean that's what I'm trying to get at.
28
29   ROSSINI:             Oh, absolutely.
30
31   YOUNAN:              You're, you're telling me you know we're gonna go after the
32                        property.   We're gonna buy it and resell it to get your money but
33                        what happened to the original money I gave you.
34
35   ROSSINI:             Father, Father.
36
37   YOUNAN:              Uh huh.
38
```

7

| 1 | 25:26/11:14:32 | |
|---|---|---|
| 2 | ROSSINI: | There is…you, you've been a banker. You're a very intelligent |
| 3 | | guy. There is a process but what we…if we just wait. The |
| 4 | | reason why I'm telling you what we're doing. |
| 5 | | |
| 6 | YOUNAN: | Um hum. |
| 7 | | |
| 8 | ROSSINI: | Aside from the legal maneuvers. |
| 9 | | |
| 10 | YOUNAN: | Um hum. |
| 11 | | |
| 12 | ROSSINI: | A lawsuit against Tom Murphy is going to take several years. |
| 13 | | You're not going to…if that's what we're banking on to get you |
| 14 | | back your money you're not gonna get it back for several years at |
| 15 | | best. |
| 16 | | |
| 17 | YOUNAN: | Okay. |
| 18 | | |
| 19 | ROSSINI: | Okay. |
| 20 | | |
| 21 | KRUZE: | And that's the malpractice—that's the legal. That's gonna take a |
| 22 | | long time. |
| 23 | | |
| 24 | ROSSINI: | Yeah, that's gonna take…an insurance company isn't gonna say oh |
| 25 | | Father of course we believe in God. Here's your 300,000. |
| 26 | | |
| 27 | PITHYOU: | Um hum. |
| 28 | | |
| 29 | ROSSINI: | They only believe in George Washington. So they're going to |
| 30 | | fight. They're going to fight us. They're gonna fight for two, |
| 31 | | three, four, five years. However long it takes. In the meantime |
| 32 | | what we wanna do... That doesn't mean we're not gonna follow |
| 33 | | through with that. Of course we are. |
| 34 | | |
| 35 | YOUNAN: | Um hum. |
| 36 | | |
| 37 | ROSSINI: | That's why Richard's here. You know 'cause we're starting. |
| 38 | | We, that's why we started this process but we can't just wait on it, |

| | | |
|---|---|---|
| 1 | | we gotta do both. We gotta try to get the money back through |
| 2 | | purchasing of the property, through cajoling them, through telling |
| 3 | | them we're not going to let go of our lien. Just give us the money |
| 4 | | back and you know what if they got a high enough price, they |
| 5 | | would give us the money back. If they don't have a high enough |
| 6 | | price, they might just sell it to us. Then we'll sell the property and |
| 7 | | get the money back. So there's a lot of different tactics we're |
| 8 | | using besides the lawsuit because realistically the lawsuit is not |
| 9 | | gonna get you your money back for two to four years. Am I right |
| 10 | | or not? |
| 11 | 27:00/11:16:07 | |
| 12 | KRUZE: | The malpractice lawsuit. |
| 13 | | |
| 14 | ROSSINI: | Yeah. |
| 15 | | |
| 16 | KRUZE: | Which is different than the ones pending now. |
| 17 | | |
| 18 | ROSSINI: | Right. What we're doing right now is just trying to find out |
| 19 | | exactly what's what so that we can then use that one, in attacking |
| 20 | | the banks. Two, in the malpractice case. It gives us a real leg up. |
| 21 | | |
| 22 | YOUNAN: | So who owns the notes now? |
| 23 | | |
| 24 | KRUZE: | We don't know. |
| 25 | | |
| 26 | ROSSINI: | We don't know. We don't know what we have other than what |
| 27 | | we have in hand. We don't know if he bought these notes, if he |
| 28 | | didn't finalize the transaction, if he was just negligent. Because |
| 29 | | there's some notes, as we talked that one time when you guys were |
| 30 | | in, on 211 Kilbourn, that I know we bought because I bought it. |
| 31 | | Direct. Gave it to his law firm to file, to record and to go ahead |
| 32 | | with the foreclosure and it was never recorded. So… |
| 33 | | |
| 34 | PITHYOU: | So how were we getting paid in the beginning? |
| 35 | | |
| 36 | ROSSINI: | Tom said he was collecting the rents. Now…realistically the |
| 37 | | second thing to look at is was he paying us back… |
| 38 | | **(STATIC)** |

| | | |
|---|---|---|
| 1 | 28:15/11:18:08 | |
| 2 | ROSSINI: | …trying to do right now.   And that's why Rich wants to get him |
| 3 | | to sit down and ask him questions directly. |
| 4 | | |
| 5 | YOUNAN: | So wouldn't it be quicker then to contact maybe the banks and try |
| 6 | | to get whatever information they can give you?   Just not wait for |
| 7 | | him to give it?   Like isn't there other ways to get that information |
| 8 | | without asking it from him? |
| 9 | | |
| 10 | KRUZE: | As far as…if, if you want to go contact the bank, for my |
| 11 | | purposes… |
| 12 | | |
| 13 | YOUNAN: | Um hmm. |
| 14 | | |
| 15 | KRUZE: | …no.  I've got a law suit against him and I want him, under oath, |
| 16 | | sitting in that chair, answering the questions that I want to ask him |
| 17 | | on each and every transaction that took place. |
| 18 | | |
| 19 | YOUNAN: | Okay. |
| 20 | | |
| 21 | KRUZE: | Okay and the purpose is, like Bert said, twofold.   Number one, to |
| 22 | | determine what he did and what he didn't do.   Number two, you |
| 23 | | do have a malpractice sit-, situation that comes after the accounting |
| 24 | | suit.  And that's important because that's dollars.   I mean, that's |
| 25 | | the insurance companyp They're capable of writing checks.   I |
| 26 | | don't think Tom Murphy is capable of writing checks. It's the |
| 27 | | insurance companies. |
| 28 | | |
| 29 | ROSSINI: | No.   See we don't want to do anything that ends up ruining our |
| 30 | | ability to collect from the insurance company. |
| 31 | | |
| 32 | YOUNAN: | Yeah but I guess, I mean, I guess my, my, my, my thought process |
| 33 | | is this.   What if he's still collecting for instance, our property? |
| 34 | | What if he's still collecting rent on it every single month? |
| 35 | | |
| 36 | KRUZE: | I'll let you know. |
| 37 | | |
| 38 | 29:36/11:19:27 | |

10

| 1  | YOUNAN:   | Wouldn't it be, you know, prudent to contact the bank and tell |
| 2  |           | them listen stop giving this guy this rent?   He doesn't, although |
| 3  |           | he's collecting it… |
| 4  |           |  |
| 5  | KRUZE:    | You can contact, you can contact the bank this afternoon.   That's, |
| 6  |           | that's not going to effect this law suit one way or the other.   If you |
| 7  |           | want to go to the bank and sit down with them and determine |
| 8  |           | what's the status etcetera etcetera, that's fine.   That has nothing to |
| 9  |           | do with this lawsuit.   This lawsuit is directed strictly… |
| 10 |           |  |
| 11 | ROSSINI:  | Right. |
| 12 |           |  |
| 13 | KRUZE:    | …at Tom Murphy. |
| 14 |           |  |
| 15 | ROSSINI:  | And part of our problem too is we, we haven't wanted to do certain |
| 16 |           | things to raise the specter of fraud.   'Cause if we do, we're not |
| 17 |           | going to collect.   Or the likelihood is the insurance company will |
| 18 |           | not have to pay.   They don't pay for fraud. |
| 19 |           |  |
| 20 | KRUZE:    | You want to, you want to stay away from that word or you know it |
| 21 |           | was a criminal act or anything like that.   'Cause that, that's going |
| 22 |           | to hurt you guys in the long run. |
| 23 |           |  |
| 24 | ROSSINI:  | Is it something that would be satisfying?   Sure.   Is it something |
| 25 |           | that'll give us our money back and your parishioners their money |
| 26 |           | back?   Absolutely not. |
| 27 |           |  |
| 28 | KRUZE:    | But I mean there's nothing stopping you from going… |
| 29 |           |  |
| 30 | ROSSINI:  | The penalty for fraud is prison.   It's not recouping your money or |
| 31 |           | my money or his money.   We need to keep it, at this point, to |
| 32 |           | negligence and malpractice. |
| 33 |           |  |
| 34 | KRUZE:    | Yeah that's important. |
| 35 |           |  |
| 36 | PITHYOU:  | Well isn't the insurance agency going to conduct their own |
| 37 |           | investigation?   And then… |
| 38 | 30:59/11:20:50 | |

11

```
 1   KRUZE:              Oh for sure.
 2
 3   ROSSINI:            Sure.
 4
 5   KRUZE:              For sure.
 6
 7   ROSSINI:            Sure it will.   Yea, sure it will, but…
 8
 9   KRUZE:              But you know what…at a certain point in time, you know, this is,
10                       this is a pretty…I'm assuming because I haven't asked the
11                       questions yet…but as far as I can, as far as I'm concerned doing
12                       the transactions the way he did it and not—taking the money and
13                       not following through.   That's pretty clear then that there's…
14
15                       (STATIC)
16
17   KRUZE:              …your smoke detectors go off.
18
19   YOUNAN:             Mm hmm.
20
21   ROSSINI:            That kind of thing.   I mean just for many, many reasons, you
22                       know.   So, well that's where we're going on this basis.   We're
23                       not being, I know some people have said well you're not pursuing
24                       it, you know, fast enough.   Well I would pursue it fast enough.
25                       Find me a gold mine, I'll start digging.   You know.   The fact is
26                       that the court, what Richard's done in this accounting suit will get
27                       us at, by the end of 6, 8 months time from when we started…April
28                       10th…we will know everything that there is to know.   Even if the
29                       guy doesn't admit something then that's an admission.
30                       Essentially.
31
32   KRUZE:              And, and he's not cooperating at all.
33
34   ROSSINI:            No.
35
36   KRUZE:              He's put his head in the sand and ignoring the thing and…
37
38   32:18/11:22:56
```

12

```
 1   ROSSINI:              No.  He started off cooperating.
 2
 3   KRUZE:                Yeah.
 4
 5   ROSSINI:              Remember I told you he was cooperating?
 6
 7   KRUZE:                Once.  Once.
 8
 9   ROSSINI:              Yeah he started off cooperating and then boom.  Cut it off.
10
11   PITHYOU:              Cause he knows, he knows he's getting caught up.
12
13   ROSSINI:              Yeah can't keep talking… can't, you can't, it's hard for somebody
14                         to keep talking and keep saying something if in reality they didn't
15                         do something.  It all…you're right.  He probably doesn't want to
16                         say something, Ashoor, because…anymore, and give any more
17                         because it's only going to trip him up. Although he has admitted to
18                         Richard, to me, Babajan, uh that he was negligent.  He did admit
19                         that didn't he?
20
21   KRUZE:                Oh yeah that's…
22
23   ROSSINI:              I mean he admitted it.
24
25   KRUZE:                …that's, that's a given.
26
27   ROSSINI:              We know he was negligent but it's, it's always nice to have
28                         somebody admit it.
29
30   YOUNAN:               No but I mean from what I'm seeing its as if he just took the
31                         money and…did nothing.  You know what I mean?  I don't see
32                         this man doing any of this stuff.
33
34   KRUZE:                I'm guessing in some cases that's exactly what took place.
35
36   ROSSINI:              Yeah.
37
38   33:27/11:24:05
```

13

| | | |
|---|---|---|
| 1 | KRUZE: | But I don't know specifically.   So I think the thing to do is, you |
| 2 | | know, and I'd be honest with you.   I, is he going to show on |
| 3 | | Wednesday and sit down?   I don't know.   But within 30 days if |
| 4 | | he doesn't show, they'll have a court order compelling him to |
| 5 | | show.   And produce the documents we've asked for.   So… |
| 6 | | |
| 7 | ROSSINI: | I think what we do… let's get through this week.   See if he shows. |
| 8 | | If he doesn't show, and the likelihood is I think he won't show. |
| 9 | | You and I have talked about that. |
| 10 | | |
| 11 | KRUZE: | I agree. |
| 12 | | |
| 13 | ROSSINI: | You know he'll have to be forced.   But if he doesn't then we'll |
| 14 | | start going after more of the banks.   We haven't wanted to until |
| 15 | | this…until this meeting.   You know with Murphy I mean. |
| 16 | | |
| 17 | YOUNAN: | I mean I'd like to know exactly who our, who the contact person is |
| 18 | | as it pertains to at least our property. |
| 19 | | |
| 20 | ROSSINI: | Mm hmm. |
| 21 | | |
| 22 | YOUNAN: | This way maybe we know people at Chase or maybe we know |
| 23 | | people at, you know, work in those departments that could |
| 24 | | probably get us… |
| 25 | | |
| 26 | | **(STATIC)** |
| 27 | | |
| 28 | **SESSION TWO** | |
| 29 | | |
| 30 | YOUNAN: | …us and let us know hey we we, we invested this money into this |
| 31 | | property.   You know I'd like to know whether or not the property |
| 32 | | was even for sale… |
| 33 | | |
| 34 | | **(STATIC)** |
| 35 | | |
| 36 | KRUZE: | Whose the bank on your property? |
| 37 | | |
| 38 | 34:42/11:25:50 | |

14

```
 1   YOUNAN:          I believe it's Chase.
 2
 3   ROSSINI:         Yeah.
 4
 5   YOUNAN:          But I'm not quite sure.
 6
 7   ROSSINI:         There were two of 'em.
 8
 9   KRUZE:           You can go.   You can go into the uh website, put in the plaintiff's
10                    name.
11
12   YOUNAN:          Um hum.
13
14   KRUZE:           And we don't know who the defendant is.   The owner of the
15                    property that's in default.
16
17   YOUNAN:          Um hum.
18
19   KRUZE:           But you can put in Chase and I guarantee you'll have a list of
20                    Chase names versus such and such.
21
22   PITHYOU:         Um hum.
23
24   KRUZE:           And then you just have to, you have to go through each and every
25                    one of 'em and see what, where the uh address to the property is.
26                    So it's a, it's a pain in the neck but uh…
27
28   ROSSINI:         Yeah they were all in foreclosure.   Every property.   The question
29                    is…
30
31   YOUNAN:          So our property wasn't foreclosed, the one on Berteau?
32
33   ROSSINI:         Absolutely, the question is did the, did the owners modify it?   Did
34                    we get, did Murphy get the note?   What happened?   We know
35                    from just experience they never followed up with a foreclosure
36                    cases even where we own something.   You know.
37
38   35:36/11:45:32
```

15

```
 1   KRUZE:              Yeah, that…
 2
 3   ROSSINI:            We know that.   The law firm never had it.
 4
 5   KRUZE:              That's true.   His law firm never did. It, these properties never
 6                       went to a Sheriff's deed or anything like that so…which is again
 7                       malpractice.
 8
 9   ROSSINI:            Yeah.   I mean not to do anything.
10
11   YOUNAN:             Okay.
12
13   KRUZE:              So once you determine the status of it.   Like your property, if it's
14                       still in foreclosure then clearly we can, we can also file an
15                       intervention in that foreclosure because you have, you thought you
16                       had a property interest in it.
17
18   ROSSINI:            Right. And we got the, we've got the lien on it now.
19
20   KRUZE:              Yeah.
21
22   ROSSINI:            So we can follow up…
23
24   KRUZE:              But you just…but you just don't know what the status of the
25                       properties are.
26
27   YOUNAN:             Okay.
28
29   PITHYOU:            Our Lawler property is in the uh in the MLS?
30
31   ROSSINI:            One of 'em's for sale.   9124 I think.
32
33   PITHYOU:            Yeah 239?
34
35   ROSSINI:            Yeah 'cause we made a bid.   We made a bid on it and we're,
36                       we're trying to get 29 also. Monticello.   Well a bunch of 'em, so
37                       we're…as we see them come up we're bidding in at a lowball
```

16

```
 1                            price.   Not a super lowball price but a realistic price because we
 2                            have something to give to them.
 3
 4     36:55
 5     PITHYOU:               Um hum.
 6
 7
 8     ROSSINI:               --A release of our lien so most of those properties that do come up
 9                            for sale we've got the best chance of buying.   Nobody else.   At
10                            least not for two, three years.
11
12     PITHYOU:               Okay.
13
14     YOUNAN:                I guess we're just you know understand…I mean I'm sure you
15                            guys understand we're worried about the investment.
16
17     ROSSINI:               Um hum.
18
19     YOUNAN:                I mean it's just, you know…
20
21     ROSSINI:               Right.
22
23     YOUNAN:                It was a large sum of money and you know from what it looks like
24                            it doesn't seem like…I mean I doubt we're gonna get any of it
25                            back.
26
27     ROSSINI:               I think we'll get it back.
28
29     KRUZE:                 Well I think we'll...
30
31     ROSSINI:               Yeah.
32
33     KRUZE:                 …that I don't, don't agree with you, okay.   It make take some
34                            time in that clearly that money once we determine what the hell
35                            happened to it, yeah.   That's, that's the measure of damages for
36                            Devon Street to file a malpractice case against him.
37
38
```

17

```
 1   37:43/11:28:51
 2   ROSSINI:              See I think from a standpoint of…
 3
 4                         (STATIC)
 5
 6   ROSSINI:              Uh, uh when, it's Wednesday and Thursday, right?
 7
 8   KRUZE:                Wednesday.
 9
10   ROSSINI:              Wednesday.   I'll call you Wednesday afternoon and we'll let you
11                         know if he showed.
12
13   YOUNAN:               Okay.   Um…can you sometime today or tomorrow…
14
15   ROSSINI:              Yeah.
16
17   YOUNAN:               Can you just email me as far as…
18
19   ROSSINI:              Yep.
20
21   YOUNAN:               …who you contacted at Chase…
22
23   ROSSINI:              Yep.
24
25   YOUNAN:               …regarding our property, this listing.
26
27   ROSSINI:              Did I ever give you a copy of the lis pendens?
28
29   YOUNAN:               You did.
30
31   ROSSINI:              Yeah.
32
33   YOUNAN:               Yeah.
34
35   ROSSINI:              I'll send you all the info.
36
37   YOUNAN:               Okay, thank you very much.
38
```

```
 1   38:11/11:30:02
 2   PITHYOU:              Thank you.   Thanks for your time.   Alright Richard. Thank you.
 3                         Take care.
 4
 5   ROSSINI:              Yep.   Take care.   Thank you Father.
 6
 7   PITHYOU:              Alright, we'll see you.
 8
 9   ROSSINI:              I'll talk to you next week.
10
11   PITHYOU:              Yep.
12
13   ROSSINI:              Bye, bye.
14
15   KRUZE:                See you later (UI).   I got to go out to beautiful uh (UI).
16
17   PITHYOU:              (UI).   Thank you.
18
19   YOUNAN:               Huh.   (UI) open up (UI) remote.   Can you close 'em with your
20                         remote?
21
22   PITHYOU:              No.
23
24   YOUNAN:               No?
25
26   YOUNAN:               (UI)
27
28   PITHYOU:              That's half.   The other half is on the new models. I like his wig.
29
30   YOUNAN:               I never really bothered to pay attention.   Maybe it's (UI) we just
31                         looks like that.
32
33   PITHYOU:              Alright.
34
35   YOUNAN:               It's October and he's all dark.
36
37   PITHYOU:              Him and Babajan go to the same guy.
38
```

19

| | | |
|---|---|---|
| 1 | YOUNAN: | No Babajan's wig is horrible. |
| 2 | | |
| 3 | PITHYOU: | Okay.   It's a beautiful day for a bike riding. |
| 4 | | |
| 5 | YOUNAN: | Yeah. |
| 6 | | |
| 7 | PITHYOU: | I don't think we'll see that money ever again. |
| 8 | | |
| 9 | YOUNAN: | Huh? |
| 10 | | |
| 11 | PITHYOU: | I don't think we'll see that money ever again. The way they were |
| 12 | | talking. |
| 13 | | |
| 14 | YOUNAN: | Call when you exit.   Is that his number 312?     Yeah.   Okay. |
| 15 | | |
| 16 | | (UI conversation) |
| 17 | | |
| 18 | YOUNAN: | (On phone) Hey… Yep you wanna meet.   Meet you back at the |
| 19 | | house?   Okay. (UI).   Alright thanks bye bye. (End call) |
| 20 | | |
| 21 | | (STATIC) |
| 22 | | |
| 23 | | (UI & F/L in background) |
| 24 | | |
| 25 | EVANS: | Special Agent Lyle Evans.   Time is 11:34.   That terminates this |
| 26 | | recording session. |

20

IDEVON STREET INVESTMENTS, LTD.
3924 West Devon Street
Lincolnwood, IL 60712

3333 West Berteau Ave, Chicago, IL 60618

13 Units

6 – 1 bedroom apartments with 1 bath @ $800.00 =    $4,800.00
6 – 2 bedroom apartments with 1 bath @ $1,150.00 =   6,900.00
1 – 3 bedroom apartment with 1 bath @ $1,500.00 =    1,500.00

Total Potential Monthly Income:               $13,200.00

Actual Income:
4 – 1 bedroom apartments are rented          $2,400.00
5 – 2 bedroom apartments are rented           5,750.00
1 – 3 bedroom apartment is rented             1,500.00

Total actual monthly rent:                    $9,650.00
Present Annual Income:                       $115,800.00

ANNUAL EXPENSES:
Real Estate Taxes:            $13,840.24
Management Fee (5%)             5,790.00
Water Bill:                     6,600.00
Utilities:                      5,000.00
Reserve:                       11,500.00
TOTAL ANNUAL EXPENSES:        $42,730.24

NET INCOME:                   $73,070.00

**NOTE: We are purchasing the note and mortgage and therefore unable to enter the property to inspect it prior to getting title. Therefore, we are uncertain as to the interior condition. The owner owes $1,004,000.00 and is in foreclosure. It will take approximately 6 to 12 months to get the title; however, you will be paid rentals during this period. In the event the owner is able to redeem the property, he will need to pay the judgment amount of $1,004,000.00.**

Make the cashier's check payable as follows:
Thomas Murphy, Attorney/Agent
PIN: 13144200100000
For purchase of Metropolitan Bank Group Note and Mortgage
3333 W. Berteau, Chicago, IL 60618

GOVERNMENT
EXHIBIT

Younan 1

## 3333 WEST BERTEAU
## GUARANTY AGREEMENT

The undersigned, Albert Rossini ("Rossini"), hereby acknowledges that he has presented to Saint Odisho Church (the "Church") a certain parcel of real property commonly known as 3333 West Berteau, Chicago, Illinois 60618 (the "Property") and/or notes and mortgages relating to the Property for the Church to purchase. With respect to the Property and/or notes and mortgages presented, Rossini acknowledges that he has obtained written assignments of the right to acquire the Property from the contract purchaser and/or the existing notes and mortgages from the lender and, based upon those written assignments, Rossini has asked the Church to advance funds in the amount of $300,000.00 to be used to purchase the Property pursuant to the assignment. Rossini further acknowledges that the Church has agreed that once the Property is closed, the title to the Property shall be deeded to the Church or as the Church shall direct, or in the case of the purchase of existing notes and mortgages, Rossini agrees that he will cause the foreclosure process to be completed and thereafter shall have the title to the Property deeded to the Church or as the Church shall direct.

The Church agrees that Rossini may use the funds advanced as long as Rossini agrees to pay to the Church the monthly equivalent of the rentals for the Property on which funds have been advanced up to and including the month of closing.

Rossini hereby guarantees to the Church that in the event that the Property for which the Church has advanced funds is not closed and purchased pursuant to the assignment for the Property and/or the notes and mortgages are not purchased from the lender that Rossini shall be personally responsible to return any and all sums so advanced by the Church for the Property and shall return such funds within ten (10) days after Rossini has determined that no closing will occur pursuant to the assignment.

GOVERNMENT
EXHIBIT

Younan 3

Dated: May _1_, 2012

_[signature]_
Albert Rossini

Acknowledged and accepted this
_1ˢᵗ_ day of May, 2012

Saint Odisho Church

By: _[signature]_
Its: _PARISH PRIEST_

DATE:        March 29, 2014 01:38:24 +00:00
SUBJECT:     **Fwd: eFax message from "unknown" - 23 page(s), Caller-ID: 1-847-983-0349**
FROM:        bert rossini <bertrossini4@gmail.com>
REPLY-TO:    bertrossini4@gmail.com
TO (1):      ninos younan <ninosyounan@yahoo.com>
ATTACHMENTS (1): 📎 FAX_20140327_1395936205_95.pdf

---

Date: Sat, 29 Mar 2014 01:38:24 UTC
Subject: Fwd: eFax message from "unknown" - 23 page(s), Caller-ID: 1-847-983-0349
From: bertrossini4@gmail.com
To: ninosyounan@yahoo.com
Has Attachment: Yes


---------- Forwarded message ----------
From: <bertrossini4@aol.com>
Date: Thu, Mar 27, 2014 at 11:12 AM
Subject: Fwd: eFax message from "unknown" - 23 page(s), Caller-ID:
1-847-983-0349
To: bertrossini4@gmail.com




-----Original Message-----
From: eFax <message@inbound.efax.com>
To: bertrossini4 <bertrossini4@aol.com>
Sent: Thu, Mar 27, 2014 11:03 am
Subject: eFax message from "unknown" - 23 page(s), Caller-ID: 1-847-983-0349

 [image: eFax]

 Fax Message [Caller-ID: 1-847-983-0349]

*You have received a 23 page fax at 2014-03-27 16:03:25 GMT.*

* The reference number for this fax is chd_did8-1395935722-18477899770-95.

View this fax using your PDF reader.

Please visit www.eFax.com/en/efax/twa/page/help<http://www.efax.com/en/efax/twa/page/help>if
you have any questions regarding this message or your service.

**GOVERNMENT EXHIBIT**

**Younan 10**

Thank you for using the eFax service!

<http://pubads.g.doubleclick.net/gampad/jump?iuY598313/eFax_Paid-Inbound_Fax&sz0x600&cD235910>

[image: j2 Global | eFax | eVoice | FuseMail | Campaigner | KeepItSafe |
OneBox]<http://www.j2.com/?utm_sourceïax_plus&utm_medium=xsell-
email&utm_campaign=Name_name&utm_content=footer>
© 2014 j2 Global, Inc. All rights reserved.
eFax® is a registered trademark of j2 Global, Inc.

This account is subject to the terms listed in the eFax Customer
Agreement<http://home.efax.com/customerAgreements/efax/customerAgreement.html>
.

<bertrossini4@aol.com>

bertrossini4@gmail.com

message@inbound.efax.com
bertrossini4@aol.com

1-847-983-0349

Fax Message1-847-983-0349

**You have received a 23 page fax at 2014-03-27 16:03:25 GMT.**

www.eFax.com/en/efax/twa/page/help

eFax Customer Agreement

**NOTE PURCHASE AGREEMENT**

3333 WEST BERTEAU
CHICAGO, IL 60618



Doc#: 1307950030 Fee: $46.00
RHSP Fee:$10.00 Affidavit Fee:
Karen A.Yarbrough
Cook County Recorder of Deeds
Date: 03/20/2013 10:29 AM Pg: 1 of 5

LEGAL DESCRIPTION: LOTS 11 AND 12 IN BLOCK 5 IN W.H. CONDON'S SUBDIVISION OF THE WEST ½ OF THE EAST ½ OF THE SOUTHEAST ¼ OF SECTION 14 TOWNSHIP 40 NORTH RANGE 13 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

COMMONLY KNOWN AS:     3333 West Berteau
                       Chicago, IL 60618

TAX PARCEL NUMBER: 13-14-420-001-0000

## MEMORANDUM

I am specifically recording this note purchase agreement to put others on notice of the agreement's existence. Additionally, note that consideration has been paid in the amount of $300,000.00. As of today's date, we are finalizing our agreement to purchase the note.

File


**CHASE** ◑

Keep this receipt as a record of your purchase.

FOR YOUR PROTECTION SAVE THIS COPY
**CASHIER'S CHECK**

**Customer Copy**

9429617495

05/01/2012

illinois

**Remitter** ST ODISHO CHURCH

**Pay To The Order Of** THOMAS MURPHY, ATTORNEY/AGENT
PIN # 13144200100000

$ ******300,000.00 ***

Drawer **JPMORGAN CHASE BANK, N.A.**
**NON NEGOTIABLE**

**TERMS**
KEEP THIS COPY FOR YOUR RECORD OF THE TRANSACTION.
PLEASE CONTACT CHASE TO REPORT A LOSS OR FOR ANY OTHER INFORMATION ABOUT THIS ITEM.

262111107 NEW 01/09 8610004308

HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK

**CHASE** ◑

**Remitter** ST ODISHO CHURCH

HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK
9429617495
**Date** 05/01/2012    440

**Pay:** THREE HUNDRED THOUSAND
DOLLARS AND 00 CENTS

**Pay To The Order Of** THOMAS MURPHY, ATTORNEY/AGENT
PIN # 13144200100000
3333 W. BERTEAU
Chicago, IL 60618

$ ******300,000.00 ***

Drawer **JPMORGAN CHASE BANK, N.A.**
*Michael Andruw*

Senior Vice President
JPMorgan Chase Bank, N.A.
Columbus, OH

## AGREEMENT TO PURCHASE
## NOTE, MORTGAGE AND COLLATERAL DOCUMENTS

THIS MORTGAGE SALE AGREEMENT (the **"AGREEMENT"**) is made and entered into this 5th day of December, 2012 as follows:

### WITNESSETH

WHEREAS, the Seller NORTH COMMUNITY BANK (hereinafter referred to as **"SELLER"**), and the Buyer, DEVON STREET INVESTMENTS, LTD., an Illinois corporation (hereinafter referred to as **"BUYER"**), desire to enter into this agreement to purchase and sell, the Note, Mortgage and related documents and claims including, but not limited to, any and all right, title and interest in and to that certain foreclosure proceeding filed by the Seller in the Circuit Court of Cook County, Illinois, County Department, Chancery Division styled as case number **12CH05085** entitled **"NORTH COMMUNITY BANK, et al. V. JOHN F. KULNIG, et al."** (the **FORECLOSURE ACTION"**) for the property commonly known as and located at **3333 W. BERTEAU AVE, CHICAGO, IL 60618** and agrees as follows:

NOW, THEREFORE in consideration of the mutual promises and covenants and conditions hereinafter set forth, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. Seller agrees to assign the following described instruments and claims and Buyer agrees to pay to Seller the amount of **THREE HUNDRED THOUSAND and 00/100 DOLLARS ($300,000.00)** in the form of a certified or cashier's check payable to Seller. Seller represents that the current outstanding balance on the Mortgage is approximately One Million Three Hundred Seventy Five Thousand 00/100 Dollars ($1,375,000.00).

2. Seller agrees to deliver the following Documents (collectively referred to as (**ASSIGNED COLLATERAL DOCUMENTS)**:

    (a) Original Note executed by John F. Kulnig in favor of Seller

    (b) Original First Mortgage, Assignment of Leases and Rents and Security Agreement recorded on 02/28/2007 as document No.0705922056 at the office of the Cook County Recorder of Deeds.

    (c) Any and all claims, actions, causes of action, including but not limited to the Foreclosure Action;

    (d) Assignments of the foregoing original Note, Mortgages and Assignments of Leases and Rents in recordable form by the Seller and Assignment of Policies of Insurance and Unrecorded Loan Documents.

3. Buyer agrees to indemnify and hold Seller harmless for any claim by and on behalf of or arising solely out of Buyers conduct in connection with its Mortgage or Note or the Foreclosure Action of the subject property after the date of purchase. Buyer further agrees that it will be responsible for all costs and fees of concluding the pending Foreclosure Action.

4. Seller agrees to indemnify and hold Buyer harmless for any claim by and on behalf of or arising solely out of Sellers conduct in connection with its Mortgage or Note or the Foreclosure Action of the subject property before the date of purchase. Seller further agrees that it will be responsible for all costs and fees arising from any claims regarding Sellers conduct prior to the date of purchase, regarding the subject Mortgage or Note or the Foreclosure Action.

5. This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois and the laws of the United States of America.

6. The Warranties, Representations and Indemnification shall survive the closing, dismissal or resolution of the pending Foreclosure Action and there shall be no merger construed in connection with the above referenced Assignment and Sale.

7. All notices given pursuant to this Agreement shall be in writing and may be served in one of the following manners:

   (a) By personal delivery, mail-o-gram, telegram, in which case notice shall be deemed given when delivered; or

   (b) By the use of a facsimile machine or telecopier with proof of transmission and a copy of the notice with proof of transmission being sent by regular mail on the date of transmission, in which case notice shall be deemed effective the day when transmitted.

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be duly executed and sealed the day, month and year written above.

DATED: December 5, 2012

BUYER:                                              SELLER:

DEVON STREET INVESTMENTS, LTD.          NORTH COMMUNITY BANK

BY: _____          BY: _____
Bert Rossini, President

                                       Its: _____

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - CHANCERY DIVISION

| | |
|---|---|
| NORTH COMMUNITY BANK,<br>Plaintiff,<br><br>vs.<br><br>JOHN F. KULNIG;<br>U.S. BANK N.A. SUCCESSOR TRUSTEE TO<br>FIRSTAR BANK ILLINIOIS, FOMERLY<br>KNOWN AS FIRST COLONIAL TRUST<br>COMPANY, AS TRUSTEE U/T/A DATED<br>NOVEMBER 27, 1989 A/K/A TRUST NO. 5440;<br>UNKNOWN OWNERS<br>and NONRECORD CLAIMANTS,<br>Defendants. | )  12 CH 05085<br>)<br>)  No.<br>)<br>)  Property Address:<br>)  3331-33 W. Berteau<br>)  Chicago, Illinois<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR FORECLOSURE AND SALE AND FOR OTHER RELIEF

NOW COMES the Plaintiff, NORTH COMMUNITY BANK BANK, by its attorneys,

MARTIN & KARCAZES, LTD., and complaining of the Defendants, JOHN F. KULNIG;

U.S. BANK N.A. SUCCESSOR TRUSTEE TO FIRSTAR BANK ILLINIOIS, FOMERLY

KNOWN AS FIRST COLONIAL TRUST COMPANY, AS TRUSTEE U/T/A DATED

NOVEMBER 27, 1989 A/K/A TRUST NO. 5440; UNKNOWN OWNERS and NONRECORD

CLAIMANTS, states as follows:

1. Plaintiff files this Complaint to foreclose the mortgage, or other conveyance in the nature

of a mortgage (hereinafter called "Mortgage") hereinafter described, pursuant to Section 15-1504 of

the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1504), and joins the following parties as

Defendants:

JOHN F. KULNIG;
U.S. BANK N.A. SUCCESSOR TRUSTEE TO FIRSTAR BANK ILLINIOIS, FOMERLY
KNOWN AS FIRST COLONIAL TRUST COMPANY, AS TRUSTEE U/T/A DATED
NOVEMBER 27, 1989 A/K/A TRUST NO. 5440;
UNKNOWN OWNERS and NONRECORD CLAIMANTS.

2. Attached hereto and made parts hereof are the following Exhibits:

A - Copy of February 26, 2007 Mortgage.

B - Copy of February 26, 2007 Assignment of Rents.

C – Copy of Renewal Note dated July 5, 2010, in the amount of $1,023,294.90 secured

thereby ("Note").

D – Copy of the Modification Agreement dated June 16, 2009

E - Copy of the Change in Terms Agreement dated August 23, 2010;

3. Information concerning mortgage:

(a)    Nature of Instrument: Mortgage.

(b)    Date of Mortgage: February 26, 2007.

(c)    Name of Mortgagor: U.S. BANK N.A. SUCCESSOR TRUSTEE TO FIRSTAR
       BANK ILLINIOIS, FOMERLY KNOWN AS FIRST COLONIAL TRUST
       COMPANY, AS TRUSTEE U/T/A DATED NOVEMBER 27, 1989 A/K/A
       TRUST NO. 5440.

(d)    Name or names of Mortgagee or Grantee in mortgage: NORTH COMMUNITY
       BANK.

(e)    Date and Place of Recording or of filing if the land is registered under "An Act
       Concerning Land Titles", approved May 1, 1987, as heretofore and hereafter
       amended:
                     February 28, 2007, Recorder of Deeds, Cook County.

(f)    Identification of Mortgage: Doc. No. 0705922056.

(g)    Interest subject to the Mortgage: Fee Simple.

(h)    Amount of original indebtedness, including subsequent advances made under the
       Mortgage: $1,375,000.00

(i)    Legal description of mortgaged premises:

LOTS 11 AND 12 IN BLOCK 5 IN W.H. CONDON'S SUBDIVISION OF THE WEST 1/2 OF THE
EAST 1/2 OF THE SOUTHEAST 1/4 OF SECTION 14 TOWNSHIP 40 NORTH RANGE 13
EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

PIN(S): 13 14-420-010-0000

Commonly known as 3331-33 W. Berteau, Chicago, Illinois

(j)  Statement as to defaults and amounts due:

Date of Default: Borrower failed to make the installment payment due on September 5, 2011 and all subsequent payments.

Principal Balance: $1,004,352.94.

*Per diem* interest accruing under the Mortgage: $167.392156, not including default interest.

(k)  Present owner of the premises in question:

U.S. BANK N.A. SUCCESSOR TRUSTEE TO FIRSTAR BANK ILLINIOIS, FOMERLY KNOWN AS FIRST COLONIAL TRUST COMPANY, AS TRUSTEE U/T/A DATED NOVEMBER 27, 1989 A/K/A TRUST NO. 5440.

(l)  Names of other persons who are joined as defendants and whose interest in, or lien on the mortgaged real estate is sought to be terminated:

i)  In addition to the persons designated by name herein there are or may be other persons who are or may be interested in this action and who have or claimed some right, title, interest or lien in, to or upon the real estate or some part thereof and the name of such other person or persons so interested in this action is unknown to Plaintiff, and upon diligent inquiry cannot be ascertained, but whose interest is in all respect inferior, subject and subordinate to the lien of Plaintiff's Mortgage herein sought to be foreclosed, and such other parties are hereby made parties Defendant to this action by the name and description of "Unknown Owners and Nonrecord Claimants".

(m)  Defendants claimed to be personally liable for deficiency:

JOHN F. KULNIG

(n)  Capacity in which Plaintiff brings this foreclosure:

Legal holder of the Mortgage and Note.

3

(o)   Facts in support of shortened redemption period:

COMMERCIAL PROPERTY. REDEMPTION WAIVED. SEE PARAGRAPH 11 OF THE MORTGAGE.

(p)   Facts in support of request for attorneys' fees and of costs and of expenses: Plaintiff has been required to obtain and retain counsel for the prosecution of this foreclosure and to incur substantial attorneys' fees, court costs, title insurance and other expenses which should be added to the balance secured by said mortgage as provided in PAGE ONE (1) OF THE MORTGAGE.

(q)   Facts in support of request for appointment of mortgagee in possession or for appointment of receiver, and identity of such receiver: none at this time.

(r)   Plaintiff does not offer to mortgagor, in accordance with Section 15-1402 of the Illinois Mortgage Foreclosure Law, to accept title to the real estate in satisfaction of all indebtedness and obligations secured by the mortgage without judicial sale.

(s)   Names of defendants whose right to possess the mortgaged real estate, after the termination of a foreclosure sale is sought to be terminated:

JISELLE BRAUN
FOMERLY KNOWN AS FIRST COLONIAL TRUST COMPANY, AS TRUSTEE U/T/A DATED NOVEMBER 27, 1989 A/K/A TRUST NO. 5440; UNKNOWN OWNERS and NONRECORD CLAIMANTS.

## REQUEST FOR RELIEF

Plaintiff, NORTH COMMUNITY BANK, requests:

1.   A judgment to foreclose the subject mortgage.

2.   An order granting a shortened redemption period, if sought.

3.   A personal judgment for a deficiency, if sought.

4.   A judgment for attorneys' fees, costs and expenses.

5.   An order granting possession of the premises, if sought.

## GENERAL DOCUMENT EXONERATION RIDER

The foregoing instrument is executed by U.S. BANK, N.A., not personally but as Trustee under Trust No. __5440__ as aforesaid, in the exercise of power and authority conferred upon and vested in said Trustee as such, and it is expressly understood and agreed that nothing in said instrument shall be construed as creating any liability on said Trustee personally to pay any indebtedness accruing thereunder, or to perform any promises, agreements or covenants or to honor any warranties or representations, either expressed or implied, including but not limited to warranties (including but not limited to warranties of title, physical condition, environmental condition, merchantability, and fitness for particular purpose), indemnifications (including but not limited to indemnifications for injury to persons or property, for environmental liability, and for liability or damages resulting from or relating to claims or matters of any nature whatsoever), and hold harmless representations in said instrument (all such liability, if any, being expressly waived by the parties hereto and their respective successors and assigns) and that so far as said Trustee is concerned, the owner of any indebtedness or right accruing under said document shall look solely to the premises described therein for the payment or enforcement thereof, it being understood that said Trustee merely holds legal title to the premises described therein and has no control over the management thereof or the income therefrom, and has no knowledge respecting any factual matter with respect to said premises, except as represented to it by the beneficiary or beneficiaries of said trust. In event of conflict between the terms of this rider and of the instrument to which it is inserted or attached, on any questions of apparent liability or obligation resting upon said trustee, the provisions of this rider shall be controlling.

## PROMISSORY NOTE

**Renewal Note**

$1,023,294.90
Renewal Note

Chicago, Illinois
July 5, 2010

FOR VALUE RECEIVED, the Borrower, JOHN F. KULNIG (the "Borrower"), hereby promises to pay to the order of NORTH COMMUNITY BANK (the "Lender"), the principal sum of ONE MILLION TWENTY THREE THOUSAND TWO HUNDRED NINETY FOUR AND 90/100THS (\$1,023,294.90) DOLLARS, together with interest on any unpaid balance from the date hereof at the fixed rate of 6.00% (the "Regular Rate").

Interest on this Note shall be calculated on the basis of a 360-day year and the actual number of days elapsed in any portion of a month for which interest may be due. All interest payable under this Note is computed using this method. This calculation method results in a higher effective interest rate than the numeric interest rate stated in this Note. In the event the interest calculation method is found to be unenforceable, Lender has the right to convert the calculation on the basis of a 365-day year and any overpayment shall be credited to the Borrower.

Installment payments of principal and accrued unpaid interest on the unpaid principal balance of this Note, in the amount of $6,649.20, will be due and payable monthly, commencing on August 5, 2010, and continuing on the 5th day of each month thereafter, until July 5, 2013 (the "Maturity Date"). The entire unpaid principal balance, along with any accrued unpaid interest, fees and costs shall be due and payable on the Maturity Date.

This Note is a renewal and modification of a Note dated February 26, 2007 in the original principal amount of $1,375,000.00 and that was executed and delivered in accordance with the terms and conditions of a Construction Loan Agreement dated February 26, 2007 therewith, between the undersigned and North Community Bank and for which terms of the Note have been previously modified and changed as evidenced by; that certain Change in Terms Agreement and Renewal Note both dated February 26, 2008 both executed and delivered by Borrower to Lender; by that certain Modification Agreement dated June 16,

Exhibit
n

2009 increasing the principal amount due under the Note to $1,030,000.00 executed and delivered by Borrower to Lender; by that certain Change In Terms Agreement and Renewal Note dated January 5, 2010 executed and delivered by Borrower to Lender; and most recently by that certain Change In Terms Agreement dated August 23, 2010 signed by Borrower and Lender, but made effective retroactively as of the date of this Note.

In the event that any monthly installment is not received on or within ten (10) days of the due date thereof, in addition to any other permitted charges hereunder, a "late payment" fee shall be due and owing to the holder of this Note in the amount of 10% of the amount of the past due monthly installment; provided, however, that nothing in this Paragraph shall affect the accruing of interest at the rate hereinabove set forth due on any principal amount outstanding until paid, and nothing contained in this Paragraph shall authorize the holder hereof to collect or demand any payment which would result in the imposition of interest in excess of the maximum amount allowed by law.

Borrower reserves the privilege to prepay the unpaid principal balance of this Note, in whole but not in part, with accrued interest thereon to date of payment, without incurring a prepayment premium or penalty.

So long as the Note remains unpaid, the Borrower and his successors, heirs and assigns covenant and agree that there shall be no sale, transfer, assignment or conveyance of all, or any, of the interest in the premises pledged to secure the payment of this Note without the prior written consent of the holder hereof. In the event the premises, or any part thereof, are sold, transferred, assigned or conveyed without the prior written consent of the holder hereof, same shall conclusively be deemed to increase the risk of the holder hereof, and the holder hereof may declare the entire unpaid principal balance of this Note and all accrued interest thereon immediately due and payable.

The holder hereof specifically reserves the right to condition its consent to a sale, transfer, assignment or conveyance of all or any part of the premises securing the payment of this Note (by way of illustration and not by way of limitation) upon its approval of the financial and/or

2



The Borrower will be in default if any of the following happens: (a) the Borrower fails to make any payment when due and after ten days written notice of such failure; (b) the Borrower breaks any promise made to Lender or the holder of the Note or the Borrower fails to comply with or perform when due any other term, obligation, covenant or condition contained in this Note or any agreement related to this Note, or in any other agreement or loan the Borrower has with North Community Bank, after thirty days written notice of such non-compliance, (c) the Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of the Borrower's property or the Borrower's ability to repay this Note or perform the Borrower's obligations under this Note or any other agreement related to the Note, (d) any representation or statement made or furnished to Lender by the Borrower or on behalf of the Borrower is false or misleading in any material respect either now or at the time made or furnished, (e) the Borrower dies or becomes insolvent, a receiver is appointed for any part of the property of the Borrower, the Borrower makes an assignment for the benefit of creditors, or any proceeding is commenced either by the Borrower or against the Borrower under any bankruptcy or insolvency laws, (f) any creditor tries to take any of the property of the Borrower on or in which Lender has a lien or security interest, including but not limited to a garnishment of any of the Borrowers accounts, including deposit accounts, with North Community Bank, (g) any of the events described in this paragraph occurs with respect to any guarantor of this Note, (h) a material adverse change occurs in the Borrower financial condition, or Lender believes the prospect of payment or performance of the indebtedness is impaired, or (i) Lender in good faith deems itself insecure. An event of default, after the expiration of any applicable grace period, shall cause the entire unpaid indebtedness evidenced hereby together with accrued interest hereof to become due and payable at once at the place of payment aforesaid, without further

4

notice. In the event of default, interest shall, at Lender's option, accrue at the rate of 5.00% IN EXCESS OF THE REGULAR RATE, (the "Default Rate"), computed in the same manner as the Regular Rate, until paid.

The payment of this Note is secured by a certain first mortgage and assignment of leases and rents dated February 26, 2007 and recorded February 28, 2007 with the Cook County Recorder of Deeds Office as Document Nos. 0705922056 and 0705922057, respectively, upon the real estate commonly known as 3331-33 W. Berteau, Chicago, Illinois, and a certain collateral assignment of beneficial interest dated February 26, 2007 in the land trust created pursuant to Trust Agreement dated November 27, 1989 and known as Trust No.5440 of U.S. BANK N.A and by a junior mortgage on the real property commonly known as 206 W. Talcott Road, Park Ridge, Illinois and a continuing and unlimited guaranty of Jean M. Kulnig.

The holder of this Note shall have a right to set-off, at any time without notice to the Borrower, any and all deposits or other sums at any time or times credited by or due from holder to any of the Borrower, whether in a special account or other account or represented by a certificate of deposit (whether or not matured), which deposits or other sums shall, at all times, constitute additional security for this Note. The holder of this Note shall have a lien on and a security interest in all instruments, documents, securities, cash, property, and the proceeds of any of the foregoing, owned by any of the Borrower, whether jointly or severally, or in which any of the Borrower has an interest, which now or hereafter are at any time in possession or control of holder or in transit by mail or carrier to or from holder or in the possession of any third party acting on behalf of the holder, without regard to whether holder received the same in pledge, for safekeeping, or agent for collection or transmission or otherwise or whether holder had conditionally released the same, all of which shall, at all times, constitute additional security for this Note.

5

All notices and other communications required or permitted hereunder shall be in writing and shall be deemed effectively served if personally delivered or three (3) days after having been mailed by United States Mail, postage prepaid to the parties hereto at the addresses shown below or at such other addresses as the parties hereto may by notice specify:

(a)  If to Lender:       NORTH COMMUNITY BANK
                         3639 N. Broadway
                         Chicago, IL 60613

(b)  If to Borrower:     JOHN F. KULNIG
                         206 Talcott Road
                         Park Ridge, IL 60068

The Borrower represents and expressly agrees and consents that this instrument and the rights and obligations of all parties hereunder shall be governed by and construed under the laws of the State of Illinois and that the Borrower has the authority and power to execute this Note.

The enforceability or invalidity of any provision or provisions hereof shall not render any other provision or provisions herein contained unenforceable or invalid.

IN WITNESS WHEREOF, this Note has been executed and delivered as of the date of the Change In Terms Agreement, but is intended by Borrower to be effective retroactively as of date of this Note. **PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE. BORROWER AGREES TO THE TERMS OF THIS NOTE AND ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS NOTE.**

_____
JOHN F. KULNIG

6



THIS INSTRUMENT
PREPARED BY:
JAMES A. HASIER
Martin & Karcazes, Ltd.
161 N. Clark
Suite 550
Chicago, Illinois 60601

Doc#: 0918222083 Fee: $46.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 07/01/2009 11:46 AM Pg: 1 of 8

PLEASE MAIL TO:
NORTH COMMUNITY BANK
3639 N. Broadway
Chicago, IL 60613

## MODIFICATION AGREEMENT

THIS MODIFICATION AGREEMENT made this 16th day of June, 2009, by and between U.S BANK N.A., Successor Trustee to FIRSTAR BANK ILLINOIS, Formerly Known as FIRST COLONIAL TRUST COMPANY, as Trustee Under Trust Agreement Dated November 27, 1989 and Known as Trust Number 5440 ("Mortgagor") JOHN F. KULNIG ("Borrower") and NORTH COMMUNITY BANK, an Illinois banking corporation, with an office at 3639 N. Broadway, Chicago, Illinois 60613 (hereinafter called "Lender").

### WITNESSETH:

This Agreement is based upon the following recitals:

A. On February 26, 2007, for full value received, Borrower executed and delivered to Lender a Promissory Note in the principal amount of ONE MILLION THREE HUNDRED SEVENTY-FIVE THOUSAND AND NO/100THS ($1,375,000.00) DOLLARS (hereinafter called the "Note"), pursuant to a Construction Loan Agreement of even date therewith, executed by Borrower and Lender (the "Loan Agreement").

B. The Note is secured by a certain first mortgage (hereinafter called the "Mortgage") and assignment of leases and rents (hereinafter called the "Assignment of Rents") dated February 26, 2007 and recorded February 28, 2007 with the Cook County Recorder of Deeds Office as Document Nos. 0705922056 and 0705922057, respectively, with the Recorder of Deeds of Cook County, Illinois, covering the property described below (hereinafter called the "Mortgaged Premises"):

LOT 11 AND LOT 12 IN BLOCK 5 IN W.H. CONDON'S SUBDIVISION OF THE WEST HALF OF THE EAST HALF OF THE SOUTHEAST QUARTER OF SECTION 14, TOWNSHIP 40 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS

PIN: 13-14-420-010-0000

1

Common Address: 3331-33 W. Berteau, Chicago, Illinois

C. Mortgagor has further secured the obligation with a collateral assignment of beneficial interest (hereinafter called the "Collateral ABI") notes February 26, 2007 in the land trust created pursuant to Trust Agreement dated November 27, 1990 and known as Trust No.5440 of U.S. BANK N.A.

D. The maturity date of the Note and terms of the Note have been previously changed by agreement of the parties as evidenced by that certain Change in Terms Agreement and Renewal Note(the Note and Renewal Note are hereinafter collectively referred to as the "Note") both dated February 26, 2008 and both executed and delivered by Borrower to Lender (hereinafter the Note, Renewal Note, Mortgage, Assignment of Leases and Rents, Loan Agreement, Collateral ABI, Change in Terms Agreements and all documents executed in conjunction with said documents are collectively referred to herein as the "Loan").

E. Borrower has requested that certain modifications be made in the above-mentioned Loan, including the extension of an additional $105,000.00 in funds under the Loan.

F. Lender is agreeable to extending additional funds, on such terms and condition as set forth herein, including but not limited to the requirement that Borrower; pledge, as additional security for this loan, a junior mortgage on the real property commonly known as 206 W. Talcott Road, Park Ridge, Illinois; reduce the maturity date under the Loan from February 26, 2013 to January 5, 2010; and to add Jean M. Kulnig, as an additional guarantor for the Loan.

G. The outstanding principal balance of said Note as of June 16, 2009 is $918,294.90.

H. Mortgagor and Borrower represent to Mortgagee that, there is no junior mortgage or other subsequent lien now outstanding against the Mortgaged Premises (unless disclosed to Mortgagee, and such subsequent lienholder has agreed to consent to this Modification Agreement and subordinate its lien to the lien of the Mortgage, as herein modified, which Consent and Subordination is attached hereto as Exhibit "A"), and that the lien of the Mortgage, as herein modified, is a valid, first and subsisting lien of said Mortgaged Premises.

NOW THEREFORE, for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto do hereby mutually agree that the Note and Loan are hereby modified as follows:

1. The Maturity date under the Note and Loan will be changed from February 26, 2013 to January 5, 2010.

2. Borrower will receive an advance of $105,000.00 (the "Newly Advanced Funds") and the Note amount as of the date hereof shall be $1,030,000.00. The principal Note indebtedness secured by the Mortgage shall be increased from $918,294.90 to $1,023,294.90. An interest reserve of $12,000.00 from said Newly Advanced Funds, shall

2

be held at NORTH COMMUNITY BANK and shall be automatically drawn upon to fund the monthly installment payments of interest due hereunder until said reserve is fully disbursed or loan is retired. The remainder of loan proceeds, after the interest reserve fund has been established and after the costs associated with effectuating this Modification Agreement have been disbursed, shall remain as undisbursed loan proceeds to be disbursed in a accordance with the terms of the Loan Agreement.

3. Concurrently herewith, and as a precondition to making available to Mortgagor any of the Newly Advanced Funds and in consideration of Lender entering into this Modification Agreement, Borrower will cause to be executed and delivered to Lender a junior mortgage on the real property commonly known as 206 W, Talcott Road, Park Ridge, Illinois, in a form as acceptable to Lender.

4. Concurrently herewith, and as a precondition to making available to Mortgagor any of the Newly Advanced Funds and in consideration of Lender entering into this Modification Agreement, Borrower will cause to be executed and delivered to Lender a continuing unconditional Guaranty of Jean M. Kulnig in a for as acceptable to Lender.

5. The unpaid principal balance under the Note, including the newly advanced funds from the date of advance, shall continue to accrue at a rate of THE PRIME RATE announced from time to time by NORTH COMMUNITY BANK, computed daily on the basis of a three hundred sixty (360) day year for each day all or any part of the principal balance hereof shall remain outstanding (herein called the "Floating Rate"). The Floating rate shall not go below 5%. Payments of interest only shall be payable monthly. The next regularly scheduled payment coming due on the July 28, 2009 is hereby extended to August 5, 2009 and commencing with that payment all monthly payments thereafter shall be due on the 5th day of each month The unpaid principal balance due under the Loan, along with any accrued unpaid interest, shall be payable on January 5, 2010.

6. As a condition to entering into this loan modification the undersigned has agreed to be responsible for any and all costs and fees incurred by Lender associated with the preparation and recordation of this Modification Agreement including title costs and attorney's fees. Further, it is understood and agreed that the foregoing charges are earned and due and payable upon execution of this Modification Agreement and shall be construed as additional indebtedness under the Note.

7. All other terms and conditions of the Note and Loan shall remain in full force and effect.

In consideration of the modification of the terms of the Note and Loan, as hereinabove set forth, Borrower and Mortgagor does hereby covenant and agree to pay the balance of the indebtedness evidenced by the Note and secured by the Mortgage as herein modified, and to perform the covenants contained in the Mortgage and Loan Agreement, and Borrower and Mortgagor represent to Lender that there is no junior mortgage, or other subsequent lien now outstanding against the Mortgaged Premises, except as otherwise disclosed herein, and that the lien of the Mortgage is a valid, first and subsisting lien on said Mortgaged Premises.

3

Nothing herein contained shall in any manner whatsoever impair the Note and the Mortgage as modified hereby, or the first lien created thereby or any other documents executed by Borrower and Mortgagor in connection therewith, or alter, waive, vary or affect any promise, agreement, covenant or condition recited in any of the above-mentioned documents, except as herein expressly modified, nor affect or impair any rights, powers, or remedies of Mortgagee under any of the above-mentioned documents. Except as hereinabove otherwise provided, all terms and provisions of the Note, Mortgage and other instruments and documents executed in connection with the subject Loan, shall remain in full force an effect and shall be binding upon the parties hereto, their successors and assigns.

IN WITNESS WHEREOF, this instrument has been executed by the parties hereto in manner and form sufficient to bind them, as of the day and year first above written.

LENDER:

NORTH COMMUNITY BANK:

By: _____

Its _____ Senior Vice President

BORROWER:

_____
JOHN F. KULNIG

MORTGAGOR:
U.S BANK N.A., as Trustee Under Trust Agreement Dated November 27, 1989 and Known as Trust Number 5440

Attest:

_____
Its _____ Secretary
Ann Hucek Burress, Vice President

By: _____
Its _____ Vice President
June Stout,

See attached for Trustee's Exoneration or Exculpatory Language, which is hereby expressly made a part hereof

4

Nothing herein contained shall in any manner whatsoever impair the Note and the Mortgage as modified hereby, or the first lien created thereby or any other documents executed by Borrower and Mortgagor in connection therewith, or alter, waive, vary or affect any promise, agreement, covenant or condition recited in any of the above-mentioned documents, except as herein expressly modified, nor affect or impair any rights, powers, or remedies of Mortgagee under any of the above-mentioned documents. Except as hereinabove otherwise provided, all terms and provisions of the Note, Mortgage and other instruments and documents executed in connection with the subject Loan, shall remain in full force an effect and shall be binding upon the parties hereto, their successors and assigns.

IN WITNESS WHEREOF, this instrument has been executed by the parties hereto in manner and form sufficient to bind them, as of the day and year first above written.

LENDER:

NORTH COMMUNITY BANK:

By: _____
    Its    Senior Vice President

BORROWER:

_____
JOHN F. KULNIG

MORTGAGOR:
U.S BANK N.A., as Trustee Under Trust Agreement Dated November 27, 1989 and Known as Trust Number 5440

Attest:

_____
Its
Ann Hucek Burress, Vice President

By: _____
    Its
    June Stout,        Vice President

See attached for Trustee's Exoneration or Exculpatory Language, which is hereby expressly made a part hereof

4

State of Illinois )
                  ) ss.
County of Cook    )

The undersigned, a Notary Public in and for said county, in the aforesaid State, does hereby certify that **June Stout** and **Ann Hucek Burress**, known to me to be the same persons whose name are subscribed to the foregoing instrument and are **Vice PRes.** **Secretary** and **Vice** President, respectively, of U.S.BANK N.A., appeared before me this day in person and acknowledged that they signed and delivered the said instrument as their own free and voluntary act, and as the free and voluntary act of U.S BANK N.A., as Trustee under Trust No. 5440, with the authority to so act, for the uses and purposes therein set forth.

Date: June **24**, 2009

```
                                      OFFICIAL SEAL
                                    ELIZABETH NIEMAN        Notary Public
                          NOTARY PUBL   STATE OF ILLINOIS
                          MY COMMISSION EXPIRES MARCH 16, 2010
```

State of Illinois  )
                   ) ss.
County of Cook     )

The undersigned, a Notary Public in and for said county, in the aforesaid State, do hereby certify that JOHN F. KULNIG, known to me to be the same persons whose name is subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that he signed and delivered the said instrument as hisr own free and voluntary act, for the uses and purposes therein set forth.

Dated: June **16** 2009

Notary Public

State of Illinois  )
                   ) ss.
County of Cook     )

```
                          "OFFICIAL SEAL"
                          HEIDI SCHRAEDER
                          Notary Public, State of Illinois
                          My Commission Expires Oct. 10, 2010
```

I, **Heidi Schraeder**, a Notary Public in and for said County, in the State aforesaid, do hereby certify that **Diego Mandurano** and _____, personally known to me to be the same persons whose names are subscribed to the foregoing instrument as the **Senior Vice President** and _____ of NORTH COMMUNITY BANK, appeared before me this day in person, and acknowledged that they signed and delivered the said instrument as their free and voluntary act, and as the free and voluntary act of said bank, for the uses and purposes therein set forth.

GIVEN, under my hand and notarial seal this **16th** day of _____, 2009.

Notary Public

5

```
                          "OFFICIAL SEAL"
                          HEIDI SCHRAEDER
                          Notary Public, State of Illinois
```

## EXONERATION RIDER

This instrument is executed by U.S. Bank, N.A. not personally but as Trustee under Trust No. 5440 , as aforesaid, in the exercise of power and authority conferred on and vested in said Trustee as such, and it is expressly understood and agreed that nothing in said document contained shall be construed as creating any liability on said Trustee personally to pay any indebtedness accruing thereunder, or to perform any promises, agreements or covenants or to honor any warranties or representations, either expressed or implied, including but not limited to warranties (including but not limited to warranties of title, physical condition, environmental condition, merchantability, and fitness for particular purpose), indemnifications (including but not limited to indemnifications for injury to persons or property, for environmental liability, and for liability or damages resulting from or relating to claims or matters of any nature whatsoever), and hold harmless representations in said instrument (all such liability, if any, being expressly waived by the parties hereto and their respective successors and assigns) and that so far as said Trustee is concerned, the owner of any indebtedness or right accruing under said document shall look solely to the premises described therein for the payment or enforcement thereof, it being understood that said Trustee merely holds legal title to the premises described therein and has no control over the management thereof or the income therefrom, and has no knowledge respecting any factual matter with respect to said premises, except as represented to it by the beneficiary or beneficiaries of said trust. In event of conflict between the terms of this rider and of the instrument to which it is inserted or attached, on any questions of apparent liability or obligation resting upon said trustee, the provisions of this rider shall be controlling.



# COOK COUNTY RECORDER OF DEEDS
## EUGENE "GENE" MOORE

HOME PAGE
BIOGRAPHY
LOCATIONS
INTERESTING LINKS
FEE SCHEDULE
WHAT'S NEW
FAQ
SEARCH MENU
Job Postings

[Back One Page]

Result Matches:(1 - 20 of 36)[Next]

Documents for PIN:13-14-420-010-0000

| Document No. | Document Type | Date Recorded | Grantor/Trust No. | Grantee/Trust No. | Prior Document |
|---|---|---|---|---|---|
| 1204518090 | LIS PENDENS FORECLOSURD | 02/14/2012 | NORTH COMMUNITY BANK | KULNIG JOHN F / 12CH05085 | 0705922056 |
| 0918222083 | MODIFICATION | 07/01/2009 | U S BK TR / 5440 | NORTH COMM BK | 0705922057 |
| 0707129087 | RELEASE | 03/12/2007 | NORTH COMM BK | US BK TR / 5440 | 0414731039 |
| 0705922056 | MORTGAGE | 02/28/2007 | U S BK TR | NORTH COMM BK | |
| 0705922057 | ASSIGNMENT | 02/28/2007 | U S BK TR / 5440 | NORTH COMM BK | |
| 0635631087 | MODIFICATION | 12/22/2006 | US BK TR / 5440 | NORTH COMM BK | 0414731038 |
| 0616410263 | MODIFICATION | 06/13/2006 | US BK TR / 5440 | NORTH COMM BK | 0414731038 |
| 0602045082 | MODIFICATION | 01/20/2006 | U S BK TR / 5440 | NORTH COMM BK | 0414731038 |
| 0423106137 | RELEASE | 08/18/2004 | NORTH COMM BK | FIRSTAR BK ILL TR / 5440 | 96381797 |
| 0421034069 | RELEASE | 07/28/2004 | NORTH COMM BK | U S BK TR / 5440 | 0020961148 |
| 0414731038 | MORTGAGE | 05/26/2004 | US BK TR / 5440 | NORTH COMM BK | |
| 0414731039 | ASSIGNMENT | 05/26/2004 | US BK TR / 5440 | NORTH COMM BK | 0020961148 |
| 0414731040 | RELEASE | 05/26/2004 | NORTH COMM BK | US BK TR / 5440 | 96351797 |
| 0414731041 | RELEASE | 05/26/2004 | NORTH COMM BK | US BK TR / 5440 | 0020961148 |
| 0328039031 | MODIFICATION | 10/07/2003 | U S BK N A TR / 5440 | NORTH COMM BK | 0020961148 |
| 0020961149 | RELEASE | 08/30/2002 | NORTH COMM BK | FIRSTAR BK TR / 5440 | 0010727755 |
| 0020961148 | MORTGAGE | 08/30/2002 | U S BK N A TR / 5440 | NORTH COMM BK | |
| 0010727755 | MORTGAGE | 08/09/2001 | FIRSTAR BK IL TR / 5440 | NORTH COMM BK | |
| 0010536086 | MODIFICATION | 06/19/2001 | FIRSTAR BK TR / 5440 | FIRSTAR BK | 96351797 |
| 97332515 | RELEASE | 05/12/1997 | FIRSTAR BANK IL | FIRST COLONIAL TR CO TR / 5440 | 95024333 |

[1][2]

## COOK COUNTY RECORDER OF DEEDS DISCLAIMER

While the Cook County Recorder of Deeds (CCRD) attempts to keep this website up to date with existing law and policies, the CCRD does not guarantee the accuracy of any of the information contained herein, including, but not limited to, database information and document images. CCRD also does not guarantee the legality of the documents and database information contained herein and accepts no liability for any damages incurred, whether directly, indirectly, incidental, punitive or consequential, as a result of any errors, omissions or discrepancies in any information published on this website or any use of this website, including, but not limited to use of on-line forms or affidavits.

### ACCEPTANCE OF TERMS, CONDITIONS, NOTICES AND LIMITED USE LICENSE

Access and use of this website constitutes agreement and acceptance of all terms, conditions and notices contained herein and throughout the website, as well as a limited use license for purposes including but not limited to: research, purchasing documents, downloading forms, reviewing office locations, contacting the CCRD, etc. Website access and this limited use license does not include any modification, alteration or derivative use of this website and its contents, or any use of data mining, use of robots or Bots, or use of other data gathering and extraction tools, or affidavits.

Copyright © 2010 Cook County Recorder of Deeds, All rights reserved.

Please Call 312-603-5050 if you have general information questions(such as which is my deed, how can I look up a property, etc.). At the end of the message a live operator will assist you.
For assistance with computer problems associated with the use of our website (such as document not displaying or not printing), please click here
rod.support@cookcountyil.gov or call 312-603-4777 or 312-603-5070 Monday - Friday between the hours of 8:30 a.m. and 4:30 p.m. CDT.