# EXHIBIT E

FD-302 (Rev. 5-8-10)

- 1 of 2 -

 OFFICIAL RECORD

## FEDERAL BUREAU OF INVESTIGATION

Date of entry 07/05/2017

On 6/29/2017 Craig Shaffer (previously interviewed) was interviewed at his office located at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Present for the interview was Special Agent Jody Blau and Task Force Officer Kevin Graff. After being advised of the identity of the interviewing Agents and the nature of the interview, Shaffer provided the following information:

Shaffer advised that he engaged in a transaction with Albert Rossini for a property located 7845 N Kolmar Ave, Skokie, IL.

Shaffer explained that he did the Kolmar deal with Rossini a couple of years ago. Shaffer invested $63,000 - $65,000 with Rossini, which was used to purchase a mechanics lien on the property. Rossini then arranged for the mechanics lien to be foreclosed upon; Shaffer believes this happened two or three years ago. Shaffer stated that it is his understanding that he is currently the owner of the property.

Shaffer stated that he could not recall to whom he gave his investment funds; whether Rossini or someone else at Rossini's direction. Shaffer advised the investment funds came from his Charter one home equity line of credit.

Shaffer explained that the former owners are currently living in the Kolmar property. Rossini told Shaffer that the former owners have bad credit, which is why they were unable to pay off the mechanics lien. Rossini told Shaffer that the niece and nephew of the former owners were going to bail them out and pay off the mechanics lien, but they failed to deliver. Rossini told Shaffer that they listed the property for sale through Meir Rotstein, and that they had a buyer for the property. Shaffer stated that he has been led to believe that he owns the property because of things said to him by Rossini, Richard Kruse, Glenn Seiden and Guy Stein.

Shaffer explained that his agreement with Rossini was that Shaffer would put up the $65,000 for the deal, and that Rossini would then hold the property and arrange to sell the property. Shaffer would recover his $65,000 from the proceeds of the sale, plus $10,000 that Rossini owed to Shaffer related to a personal loan, and then Shaffer and Rossini would

| | | |
|---|---|---|
| Investigation on 06/29/2017 | at | Des Plaines, Illinois, United States (In Person) |
| File # 329A-CG-133780 | | Date drafted 07/05/2017 |
| by SA Jody Blau | | |

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

Continuation of FD-302 of (U) Interview of Craig Shaffer , On 06/29/2017 , Page 2 of 2

split the remaining proceeds 50/50. Seiden told Shaffer that Rossini assigned his rights to the profits of the Kolmar deal to Seiden because Rossini owed Seiden money for legal representation.

Shaffer stated that Rossini told him a few days ago that the former owners of the property should be out of the property in a couple of weeks.

Shaffer stated that Kruse sat in Shaffer's office and told him about the sales contract for the sale of the Kolmar property at a sales price of $505,000. Shaffer explained that Kruse's statements gave him the impression that the transaction was legitimate.

Shaffer stated that he has not done any additional deals with Rossini other than this Kolmar deal and the deals that the FBI has already discussed with Shaffer.

Shaffer stated that Rossini has not asked him for any additional funds for the Kolmar deal.

Interviewing agent showed Shaffer a copy of a document entitled Articles of Agreement for Deed with its accompanying Disbursement Statement. Shaffer advised that he has seen the Articles of Agreement for Deed, but he had not previously seen the Disbursement Statement. Upon viewing the Disbursement Statement Shaffer commented that he is not crazy about it because it does not show him receiving any funds from the sale of the property.

Shaffer acknowledged that he has not looked up the country recorder of deeds to verify his ownership of the Kolmar property.

329A-CG-133780 Serial 849

- 1 of 3 -

FD-302 (Rev. 5-8-10)



## FEDERAL BUREAU OF INVESTIGATION

Date of entry   05/12/2015

On May 11, 2015, Craig Shaffer, date of birth (DOB) ███ was interviewed at his office located at ███████ Shaffer's home address is ███████ Telephone number ███████ Present for the interview was Special Agent Jody Blau, Special Agent Lyle Evans and Task Force Officer Paul Martinez. After being advised of the identity of the interviewing Agents and the nature of the interview, Shaffer provided the following information:

Shaffer is a CPA practicing in Des Plaines, IL. Shaffer advised that he has known Babajan Khoshabe for approximately 20 years. He met Babajan through Babajan's brother Joe Khoshabe; Joe was one of Shaffer's clients in the mid 1990's.

Shaffer explained that he is somewhat familiar with previous Babajan's legal troubles. Shaffer stated that it is his understanding that Babajan was involved in an FBI sting involving a mortgage file. Shaffer stated that he told Babajan not to discuss the matter with Shaffer, because communications with your accountant are not protected, and Shaffer did not want to be in a position where he might be called to testify against Babajan.

Shaffer noted that he recently attended the wedding of Anthony Khoshabe. Shaffer described the wedding as a large wedding which was attended by approximately 400 people; Shaffer was invited to sit with the Khoshabe family.

Shaffer acknowledged that he has prepared multiple years of tax returns for Babajan, Anthony and Reliant Management. Shaffer stated that it is his standard practice to keep his records for five to ten years.

During the interview, Shaffer was served with a subpoena for records related to Babajan, Anthony and Reliant Management. Shaffer then briefly

Investigation on 05/11/2015 at Des Plaines, Illinois, United States (In Person)

File # 329A-CG-133780                                Date drafted 05/12/2015

by SA Jody Blau

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

329A-CG-133780 Serial 849

FD-302a (Rev. 05-08-10)

329A-CG-133780

Continuation of FD-302 of  Interview of Craig Shaffer , On  05/11/2015 , Page  2 of 3

reviewed some of those records with the interviewing agents.

Shaffer noted that Anthony's 2011 tax return file has a handwritten paper, which lists dates and dollar amounts. Shaffer explained that this document was provided to him by Babajan, and that Shaffer was informed by Babajan that represented the proceeds from the sale of real-estate.

Shaffer noted that, with respect to the tax records for Reliant Management, Shaffer prepared the tax returns utilizing a quick books file. Shaffer recalled that Babajan initially gave Shaffer a stack of bank records, and Shaffer used those records to setup a quick books file; then at the end of the year, Babajan emailed the quick books file back to Shaffer for Shaffer to use in preparing the tax return for Reliant Management. Shaffer stated that it is his understanding that Reliant Management was in the business of property management.

Shaffer discussed the fact that Babajan and Anthony had substantial income listed on their tax returns as real estate income. Shaffer stated that Babajan and Anthony informed him that the real estate income was derived from the sale of homes which Babajan and Anthony built and sold; it was not derived from the purchase and sale of investment properties.

Shaffer noted that if there was any rental income, it would be listed on Schedule E; and that if they had purchased or sold investment properties, they would be listed on Schedule D.

With respect to Reliant Management's 2012 tax returns, Anthony Khoshabe provided Shaffer with the information regarding Reliant's income. Shaffer noted that most of Reliant's income from that year was paid back to investors.

Shaffer then noted that he is also familiar with Albert Rossini, and that he has invested money through Rossini. Shaffer note that some of those investments turned out alright, and some of them did not. Shaffer noted that one of the bad investments was from approximately 2011, and involved a property on Crystal; Shaffer did not recall the exact address. Shaffer stated that Rossini presented the opportunity to him to purchase the property in a short sale. Rossini showed Shaffer a paper summarizing the transaction and what Shaffer could expect to earn from the investment. Shaffer entered into a written agreement with Rossini, and invested $70,000 - $80,000, which he gave to Rossini, for the property with the expectation that Rossini would arrange for the property to be purchased at a short sale and held in Shaffer's name; Shaffer explained that part of the investment money was to be used to pay a fee to Rossini and Babajan, and that Thomas Murphy was supposed to be the person who would conduct the actual short sale. Following the investment, for the next 12 - 15 months, Rossini paid

FD-302a (Rev. 05-08-10)

329A-CG-133780 Serial 849

329A-CG-133780

Continuation of FD-302 of  Interview of Craig Shaffer , On 05/11/2015 , Page 3 of 3

to Shaffer the rents earned from the property, and had provided Shaffer with copies of lease agreements for the property. However, after the 12 - 15 months of rental payments, the rent payments stopped.

After the rent payments stopped, Shaffer discovered that Shaffer was not the owner of the property. When Shaffer questioned Rossini about the ownership of the property, Rossini told Shaffer that the reason that Shaffer was not listed as the owner, was because a person named Oleh Z Mysko, aka Alex Mysko, who brokered the transaction, failed to complete the transaction. Shaffer stated that he and Rossini, upon Rossini's recommendation, filed a lawsuit against Mysko, within the last 45 days, for an accounting. Shaffer stated that he does not know how it was that Rossini was able to pay rents to Shaffer or to supply the lease agreements, if the transaction had not been completed.