# EXHIBIT F

FD-302 (Rev. 5-8-10)

- 1 of 3 -


OFFICIAL RECORD

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry  06/01/2018

    On May 31, 2018, Lisa Rosen (previously interviewed), telephone number ███████████, was interviewed at the United States Attorneys Office in Chicago. Present for he interview was SA Jody Blau, SA Lyle Evans and AUSA William Novak. After being advised of the identity of the interviewing Agents and the nature of the interview, Rosen provided the following information:

    Rosen advised that she currently works negotiating short sales, and has done so for a lot of years. Rosen has also worked negotiating transactions in which she negotiates with a bank for the purchase of a note that the bank owns, and will then negotiate with the owner of the property to obtain their interest in the property.

    Rosen explained that she is able to negotiate transactions for the purchase of commercial properties without having any kind of real estate license; negotiating a transaction for a residential property requires a license. Rosen does not have the required license to negotiate residential property transactions. In order for a property to be considered "commercial" it must have 5 or more units.

    Rosen advised that she formerly owned, along with her former husband, a company called First Home Mortgage. After her marriage ended, she started her own mortgage company.

    Rosen also engages in negotiating loan modifications.

    Rosen advised that she first met Albert Rossini sometime in approximately 2010 when she was working for a bank that was located near Rossini's Devon Street office. Rosen began working for Rossini sometime in 2010; Rossini's company's name was Comprehensive Properties. Rosen's job responsibilities included negotiating the purchase of commercial bank notes. Once Rosen would complete a negotiation with the bank, Rosen would present the approval to Rossini; however, Rossini never closed on a single transaction that Rosen negotiated, because Rossini never had the money to close the transactions.

Investigation on  05/31/2018  at  Chicago, Illinois, United States (In Person)

File #  329A-CG-133780                                       Date drafted  06/01/2018

by  SA Jody Blau

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 05-08-10)

329A-CG-133780

Continuation of FD-302 of (U) Interview of Lisa Rosen , On 05/31/2018 , Page 2 of 3

While working for Rossini, Rosen still worked on negotiating transactions for deals that were not connected to Rossini.

Rosen advised that during the time that she worked for Rossini, she was aware that Babajan Khoshobe and his son Anthony Khoshabe each had an office with Rossini. Rosen stated that she does not know what Babajan or Anthony did at the office.

Rosen recalled a conversation that she had with Rossini one day after an angry investor came into the office to confront Rossini about returning the investor's money. Rosen recalled making a comment to Rossini that he should be careful because Rossini might be forced into a position where he had to kill an angry investor who came into the office with a gun. Rosen stated that Rossini responded by stating "I don't mind going to jail; jail to me means nothing." Rosen stated that most of the office employees were in the office at the time that this comment was made, including Aida Roldan, Pam Sauer, Meir Rostein, and others.

Rosen stated that Rossini, Babajan and Anthony were known in the office as the "triangle" because they were always in meeting together.

Rosen stated that, prior to Anthony coming to work with Rossini, Babajan and Rossini were partners and would split profits 50/50, but after Babajan brought Anthony into the business, the split became 1/3 each. Rosen recalled that Rossini expressed frustration to her about the profit split arrangement.

Rosen explained that eventually Anthony took a job at another real estate firm, but that Anthony would still come into the office frequently and meet with Babajan and Rossini.

Rosen was asked to review a document with a title of "Devon Street Investments", which had a list of properties with information about each property. Rosen explained that she created the document at Rosssini's request. Rossini gave Rosen the list of properties and said that he was interested in purchasing in a short sale, and asked Rosen to prepare a sheet that he could show to investors in the hopes of convincing them to invest.

Rosen advised that she first met Glenn Seiden when she negotiated a short sale for Seiden's son; that transaction was a referral from Rossini. Rosen explained that the reason that the settlement papers for that transaction listed Devon Street Investments as a payee was because Rossini wanted half of the settlement negotiation fee because he referred the transaction to Rosen.

FD-302a (Rev. 05-08-10)

329A-CG-133780

Continuation of FD-302 of (U) Interview of Lisa Rosen , On 05/31/2018 , Page 3 of 3

Rosen recalled that Ted Netzky and Rossini tried to pitch her on an investment called "Devon Street High Investors." Rosen recalled that when she read the information that they provided to her, that it sounded like a pyramid scheme, and she told them that she didn't want anything to do with it.

FD-302 (Rev. 5-8-10)  -1 of 4-  **OFFICIAL RECORD**

## FEDERAL BUREAU OF INVESTIGATION

Date of entry  02/25/2015

On February 17, 2015, Lisa Rosen, date of birth (DOB) ███████████ was interviewed at her office located at ███████████████████████. Present for the interview was Special Agent Jody Blau, Special Agent Lyle Evans and Task Force Officer Paul Martinez. After being advised of the identity of the interviewing Agents and the nature of the interview, Rosen provided the following information:

Rosen advised that she currently works negotiating short sales; she was been working in short sales for the past 6 years. Rosen stated that she spent twenty years working as a loan officer where she originated loans.

Rosen first met Albert Rossini approximately 6 years ago through someone who said Rossini had connections with various hard money lenders. Rossini was supposed to help one of Rosen's clients get a hard money loan; however, Rossini wasn't able to deliver as promised.

Rosen advised that during the time that she was working with Rossini to try to find a hard money lender for her client, she met Meir Rotstein, who was doing some work for Rossini. Rossini then hired Rosen to do some short sale negotiations and loan modifications for him; Rosen would earn 50% of the income on those deals. Rosen estimated that she completed less than 10 short sales for Rossini and four or five loan modifications. Rosen stated that she worked in one of Rossini's office spaces for a couple of years while she did the short sale and loan modification work for him; however, she did not work exclusively for Rossini during that period.

Rosen explained that she did do a negotiation for Rossini to purchase some commercial notes from North Community Bank; Rosen described this transaction as the Keystone properties, which was a bundle of properties that included four south side properties and one north side property. Rosen explained that she worked for six months to negotiate this deal; however, the deal never closed, because, even though she had successfully

Investigation on  02/17/2015  at  Niles, Illinois, United States (In Person)

File #  329A-CG-133780                                    Date drafted  02/18/2015

by  SA Jody Blau, EVANS LYLE C SR

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 05-08-10)

329A-CG-133780

Continuation of FD-302 of  Interview of Lisa Rosen ,On 02/17/2015 ,Page 2 of 4

negotiated the deal with the bank, Rossini never came through on his repeated promises to deliver the money to close the deal. Rosen advised that she has some emails regarding this transaction and will make arrangements to provide copies to the FBI.

Rosen advised that she also negotiated a deal for Rossini through Harris Bank for the purchase of some properties identified as the Mansion View properties. This was supposed to be a Note & Deed purchase that would take place on the same day; however, the deal did not close, because Rossini did not delivered the promised funds.

Rosen stated that she never handled a note purchase negotiation for Rossini that resulted in completion. Furthermore, Rosen does not know anyone who successfully obtained a note from Rossini.

Rosen stated that she will put together a list of the properties that were included in both the Keystone and Mansion View property transactions and provide that information to the FBI.

Rosen stated that she never negotiated an agreement with a bank in which there was ever any discussion of having the bank collect rents and turn those rents over to Rossini; Rosen stated that she does not see how such an arrangement would even be possible.

Rosen stated that it is her understanding that the only type of note that the average person/business can purchase are commercial notes; that you have to be licensed to purchase residential notes. Rosen explained that residential mortgages are usually packaged together into a pool of mortgages and that you can't find out what mortgages are in what pool based upon the publicly recorded documents; you have to call the bank to find out that information. Rosen stated that you can't purchase the pooled notes unless you are licensed.

Rosen advised that she spoke with someone named Heim Gabi from Skokie, who told Rosen that he had purchased a note from Rossini. Rosen asked Gabi to show him the paperwork from the bank, and Gabi stated that the only paperwork that he had was a document called an Agreement to Purchase and a copy of the publicly recorded mortgage. Gabi explained to Rosen that Rossini gave him those documents and instructed him to give his money to Thomas Murphy. Rosen stated that she explained to Gabi that this transaction did not appear to be as Rossini stated, because a note purchase package is much more extensive and voluminous that the couple of pages of documents that Rossini had given to Gabi.

Gabi also had a few checks from Rossini; some of the checks may have had notes on them indicating that they were for rents or interest or partial

FD-302a (Rev. 05-08-10)

329A-CG-133780

Continuation of FD-302 of Interview of Lisa Rosen , On 02/17/2015 , Page 3 of 4

return of Gabi's money. Gabi told Rosen that Rossini told him that he was paying Gabi back because Murphy had stolen the money that Gabi invested. Rosen stated that the checks that Rosini gave to Gabi bounced.

Rosen stated that Rossini and Babajan Khoshabe represented themselves as partners, and that it was Babajan who brought the church into the investment scheme.

Rosen stated that Anthony Khoshabe worked as a realtor for a few months in Rossini's office. Rosen stated that it is her understanding that Rossini owned a couple of buildings on the south side, one of which was on Marshfield; to Rosen's knowledge Anthony didn't manage any properties for Rossini.

Interviewing agents showed Rosen a list identifying the following properties:

- 5424 N. Paulina
- 3333 W. Berteau
- 5801 N. Richmond
- 4725 N. Drake
- 4731 N. Monticello
- 8249 Knox
- 6443 N. Greenview
- 8142 Kilpatrick
- 6957 N. Sheridan
- 4844 Hull
- 5421 N. Artesian
- 6425 N. Washtenaw
- 4209 Oakton
- 6159 N. Hamilton
- 3340 N. Oakley
- 2617 W. Raschel
- 4831 Lee
- 9129 Lawler
- 9124 Lawler
- 8718 Kimball
- 2323 N Haddon
- 1321 N Maplewood
- 3650-52 W. Polk

Rosen advised, after looking at the list, that a couple of the addresses on the list sounded familiar and may have been addresses that Rossini had expressed interest in selling; of those properties, Rossini told Rosen that he had purchase the notes and had obtained the deeds through the foreclosure process. Rosen attempted to sell those properties from the list that Rossini stated that he owned and wanted to sell, but that none of

FD-302a (Rev. 05-08-10)

329A-CG-133780

Continuation of FD-302 of  Interview of Lisa Rosen , On 02/17/2015 , Page 4 of 4

the sales were successful, because the prices that Rossini wanted for those properties were too high, so she could not find any interested buyers; Rosen did not verify Rossini's ownership of any of the properties, because the efforts to sell the properties never got far enough along for her to bother taking that step.

Rosen stated that she did not negotiate the purchase of the notes on any of the properties on the list. Rosen also stated that Rossini never mentioned to her that he had any contacts with banks for negotiating note purchases or that Rossini ever actually engaged in note purchase negotiations himself.

Interviewing agents next showed Rosen a copy of a Guaranty Agreement. Rosen advised that she is not familiar with this agreement or its type and does not recognize it as coming from the office of attorney Anthony Klytta.

Rosen stated that she and Rossini had some dealings with Rockford Financial, which was brought to them by Carl Robolo, who Rosen described as a broker that was trying to find a buyer for properties owned by Rockford Financial. Rosen had a client that was interested in purchasing some properties, and so Rosen, Rossini, Robolo and the client even drove out to Rockford to look at the properties; many of the properties were in poor condition. Rockford Financial was trying to sell the properties as a package deal; Rosen's client wanted to buy some of the properties, but did not want to buy others; Rockford Financial would not allow the properties to be separated from the package, so the deal fell through. Rosen stated that Rossini did not have the kind of money that would have been necessary to purchase that volume of properties, and that Rockford Financial had stated that they would not sell to Rossini because of Rossini's criminal background.