Albert Rossini
Fed. Reg. No. 08043-424
Metropolitan Correctional Center
71 W. Van Buren St.
Chicago, IL 60605



**FILED**

DEC 20 2019

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

December 16, 2019

Hon. John Z. Lee
United States District Court
219 S. Dearborn St.
Chicago, IL 60604

Re: United States v. Rossini, Case No. 15-CR-515-1

Dear Judge Lee:

    I am mailing a copy of this letter to both the United States Attorney and the Clerk of the United States District Court for the Northern District of Illinois, 219 S. Dearborn St., Chicago, IL 60604. I request the Court take notice of the following prior to ruling on my Motion for a New Trial.

    (1) On June 4, 2018, I made an oral motion to the Court prior to trial for a continuance and appointment of alternate counsel on the basis that my attorneys were unprepared to present a defense. My argument was that counsels would provide both ineffective assistance and inadequate representation at trial since they did not comprehend a theory of the case nor prepared a defense with me. At trial, my attorneys presented no defense and failed to adequately impeach government witnesses due to their lack of preparation. After trial, I learned that my trial attorneys had not even interviewed my many prospective witnesses. Please see United States v. Simpson, 864 F.3d 830 (7th Cir. 2017); Raygoza v. Hulick, 474 F.3d 958 (7th Cir. 2007); Campbell v. Reardon, 780 F.3d 752 (7th Cir. 2015); Stanley v. Bartley, 465 F.3d 810 (7th Cir. 2006); Mosely v. Atchison, 689 F.3d 838 (7th Cir. 2012); Harrington v. Richter, 562 U.S. 86 (2011); and Strickland v. Washington, 466 U.S. 688 (1984).

    (2) When determining whether a continuance should have been granted, the Court needs to review:
    (a) <u>the amount of time available for preparation</u>: although appointed in April 2017, attorneys Adams and Frankel did no preparation with me.

    (b) <u>the likelihood of prejudice from denial of the continuance</u>: I stated to the Court prior to trial that proceeding to trial with Adams and Frankel would severely prejudice me. This indeed happened exactly as I predicted to the Court before trial: no defense presented, none of my witnesses even contacted by my trial attorneys, no meaningful exhibits for the defense, and inadequate cross examination of government witnesses while

-1-

stipulating to erroneous documentation and statements.

(c) <u>the defendant's role in shortening the effective preparation time</u>: In February, March and Apri 2018, I mailed to Attorneys Adams and Frankel the following motions that (i) would explain the case, and (ii) directed them to file the motions on my behalf. They did neither.

- Motion to Dismiss Indictment for Prosecutorial Misconduct;
- Motion and Memorandum of Law to Reject and Dismiss Government's Substitution of Deliberate Indifference for Mens Rea;
- Questions and Answers to help counsels prepare for trial;
- Motion to Strike "Lulling Payments" Alleged by the Government in its Pleadings and from the Record and to Bar Same At Trial;
- Defendant's Motion and Memorandum of Law to Strike and Dismiss Government's Allegation of Nonexistent Property Sales from the Record, as Erroneous and False;
- Motion for Judicial Admission of ARDC Findings In Re Thomas W. Murphy as well as a Motion to Admit Additional Documents;
- Motion Explaining the Guaranty Agreements;
- Motion for Bill of Particulars.

(d) <u>the degree of complexity of the case</u>: this case involves thousands of emails, thousands of documents, checks and payments, numerous wire taps, and many witnesses. My trial attorneys did not understand, presumably due to lack of preparation, but possibly, as in Attorney Frankel's insistence to me that a promissory note is not executed at the same time a mortgage is signed, because they just did not understand the subject matter. After all, in a conversation with Cambridge Management attorney Jeffrey Deer, in November 2015, Agent Jody Blau was uninformed as to the IRS regulations concerning Starker Trusts and believed such a tax free reinvestment must have been an additional scam by Rossini.

(e) <u>the availability of discovery from the prosecution</u>: aside from the government's incredible arson insinuation, it apparently provided discovery to my attorneys; however, even to this date, I have received no discovery in this case (or the 2017 case), except when represented by Seiden Netzky.

(f) <u>the likelihood a continuance would have satisfied the movant's needs</u>: a continuance and appointment of alternative counsel, presuming that counsel understood the subject matter, would have satisfied my needs for adequate trial preparation.

(g) <u>inconvenience to the Court</u>: Undoubtedly a continuance on June 4, 2018 would have been inconvenient for the Court but

not as inconvenient as my right to due process and effective assistance of counsel that resulted in violation of the Fifth and Sixth Amendment.

While a trial date must be adhered to unless there are compelling reasons for granting a continuance, insistence on proceeding to trial in the face of a valid request for a continuance is not appropriate. See <u>United States v. Farr</u>, 297 F.3d 651, 655 (7th Cir. 2002); <u>United States v. Reynolds</u>, 189 F.3d 521, 527 (7th Cir. 1999); <u>United States v. Williams</u>, 576 F.3d 385, 388 (7th Cir. 2009).

(3) The Babajan and Anthony Khoshabe attorneys in their recent trial, argued that Murphy, with my complicity, converted Nina Jozers money in actions similar to this case. Also, in questioning by Khoshabe's attorney, Murphy stated he was not told by me who the purchaser investor was in the Rossini/Jozers purchase of 300 Martingale, Schaumburg; if indeed one existed. Murphy's statement was a complete fabrication, as he had been introduced to my friend, attorney and investor Bernard Ellis. Mr. Ellis cancelled the purchase when it was learned by then attorney Murphy that the presumed assumable mortgage by Goldman Sachs carried a due on sale clause and therefore could not be assumed. This made the purchase unreasonable. Mr. Frank Alamprese, Nina Jozers' son-in-law could testify to this fact. The purchase had been predicated upon an assumption of the Seller's mortgage. This information would have been presented to the Court and jury at my trial had my attorneys adequately prepared with me for impeachment of Murphy's testimony.

(4)(a) In October 2013, a Cook County criminal indictment was pending against Murphy and me for theft of Nina Jozers' money. In 2016, I was dismissed from the Cook County criminal case, which is still pending against Murphy. Similarly in the ARDC hearing, it was determined that Murphy's testimony that I directed him to use Jozers' money was "not believable," and that Murphy had converted Jozers' funds for his own use. Again, the government and my codefendants, the Khoshabes, falsely accused me instead of placing the sole blame where it was deserved, on Thomas W. Murphy, as has the Cook County Criminal Court.

(b) Murphy's testimony in my case was replete with lies and was so misleading and contradictory that had my attorneys adequately cross-examined him before the jury, no juror would have credited anything he said.

These findings are relevant here because the government in seeking an alternative theory to bind me to Murphy's pillaging of investor funds from his escrow and business accounts was at Rossini's mind control directives. The ruling in my case that the ARDC and results of the Cook County Criminal Case were barred from being introduced was an error not endorsed by me. This Court should give deference to the ARDC and Circuit Court of Cook County decisions.

(5) Both the government and codefendant charts misstated or falsified the sources and uses of funds. The government's theory was that I, as the director of this scheme, netted in excess of $2 million. However, a true charting of the use of funds shows the vast majority of money paid to me was spent (i) paying investor guarantees, (ii) purchasing properties, (iii) investing in the same notes and mortgages as DSI investors, (iv) operating DSI and paying salaries, and then (v) Rossini's earnings.

On the other hand, Murphy spent the money he converted paying past clients and trusts, subsidizing his friend Tamera Brown, and on personal expenses. Babajan and Anthony Khoshabe did not refund a penny to investors. In a meeting at the offices of Attorney Richard Kruse's office, attended by me, Fred Khoshabe, and Babajan, Babajan stated he would not give the investors "one dollar" of the money he had received.

In addition, it was alleged that I spent the money Anthony Khoshabe had invested in the mortgage on 3518 W. Shakespeare. This is completely untrue, as my use of funds will show and the money reimbursed by me to Anthony Khoshabe in October and November 2012.

I had asked my trial attorneys to provide a defense forensic analyst to show the above in my trial. They did not do as I requested.

(6) The maneuverings with all my motions, including that for New Trial, use of investigative services in obtaining affidavits, disqualification of the Seiden Netzky Law Group, amounts to a hindering of my defense. The Court's continuances without notice or reason to me, even though I was proceeding pro se, has given the government the benefit of the Khoshabe trial. The allegations by both the government and my codefendants of weak willed Murphy or poor misled Khoshabes persist and is due to the Court's failure to hold an evidentiary hearing and ruling on my many motions.

(7) The guarantees were not meant to lull or induce investors. I submitted a pretrial motion to may trial attorneys describing the origination of the guaranty, how they were to be secured and repaid. It also detailed Murphy's breaking of the guarantees when he failed to payout the money he was supposedly holding in escrow or his business accounts. My trial counsels failed to file and argue the motion. They also failed to use my evidence at trial (tax returns, bank statements and charts of payments) to refute the government's false narrative. I have reqeusted use of an investigator to help me obtain affidavits and evidence from witnesses concerning my lack of intent to lull investors with guarantees, with the Cook County Law Suit against Murphy and with the filing of lis pendens by Babajan and me.

(8) I request the Court also review the affidavit of Meir Rotstein as to the FBI 302 summary of his interview with agents. Mr. Rotstein asserts that the agent summary contains critical false statements by the agent. See attached Affidavit of Meir Rotstein.

I could have provided many more affidavits from my prospective witnesses had I the use of an investigator to help me while I have been detained.

Similarly, Danielle Gabi stated to Meir Rotstein that the FBI statement read at my bond revocation hearing on August 2, 2017 contained a number of false reports by the agent(s). In fact, I mailed proof of my presence at the Woodland Hills apartment to my attorneys in October 2017 and asked them to correct the information presented to the Court at the bond revocation hearing. This included the Danielle Gabi/Rossini lease of the apartment number 158 at 21021 Erwin, Woodland Hills, CA, emails to and from the management at Motif (apartments), statements from the manager at the apartment building, maintenance reports, invoices from Brook Furniture delivering furniture to the apartment which I signed in October and December 2016, in house health club and computer room use, parking garage use, airline tickets, documentation of payments with my debit card and the debit card used by Ms. Gabi, Lyft car rides to and from LAX/21021 Erwin, Woodland Hills, CA. This will prove that I stayed at the Woodland Hills apartment in October and December 2016, January, March, May and June, 2017. I did not conduct any business while in Los Angeles and was in constant contact with pretrial officer Justin Wiersema. Once again, Adams and Frankel's lack of commitment to my case caused irreparable damage with the Court.

As to the FBI 302 summaries of interviews: had I been represented throughout the proceedings by Seiden Netzky Law Group, or had I at least the services of an investigator working with me, and had the Court been able to read my motions concerning agent harassment of witnesses, bogus arson allegation, and other fabrications, the 302 summaries would not have conclusory legitimacy.

Respectfully submitted,

*/s/ Albert Rossini*
Albert Rossini
Defendant Pro Se
Fed. Reg. No. 08043-424
Metropolitan Correctional Center
71 W. Van Buren St.
Chicago, IL 60605

-5-

AFFIDAVIT OF MEIR ROTSTEIN

Affidavit of Meir Rotstein

I, Meir Rotstein, being duly sworn, testefiy and state;

1. I was an employee of Devon Street Investments, Ltd, (Devon) in 2011, 2012, and 2013 working directly for Albert Rossini.
2. I am a licensed Real Estate Broker in the state of Illinois.
3. My duties at Devon were mainly researching and formulating valuation reports (CMA) as directed mostly by Albert Rossini.
4. The statement on page 24 of the government 's response that "Meir Rotstein told the FBI that: (1) he never saw the defendant close any transactions in the four years he worked with him" is false. To the best of my recollection I did not state this to the FBI agent or anyone questioning me.
5. I introduced Albert Rossini to Lior Coresh in 2013. Mr Coresh was the owner of 16 town homes in Rivedale Illinois which Albert Rossini purchased in 2013. I also remember the extensive remolding project that those town homes needed to go through and was paid for by Albert Rossini
6. I accompanied Albert Rossini on several occasions to view properties that he was purchasing for himself or transferring to Craig Shaffer. I remember a specific one on the West side that developed a serious mold problem that I had Mr. Aharoni come and remedy the problem.
7. I know that Albert Rossini Mortgaged three properties on the West side to Liam Ben David as security for a loan of $275,000 for another transaction.
8. I assisted Albert Rossini or Devon in the purchase of a discounted note for a property on the West Side from the Vertical Mortgage Corporation of California.
9. I have personal knowledge of Devon's office staff routinely and in the course of daily business creating offers to purchase Mortgages, Notes, short sales and properties. Often those offer where sent via Devon's Facsimile machine to various banks and Attorneys.

Respectfully submitted,

Meir Rotstein
9451 N. Lowell Ave.
Skokie IL. 60076                    August 19, 2019

ROBJEW
9451 N. LOWELL AV.
SKOKIE IL 60076

28 AUG 2019 PM 8 L

ALBERT ROSSINI
08043-424
CHICAGO MCC
71 W. VAN BUREN
CHICAGO IL 60605-1004

60605-109399

TRULINCS 08043424 - ROSSINI, ALBERT - Unit: CCC-H-A

----------------------------------------------------------------------------------------------------

FROM: Rotstein, Meir
TO: 08043424
SUBJECT: RE: Kling
DATE: 07/12/2019 12:36:03 AM

I don't know what the 302 is but I am assuming that its an official statement they present to the court.
You are correct in your understanding that I was aware of real estate deals that you have done both with Craig on the west side and with Lior Coresh in Blue Island.
I don't recall that the agents that came to see me declared the meeting as an official interview or that they asked my permission to record the conversation we had.


ALBERT ROSSINI on 7/11/2019 8:36:47 AM wrote
Meir,
I think I understand what you are saying, that I am absolutely correct, but can you state it for me, whether I am correct or the FBI agents' 302s are correct.
Thank you and have a cup of coffee for me.
Bert
-----Rotstein, Meir on 7/10/2019 11:51 AM wrote:

>

Absolutely correct, although I think that a note is a financial instrument not Real Estate.

ALBERT ROSSINI on 7/9/2019 6:36:32 PM wrote
What they said in the 302 was that in the four years you worked with me, you did not believe I closed on any properties. I told Kling that you could not have said that because you were the person who introduced me to Lior Corush and we went to Riverdale and looked at the area of the properties. That you knew I purchased the properties from Lior Corush. Therefore, it was not possible that you said such a thing to the FBI agents.

Secondly, I told Kling, how could Meir say I did not buy any properties in four years when he introduced me to Liam Ben David and I pledged three properties to Liam as security for a $275,000 mortgage to purchased something else from Murphy. The properties I owned and mortgaged to Liam, with Liam's attorney handling the transaction were 4045 W. Wilcox, 4033 W. Adams and 5410 W. Fulton. I told Kling that while you were not the broker on the purchase of those three properties, you certainly knew that I had purchased them at one time and then used them for collateral for Liam. So, how would Meir have ever said that in four years he did not know that I closed or purchased one property or note. Then I told Kling that you were the broker who handled the purchase for me of the note with Victory or whatever the company was called in California for the purchase of the note on 211 N. Kilbourn. So, as I told Kling, Meir would never say that in four years he had no knowledge of me purchasing anything.
-----Rotstein, Meir on 7/9/2019 3:06 PM wrote:

>

I do not recall discussing closings with them, I do recall them asking me what I have done for you and I explained that I did CMA's.
I do recall that person asking me why would I work for some one like you referring to your record.
They better have this on a tap (they never asked my permission to record).
To be fair I was never in any of your closings but I do remember you telling me about the different deals you closed and I even went to check out some of those listings with you prior to you purchasing either by yourself or with Craig.

ALBERT ROSSINI on 7/8/2019 3:05:21 PM wrote
Meir,
I just had a horrible meeting with my lawyer Richard Kling.
He read excerpts of the government's response to my motion for new trial. In it, they quote you as saying that in four years you never saw me close anything. They quoted other things, but that basically is the killer. I told Kling that it is not possible for you to have said that. I told him that Meir was the person who introduced me to Lior Corush and I bought 16 townhomes from him in 2013. I told Kling that I was uncertain what other closings you were the broker for or worked on, but that you knew I had purchased 4045 W. Wilcox, 4033 W. Adams, and 5410 W. Fulton, among others.. But especially those since I put them up as collateral to Liam Ben David's mortgage. So, Meir would not say that he had never seen me close a transaction.

Albert Rossini
Fed. Reg. No. 08043-424
Metropolitan Correctional Center
71 W. Van Buren St.
Chicago, IL 60605



LEGAL MAIL

Hon. John Z. Lee
United States District Court
Northern District of Illinois
219 South Dearborn Street
Chicago, Illinois 60604



12/20/2019-24



60604-180099

METROPOLITAN CORRECTIONAL CENTER
71 W. VAN BUREN STREET
CHICAGO, IL 60605

A The enclosed letter was processed through special mailing procedures for forwarding to you. Th
letter has neither been opened nor inspected. If the writer raises a question or problem over whic
this facility has jurisdiction, you may wish to return the materiel for further information or clarificatio
If the writer encloses correspondence for forwarding to another addressee, please return the enclosu
to the above address.

Date: 17 Dec 19