**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 15 CR 515-1** |
| **v.** | ) | |
| | ) | **Judge John Z. Lee** |
| **ALBERT ROSSINI,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

A jury convicted Albert Rossini of multiple counts of mail fraud and wire fraud. Rossini now requests that this Court grant him a new trial as well as an evidentiary hearing with respect to that request [448]. Rossini also has filed an *ex parte* motion for a court-appointed investigator [492] [493]. For the reasons stated herein, these motions are denied.

**Background**

In August 2015, a grand jury returned an indictment against Rossini and others alleging the operation of a Ponzi scheme that defrauded investors of millions of dollars and charging numerous counts of mail fraud and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. ECF No. 1. In June 2018, trial was held as to Rossini, who was represented by attorneys Joshua Adams and Scott Frankel.

## I. The Evidence at Trial

The government presented extensive evidence at trial regarding Rossini's involvement in the creation and operation of a scheme to defraud numerous

investors. First, the jury heard testimony from nine individual investors and received the testimony of a tenth by stipulation. *See* Trial Tr., ECF Nos. 354–59, at 19–90, 131–74, 205–62, 282–99, 306–54, 365–91, 397–431, 466–536, 745–95, 863–64. These investors testified that they gave Rossini money in return for the acquisition of mortgage notes for Chicago-area apartment buildings in or near foreclosure. Rossini had told some of these investors that he already possessed the notes, *see, e.g.*, *id.* at 755, 777–78, while telling others he would use their money to obtain them, *see, e.g.*, *id.* at 27, 36.

Rossini stated to the investors that he or his company—Devon Street Investments—would complete the foreclosure process for the properties, at which point the investors would obtain the titles to the properties. *See, e.g.*, *id.* at 215, 290, 315–16, 378–79, 401–02, 754–55. In the meantime, Rossini said, he and/or his partners would collect rents from the tenants at the buildings and forward the funds to the investors. *See, e.g.*, *id.* at 41–43; 155–57, 215, 286, 290, 317, 378–79, 401, 754–55. He also promised the investors that he would refund their money in the event he was unable to obtain title to the properties. *See, e.g.*, *id.* at 27, 37, 291, 402. Each investor received a "Guaranty Agreement" from Rossini that documented these representations. *See, e.g.*, *id.* at 36–37; 144–45, 290, 321–22, 475–76, 757.

Although the investors typically would receive the rental payments from Rossini for a year or so, the payments became irregular and eventually ceased altogether without any satisfactory explanation. *See, e.g.*, *id.* at 67–70; 158–60, 256, 295–99, 384–91, 425–431, 760–62. And although Rossini had promised the

investors that he would refund their investments, he failed to do so for all but one investor. *See id.* at 348–54. Moreover, only two of the investors ever received the titles to any of the properties. *See* Gov. Ex. Chart 1, ECF No. 462-3, at 9.

The jury also received many exhibits in evidence. For example, property records from the Cook County Record of Deeds showed that, at the time Rossini took each of the investors' funds, he had no recorded interest in any of the mortgage notes for which he was soliciting investment money, and that he never obtained an interest in any of those mortgage notes afterwards. *See generally* Gov. Ex. Chart 1 at 9. Rossini eventually did obtain titles to six of the fifty-seven properties in question, but he directly purchased them following pressure from investors, rather than acquiring them through foreclosure as he had claimed.

The documentary evidence presented to the jury also included various written communications Rossini sent to investors in which he made false statements about the properties in question. For instance, despite lacking an actual interest in any of the properties or any involvement in their management, Rossini sent fact sheets to the investors for each property claiming to detail the rental status of all the units in each building and the rental income the investor would receive. *See, e.g.*, Gov. Ex. AmPithyou 5, ECF No. 462-3, at 2; Gov. Ex. Badalian 1, ECF No. 462-3, at 4; Gov. Ex. Younan 1, ECF No. 462-3, at 44. And although Rossini had no recorded interests in any of the mortgage notes, Rossini gave each investor a "Guaranty Agreement" stating that he had obtained "written assignments of the right to acquire . . . the existing notes and mortgages from the

lender." *See* Gov. Ex. Badalian 3, ECF No. 462-3, at 8; Gov. Ex. Younan 3, ECF No. 462-3, at 45. Through documents such as these, the jury learned of many instances in which Rossini made significant misstatements to investors about material matters, such as the foreclosure status of the properties or negotiations he said he was having with property owners. *See, e.g.*, Gov. Ex. Younan Transcript, ECF No. 462-3, at 25, 29, 41; Gov. Ex. Younan 10, ECF No. 462-3, at 47; Gov. Ex. Moghaddasi 17, ECF No. 462-3, at 10–22.

In addition to the testimony from investors and the documentary evidence, the jury heard testimony from Thomas Murphy, a co-schemer who had pleaded guilty to his involvement in the fraud. Murphy testified that, in 2011, he was an attorney who performed several services for Rossini in connection with the investment program, including incorporating business entities, Trial Tr. at 573–75, drafting documents Rossini could give investors, *id.* at 600–03, and receiving and dispersing the investors' funds at Rossini's direction, *id.* at 577, 582–84, 586–90, 596. Murphy added that Rossini sued him in 2013, claiming that Murphy had purloined investors' funds, only to confide in him later that the lawsuit was a sham designed to placate complaining investors. *Id.* at 645–48. Murphy also testified that, after Rossini filed the sham lawsuit, Rossini secretly worked with Murphy to receive and disperse over $800,000 in additional funds from a specific investor. *Id.* at 652–57.

Finally, the jury received bank and currency exchange records and heard testimony from FBI forensic accountant Sandra Prescott, who performed a

comprehensive financial analysis of the evidence. This evidence revealed that, in total, investors gave Rossini more than $7 million. Trial Tr. at 821. Although investors received back approximately $2.5 million in so-called "rent" payments, there was no rental income coming into any of the relevant accounts; the money paid to investors was simply their own funds being paid back to them. *Id.* at 823. Moreover, while investors lost approximately $5 million, Rossini made at least $2.55 million from the scheme, of which Rossini transacted approximately $2 million at currency exchanges. *Id.* at 828; Gov. Ex PC Currency Exchange, ECF No. 462-3 at 23. Of the $7 million paid by investors, the evidence showed that Rossini used only approximately $200,000 toward the acquisition of real estate. Trial Tr. at 824.

On June 14, 2018, a jury found Rossini guilty of all fourteen counts listed in the indictment. ECF Nos. 345 and 346.

**II. Rossini's Subsequent Motions**

On August 23, 2018, attorneys Joshua Adams and Scott Frankel were granted leave to withdraw as counsel for Rossini. ECF No. 372. On September 12, 2018, the Court appointed Richard Kling as Rossini's counsel, ECF No. 386, and, several months later, Rossini filed the instant motion for new trial alleging that Adams and Frankel had provided him with ineffective assistance of counsel, ECF No. 448. Rossini also seeks an evidentiary hearing in connection with his motion for a new trial. *Id.* Moreover, though the Court in December 2018 granted Rossini's *ex parte* motion for funds under the Criminal Justice Act for an investigator in

relation to his motion for a new trial, *see* ECF No. 400; ECF No. 411, he seeks approval to retain yet another investigator. *See* ECF Nos. 492, 493.

## Analysis

### I. Rossini's motion for a new trial.

Rossini moves for a new trial, pursuant to Federal Rule of Criminal Procedure 33, claiming that he was denied effective assistance of counsel as promised by the Sixth Amendment. The motion is denied.

#### A. Legal Standard

Rule 33 provides in relevant part that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. "[C]ourts have interpreted the rule to require a new trial . . . in a variety of situations in which the substantial rights of the defendant have been jeopardized by errors or omissions during trial." *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989). But "[a] jury verdict in a criminal case is not to be overturned lightly, and therefore a Rule 33 motion is not to be granted lightly." *United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994); *see also United States v. Hagler*, 700 F.3d 1091, 1101 (7th Cir. 2012) (stating that ordering a new trial under Rule 33 "is reserved for *only the most extreme cases*" (emphasis added) (quoting *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998))).

To establish ineffective assistance of counsel, a claimant must show that (1) counsel's representation fell below "an objective standard of reasonableness," thereby failing to function as the "'counsel' guaranteed the defendant by the Sixth

Amendment," and (2) that the claimant suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). "This is not an easy standard to satisfy." *Jordan v. Hepp*, 831 F.3d 837, 846 (7th Cir. 2016). "Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* (quoting *Strickland*, 466 U.S. at 690). Along these lines, the Court's review of counsel's performance must be "highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. The inquiry is then "whether, in light of all the circumstances, the identified acts or omissions were outside the *wide range* of professionally competent assistance." *Id.* at 690 (emphasis added).

Additionally, "[s]ufficient 'prejudice' requires that 'there [be] a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Jordan*, 831 F.3d at 846 (alteration in original) (quoting *Strickland*, 466 U.S. at 694). "In weighing the effect of counsel's errors, the court must consider the totality of the evidence before the judge or jury. Consequently, a verdict or conclusion that is overwhelmingly supported by the record is less likely to have been affected by errors than one that is only weakly supported by the record." *Mosley v. Atchison*, 689 F.3d 838, 851 (7th Cir. 2012) (quoting *Hough v. Anderson*, 272 F.3d 878, 891 (7th Cir. 2001)).

**B. Analysis**

Rossini first argues that his trial attorneys were deficient because, he alleges, "neither . . . discussed with him his right to testify at trial, nor did either . . . prepare him to testify." Mot. for New Trial at 2. Similarly, Rossini asserts, the only reason he did not testify at trial was because "he was not prepared by his attorneys." *Id.* But this argument fails to establish any deficiency by Rossini's trial attorneys since it is premised on assertions that are at odds with the trial record. Specifically, on June 11, 2018—the last day of the government's case-in-chief—the Court directly raised the issue of whether Rossini would be testifying. Trial Tr. at 856. Adams advised the Court in Rossini's presence, "I spoke with Mr. Rossini as late as yesterday afternoon. I went and visited him at the [Metropolitan Correctional Center] for approximately an hour. We discussed whether or not he wishes to testify. And I spoke with him this morning at the break. It's Mr. Rossini's wish that he unconditionally wishes to waive his right to testify in his own defense. We discussed the pros and cons, and that is his wish." *Id.* at 856–57.

The Court then addressed Rossini directly, and Rossini confirmed that he understood that he had the right to testify in his own defense, that he decided to waive that right after discussion with his attorneys, and that he had reached that decision voluntarily, based upon his own free will and without any pressure. *Id*. at 857–58. Accordingly, this argument is unpersuasive. *Cf. Ingram v. United States*, 553 F. Supp. 2d 975, 978 (N.D. Ill. 2008) (dismissing certain arguments that trial counsel was deficient where those arguments were "contradicted by the record").

Rossini also contends that his trial attorneys were deficient because they allegedly visited him only a handful of times, and for limited durations, while he was in pretrial detention. *See, e.g.*, Mot. for New Trial at 2 ("Mr. Rossini claims that . . . he was only visited four times for about fifteen minutes each while detained in Kankakee Correctional Center between July 28, 2017 and May 9, 2018."). But, in addition to visiting Rossini while he was in pretrial detention, his attorneys separately met with Rossini "several times for several hours to discuss the case," Tr. of Proceedings as to Rossini held on 6/4/18, ECF No. 451, at 7, and also reviewed "numerous communications through the mail" that Rossini had sent them "while he was at [the detention facility] regarding the case, forms of letters and documents." *Id*. What is more, Rossini's trial attorneys engaged in extensive pretrial litigation, raising numerous motions *in limine* and severance issues, *see, e.g.*, ECF Nos. 285, 286, 287, 288, 296, 318. *See United States v. Best*, 426 F.3d 937, 945 (7th Cir. 2005) (stating that "[w]hether deficient performance occurred" "depends on facts like counsel's *overall diligence*" (emphasis added)). Accordingly, the record provides little support for Rossini's suggestion that his attorneys neglected him or his case.

Rossini next takes issue with the approach his trial attorneys took with respect to certain witnesses. Specifically, he claims that during trial he "slipped his attorneys notes" requesting that they contact several witnesses that could purportedly "clarify and contradict the statements that the [government's] witnesses made at trial." Mot. for New Trial at 3. Rossini says that his attorneys did not call those witnesses, and also claims that his trial attorneys did not "contact,

interview, or subpoena any witnesses despite Mr. Rossini providing his attorneys with a list of witnesses and contacting them on multiple occasions about these potential witnesses." Mot. for New Trial at 4.

Other than stating that he provided a list of potential witnesses to his attorneys during the trial, Rossini does not specify any other occasions when he did so. And Rossini would be hard-pressed to attempt to rely on any failure by his attorneys to pursue the potential witnesses mentioned to them at trial to support an ineffective assistance of counsel claim, since "*Strickland* . . . permits counsel to make a reasonable decision that makes particular investigations unnecessary. Resources are limited, and trial counsel must eventually shift from pretrial investigation to trial preparation." *Campbell v. Reardon*, 780 F.3d 752, 765 (7th Cir. 2015) (internal quotation marks omitted) (quoting *Strickland*, 466 U.S. at 691); *see also Rutledge v. United States*, 230 F.3d 1041, 1050 (7th Cir. 2011) ("Whether a decision to forego more investigation is reasonable is analyzed from the perspective of counsel *at the time of the decision and in light of all the circumstances*." (emphasis added)). Indeed, the trial record indicates that Rossini's trial attorneys were broadly receptive and thoughtful, rather than unduly dismissive, when assessing requests made by Rossini during trial. *See, e.g.*, Trial Tr. at 894–95 (Adams telling the Court, following the conclusion of the government's case-in-chief, that he was not sure whether the defense would also rest because "[t]here are checks Mr. Rossini wishes us to introduce related to other properties. And he wishes us to look into that, introduce those into evidence. . . . And if in our legal

opinion they are relevant to the case, then we will move to introduce them on Wednesday.").

Moreover, even if Rossini had provided a list of potential witnesses to his attorneys before trial, the Court is not persuaded that the failure to contact these potential witnesses necessarily constituted deficient performance. While "[f]ailure to conduct any investigation regarding potentially exculpatory witnesses certainly would constitute deficient performance," *United States v. Simpson*, 864 F.3d 830, 835 (7th Cir. 2017), the failure to *contact* a potential witness is not necessarily the same as a failure to *conduct any investigation* with respect to that witness. That is, Rossini's trial attorneys may have assessed whether these witnesses could help their client's defense and reasonably concluded otherwise. To this point, and as the government points out in its response, defense counsel was aware through FBI reports produced during discovery that several of the individuals that Rossini now identifies—including Craig Shaffer, Lisa Rosen, and Richard Kruse—might have provided inculpatory evidence.[1] *See* FBI Report of Interview with Craig Shaffer, ECF No. 462-5; FBI Report of Interview with Lisa Rosen, ECF No. 462-6; FBI Report of Interview with Richard Kruse, ECF No. 462-7; *see also Rutledge*, 230 F.3d at 1050 (stating that interviewing witnesses with knowledge of the defendant's criminal activity to get exculpatory information "would have been fruitless, and counsel's decision not to do so is objectively reasonable.").

[1] Rossini's contention that his trial attorneys could not reasonably decide against pursuing certain witnesses for trial on the basis of information discovered in FBI 302 reports is unsupported and unpersuasive. *See, e.g.*, Def.'s Reply to Gov.'s Resp. to Mot. for a New Trial, ECF No. 476, at 7.

That said, even assuming that Rossini's trial attorneys were constitutionally deficient by failing to contact Rossini's list of potential witnesses, the Court nevertheless finds that Rossini has made no colorable showing of prejudice. Significantly, Rossini offers virtually no affidavits or actual statements from those potential witnesses as to how they would have testified; instead, Rossini simply offers his own thoughts as to what those individuals might have said at trial. This is insufficient to establish a viable ineffective-assistance claim. *See United States v. Ashimi*, 932 F.2d 643, 649 (1991) (stating that, in order to consider a claim of ineffective assistance based on allegedly deficient investigation, the Court "must know what the attorney would have discovered after 'adequate' investigation"); *Wright v. Gramley*, 125 F.3d 1038, 1044 (7th Cir. 1997) ("In the case of an uncalled witness, we have held that at the very least the [ineffective-assistance-of-counsel claimant] must submit an affidavit from the uncalled witness stating the testimony he or she would have given had they been called at trial."); *Jordan v. United States*, No. 12 CV 529, 2014 WL 1464218, at *3 (N.D. Ind. April 15, 2014) ("As to his daughters' testimony, Jordan has offered no affidavits from his daughters to support what testimony they would have offered if called as witnesses. We have only Jordan's word as to how they might have testified, and such speculation is insufficient to support an ineffective assistance claim."); *cf. Simpson*, 864 F.3d at 835 (referring, in conducting a prejudice analysis as to a trial attorney's possible failure to conduct any investigation with respect to the defendant's proposed

witnesses, to statements made by those witnesses in notarized letters that were attached to defendant's motion for a new trial).

The sole affidavit from an uncalled witness that Rossini provides in support of his motion for a new trial is that of Meir Rotstein. *See* Mot. for a Court-Appointed Investigator, ECF No. 492, at 11. In this short affidavit, Rotstein states, *inter alia*, that he was an employee of Rossini's Devon Street Investments in 2011, 2012, and 2013, and refutes the government's claim that Rotstein had told the FBI that he never saw Rossini close any transactions of any kind in the years he worked with him. *See* Resp. to Mot. for a New Trial, ECF No. 462, at 24; Mot. for a Court-Appointed Investigator at 11 ("To the best of my recollection I did not state this to the FBI agent or anyone questioning me."). Even read generously, however, Rotstein's affidavit alleges little more than that Rossini's Devon Street Investments occasionally conducted, or appeared to conduct, legitimate business, which is not inconsistent with the government's theory of the case. *See* Mot. for a Court-Appointed Investigator at 11 ("I have personal knowledge of [Devon Street Investments]'s office staff routinely and in the course of daily business creating offers to purchase Mortgages, Notes, short sales and properties. Often those offer[s] [were] sent via [Devon Street Investments]'s facsimile machine to various banks and Attorneys."). As a result, Rotstein's affidavit does not support Rossini's claim that he was prejudiced by his attorneys' failure to present Rotstein at trial.

Witnesses aside, Rossini also argues that he was denied the effective assistance of counsel because his attorneys failed to introduce certain documents in

evidence at trial, specifically (a) Rossini's federal tax audit and return, (b) checks from Murphy to Devon Street Investments that bounced due to insufficient funds, and (c) Devon Street Investments's insurance policies with Mount Vernon Insurance. The Court rejects this argument for two reasons.

First, the trial record indicates that the decision to withhold these documents was a deliberate, strategic decision rather than one of neglect. After the close of the government's case-in-chief, Frankel informed the Court that the defense expected to rest as well, but stated that he wanted to wait until the next day "based on things Mr. Rossini wants to look into." Trial Tr. at 894. The Court then brought Rossini up to the side bar, and Frankel repeated that the defense was seeking an extra day "to complete the possibility of this investigation," which Frankel described as a "late-breaking matter." *Id.* Adams further explained that "[t]here are checks Mr. Rossini wishes us to introduce related to other properties. And he wishes us to look into that, introduce those into evidence. . . . And if in our legal opinion . . . they are relevant to the case, then we will move to introduce them on Wednesday." *Id.* at 894–95.

At the beginning of the next trial day, Adams followed up, stating, "I received some documents yesterday from Mr. Rossini's family regarding checks and other documents he wishes me to introduce into evidence. I've spoken to Mr. Rossini about it and spoken to Mr. Frankel. And it's in our independent judgment and legal opinion that such documents would be harmful and detrimental to his case. And we think that it is best that we do not introduce them into evidence. I've spoken to Mr.

Rossini about that, and I intend to rest. I just want to make sure – make that on the record. I'd like Mr. Rossini to acknowledge he's heard that." Tr. at 922–23. Rossini proceeded to acknowledge having that conversation. *Id.* at 923. Rossini offers no persuasive argument as to why his attorneys' decision to omit these documents from evidence because they were "harmful and detrimental to his case," *id.* at 922, fell outside of the "*wide range* of professionally competent assistance." *Strickland*, 466 U.S. at 690 (emphasis added); *see also id.* at 690–91 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.").

Second, the Court also concludes that Rossini has not shown that he was prejudiced as a result of his attorneys' decision given the overwhelming amount of testimonial and documentary evidence presented by the government at trial that demonstrated Rossini's involvement in the creation and operation of the criminal scheme at issue in this case. *See Mosley*, 689 F.3d at 850 ("[A] verdict or conclusion that is overwhelmingly supported by the record is less likely to have been affected by errors than one that is only weakly supported by the record." (quoting *Hough*, 272 F.3d at 891)).

Finally, the Court is not persuaded by Rossini's remaining arguments as to his ineffective assistance of counsel claim. First, his argument that his trial attorneys were unprepared for his bond revocation hearing, *see* Mot. for a New Trial at 2, 9, is presented in conclusory terms and does not demonstrate how that alleged conduct establishes that his attorneys were unprepared for *trial*. To the contrary,

based upon the conduct of Rossini's counsel at trial, the Court believes that they were well-prepared to present his defense.

Next, Rossini's contention that his attorneys were deficient because they "failed to hire a forensic accountant to rebut and explain the Government's theories of how Mr. Rossini allegedly defrauded investors," Mot. for New Trial at 8, is presented in a cursory manner without any citation to facts or legal authority, and is thus waived. *See Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived."). Likewise undeveloped is Rossini's abbreviated contention that his attorneys were ineffective because they told him on the opening day of his trial that they "intended to call [FBI] agents Lyle Evans and Jody Blau" but eventually decided not to do so." Mot. for New Trial at 3.

For all of these reasons, Rossini's motion for a new trial pursuant to Rule 33 is denied.

## II. Rossini's request for an evidentiary hearing in connection with his motion for a new trial.

Rossini's request for an evidentiary hearing in connection with his motion for a new trial is likewise denied. In his motion, Rossini contends that "[u]pon a defendant filing a timely motion for a new trial under Rule 33 claiming that trial counsel provided constitutionally ineffective assistance, a district court *must* order an evidentiary hearing." Mot. for New Trial at 11. He offers no valid support, however, for this proposition. This is unsurprising, as the law places the decision of whether to hold an evidentiary hearing squarely within the district court's

discretion. *See United States v. Berg*, 714 F.3d 490, 501 (7th Cir. 2013). And while it is true that claims of ineffective assistance of counsel "often" require an evidentiary hearing because "they frequently allege facts that the record does not fully disclose," *Osagiede v. United States*, 543 F.3d 399, 408 (7th Cir. 2008), "if there is no reason to suppose that a hearing would produce evidence justifying the grant of a new trial, there is no reason to hold a new hearing," *United States v. Taglia*, 922 F.2d 413, 419 (7th Cir. 1991). Conservation of judicial resources is a proper basis to deny a request for an evidentiary hearing. *See United States v. Osborne*, 931 F.2d 1139, 1164 (7th Cir. 1991) ("[T]he trial court properly exercised its discretion and good judgment when it refused to waste more of the court's valuable time to hold a special evidentiary hearing.").

Given the trial record, the Court concludes that "there is no reason to suppose that a hearing would produce evidence justifying the grant of a new trial," *Taglia*, 922 F.2d at 419, because the Court concludes that Rossini has not "allege[d] a colorable ineffective-assistance-of-counsel claim," *Simpson*, 864 F.3d at 834. As explained, Rossini's claims that his attorneys provided constitutionally deficient representation is not supported by the record. In fact, rather than providing grounds for Rossini's claims, the record (both before and during the trial) demonstrates that his attorneys were well-prepared, communicated regularly with him, and considered Rossini's suggestions when crafting his defense. Given this and the large amount of evidence at trial regarding Rossini's participation in the

fraudulent scheme, the Court finds in its discretion that an evidentiary hearing is not necessary and would result in a waste of judicial resources.

## III. Rossini's request for a court-appointed investigator.

Finally, Rossini's *ex parte* motion for a court-appointed investigator in connection with his motion for a new trial is denied. As Rossini acknowledges, in December 2018, the Court granted a previous motion requesting funds under the Criminal Justice Act for an investigator to prepare his motion for a new trial. *See* Ex-Parte Mot. for Funds Under the CJA for an Investigator, ECF No. 400; Ex Parte Order Granting Mot. for Funds under the CJA for an Investigator, ECF No. 411; *see also* Mot. for a Court-Appointed Investigator at 1–2 (noting that Rossini, through his former counsel, and current standby counsel, Richard Kling, had "previously requested and received permission for the Court appointment of an investigator" and requesting that the Court now "enter an order allowing [Rossini] the use of [the investigator] . . . on the same terms and conditions *as previously permitted* [Rossini's] defense counsel." (emphasis added)). So, Rossini already had the chance to investigate this matter using a private investigator. The fact that Rossini may not be satisfied with the results of the investigation does not compel more.

## Conclusion

For the foregoing reasons, Rossini's motion for a new trial and request for an evidentiary hearing with respect to that motion [448], and his *ex parte* motion for a court-appointed investigator [492] [493], are denied.

**IT IS SO ORDERED.**

**ENTERED: 1/28/20**

**John Z. Lee**
**United States District Judge**