UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 15 CR 515-1 |
| v. | ) | |
| | ) | Judge John Z. Lee |
| ALBERT ROSSINI | ) | |

**UNITED STATES' RESPONSE TO DEFENDANT'S
MOTION FOR COMPASSIONATE RELEASE**

Now comes the United States of America, by and through its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, and respectfully submits this response to defendant ALBERT ROSSINI'S motion for compassionate release (ECF No. 741).[1] The Court should deny defendant's motion because he has failed to exhaust his administrative remedies, and he has not established that extraordinary and compelling reasons warrant a sentence reduction, particularly in light of the relevant § 3553(a) factors.

**PROCEDURAL BACKGROUND AND OFFENSE CONDUCT**

On August 20, 2015, a grand jury returned an indictment charging defendant and three co-defendants with fraud offenses. ECF No. 1. Following a trial, on June 14, 2018 a jury found defendant guilty of all 14 counts of wire and mail fraud with which he had been charged. ECF No. 345. As detailed in the government's sentencing memorandum (ECF No. 733), defendant and his co-defendants solicited more than $5 million from victim investors through misrepresentations that the victims' funds

---

[1] Citations to the record in defendant's criminal case are referenced as "R." followed by the docket number. Citations to the Presentence Investigation Report are referenced as "PSR."

would be used to acquire mortgage notes on Chicago-area apartment buildings that were in, or near, foreclosure. According to the defendant, the victims would receive rent payments during the foreclosure process, and following foreclosure the victims would receive the title to the property. The entire pitch was a fabrication, and defendant and his co-defendants in fact stole the investors' money. Of the $5 million victims directed to the scheme, defendant walked away with $2.5 million.

While defendant was on bond awaiting trial in this case, he engaged in a new fraud scheme and was indicted by a federal grand jury in 2017. That case—which was defendant's fourth federal fraud indictment—is pending before Judge Tharp and is captioned *United States v. Albert Rossini*, 17 CR 522. Following the filing of those charges in 2017, defendant was ordered detained. *United States v. Albert Rossini*, 17 CR 522 at ECF No 6. Defendant remains in custody at the MCC based on the detention order in that fraud case.

Defendant is set for sentencing in this case on October 12, 2021.

## ARGUMENT

### I. Legal Standard

As amended by Section 603(b) of the First Step Act of 2018, Pub. L. 115-391, Title 18, United States Code, Section 3582(c)(1)(A) provides:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term

of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

    (i)    extraordinary and compelling reasons warrant such a reduction; or

    (ii)    the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Direct of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

*Id.*

Pursuant to Congress's directive, prior to the enactment of the First Step Act, the Sentencing Commission promulgated USSG § 1B1.13, which sets forth the Sentencing Commission's policy statement with respect to § 3582(c)(1)(A). Consistent with § 3852(c)(1)(A)(i), § 1B1.13 provides that a court may reduce a term of imprisonment, after considering the § 3553(a) factors, if three criteria are satisfied: (1) "extraordinary and compelling reasons warrant the reduction"; (2) "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (3) the reduction is consistent with the factors set forth in 18 U.S.C. § 3553, to the extent relevant. U.S.S.G. § 1B1.13.

As Congress expressly directed, the Sentencing Commission's policy statement defined the "extraordinary and compelling reasons" that might warrant a sentence reduction under § 3582(c)(1)(A)(i). *See* 28 U.S.C. § 994(t) ("The Commission, in

3

promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."); *United States v. Saldana*, 807 F. App'x. 816, 819 (10th Cir. 2020).

Application Note 1 to Guideline § 1B1.13 limited the "extraordinary and compelling reasons" for which a sentence reduction is appropriate to the following particular circumstances:

1. The defendant suffers from a "terminal illness" or his physical or mental condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13 cmt. n.1(A).

2. The defendant is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and has served the lesser of 10 years or 75% of his sentence. *Id.* § 1B1.13 cmt. n.1(B).

3. The defendant's family circumstances include either the death or incapacitation of the caregiver of the defendant's minor child or minor children or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner. *Id.* § 1B1.13 cmt. n.1(C).

4. "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13 cmt. n.1(D).

Guideline § 1B1.13, cmt. n. 1.

In *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020), the Seventh Circuit held that, because Guideline § 1B1.13 has not been amended following the enactment of the First Step Act, "the Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release." *Id*. at 1181. Therefore, the court held, district courts are free to consider motions for a sentence reduction on grounds other than the categories of extraordinary and compelling reasons listed in Guideline § 1B1.13, as limited by the statute itself. *Id.* However, the court pointed out that

> [t]he substantive aspects of the Sentencing Commission's analysis in §1B1.13 and its Application Notes provide a working definition of "extraordinary and compelling reasons"; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused.

*Id.* at 1180. Therefore, under *Gunn*, Guideline § 1B1.13 remains instructive, though not exhaustive, in determining the meaning of the term "extraordinary and compelling reasons" for purposes of § 3582(c)(1)(A)(i).[2]

## II. Analysis

### A. Defendant Has Failed to Satisfy § 3582(c)(1)(A)'s Exhaustion Requirement.

As noted above, § 3582(c)(1)(A) provides that "the court . . . upon motion of the

---

[2] The government argued in *Gunn* and in numerous other cases that Guideline § 1B1.13 is binding on the district court in determining motions for compassionate release brought by defendants, and that the courts lack authority to grant relief under the statute on bases other than those enumerated in the application notes that accompany § 1B1.13. The government acknowledges that this argument is foreclosed by *Gunn*. However, the government preserves for potential further review its arguments that *Gunn* was wrongly decided, and that a sentence reduction may be granted under § 3582(c)(1)(A)(i) only where the defendant has established an extraordinary and compelling reason, as defined by Application Notes 1(A) through 1(C) to Guideline § 1B1.13.

defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . ." Under this provision, only after a General Counsel has denied an inmate's request—or 30 days have elapsed since the warden received the inmate's initial request—has the inmate exhausted his or her administrative rights, rendering the inmate eligible for relief from this Court.

Based on defendant's motion for compassionate release and information provided by the MCC, defendant has not exhausted his administrative remedies by asking the BOP to modify his sentence. As a result, the Court must deny defendant's motion. *United States v. Sanford*, 986 F.3d 779 (7th Cir. 2021) ("Because Sanford failed to comply with the statute's exhaustion requirement, we affirm the denial of his motion for compassionate release."); *United States v. Williams*, No. 20-2404, 2021 WL 486885, at *1 (7th Cir. Feb. 10, 2021) (same).

### B. Defendant Has Not Established an "Extraordinary and Compelling" Reason for Consideration of a Sentence Reduction.

Even if the defendant had exhausted his administrative remedies, he is not eligible for relief under § 3852(c)(1)(A)(i) because he has failed to establish an extraordinary and compelling reason for consideration of a sentence reduction, as required by the statute.

Defendant argues that the COVID-19 pandemic, and the risks it poses to him, constitute an extraordinary and compelling reasons warranting a reduction of his

6

sentence to time served. According to medical records provided by the MCC, defendant, who is 72 years old, has an abnormally slow heartbeat and a pacemaker. See ECF No. 748 at 1. The CDC has identified that being older than 65 and having heart conditions can increase a person's risk of severe illness from COVID-19.[3]

Although defendant suffers from two conditions identified by the CDC as increasing his COVID-19 risk, that risk is drastically reduced by his having been fully inoculated against the virus. Specifically, as reflected by defendant's medical records, defendant received the second dose of the COVID-19 vaccine on January 22, 2021. ECF No. 748 at p. 61.

Earlier in the pandemic, the government acknowledged that an unvaccinated inmate who presented a medical risk factor identified by the CDC as increasing the risk of an adverse outcome from COVID-19, and who was not expected to recover from that condition, presented an extraordinary and compelling reason for considering a sentence reduction under § 3582(c)(1)(A)(i). However, at this time, the available vaccines permit effective self-care against severe illness or death that may be caused by COVID-19. The CDC has consistently and strongly advised that every person 12 years of age and older receive one of the vaccines that has received emergency use authorization from the FDA. The CDC states that the vaccines are "safe and

---

[3] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html

7

effective," and "[g]etting vaccinated prevents severe illness, hospitalizations, and death."[4]

The vaccines were the subject of extensive clinical trials before authorization, which revealed high effectiveness in preventing infection, and particularly in preventing severe illness or death. The data thus far show remarkable success in real-world circumstances. The CDC has reported that, as of October 6, 2021, more than 186 million Americans had been fully vaccinated.[5] Within that group, only approximately 16,889 hospitalizations from symptomatic "breakthrough infections" have been reported, and the "breakthrough infections" have resulted in only approximately 5,000 deaths.[6] These data suggest a level of risk from COVID-19 of a vaccinated person far less than that faced by prisoners and all other persons from myriad other ailments and hazards of daily life.

There has been widespread recent reporting that the Delta variant of COVID-19 is now the most prevalent variant causing new infections in the United States, and poses a significant risk to unvaccinated persons. The CDC reports, however, that the approved vaccines are proving highly effective against the Delta variant, stating, "FDA-authorized COVID-19 vaccines protect against Delta and other known variants." The CDC adds: "Infections happen in only a small proportion of people who are fully vaccinated, even with the Delta variant. Some breakthrough infections are

---

[4] https://www.cdc.gov/aging/covid19/covid19-older-adults.html (accessed October 6, 2021).

[5] https://covid.cdc.gov/covid-data-tracker/#vaccinations_vacc-total-admin-rate-total (access October 6, 2021)

[6] https://www.cdc.gov/vaccines/covid-19/health-departments/breakthrough-cases.html (last visited on October 6, 2021).

expected, but remain rare . . . . All vaccines are particularly effective against severe illness, hospitalization and death."[7] Thus, current evidence establishes that approved vaccines provide substantial protection against severe illness and death, even in the case of breakthrough infections.

Consequently, defendant's vaccination status drastically reduces his risks from COVID-19 and that fact weighs heavily against a finding of extraordinary and compelling reasons warranting consideration of compassionate release. *See United States v. Broadfield*, No. 20-2906, 2021 WL 3076863, at *2 (7th Cir. July 21, 2021) (stating that, although a prisoner who can show that he is unable to receive or benefit from a vaccine still may turn to this statute, the availability of a vaccine makes it impossible for the vast majority of prisoners to establish that the risk of COVID-19 is an "extraordinary and compelling" reason for immediate release.); *see also United States v. Tayquan Tucker, et al.*, 15 CR 95, 2021 WL 3056293, at *3 (S.D.N.Y. July 20, 2021) (finding that dangers associated with COVID-19 have changed in light of availability of "highly effective and safe vaccine" and that extraordinary and compelling reasons did not exist to warrant a reduction in sentence where the defendant refused a COVID-19 vaccination by BOP); *United States v. Luis Padilla*, No. 16 CR 205, 2021 WL 3036917, at *5 (D. Conn. July 19, 2021) (finding that the defendant was not at an increased risk of severe illness from COVID-19 despite

---

[7] https://www.cdc.gov/coronavirus/2019ncov/variants/variant.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Ftransmission%2Fvariant.html (accessed Aug. 12, 2021); *see also* https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html (last visit on August 19, 2021) ("Vaccines in the US are highly effective, including against the Delta variant.").

9

serious medical conditions in light of low risk of infection and increased vaccination rates at BOP facility and the defendant's prior infection from COVID-19, which conferred some degree of immunity from reinfection); *United States v. Smith*, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021) (Ludington, J.) ("absent some shift in the scientific consensus, Defendant's vaccination against COVID-19 precludes the argument that his susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A).")

Moreover, defendant's risk is further reduced by the conditions at the MCC, the facility in which defendant is housed, including widespread vaccination at the MCC and the fact that the facility currently reports having 1 (of 591) inmates and zero staff members with positive COVID-19 cases.[8]

In sum defendant has not satisfied the statutory criteria for consideration of a sentence reduction under 18 U.S.C. §3582(c)(1)(A)(i).

### C. The § 3553(a) Factors Weigh Against Release.

Even if defendant had established extraordinary and compelling reasons warranting his release, his motion should be denied because the relevant § 3553(a) factors weigh against release. The government's position on the 3553(a) factors and why those factors weigh in favor of a Guidelines sentence of 210 to 262 months' imprisonment are detailed in the government's sentencing memo. ECF No. 726. For example, the nature and circumstances of the offense for which the defendant faces sentencing were particularly serious in that defendant engaged in a sophisticated

---

[8] See https://www.bop.gov/coronavirus/ (accessed October 6, 2021).

10

fraud during which he targeted two Assyrian churches and its members and, with the assistance of his co-defendants, stole $5 million from those victims. Defendant's history and characteristics confirm that he is an incorrigible scam artist with a criminal history that now includes an astonishing three federal fraud convictions. Finally, a Guidelines sentence is required to protect the public from the defendant, who poses a significant risk of reoffending if released. In short, the 3553(a) factors weigh heavily against the relief defendant seeks, and the Court should deny his motion for compassionate release.

## CONCLUSION

For the above reasons, defendant's motion for compassionate release should be denied.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By: */s/ John D. Mitchell*
JOHN D. MITCHELL
Assistant United States Attorney
219 South Dearborn, Suite 500
Chicago, Illinois 60604
(312) 353-5159