IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No.: 15 CR 515-1 |
| ALBERT ROSSINI, | ) ) | Hon. John Z. Lee |
| Defendant. | ) ) | |

**ROSSINI MANIFEST AND ESTABLISHES ALL THE DELINEATED FACTORS THAT WARRANT A SENTENCE OUTSIDE OF THE ADVISORY GUIDELINE SYSTEM PURSUANT TO 18 U.S.C. §3553(A), EVOLVING FROM ROSSINI'S 73-YEAR-OLD AGE AND DEBILITATING MEDICAL CONDITION, RENDERS THE IMPOSITION OF A GUIDELINE SENTENCE TANTAMOUNT TO A DEATH SENTENCE CONSTITUTING CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF THE EIGHT AMENDMENT OF THE U.S. CONSTITUTION**

Defendant, ALBERT ROSSINI, by and through his attorney, Clarence Butler Jr., submits the following Sentencing Memorandum.

Booker and its progeny establishes that the Guidelines are advisory. Albert Rossini manifests and establishes all the delineated factors that warrant a sentence outside of the advisory guideline system pursuant to 18 U.S.C. §3553(A), evolving from *Rossini's 73-Year-Old Age And Debilitating Medical Condition, Renders The Imposition Of A Guideline Sentence Tantamount To A Death Sentence Constituting Cruel And Unusual Punishment In Violation Of The Eight Amendment Of The U.S. Constitution.*

1

## The Evidence at Trial

The government presented extensive evidence at trial regarding Rossini's involvement in the creation and operation of a scheme to defraud numerous investors. First, the jury heard testimony from nine individual investors and received the testimony of a tenth by stipulation. See Trial Tr., ECF Nos. 354-59, at 19-90, 131-74, 205-62, 282-99, 306-54, 365-91, 397-431, 466-536, 745-95, 863- 64. These investors testified that they gave Rossini money in return for the acquisition of mortgage notes for Chicago-area apartment buildings in or near foreclosure. Rossini stated to the investors that he or his company-Devon Street Investments-would complete the foreclosure process for the properties, at which point the investors would obtain the titles to the properties. See, e.g., id. at 215, 290, 315-16, 378-79, 401-02, 754-55. In the meantime, Rossini said, he and/or his partners would collect rents from the tenants at the buildings and forward the funds to the investors. See, e.g., id. at 41-43; 155-57, 215, 286, 290, 317, 378-79, 401, 754-55. He also promised the investors that he would refund their money in the event he was unable to obtain title to the properties. See, e.g., id. at 27, 37, 291, 402. Each investor received a "Guaranty Agreement" from Rossini that documented these representations. See, e.g., id. at 36-37; 144-45, 290, 321-22, 475-76, 757.

In addition to the testimony from investors and the documentary evidence, the jury heard testimony from Thomas Murphy, a co-schemer who had pleaded guilty to his involvement in the fraud. Murphy testified that, in 2011, he was an attorney who performed several services for Rossini in connection with the investment program, including incorporating business entities, Trial Tr. at 573-75, drafting documents Rossini could give investors, id. at 600-03, and receiving

and dispersing the investors' funds at Rossini's direction, id. at 577, 582-84, 586-90, 596. Murphy added that Rossini sued him in 2013, claiming that Murphy had purloined investors' funds, only to confide in him later that the lawsuit was a sham designed to placate complaining investors. Id. at 645-48. Murphy also testified that, after Rossini filed the sham lawsuit, Rossini secretly worked with Murphy to receive and disperse over $800,000 in additional funds from a specific investor. Id. at 652.

The trial testimony of Murphy revealed his orchestration, sophistication and expertise in effectuating this scheme, and conspiratorially and fraudulently through his leadership and organization amassing massive amounts of money, ultimately cooperating upon apprehension, thereby minimizing his role and magnifying magnify the role of Rossini for purposes of self-preservation.

### *Summary of The Issue*

There exist one essential issue presented herein for resolution. Whether Albert Rossini manifests and establishes all the delineated factors that warrant a sentence outside of the advisory guideline system pursuant to 18 U.S.C. §3553(A), evolving from *Rossini's 73-Year-Old Age And Debilitating Medical Condition, Renders The Imposition Of A Guideline Sentence Tantamount To A Death Sentence Constituting Cruel And Unusual Punishment In Violation Of The Eight Amendment Of The U.S. Constitution.*

## GUIDELINES

Accordingly, Rossini should receive a sentence outside of the advisory guidelines. Pursuant to 18 U.S.C. §3553(a), the Court, in determining the particular sentence to be imposed, shall consider, (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to (A) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or correctional treatment; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims.

Thus, Rossini contends and believes that after consideration of these factors this Honorable Court should find that Rossini warrants a sentence outside of the advisory sentencing guidelines.

**I.     Factual Background**

Rossini intensely regrets his actions that have caused him to be in this position, however he does wish for this Honorable Court to know the totality of life circumstances that have brought him to this unfortunate position.

The government fails to recognize the pervasive and damaging nature of Rossini's age and medical condition. and progressive disability invoke acute vulnerability in prison. The BOP inmates will view Rossini as weak, vulnerable and prey, by the mere fact of being 73-years-old.

Furthermore, his medical disability, and being non-gang affiliated exacerbates this situation and conveys Rossini's vulnerability and exploitation potential. Rossini's perception and actual limitations for self-defense manifest his compromised situation beyond his age and particular disability itself. Thus, BOP inmates will view Rossini in terms of being handicapped, rather than as a person who is a traditional inmate and thus will be dangerously handicapped. Rossini is and remains targeted for exploitation based on inmate imagined or perceived vulnerability. Rossini's present medical condition essentially constitutes a disability that now is the cornerstone of his life experience, along with his family's health issues, including the medical challenges that his wife Brenda faces. Thus based on the totality of circumstances preventing Rossini from exhibiting the continued fortitude to cope with prison life due to his age, as well as other social factors, from exercising the ability to adequately address his health and defend himself in the BOP and reject gang aggression. This situation is compounded by the devastating, unprecedented, emerging, breakthrough variant pandemic environment.

Rossini's 73-year-old age and medical condition are attributable to poor decisions that he has made during the course of this prosecution, along with other outside family, social and pandemic considerations. The vicissitudes and confluences of events and inherent stresses have

exacerbated Rossini's physical and mental health along with decisions he has made relative to this case. BOP inmates will perceive Rossini's disability to be a negative characteristic, resulting in causing him to be subjected to abuse. Rossini's physical impairment and capabilities in social areas have caused him to manifest negative behavior leading to his poor judgment in this case. Confining Rossini pursuant to a guideline sentence would subject him to BOP violence and gang susceptibility and exploitation. Rossini contends and believes the 18 U.S.C. §3553(a) factors delineated seriatim warrants a sentence outside of the advisory sentencing guidelines.

Sadly, Rossini's characteristics as a person with a disability, would subject him to BOP inmate physical abuse and deep-seated psychological and sociological assault, as well as ongoing exploitation. Vulnerable disability afflicting 73-year-old senior inmate Rossini, will be forced and compelled to engage in inmate BOP exploitation.

A Rossini Sentence Outside Of The Sentencing Guidelines Is Sufficient

**II.   §3553(a)**

"The court shall impose a sentence sufficient, but not greater than necessary…" 18U.S.C.S. § 3553(a).

**a. Factors that warrant a sentence outside of the advisory guidelines**

Pursuant to 18 U.S.C. §3553(a), the Court, in determining the particular sentence to be imposed, shall consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to (A) reflect the seriousness of the offense,

6

promote respect for the law, and provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or correctional treatment; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims.

### III.   Albert Rossini Manifests And Establishes All The Delineated Factors That Warrant A Sentence Outside Of The Advisory Guideline System

**3553(a)(1) the nature and circumstances of the offense**

Discussed supra, in the *Evidence at Trial Section.*

**the history and characteristics of Albert Rossini**

Rossini is unlike most defendants who appear for sentencing in this district in important respects. Born in Utica, N.Y. on September 11, 1948, he attended Utica College of Syracuse University from 1966 to 1970 earning a Bachelor of Arts degree with a history major and graduated cum laude. Defendant enlisted in the United States Marine Corps in his senior year of college. After graduation, he entered Marine Corps officer training at Quantico, Virginia. A

7

herniation of the facie muscles of the lower left leg ended his military career. Shortly thereafter, Defendant entered Georgetown University Law Center in Washington, D.C. Rossini moved to Kansas City to be close to his parents and joined Merrill Lynch and Co. 's mortgage insurance division.

After several years, he transferred to Merrill's brokerage company and worked there and at Oppenheimer & Co. until the mid-198Os, when he formed a mortgage trading firm in both Kansas City and Chicago. Defendant met his wife, attorney Brenda Szeja, in December 1985; they married in February 1986. They have been married for 35 years and have one son, Spencer, a lawyer in Portland, Oregon. Spencer attended the University of Colorado at Boulder and received his undergraduate degree, then attended the University of Chicago Law School for one year, post graduate courses before attending and graduating from Willamette Law School, Salem, Oregon. He is a member of both the Oregon and Washington State Bar Associations. Spencer worked in the Clackamas County (Oregon) Prosecutor's Office before joining a firm in Portland that specialized in bankruptcy law.

Defendant and wife also raised a niece, Mariana, whose family emigrated from Russia in the early 199Os. She graduated from American University in Washington, D.C. After an accounting career, she now has a family of her own in Texas. The Rossini's also raised a neighbor's son, Casey. The neighbor, a family friend, suffered from drug and alcohol addiction. As our son's closes friend, Casey was raised with and cared for by Defendant and his wife throughout his Winnetka IL schooling, and financially assisted through college at UIC. Both boys were well-traveled, religiously schooled, and participated in swimming, hockey, and golf. They became life guards.

8

Spencer was acknowledged by the Coast Guard for having braved the waves and saved a swimmer. Casey, a superior student, and college lifeguard instructor, is now with a high tech firm in Northern California. Defendant Rossini was chauffeur, guide, parent and guardian in every activity. Nor were these two boys the sole charges who came to the Rossini household when their families were in flux. Mrs. Rossini suffers from recurring breast cancer. The effects of both chemotherapy and radiation have damaged the bone in her jaw and the bones in her ankles and feet. She also is an insulin-taking diabetic, a disease which she contracted with a later-age pregnancy. The costs have been prohibitive, and meeting the financial demands--while the Government availed itself of every effort to whittle Defendant Rossini's livelihood to penury and to impose his lengthy detention --- were borne by Defendant with great difficulty.

In sum, Defendant has led a productive and family-oriented life, a family which includes his 93-year-old mother-in-law in assisted living- whom Defendant was precluded from visiting because of the detention -- and his 98-year-old mother, two brothers, and cousins. There is every reason to believe he will continue to lead a productive and law-abiding life if released, to return to the care of his wife's chronic health problems, and to reestablish personal contact with his extended family.

Rossini's history and characteristics demonstrates that he is entitled to a sentence outside of the sentencing guidelines system. The BOP inmates view Rossini, as unfortunately others do, as vulnerable. They harbored perceptions that as result of his disability, Rossini was vulnerable as prey with diminished alternative opportunities—including the ability for self-protection—and was therefore ripe for exploitation. The BOP inmates believed that Rossini, being a non-gang afflicted senior with a disability, would not have a network of alternative support to withstand

9

their prison organization and thus would succumb to the violence, pressure and the victimization of prison life.

**Personal and family data**

*Discussed supra in the above section.*

**3553(a)(2) the need to (A) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense**

The totality of circumstances incorporated in the aforementioned as well as the previous sections of this memorandum demonstrate an appreciation by Rossini for the seriousness of the offense, given the totality of circumstances.

**3553(a)(2)(B) to afford adequate deterrence to criminal conduct**

There are no deterrence concerns as they relate to criminal conduct involving Rossini, based on his age and medical condition, demonstrating that he is precluded from further criminal conduct based on his disability and remorse. Rossini has paid a heavy price during his extended incarceration during these pandemic conditions and has expressed profound and sincere sympathy for the victims. Rossini is in the last stages of his life and is a vulnerable 73-year-old in a position of social and economic subordination, and ultimately without measurable employment prospects giving his now significant criminal history legacy. Society views Rossini

as expendable based on his criminal culpability. Thus, imposing a guideline sentence at Rossini's age and health, places him on a trajectory to a penitentiary death sentence.

**3553(a)(2)(C) to protect the public from further crimes**

Rossini has demonstrated manifestations of remorse and expressed remorse for his past conduct and takes full accountability for the past choices he has made.

**3553(a)(2)(D) to provide Albert Rossini with needed educational or vocational training, medical care, or correctional treatment**

*Medical Care*

Mental and Emotional Health

Clearly, emotional, mental, and socioeconomic concerns can be addressed by making sure that Rossini gets medical care, particularly when considering medical technology advances relative to his condition.

*Educational Or Vocational Training*

Although few employers today likely would openly articulate a view that members of society over the age of 70 are not capable and competent enough to hold certain jobs. However reality demonstrates that people, employers and companies view seniors as possessing certain deficiencies and unfortunately practice employment age and medical discrimination. This stereotype has been thoroughly refuted by empirical data, just as gender and ethnicity bear no

11

relation to an individual's abilities. However, society has not purged itself of the notion that the mere fact of being 73-years-old and having medical disability is still believed to convey potential limitations and vulnerability. This is an archaic philosophy practiced by the society and more important BOP inmates

Educational, Vocational and Special Skills

*Employment Record*

Rossini has manifested a demonstrable work ethic as demonstrated by his work record and the attainment of a Masters Degree as discussed supra. There should be more expansive opportunities made available to Rossini, as few employers today likely would openly articulate a view of exclusion or limitation. Rossini's age and disability preclude him from most occupations and diminishes opportunities with respect to provide for the sustenance of his own family, and restitution. Inmate and gang vulnerability exploitation is extremely egregious. This phenomenon targeting seniors such as Rossini has unique characteristics that warrants a sentence outside of the guidelines.

**3553(a)(3) the kinds of sentences available**

Although Rossini's sentencing issues focuses on the aforementioned, nonetheless there is a common issue as it relates to the issues raised in the following passage.

"The low end of a properly-calculated sentencing guideline range when compared to codefendants would be disproportional and excessive given Rossini' 73-year-old age. A sentence

outside of the advisory guidelines would be "sufficient, but not greater than necessary" to meet the sentencing factors articulated in 18 U.S.C. § 3553.

**3553(a)(4) the kinds of sentence and the sentencing range established for (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; (5) any pertinent policy statement**

Sentencing Range

Rossini has established all of the factors that the District Court should consider relative to all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Gall v. United States*, 552 U.S. 38, 49-50 (2007). These factors include the aforementioned delineated factors.

18 U.S.C. § 3553(a)-(b). While the Court must perform a guideline calculation, it need not find "extraordinary circumstances" to justify a sentence outside the guidelines range. *Gall*, 552 U.S. at 47. and the Court should not presume that a sentence within the advisory guidelines range is reasonable. *Nelson v. United States*, 555 U.S. 350, 352 (2009).

**3553(a)(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct**

Absolutely none of Rossini's co-defendants manifest both the age and medical condition and establishes all the delineated factors that warrant a sentence outside of the advisory guideline system, pursuant to 18 U.S.C. §3553(a).

13

**3553(a)(7) the need to provide restitution to any victims**

Rossini is bankrupt and in no position to provide restitution other than to reasonably pay his debt back to society via his already time-served incarceration.

## Conclusion

Rossini manifests and establishes all the delineated factors that warrant a sentence outside of the advisory guideline system, pursuant to 18 U.S.C. §3553(a), evolving from

Accordingly, Rossini should receive a sentence outside of the advisory guidelines. *Rossini's 73 Year-Old Age And Debilitating Medical Condition Renders The Imposition Of A Guideline Sentence Tantamount To A Death Sentence Constituting Cruel And Unusual Punishment In Violation Of The Eight Amendment Of The U.S. Constitution.*

Based on the totality of circumstances Rossini should receive a sentence of time served.

Respectfully submitted,

*s/ Clarence Butler, Jr.*
The Law Office of Clarence Butler Jr.
77 West Wacker Drive Suite 4500
Chicago, Illinois 60601
Office 312-216-5102

## CERTIFICATE OF SERVICE

On October 10, 2021, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.

*/s/ CLARENCE BUTLER JR.*

*Counsel for ALBERT ROSSINI*