UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 15 CR 515-1 |
| v. | ) | |
| | ) | Judge John Z. Lee |
| ALBERT ROSSINI | ) | |

## UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

Now comes the United States of America, by and through its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, and respectfully submits this response to defendant ALBERT ROSSINI's second motion for compassionate release (ECF No. 796).[1] For the reasons discussed below, this Court should deny defendant's motion.

## BACKGROUND

### *Offense Conduct and Procedural History*

On August 20, 2015, a grand jury returned an indictment charging defendant and three co-defendants with fraud offenses. ECF No. 1. Following a trial, on June 14, 2018 a jury found defendant guilty of all 14 counts of wire and mail fraud with which he had been charged. ECF No. 345. As detailed in the government's sentencing memorandum (ECF No. 733), defendant and his co-defendants solicited more than $5 million from victim investors through misrepresentations that the victims' funds would be used to acquire mortgage notes on Chicago-area apartment buildings that

---

[1] Defendant, acting *pro se*, submitted several iterations of the instant motion. On February 10, 2022, the Court directed the government to respond to the version of Defendant's motion filed at ECF No. 796. *See* ECF No. 800.

were in, or near, foreclosure. According to the defendant, the victims would receive rent payments during the foreclosure process, and following foreclosure, the victims would receive title to the property. The entire pitch was a fabrication, and defendant and his co-defendants in fact stole the investors' money. Of the $5 million victims invested in the scheme, defendant walked away with $2.5 million.

On November 18, 2021, defendant was sentenced to concurrent terms of 132 months' imprisonment on each of the fourteen counts of conviction, followed by a three-year term of supervised release. ECF No. 764.

Following his conviction, defendant filed a notice of appeal. ECF. No. 759. Defendant's appeal is pending, Seventh Circuit Court of Appeals Docket No. 21-3115, with defendant's brief due on March 22, 2022, the government's brief due April 21, 2022, and defendant's reply brief (if any) due May 12, 2022. On February 25, 2022, defendant filed a *pro se* motion to remand jurisdiction to the District Court, to decide the present motion for compassionate release. The Court of Appeals denied the motion without prejudice to a renewed motion through counsel. *See* Exhibit A (Seventh Circuit Court of Appeals Docket Report, Docket No. 21-3115, *United States v. Rossini*).

### *Motions Under 18 U.S.C. § 3582(c)(1)*

This is defendant's second motion for compassionate release. The first motion was filed on September 10, 2021. ECF No. 741. The government responded to the motion on October 6, 2021, ECF No. 747, and the court heard arguments on the motion at defendant's sentencing hearing held on October 12, 2021. The court denied

the motion two days later, ECF No. 755. Like the present motion, defendant's first motion argued a defendant should be released due to the risks posed by the COVID-19 pandemic. The present motion raises a new argument that defendant should be released to care for his spouse. ECF No. 796 at 11.

### *Separate Federal Fraud Prosecution*

While defendant was on bond awaiting trial in this case, he engaged in a new fraud scheme and was indicted by a federal grand jury in 2017. That case—which was defendant's fourth federal fraud indictment—is pending before Judge Tharp and is captioned *United States v. Albert Rossini*, 17 CR 522. Following the filing of those charges in 2017, defendant was ordered detained. *United States v. Albert Rossini*, 17 CR 522 at ECF No 6. Defendant remains in custody at the MCC based on the detention order in that fraud case. That case is currently scheduled for trial before Judge John J. Tharp, Jr. and a jury, beginning the week of May 31, 2022. *United States v. Albert Rossini*, 17 CR 522 at ECF No. 96.

### *The Bureau of Prisons' Response to COVID-19*

As the Court is aware, from the moment the COVID-19 pandemic began, the Bureau of Prisons (BOP) made extensive changes to its operations, based on a plan that was prepared over many years, and refined in early 2020 in consultation with the Centers for Disease Control (CDC) and the World Health Organization. Those efforts continue.

BOP's "action plan" is described in detail at www.bop.gov/coronavirus/. As part of that plan, all newly arriving inmates are quarantined and not released into the

general population until 14 days have passed and the inmate has tested negative; inmate movement within an institution is restricted in order to promote social distancing; mask wearing by inmates and staff is required; all facility staff are screened for symptoms daily; social visiting has been suspended at nearly all institutions; and access by other outsiders is restricted to only those performing essential services, who are also screened before entry. When an outbreak does occur, any infected inmate is immediately quarantined, and all contacts (including entire housing units if warranted) are tested and quarantined as necessary, until all contacts return at least two negative tests in a two-week period.[2]

The BOP's strenuous efforts, now abetted by widespread vaccination (discussed below), have been fruitful. It is notable that the rate of deaths in federal prisons has been comparable to that in the general U.S. population, a substantial achievement given the known risks of viral spread in a congregate prison setting.[3]

Specifically, as it pertains to defendant, the BOP reports that, as of March 7, 2022, the Chicago MCC reported having zero inmates and two staff members with

---

[2] In addition, acting under the authority granted in the CARES Act, the BOP has transferred many thousands of inmates to home confinement, focusing on nonviolent offenders who have served the majority of their sentences. This initiative, combined with the reduced number of new arrivals during the pandemic and the ordinary release of prisoners upon completion of their sentences, has led to a dramatic decrease in the total BOP population, which in turn has increased opportunities for social distancing and reduced the strain on BOP resources. The total BOP population is now more than 10% less than it was at the outset of the pandemic, and is at the lowest level in decades.

[3] While there have been 287 inmate deaths related to COVID-19 at BOP institutions (which at the outset of the pandemic held over 157,000 inmates), there have been approximately 956,000 deaths in the general population. *See* https://www.bop.gov/coronavirus/; https://covid.cdc.gov/covid-data-tracker/#trends_dailydeaths (both last accessed March 7, 2022). Both figures represent tragedies, but there is no indication that the BOP toll is materially worse than in the rest of the country.

active coronavirus cases.[4]

### *Vaccinations*

BOP has worked to ensure that it received COVID-19 vaccines as they became available, and then offered the vaccines to all willing staff members and inmates, beginning first with staff members (who present a more likely vector for COVID-19 transmission into an institution), and then offering the vaccines to inmates in order of priority of need in accordance with CDC guidelines. As one court observed, "Since the vaccines became available, the Bureau of Prisons diligently and efficiently administered the doses allocated to it, leading all jurisdictions and Federal entities in its vaccine utilization rate." *United States v. Roper*, 2021 WL 963583, at *3 (E.D. Pa. Mar. 15, 2021) (Kearney, J.) (footnote omitted).

As of this writing, through intensive effort, BOP has offered a vaccine to every inmate in BOP-managed institutions. As of this writing, the BOP reports that it has administered a total of 275,102 doses to inmates and staff.[5] Going forward, BOP will continue to offer inmates vaccines, as well as vaccine boosters, as expeditiously as possible as supplies are available. The latest information on BOP's vaccination efforts, including the number of completed vaccinations at each institution, is available at https://www.bop.gov/coronavirus/, and is updated every weekday.

---

[4]*See* https://www.bop.gov/coronavirus/ (last visited on March 7, 2022).
[5] *See* https://www.bop.gov/coronavirus/ (last accessed March 7, 2022).

## ARGUMENT

### I.     This Court Lacks Jurisdiction to Grant the Motion.

This Court lacks jurisdiction to grant the instant motion because defendant's case is pending on appeal to the Seventh Circuit. The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982); *Blue Cross and Blue Shield Ass'n v. American Express Co.*, 467 F.3d 634, 637 (7th Cir. 2006); *see also United States v. Rincon*, 477 F. App'x. 391, 392-93 (7th Cir. 2012) (filing of a notice of appeal divests the sentencing court of jurisdiction to reconsider sentence).

The Third Circuit has held that an appeal divests the district court of jurisdiction to grant a motion for compassionate release while the appeal is pending. *United States v. Raia*, 954 F.3d 594 (3d. Cir. 2020). In that case, the district court denied the compassionate release motion, "concluding that the pending appeal divested it of jurisdiction." *Id.* at 596. The Third Circuit agreed that the district court did not have jurisdiction, absent a remand from the appellate court, including under Federal Rule of Appellate Procedure 12.1.[6] Ultimately, the Third Circuit declined to

---

[6]  Under Federal Rule of Appellate Procedure 12.1, an appellate court can remand a case to the district court for further proceedings when a motion "is made in the district court for relief that it lacks authority to grant because of an appeal that has been docketed and pending," and after the district court gives an indicative ruling that "states it would grant the motion or that the motion raises a substantial issue."

remand the case, holding that a remand would be "futile" because the defendant had failed to exhaust his administrative remedies, as required by statute. *Id*. at 597.

Under Federal Rule of Criminal Procedure 37, if a "motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending," the court has three options: (1) to defer considering the motion; (2) to deny the motion; or (3) to "state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." *See also United States v. Barrett*, 834 F. App'x 264 (7th Cir. 2021) (not precedential) (holding that, "even though Barrett's direct criminal appeal was pending before us, the district court had jurisdiction to deny his compassionate-release motion.").

Here, as discussed below, defendant has failed to establish a basis for relief; accordingly, in accordance with Rule 37, this Court should deny the instant motion.

## II.    Defendant is Ineligible for Relief Under 18 U.S.C. § 3582(c)(1).

### A.    Applicable Law

As amended by Section 603(b) of the First Step Act of 2018, Pub. L. 115-391, 18 U.S.C. § 3582(c)(1)(A) provides:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Direct of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. 3582(c)(1).

Pursuant to Congress's directive, prior to the enactment of the First Step Act, the Sentencing Commission promulgated U.S. Sentencing Guidelines § 1B1.13, which sets forth the Sentencing Commission's policy statement with respect to 18 U.S.C. § 3582(c)(1)(A). Consistent with 18 U.S.C. § 3852(c)(1)(A)(i), Guidelines § 1B1.13 provides that a court may reduce a term of imprisonment, after considering the § 3553(a) factors, if three criteria are satisfied: (1) "extraordinary and compelling reasons warrant the reduction"; (2) "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (3) the reduction is consistent with the factors set forth in 18 U.S.C. § 3553, to the extent relevant. *See* Guidelines § 1B1.13.

As Congress expressly directed, the Sentencing Commission's policy statement defined the "extraordinary and compelling reasons" that might warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). *See* 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone

shall not be considered an extraordinary and compelling reason.").

Application Note 1 to Guidelines § 1B1.13 limited the "extraordinary and compelling reasons" for which a sentence reduction is appropriate to the following particular circumstances:

1.  The defendant suffered from a "terminal illness" or his physical or mental condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13 cmt. n.1(A).

2.  The defendant was at least 65 years old, experiencing a serious deterioration in physical or mental health because of the aging process, and served the lesser of 10 years or 75% of his sentence. *Id.* § 1B1.13 cmt. n.1(B).

3.  The defendant's family circumstances include either the death or incapacitation of the caregiver of the defendant's minor child or minor children or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner. *Id.* § 1B1.13 cmt. n.1(C).

4.  "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13 cmt. n.1(D).

Guidelines § 1B1.13, cmt. n. 1.

In *United States v. Gunn*, 980 F.3d 1178 (7th Cir. 2020), the Seventh Circuit held that because Guidelines § 1B1.13 has not been amended following the enactment of the First Step Act, "the Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release." *Id.* at 1180. Therefore, the court held, district courts are free to consider prisoners' motions for a sentence reduction on grounds other than the categories of extraordinary and

compelling reasons listed in Guidelines § 1B1.13, as limited by the statute itself. *Id.* However, the court pointed out that:

> [t]he substantive aspects of the Sentencing Commission's analysis in §1B1.13 and its Application Notes provide a working definition of "extraordinary and compelling reasons"; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused.

*Id.* Therefore, pursuant to *Gunn*, Guidelines § 1B1.13 remains instructive, though not exhaustive, in determining the meaning of the term "extraordinary and compelling reasons" for purposes of § 3582(c)(1)(A)(i).

Subsequently, the Seventh Circuit provided further guidance regarding consideration of motions for discretionary sentencing reductions under § 3582(c)(1)(A), suggesting a two-step analysis:

> At step one, the prisoner must identify an "extraordinary and compelling" reason warranting a sentence reduction.... Upon a finding that the prisoner has supplied such a reason, the second step of the analysis requires the district court, in exercising the discretion conferred by the compassionate release statute, to consider any applicable sentencing factors in § 3553(a) as part of determining what sentencing reduction to award the prisoner.

*United States v. v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021).

**B.    Defendant Has Exhausted his Administrative Remedies.**

Section 3582(c)(1)(A) provides that "the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . ."

Defendant submitted a written request for compassionate release to the warden of the MCC on November 24, 2021. Because more than 30 days have elapsed since the warden received his request, defendant has exhausted his administrative remedies with respect to this motion.

### C. Defendant Has Not Established "Extraordinary and Compelling Reasons" Warranting Consideration of a Sentence Reduction.

Defendant has not established an extraordinary and compelling reason warranting consideration of a sentence reduction.

### *Risk Posed by COVID-19*

Defendant argues that the COVID-19 pandemic, and the risks it poses to him, constitute an extraordinary and compelling reasons warranting a reduction of his sentence to time served. According to medical records provided by the MCC, defendant, who is 73 years old, has an abnormally slow heartbeat and a pacemaker. *See* ECF No. 748 at 1. The CDC has identified that being older than 65 and having heart conditions can increase a person's risk of severe illness from COVID-19.[7]

As this Court previously determined, however, although defendant is older and suffers from two conditions identified by the CDC as increasing his COVID-19 risk, defendant's individual risk is drastically reduced by his having been fully inoculated against the virus. Specifically, as reflected by defendant's medical records, defendant received the second dose of the COVID-19 vaccine on January 22, 2021. ECF No. 748

---

[7] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited March 7, 2022).

at 61. The vaccines defendant received permit effective self-care against severe illness or death that may be caused by COVID-19.

The CDC reports that the FDA-authorized COVID-19 vaccines "protect everyone ages 5 years and older against severe illness, including disease caused by the Delta variant and other variants circulating in the United States."[8] With respect to the recent Omicron variant, relied upon by defendant, the CDC states that, as in the case of Delta and other earlier variants, "current vaccines are expected to protect against severe illness, hospitalizations, and deaths due to infection with the Omicron variant."[9] The CDC states that such fully vaccinated individuals who contract "breakthrough" infections are "less likely to develop serious illness than those who are unvaccinated and get COVID-19."[10] Specifically, "[e]ven when fully vaccinated people develop symptoms, they tend to be less severe symptoms than in unvaccinated people. This means they are much less likely to be hospitalized or die than people who are not vaccinated."[11]

---

[8] *See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/why-measure-effectiveness/breakthrough-cases.html (last visited March 7, 2022).

[9] *See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last accessed March 7, 2022).

[10] *See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/why-measure-effectiveness/breakthrough-cases.html (last visited March 7, 2022).

[11] *See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/why-measure-effectiveness/breakthrough-cases.html (last visited Feb. 15. 2022).

Indeed, as this Court discussed in denying defendant's earlier motion for release, the Seventh Circuit has held that prisoners who have access to a vaccine cannot obtain compassionate release based on the risk of COVID-19 unless they can establish that they cannot receive or benefit from the vaccine. *United States v. Broadfield*, 5 F.4th 801 (7th Cir. 2021) (stating that the availability of a vaccine makes it impossible for the vast majority of prisoners to establish that the risk of COVID-19 is an "extraordinary and compelling" reason for immediate release); *United States v. Kurzynowski*, 17 F.4th 756, 758 (7th Cir. 2021) ("[T]he fact that Kurzynowski is vaccinated precludes a finding that the COVID-19 pandemic presents extraordinary and compelling reasons for his release."); *United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021) (observing that it would be an abuse of discretion for a judge to grant release based on COVID-19 risk to a prisoner with access to vaccines). Accordingly, defendant has not established that the risk posed to him by COVID-19 constitutes "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *See* Guideline § 1B1.13 cmt. n.1(A)(ii)(I).

Indeed, nothing defendant has presented in his second motion for compassionate release disturbs the court's analysis denying defendant's first motion for compassionate release:

> … the Seventh Circuit has held that the availability of a vaccine to federal prisoners "makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release," unless the prisoner "can show that he is unable to receive or

13

> benefit from a vaccine." *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)); *see also United States v. Ugbah*, 4 F.4th 595, 598 (7th Cir. 2021). Although Defendant argues that his age and the emergence of the Delta Variant of COVID-19 place his situation outside of *Broadfield*, the Court disagrees. Defendant received the Moderna vaccine and has offered no medical evidence that, in his specific case, its efficacy is so reduced as to make him unable to benefit from the vaccine. Accordingly, the Court denies the motion [741].

ECF No. 755 at 3. It remains true that defendant has offered no medical evidence that, in his specific case, he is unable to benefit from the vaccine.

### *Defendant's Desire to Care for His Wife*

Defendant asserts that he needs to be released to take care of his wife, who is suffering from a number of medical conditions. Guideline § 1B1.13—which the Seventh Circuit has described as providing the "working definition" of "extraordinary and compelling reasons" warranting relief under § 3582(c)(1)(A)(i), *Gunn*, 980 F.3d at 1180—expressly limits the family circumstances that may qualify as reasons warranting early release under the statute to circumstances involving the defendant's spouse or children, and then only where the defendant is the only available caregiver. Here, defendant has provided limited medical information indicating as of August 2021, defendant's wife suffered from osteoporosis, anxiety and depression, diabetes, dysuria, and keratoconjunctivitis sicca. Defendant also submitted a statement from his wife describing that she has experienced several falls. ECF No. 796 Exhibit D.

The records defendant has presented in support of his motion are inadequate to demonstrate that his wife is unable to care for herself. Indeed, defendant does not claim that his wife is incapacitated and unable to care for herself; rather, he simply

14

explains he would like to be available to care for her *if* she becomes incapacitated. ECF No. 796 at 11.

Even if defendant had demonstrated that his wife is incapacitated, he has not shown that there are no other family members available to provide her with assistance. A desire to assist one's wife is certainly understandable but, unfortunately, it is not uncommon, much less extraordinary, for family members to experience illness or hardship during the time when their loved ones are incarcerated. Thus, the evidence supplied by defendant does not establish an extraordinary and compelling reason for considering a sentence reduction, particularly when measured against Guideline § 1B1.13.

### D. The § 3553(a) Factors Weigh Against Release.

Even if defendant had established extraordinary and compelling reasons warranting his release, his motion should be denied because the relevant § 3553(a) factors weigh against release. As discussed in the government's response to defendant's earlier motion, the nature and circumstances of the offense were particularly serious in that defendant engaged in a sophisticated fraud during which he targeted two Assyrian churches and its members and, with the assistance of his co-defendants, stole $5 million from those victims. Defendant's history and characteristics—including three prior federal fraud convictions and conduct during pretrial release in this case that resulted in yet more federal fraud charges—confirm that he is an incorrigible scam artist. As this Court found in imposing the sentence,

15

a substantial sentence is necessary to promote respect for the law, afford deterrence, and protect the public. The defendant should be required to serve his sentence in full.

Separate and apart from the foregoing reasons, defendant cannot establish that extraordinary and compelling reasons warrant his early release given that he is currently detained pending his trial in a separate case—Case No. 17 CR 522-1—in which he faces charges for conduct in which he engaged on pretrial release in this case. That case is currently scheduled for trial beginning the week of May 31, 2022. Even if this Court were to grant defendant a reduction of his sentence to time served, defendant could not be released without violating Judge Tharp's detention order in Case No. 17 CR 522-1. Under these circumstances, defendant cannot show that his early release is warranted, much less that it would be consistent with the sentencing factors set forth in § 3553(a). The motion should be denied.

## CONCLUSION

For the above reasons, the government respectfully requests that defendant's motion be denied.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By:  */s/ David Green*
DAVID GREEN
Assistant United States Attorney
219 South Dearborn, Suite 500
Chicago, Illinois 60604
(312) 469-6024