```
                  IN THE UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF ILLINOIS
                            EASTERN DIVISION

UNITED STATES OF AMERICA,         )  Docket No. 15 CR 515
                                  )
               Plaintiff,         )
                                  )
        v.                        )  Chicago, Illinois
                                  )  August 2, 2017
ALBERT ROSSINI,                   )  2:30 o'clock p.m.
                                  )
               Defendant.         )

                    TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE JOHN Z. LEE

APPEARANCES:

For the Government:        HON. JOHN R. LAUSCH, JR.
                           United States Attorney, by
                           MR. ERIK A. HOGSTROM
                           MR. WILLIAM PATRICK NOVAK
                           Assistant United States Attorneys
                           219 South Dearborn Street
                           Chicago, Illinois 60604

For the Defendant:         LAW OFFICES OF JOSHUA B. ADAMS,
                           P.C., by
                           MR. JOSHUA B. ADAMS
                           53 West Jackson Boulevard
                           Suite 1515
                           Chicago, Illinois 60604

                           FRANKEL & COHEN, by
                           MR. SCOTT JAY FRANKEL
                           53 West Jackson Boulevard
                           Suite 1615
                           Chicago, Illinois 60604

ALSO PRESENT:              MS. CHRISTA GREEN
                           Pretrial Serivces Officer


                ALEXANDRA ROTH, CSR, RPR
                  Official Court Reporter
                219 South Dearborn Street
                  Chicago, Illinois 60604
                      (312) 408-5038
```

1        (Proceedings had in open court:)
2            THE CLERK:  15 CR 515, USA versus Albert Rossini.
3            MR. HOGSTROM:  Good afternoon, your Honor. Erik
4    Hogstrom and Bill Novak for the United States.
5            MR. NOVAK:  Good afternoon, your Honor.
6            MR. ADAMS:  Good afternoon, your Honor.  Joshua Adams
7    for Albert Rossini who is in custody.  And --
8            MR. FRANKEL:  Scott Frankel also for Mr. Rossini.
9            MS. GREEN:  And Christa Green from Pretrial Services.
10           THE COURT:  All right.  Good afternoon, everyone.
11       Good afternoon, Mr. Rossini.
12           THE DEFENDANT:  Good afternoon.
13           THE COURT:  So this is the government's motion to
14   revoke bond.  Let me hear from the defense.
15           MR. ADAMS:  Your Honor, we are respectfully requesting
16   that the Court release Mr. Rossini on a home incarceration with
17   the strictest arrangements the Court could find, such as
18   removal of any internet service provider, removal of computers
19   and any telecommunication devices absent a land line, and place
20   Mr. Rossini on a 24-hour home incarceration.
21           Couple of things that go with that, your Honor, his
22   wife is in the courtroom this morning, just was diagnosed with
23   a reoccurence of breast cancer about, according to her, three
24   weeks ago.  Mr. Rossini cares for her.  His mother-in-law, her
25   mother, suffers from late-stage onset of dementia.

1         So I think for those two reasons he -- we are
2    requesting that he be out to care for his family members.  He
3    also has a pacemaker.  And there is a concern that he is kept
4    in Kankakee.  He is not going to receive the prompt medical
5    treatment he needs in order to maintain his health.
6         And also, Judge, most importantly, he has -- this case
7    is set for trial December 4.  And there is a significant amount
8    of discovery and trial preparation to go through.  If Mr.
9    Rossini is kept in custody, it's going to be a significant
10   hinderance on his ability to adequately and sufficiently
11   prepare for trial with his counsel, with his attorneys.
12        MR. FRANKEL:  Judge, also Ms. Rossini is in the
13   courtroom.  She is willing to sign any -- cosign any bond at
14   any level of financial responsibility.
15        MR. ADAMS:  And I could add, your Honor, Mr. Rossini
16   was in court last Thursday.  And the very next morning, less
17   than 24 hours, the government, FBI, arrested him at his house.
18   Mr. Rossini has attended every court appearance here.  He has
19   not -- contrary to the government's theory previously, he has
20   not violated terms of his bond.  He's gone to California and
21   returned.
22        He will abide by any condition that this Court deems
23   appropriate to ensure not only his appearance in court but the
24   protection from the public of any possible future crimes Mr.
25   Rossini made.

1       THE COURT: Does the defense contest any of the
2  factual assertions made by the government in its motion to
3  revoke bond?
4       MR. ADAMS: Yes, your Honor. We do contest the
5  allegations of the new case in -- it's on page 5, Roman numeral
6  II, paragraph 8. It says, defendant committed gang fraud
7  charged in 17 CR 522. He has not been indicted in that case.
8  It's still at stage -- indictment stages. So we are contesting
9  and he will plead not guilty on that case.
10      With respect to whether or not he has completed real
11 estate transactions while on bond, I haven't seen any evidence
12 to support that claim, that he has committed any sort of
13 violation of the -- this Court's pretrial release order.
14      And then with respect to where he's been living
15 while -- or where he's been staying while in California, I have
16 not had a sufficient amount of time to investigate that myself
17 to decide -- to understand exactly where he was standing, in
18 terms of whose house he was staying, which apartment building
19 he was staying at.
20      So on those we do not -- I don't have enough
21 information to contest, confirm or deny that.
22      THE COURT: What about the government's contentions in
23 the motion that because Judge Mason found there to be
24 sufficient evidence to issue a criminal complaint, that that
25 triggers the presumption of detention under 18 U.S.C. Section

1  3148(b).

2  MR. ADAMS: I think, Judge, there is enough to
3  overcome that presumption, such as strict home incarceration
4  and the other conditions that we -- and it's completely -- as
5  Mr. Frankel informed me, it's completely nonviolent offense
6  here.

7  THE COURT: Let me hear further from the government.
8  For the record, I have reviewed the motion and the materials
9  attached thereto.

10  MR. HOGSTROM: Judge, I won't simply regurgitate the
11  facts we already put forth in our motion. I want to add one
12  thing that was not in our filing, which is a subsequent
13  development, which is that we determined after defendant's
14  arrest that he was still on probation in this case that he had
15  pending before the state at the time that we indicted this
16  case, so in between the time that we indicted this case and now
17  he pled guilty in the state case and received a term of
18  probation.

19  He was still on that term of probation at the time
20  that the events alleged in the complaint occurred. So we have
21  notified the State's Attorney's Office, and they have advised
22  us that they are expecting to move to violate his -- file a
23  motion of violation of probation in that case. That has not
24  been filed yet. It's not pending. So I don't -- I don't tell
25  the Court that it necessarily bears on the Court's

1  consideration right now. But it is hanging out in the balance.
2  With respect to the request for home incarceration,
3  respectfully, all of the reasons cited by the defense are not
4  reasons that are set forth in this statute that are for the
5  Court's consideration. The Court is to consider what is
6  necessary to ensure the defendant's appearance and safety of
7  the community.
8  I would note that although it's true that Judge
9  Gilbert previously denied our original motion to revoke
10 defendant's bond based on a separate conduct he engaged in
11 while on bond, Judge Gilbert, as we put in the transcript, did
12 find defendant represents a financial danger to the community.
13 He in fact in two separate -- two separate instances made that
14 statement and said, but I believe I can fashion conditions that
15 will sufficiently mitigate that danger.
16 And -- I, having been there at the time and having
17 reread the transcript this morning, think that Judge Gilbert
18 was going out of his way to cut Mr. Rossini a break, to give
19 him a second chance. I think he used that exact term. And he
20 imposed very strict conditions. And what the defendant has
21 done to repay that trust is misleading this Court about where
22 he's been traveling, what he's been doing in California, who
23 he's been staying with, and engaging in a separate offense for
24 which there is now a probable cause finding.
25 Your Honor is correct that the finding by -- or your

1  Honor recited -- referred to our contention which we reassert
2  here that Magistrate Judge Mason's signing of the complaint is
3  a finding of probable cause.  And in fact the issue of
4  preliminary hearing was waived before him during the initial
5  appearance.  So it's not being contested at the moment.  There
6  is a probable cause finding that the defendant engaged in
7  felony violation while on bond, which raises a presumption of
8  detention.
9         Very little has been offered to rebut the presumption.
10 And, in fact, everything in the defendant's history, not even
11 going into the conduct in this case but everything in the
12 defendant's history, points in the exact opposite direction.
13 This is his sixth fraud case that he's picked up, one of which
14 was disposed of as part of a joint plea deal with the other
15 state case I already referred to.  So he has four prior fraud
16 convictions, two federal.  This case, if he is convicted, will
17 be his fifth.
18         He was released on bond in this case.  He was -- one
19 of the bases for our original motion to revoke bond is that
20 immediately upon being released on bond and having been given a
21 condition of release that he not engage in any financial
22 transactions over a hundred dollars, he immediately went to a
23 currency exchange and cashed a $15,000 check that had been
24 written to him by an investigator for the purpose of a mortgage
25 note that we have alleged was a fraudulent sale without going

1 into the merits of that, which Judge Gilbert discussed at
2 length.  He nevertheless cashed this check immediately after
3 being placed on bond with the strict condition that he not
4 engage in financial transactions over a hundred dollars.

5 Judge Gilbert gave him the benefit of the doubt by
6 saying, that check was written out to the company that the
7 defendant controls, rather than to him personally.  So -- but
8 the -- but Judge Gilbert went out of his way to also say that
9 if he didn't violate the letter of conditions for release,
10 violated the spirit of the condition of release.

11 So then we had this litigation on this motion to
12 revoke bond.  Judge Gilbert made the findings that he did and
13 made the statements that he did and fashioned the strict
14 conditions that he did.  And then we have appeared in court
15 here.  And when the defendant has -- in almost every instance
16 when the defendant has made these requests for travel, the
17 government has objected.  And we specifically asked that the
18 defendant be made to provide specific information about where
19 he was going.

20 Your Honor during the last time this issue came up
21 agreed and asked -- in fact, held the hearing over to the next
22 day to get this information.  And this information was provided
23 to the Court.  And your Honor made the specific statement that
24 there was minimal danger to the community in particular because
25 he was staying with family.  And it turns out that he was not

1  staying with family.

2  There are a litany of factors that weigh against
3  overcoming presumption of detention here. And obviously, like
4  I said, I have no intention of regurgitating all the facts in
5  our filing. Your Honor has read it. But those facts heavily
6  weigh in favor of detention. And I would note that Pretrial
7  Services has also recommended revocation, and we agree with
8  that recommendation.

9  MR. ADAMS: Your Honor, may I make a brief response?
10  THE COURT: Yes. Go ahead.
11  MR. ADAMS: First, with respect to the state case that
12  the government says they now are finding out he's on probation,
13  that was part of the initial discovery turned over to the
14  defense counsel. Government has known about his pending state
15  matters for -- well, since 2015, when this case was charged.
16  Secondly -- one moment.
17  (Brief pause.)
18  MR. ADAMS: And Mr. Rossini informs me that he gave
19  his Pretrial Service officer the exact address and location
20  where he was staying while he was in California on the last
21  trip. And that's -- every time. And that's in response,
22  Judge, to the government's claim on page 7, Roman numeral I.
23  THE COURT: What address did he give?
24  MR. ADAMS: 21 Erwin Drive, Woodland Hills -- 21021.
25  Erwin Hills.

1             THE COURT:  Was he staying with his family at the
2  time?
3             THE DEFENDANT:  No, your Honor.
4             MR. ADAMS:  Judge, he tells he was not staying with
5  family at the time.  He was staying with a friend his family
6  was visiting while he was staying at the 21021 address.
7             THE COURT:  What about the Woodland Hills address that
8  he had previously provided?
9             MR. ADAMS:  One moment, your Honor?
10             THE COURT:  You may.
11        (Brief pause.)
12             THE COURT:  While there is talking, what address does
13  Pretrial Services have for him?
14             MS. GREEN:  Your Honor, he was being supervised by
15  Justin Wiersema.  I am trying to find out right now what the
16  address was.
17             THE COURT:  He gave you a copy too, right?
18             MR. NOVAK:  The understanding -- I spoke with Mr.
19  Wiersema, and the understanding was Erwin Hills address -- the
20  Erwin Street address, the 21021, that's the Woodland Hills.
21  That's in Woodland Hills, California.  That's the only address
22  that we are aware of that he was -- he was staying at in the
23  Los Angeles area.
24             THE COURT:  So the Erwin Street address is in Woodland
25  Hills.

1        MR. NOVAK:  Yes, yes.  We took -- in the complaint --
2    in the motion.  So that's -- that's unclear, that address.
3        THE COURT:  So the government's contention is that he
4    gave the correct address, but that he was not staying with his
5    family as he had previously stated he was.  Nor was he there to
6    assist his family or visit ailing relatives as he previously
7    stated that he was.
8        MR. HOGSTROM:  That's correct, Judge, with one
9    modification.  He initially provided the incomplete address.
10   The address is a large apartment complex.  And that -- all
11   that -- that was all that was provided, no unit number, until
12   after the last trip.
13       When we received that address, the agents attempted to
14   look it up and determined that it was a large apartment
15   complex, advised us.  So then we inquired with defense counsel
16   what the exact unit was.  And we were given that information.
17   When they investigated that, that's when they determined that
18   the person he's staying with was not in fact a family member.
19       I would also note that this individual advised the FBI
20   that Mr. Rossini -- well, first she told the FBI that he hadn't
21   been staying there at all.  She then later came -- in her
22   second interview admitted that was a lie, but that he had been
23   staying there, and he stayed there twice on two trips.  That's
24   our understanding that he's advised pretrial services that he's
25   been to that address six times.  So there is an inconsistency

1 there as well.

2 But it's also noteworthy that there is no mention --
3 there was no mention from this individual that Mr. Rossini's
4 family was coming there to see him. In fact, she said that
5 during the daytime he would disappear in the morning with her
6 car conducting unknown business and return at night, sleep
7 there at night.

8 THE COURT: In fact, as I recall, when the government
9 raised its concern and asked -- kind of raised the question,
10 where is Mr. Rossini obtaining the funds to go out to
11 California during these times, the response that his counsel
12 gave to me was that he was not spending all that much money
13 because he was staying with family. And they were taking care
14 of his expenses, meals and the like.

15 The other thing that concerns me, Mr. Adams, is, the
16 statements by this individual, D.G., that Mr. Rossini would
17 basically borrow her car and go off the whole day without
18 really knowing for sure what he was doing or what he was up to,
19 I mean, the whole purpose of the reason why I allowed Mr.
20 Rossini to go out to California, No. 1, was because he stated
21 to me that it was to visit family and to help family. And
22 No. 2, I said that the fact that he was staying with family and
23 he would be in his family's company would mitigate any risk or
24 concerns by the government that Mr. Rossini would engage in
25 otherwise nefarious activity.

1              It seems now, though, based upon the FBI interview
2    reports, that in fact the government did have reason to worry
3    that Mr. Rossini, No. 1, was not telling me the truth about his
4    purpose of going out there or the circumstances surrounding his
5    visit there.  And that Mr. Rossini was unsupervised for large
6    swats of time doing whatever Mr. Rossini was doing at the time,
7    but without any indication that he was acting for the benefit
8    of his family or his cousins and packing to come back here for
9    ailing relatives.
10             And so I'm left here with concerns about the ability
11   of -- my ability to basically trust whatever representations
12   that Mr. Rossini may be giving me at this time.  I am also
13   concerned with regard to the request that I put him on home
14   confinement because to date it appears that Mr. Rossini has
15   found ways to circumvent whatever conditions and safeguards
16   that Judge Gilbert and I have come up with to try to mitigate
17   or address any risks that he may pose to other persons in the
18   community.
19             And so those are the concerns that I have based upon
20   the interview notes conducted by the FBI of Mr. Rossini's
21   activities in California, but also Mr. Rossini's activities
22   here with regard to the property at the Kolmar address in
23   Skokie.  So I just want to let defense know kind of where --
24   what I am focusing on as part of this hearing and the things
25   that give me concern at this point.

1         MR. ADAMS: Judge, may we have a brief moment to
2    confer with Mr. Rossini?
3         THE COURT: Go ahead.
4      (Brief pause.)
5         MR. ADAMS: Thank you, your Honor.
6         THE COURT: At this point, Mr. Adams, do you have
7    anything to add?
8         MR. ADAMS: Just, your Honor, to reiterate that if
9    Mr. Rossini is kept in custody, it's going to have a drastic
10   effect on the ability to prepare for this truly complicated
11   trial that's coming in December. And also respectfully, Judge,
12   a term of -- order of home incarceration in which Mr. Rossini
13   is in effect on lockdown in his own home I believe is
14   sufficient to ensure the Court that he will abide by all
15   conditions the Court sets.
16        THE COURT: Okay. All right.
17             In addition to the standard conditions of pretrial
18   release, which of course included that Mr. Rossini not commit
19   another federal, state or local crime, and that he not leave
20   the judicial district without prior approval from this Court,
21   Mr. Rossini's bond was also premised on a number of other
22   conditions, including the fact that he not engage directly or
23   indirectly in the sale of mortgage notes or other mortgage-
24   related interests, that he not engage directly or indirectly in
25   the sale of real estate, sale or resale of real estate.

1           I also note for the record that beginning in October
2    2016, Mr. Rossini has requested permission to travel to
3    California on a number of occasions.  The Court granted each of
4    those requests over the government's objections.  The reason
5    that Mr. Rossini gave for his trips were to allow him to visit
6    family members and to assist family members.
7           Most recently on May 25, Mr. Rossini stated to the
8    Court that he wanted to go to California to help his cousins
9    move back to Chicago, and that he would be staying with his
10   family while he was there.  For each of those trips Mr. Rossini
11   was ordered to provide the government and Pretrial Services
12   with an itinerary, and he did so.
13          The government has now presented evidence that the
14   resident of that address, a D.G., is not a relative of Mr.
15   Rossini's but a friend.  Furthermore, during interviews with
16   the FBI, D.G. stated that Mr. Rossini was staying with her at
17   the Erwin Street address, and that he was stayed with her not
18   only on that occasion but two prior occasions when he was
19   visiting California while on pretrial release.
20          D.G. did not -- in this interview D.G. did not provide
21   any basis to support Mr. Rossini's contention that he was there
22   in order to visit family and to assist family.  Rather D.G.
23   during her interview, particularly the second interview to the
24   FBI, stated Mr. Rossini would use D.G.'s car and leave and
25   sometimes be gone all day.  And D.G. surmised that it was for

1  business purposes, although I don't think she was sure and not
2  have reason to know.
3          But the fact that Mr. Rossini was using D.G.'s car and
4  leaving does raise concerns for the Court with regard to the
5  nature of Mr. Rossini's activities while in California.
6  Certainly he was not staying with his family as he stated that
7  he was.  And there is little reason to believe that he was
8  assisting family members while he was out there as he stated to
9  the Court that he was doing.
10         Furthermore, the government has submitted notes of the
11 FBI's interview with an M.R. on June 20, 2017.  At that time
12 M.R. stated that he was involved in a real estate transaction
13 with Mr. Rossini.  According to M.R. Mr. Rossini retained him
14 to list and sell a property on Kolmar Avenue in Skokie that
15 Mr. Rossini claimed he had obtained in a tax sale.
16         The FBI also interviewed a C.S. on June 29, 2017.  The
17 C.S. also indicated that defendant listed a property at 7845
18 North Kolmar in Skokie for sale and in fact had a sale contract
19 on that property.  The FBI then contacted the actual owner of
20 the Kolmar property, who indicated to the FBI that he never
21 heard of Rossini, C.S. or Mr. Rossini's company, and that he
22 had not placed his home for sale.
23         The Court finds the evidence that is submitted by the
24 government to be reliable and substantially reliable and to be
25 credible.

1          Accordingly the Court finds that Mr. Rossini has
2  violated the condition that he not engage in the sale of real
3  estate.  And furthermore, the Court also finds that Mr. Rossini
4  misrepresented to the Court that he was traveling to California
5  to visit family and staying with family in California.
6          Accordingly, the Court also finds that Mr. Rossini
7  violated the condition that he not travel outside the judicial
8  district without first obtaining the proper authorization from
9  this Court.
10         Finally, on July 28, 2017, Magistrate Judge Mason
11 found probable cause that Mr. Rossini committed bank fraud and
12 mail fraud as well as other violation of federal law during the
13 first half of 2017.  Accordingly, Magistrate Judge Mason issued
14 a criminal complaint and arrest warrant for Mr. Rossini.
15         Accordingly, under 18 U.S.C. Section 3148(b), there is
16 a rebuttable presumption that no condition or combination of
17 conditions will assure that Mr. Rossini will not pose a danger
18 to the safety of any person or the community.  Based upon the
19 Court's findings discussed above, I find that Mr. Rossini has
20 not rebutted the presumption with adequate evidence.  The Court
21 also finds the government has established by clear and
22 convincing evidence that there are no set of conditions or no
23 conditions or set of conditions that will reasonably assure
24 that Mr. Rossini will not harm the safety of any other person
25 or the community.

1     Furthermore I do not believe that home confinement as
2 proposed by defense counsel would sufficiently mitigate or
3 address the risks.  Mr. Rossini has lied to the Court and found
4 ways to circumvent the condition previously imposed by the
5 Court.
6     Let me say, I am not unsympathetic to the health
7 issues that may be faced by his wife and his mother-in-law.
8 However, what I would note is that Mr. Rossini did have an
9 opportunity to be out on pretrial release.  And by violating
10 the conditions as he did, he himself squandered that
11 opportunity and created the current circumstances that we are
12 faced with today.
13     Accordingly, the Court hereby grants government's
14 motion and revokes Mr. Rossini's pretrial release.
15     As for trial preparation, I do recognize that the
16 trial is a long and complex one involving -- at the moment it's
17 scheduled for three weeks.  And as I understand it, it involves
18 thousands and thousands of financial records and documents.
19     Typically speaking, defendants are brought to the MCC
20 a week before trial in this court.  For this case, I would
21 direct the MCC, the U.S. Marshals, if at all possible to bring
22 Mr. Rossini to the MCC 30 days before trial, so that counsel
23 may have access to Mr. Rossini to prepare for trial.
24     MR. ADAMS:  Thank you, your Honor.
25     MR. FRANKEL:  Judge, in that respect, could we bring

1  him here sooner? He has the health issue. I know that
2  Kankakee is not equipped to address his health issue. MCC does
3  have the resources to --
4      THE COURT: What I would suggest you do is raise those
5  concerns first with the U.S. Marshals office. They would be in
6  a better position to understand what Kankakee can and cannot
7  do. If there are further concerns about that you can raise it
8  by motion with me.
9      MR. ADAMS: Yes, your Honor.
10     MR. HOGSTROM: Judge, just for the record. We -- the
11 concerns raised before Judge Mason on Friday, who directed us
12 to contact the marshals to make them aware that Mr. Rossini had
13 a pacemaker, which we did both by e-mail and in a phone call.
14 So they are aware of it.
15     THE COURT: Okay. It never hurts to remind them.
16     MR. FRANKEL: Notwithstanding that notification, they
17 sent him to Kankakee where he did not see a physician. There
18 is no monitoring of the pacemaker, which is what he has at
19 home, a monitor that he connects to at night. So we will make
20 a phone call. But as of now he hasn't had any of his medical
21 needs addressed.
22     THE COURT: As I said, the best person to address that
23 to is the designated U.S. Marshal who overseas that aspect of
24 the program. Okay?
25     MR. ADAMS: Will do, your Honor.

```
1            THE COURT:  Anything else we need to address today?
2            MR. HOGSTROM:  Nothing from the government.
3            MR. ADAMS:  No, your Honor.  Thank you.
4            THE COURT:  Very good.  Thank you.
5       (Which were all the proceedings heard in this case.)
6                              CERTIFICATE
7            I HEREBY CERTIFY that the foregoing is a true, correct
8    and complete transcript of the proceedings had at the hearing
9    of the aforementioned cause on the day and date hereof.
10
11    /s/Alexandra Roth                               3/1/2023
     _____     _____
12    Official Court Reporter                         Date
      U.S. District Court
13    Northern District of Illinois
      Eastern Division
```