> **NONPRECEDENTIAL DISPOSITION**
> To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals
**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued May 24, 2023
Decided June 7, 2023

**Before**

MICHAEL Y. SCUDDER, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

THOMAS L. KIRSCH II *Circuit Judge*

CERTIFIED COPY
A True Copy
Teste:
_____
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

No. 21-3115

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 1:15-cr-515-1 |
| ALBERT ROSSINI, *Defendant-Appellant* | John Z. Lee, *Judge*. |

**O R D E R**

Albert Rossini defrauded investors out of millions of dollars in an elaborate Ponzi scheme. A federal jury convicted him of fourteen counts of wire fraud and mail fraud. On appeal Rossini challenges his sentence of 132 months' imprisonment and $5.27 million in restitution. We affirm.

No. 21-3115 Page 2

## I

Starting in 2011 Albert Rossini persuaded members of the Assyrian community in Chicago to invest in his real estate company, Devon Street Investments. Rossini and his co-conspirators told investors that the firm would foreclose on 57 distressed properties in the Chicagoland area, transferring the titles to the investors once the foreclosures concluded. To strengthen his pitch, Rossini took investors to view the exteriors of the properties and hired a handyman to make minor improvements. He even sent investors what he claimed were rental payments from existing tenants.

But Devon Street Investments operated as a Ponzi scheme. The firm did not have an ownership interest in most of the properties, and investors acquired title to only three of them. Rossini made the purported rental payments using the investors' own money. So, when the payments stopped in 2012, the scheme collapsed. Some twenty investors lost over $5 million.

Federal charges followed for wire fraud and mail fraud, and Rossini chose to go to trial. The government introduced evidence at trial about Rossini's role in executing the fraud, including testimony from nine of his victims, one co-conspirator, and a forensic investigator. A jury convicted Rossini on all counts.

The district court sentenced Rossini to 132 months' imprisonment, well below the advisory Guidelines range of 210 to 262 months. The district court ordered Rossini to pay $5.27 million in restitution as well, based on trial evidence about the victims' actual losses.

The district court explained that several mitigating factors justified the downward variance from the Guidelines range—first and foremost Rossini's advanced age (at the time, 73 years), poor health, and obligations to care for his ailing wife. But the district court believed the "vicious and calculated" nature of his fraud warranted a substantial sentence. The district court also emphasized Rossini's long history of fraud-related convictions dating back to the 1980s.

For his part, Rossini claimed at sentencing that he was innocent and that the government's loss calculations were inflated. Those claims were not credible, in the district court's view, in no small part because they were inconsistent with the trial evidence.

No. 21-3115 Page 3

Rossini now appeals, challenging only his sentence. He contends that the district court incorrectly calculated the advisory Guidelines range, imposed a substantively unreasonable sentence, and ordered too much in restitution.

II

A

We take our own fresh look at the district court's legal determinations in calculating the advisory Guidelines range, and we review its factual findings for clear error. See *United States v. Arnaout*, 431 F.3d 994, 998 (7th Cir. 2005). Rossini argues that the district court erred in discounting his sentencing testimony and submissions. But he never explains how the error impacted the Guidelines calculations, aside from undeveloped suggestions that the district court blamed him for a co-conspirator's conduct, improperly imposed a sentencing enhancement for his leadership role in the scheme, and inaccurately determined that the loss amount was $5.27 million.

Rossini is mistaken. The district court's credibility determination "can virtually never be clear error." *United States v. Pulley*, 601 F.3d 660, 664 (7th Cir. 2010). Just so here. As the district court observed, Rossini had a long history of engaging in deceptive conduct. He had accumulated multiple fraud convictions over the course of decades. While on pretrial release in the present case, he allegedly engaged in a check kiting scheme, conducted other financial transactions prohibited under the terms of his pretrial release, and lied to the district court about what he was doing while traveling outside the jurisdiction—causing the district court to revoke his pretrial release and leading to fresh federal fraud charges in a separate case.

The district court also found Rossini's contentions at sentencing inconsistent with the "heavy weight" of the trial evidence and with the jury verdict itself. And Rossini only further undermined his credibility by making "wholly incredible" claims during his sentencing testimony, like accusing the FBI of thwarting his efforts to make the victims whole. The district court stood on firm ground in rejecting his sentencing testimony and his related arguments.

Nor do we see any error in the district court's finding that the total loss amount was $5.27 million. "The court need only make a reasonable estimate of the loss." U.S.S.G. § 2B1.1 n.3(C). Rossini shoulders the burden on appeal of showing that the loss amount was "not only inaccurate, but also outside the realm of permissible computation." *United States v. Mantas*, 274 F.3d 1127, 1131 (7th Cir. 2001). He has not

Case: 1:15-cr-00515 Document #: 942 Filed: 06/29/23 Page 4 of 5 PageID #:10489
Case: 21-3115    Document: 00714220230    Filed: 06/29/2023    Pages: 5

No. 21-3115                                                                    Page  4

done so. The district court's estimate of the loss drew on substantial evidence presented at trial, including the testimony of a forensic investigator who tallied up the investors' actual losses.

On appeal Rossini posits that the district court averaged the losses per victim and then multiplied by the number of victims to arrive at its final estimate, a methodology he maintains is unreliable. Rossini forfeited this objection by failing to raise it below, so our review is only for plain error. See *United States v. De La Torre*, 940 F.3d 938, 946 (7th Cir. 2019). We see no error with the district court's methodology, let alone a plain error. Indeed, the district court never used any sort of averaging methodology to calculate the total loss amount. To the contrary, the court calculated the losses on an individual basis for each victim and then aggregated them, an analysis rooted in the trial evidence.

Rossini reaches even further in insisting that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny required the district court to submit the issue of loss amount—and possibly other factual findings too—to a jury. Not so. *Apprendi* bars judicial factfinding for only those facts that "expose the defendant to a greater punishment than that authorized by the jury's guilty verdict." *Id.* at 494. But "broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment" so long as the sentence is "within the range authorized by law." *Alleyne v. United States*, 570 U.S. 99, 116–17 (2013). The judicial factfinding challenged here increased the advisory Guidelines range but did nothing to affect the range of sentences authorized by the federal mail and wire fraud statutes. *Apprendi* did not require the district court to submit these facts to a jury.

B

Rossini's challenges to the substantive reasonableness of his sentence fare no better. We review this challenge for abuse of discretion. See *United States v. Vasquez-Abarca*, 946 F.3d 990, 992 (7th Cir. 2020). We uphold the sentence so long as the district court provided a reasoned basis consistent with the factors set forth in 18 U.S.C. § 3553(a). See *id.* A below-Guidelines sentence, like this one, has a "nearly irrebuttable presumption" of reasonableness. *United States v. Oregon*, 58 F.4th 298, 302 (7th Cir. 2023) (quoting *United States v. Miller*, 829 F.3d 519, 527 (7th Cir. 2016)).

The district court carefully grounded the sentence in the § 3553(a) factors. The court emphasized Rossini's lack of remorse, the severity of his offense conduct, and his long criminal history. See 18 U.S.C. § 3553(a)(1) (directing district courts to consider "the nature and circumstances of the offense and the history and characteristics of the

Case: 1:15-cr-00515 Document #: 942 Filed: 06/29/23 Page 5 of 5 PageID #:10490
Case: 21-3115   Document: 00714220230   Filed: 06/29/2023   Pages: 5

No. 21-3115                                                                   Page 5

defendant"). Even at an advanced age, Rossini continued to commit crimes. So the district court determined that a sentence of 132 months would serve the goals of just punishment, deterrence, and protection of the public. See *id.* at § 3553(a)(2)(A), (B), (C).

Yet the district court also placed substantial weight on mitigating aspects of Rossini's history and characteristics, including his age, poor health, dedication to his family, and the difficulties of his pretrial incarceration during the pandemic. The court was "particularly cognizant of the fact that at [Rossini's] advanced age, there is a risk that a lengthy sentence might cause him to spend the rest of his life in prison." All of these considerations justified a below-Guidelines sentence.

Rossini believes the district court should have placed still more weight on the mitigating factors. But he shoulders a heavy burden in pressing that contention. The district court exercises broad discretion in weighing the § 3553(a) factors, and we see nothing close to an error here. See *United States v. Melendez*, 819 F.3d 1006, 1013 (7th Cir. 2016). Rossini cannot show that the district court's weighing fell outside the wide bounds of reason. See *United States v. Smith*, 721 F.3d 904, 908 (7th Cir. 2013).

C

Finally, the district court did not abuse its discretion in ordering restitution of $5.27 million. See *United States v. Hassebrock*, 663 F.3d 906, 925 (7th Cir. 2011). As the district court observed, the amount of restitution aligned with the trial evidence and testimony. Rossini again suggests that the district court should have rejected the government's evidence and instead accepted his own evidence. His contention amounts to another challenge to the district court's credibility determination, which we see no reason to set aside.

We have considered Rossini's other arguments and likewise found them to fall short on the merits. We therefore AFFIRM.